**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **VIRNETX INC. AND** | § | |
| **SCIENCE APPLICATIONS** | § | |
| **INTERNATIONAL CORPORATION,** | § | **Civil Action No. 6:12-cv-855** |
| | § | **LEAD CONSOLIDATED CASE** |
| Plaintiffs, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **APPLE INC.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| Defendant. | § | |

**APPLE'S MOTION FOR SUMMARY JUDGMENT OF INDEFINITENESS**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

BACKGROUND ............................................................................................................................2

      I.      The '181 Patent ................................................................................................2

      II.     Prosecution History..........................................................................................3

STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ..................................................6

STATEMENT OF UNDISPUTED MATERIAL FACTS .............................................................6

LEGAL STANDARD....................................................................................................................7

ARGUMENT .................................................................................................................................9

      I.      "Secure Name" and "Unsecured Name" Are Insolubly Ambiguous and
           Therefore Indefinite. ........................................................................................9

      II.     "Secure Name Service" Is Insolubly Ambiguous and Therefore Indefinite..........13

CONCLUSION.............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Acacia Media Techs. Corp. v. New Destiny Internet Grp.*,
    405 F. Supp. 2d 1127 (N.D. Cal. 2005) ............................................................. 10, 15

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .......................................................................................... 7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .......................................................................................... 7

*Cordis Corp. v. Boston Scientific Corp.*,
    561 F.3d 1319 (Fed. Cir. 2009) ........................................................................ 8

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F. 3d 1342 (Fed. Cir. 2005) ....................................................................... 8, 14

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008) ........................................................................ 8, 10

*Honeywell Int'l, Inc. v. Int'l Trade Comm'n*,
    341 F.3d 1332 (Fed. Cir. 2003) ........................................................................ 8, 9

*Interval Licensing, LLC v. AOL, Inc.*,
    No. C10-1385 MJP, 2013 WL 792791 (W.D. Wash. Feb. 28, 2013) ................... 14

*Irdeto Access, Inc. v. Echostar Satellite Corp.*,
    383 F.3d 1295 (Fed. Cir. 2004) ........................................................................ 9

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) ........................................................................... 7

*McClain v. Ortmayer*,
    141 U.S. 419 (1891) ......................................................................................... 1

*Morton Int'l, Inc. v. Cardinal Chem. Co.*,
    5 F.3d 1464 (Fed. Cir. 1993) ........................................................................... 8

*Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*,
    719 F.3d 1346 (Fed. Cir. 2013) ........................................................................ 8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ........................................................................ 7

*Skyhook Wireless, Inc. v. Google, Inc.*,
    C.A. No. 10–11571–RWZ, 2014 WL 898595 (D. Mass. Mar. 6, 2014)................ 12

*White v. Dunbar*,
    119 U.S. 47 (1886) .......................................................................................... 7

**Statutes**

35 U.S.C. § 112................................................................................................... passim

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................................................. 7

## INTRODUCTION

Under 35 U.S.C. Section 112, Paragraph 2, every U.S. patent must include claims that "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention."  This requirement is fundamental to U.S. patent law:  its object is not only to secure to the patentee all to which the patentee is entitled, but also to apprise the public of what is still open to it.  *See McClain v. Ortmayer*, 141 U.S. 419, 424 (1891).  Because claims with ill-defined boundaries defeat this public-notice function, such claims are invalid as indefinite.

VirnetX breached this fundamental requirement when it obtained U.S. Patent No. 8,051,181 ("the '181 patent"), one of the six patents it asserts in this action.  Although the '181 patent was a late entrant into a large family of patents based on similar disclosures, VirnetX introduced into its claims newly coined terms that nowhere appear in the specification.  For these terms—"secure name," "unsecured name," and "secure name service"—the patent provides no guidance that would permit one of ordinary skill in the art to determine their meanings or boundaries.  And the prosecution history fares no better.  Although the applicant provided examples for some of these terms in its remarks to the USPTO, it expressly confirmed the open-ended nature of the terms.  Indeed, VirnetX's proposed constructions here highlight their insoluble ambiguity.  In VirnetX's paradigm, a "secure name" is a name "resolved by a secure name service" and a "secure name service" is that which resolves "secure names."  And while one might expect a "secure name" and an "unsecured name" to be mutually exclusive, under VirnetX's constructions the same thing could simultaneously satisfy both terms.  In sum, nothing in the intrinsic or extrinsic record cabins the meaning of these terms, rendering them insolubly ambiguous and invalid as a matter of law.

Accordingly, Apple respectfully requests that the Court grant summary judgment that asserted claims 1, 2, 5-9, 14-15, 17-20, 22, and 24-29 of the '181 patent—all of which include at least one of the unsupported terms—are invalid as indefinite.

## BACKGROUND

### I.    The '181 Patent

The '181 patent, entitled "Method for Establishing Secure Communication Link Between Computers of Virtual Private Network," is part of a large patent family that springs from two provisional patent applications, the earliest being filed on October 30, 1998.  The application that became the '181 patent was filed over eight years later on February 27, 2007.  The claims of the '181 patent, including the terms at issue here, have not been construed by this Court or any other tribunal.

Generally, the claims of the '181 patent are directed to establishing "secure" communications between two devices.  Each of the asserted claims requires that at least one of these devices is associated with a "secure name," and many claims require that this device also be associated with an "unsecured name."  A network address associated with the "secure name" of the device is registered with a "secure name service" so that another device attempting to communicate with it can obtain the network address by querying the "secure name service" with the "secure name." Upon receiving the network address, the querying device can establish a "secure communication link" with the device having the "secure name" and secure communications may commence. Claim 26 of the '181 patent is illustrative of the use of the terms "secure name" and "unsecured name" in the claims:

> 26. A method of using a first device to communicate with a second device over a communication network, the method comprising:
>
> from the first device requesting and obtaining registration of an ***unsecured name*** associated with the first device;

> from the first device requesting and obtaining registration of a **secure name** associated with the first device, wherein a unique network address corresponds to the **secure name** associated with the first device;
>
> receiving at the unique network address associated with the **secure name** a message from a second device requesting the desire to securely communicate with the first device; and
>
> from the first device sending a message securely from the first device to the second device.

Ex. 1 at 57:8-22 ('181 patent) (emphasis added).  Claim 28 is illustrative of the use of the terms "secure name" and "secure name service":

> 28. A non-transitory machine-readable medium comprising instructions for:
>
> sending a message to a **secure name service**, the message requesting a network address associated with a **secure name** of a device;
>
> receiving a message containing the network address associated with the **secure name** of the device; and
>
> sending a message to the network address associated with the **secure name** of the device using a secure communication link.

*Id.* at 58:5-14 (emphasis added).

As discussed in more detail below, the terms "secure name," "secure name service," and "unsecured name" were not part of the original disclosure of the application that became the '181 patent.  These terms are not defined by, nor do they appear in, the specification of the patent.

## II.     Prosecution History

The '181 patent is a continuation of U.S. Patent No. 7,188,180.  *See* Ex. 2 at 3 (Application Data Sheet).  U.S. Patent No. 7,188,180 is a division of application No. 09/558,209 filed on April 26, 2000, now abandoned, which is a continuation-in-part of application No. 09/504,783 filed on February 15, 2000, now U.S. Patent No. 6,502,135, which is a continuation-in-part of application No. 09/429,643, filed on October 29, 1999, now U.S. Patent No. 7,010,604. U.S. Patent No. 7,010,604 claims priority to provisional application No. 60/106,261, filed October 30, 1998, and provisional application No. 60/137,704, filed June 7, 1999.

The '181 patent was filed on February 27, 2007, as application No. 11/697,416 ("the '416 application").  As filed, the '416 application contained a single claim:

> 1. A method for accessing a secure computer network address, comprising steps of:
>
> receiving a **secure domain**;
>
> sending a query message to a **secure domain service**, the query message requesting a secure computer network address corresponding to the **secure domain**;
>
> receiving a response message containing the secure computer network address corresponding to the **secure domain**; and
>
> sending an access request message to the secure computer network address using a virtual private network communication link.

*See* Ex. 3 at 79 ('416 application) (emphasis added).  Notably, this originally filed claim did not include the terms "secure name," "secure name service," or "unsecured name."  *Id.*

After the application was filed, the USPTO rejected its single claim under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the applicant regarded as the invention.  *See* Ex. 4 at 3 (June 8, 2009 Office Action).  VirnetX responded to this rejection by canceling that claim and replacing it with twenty-nine new claims.  The first of those claims, Claim 2, is reproduced below:

> 2. A method of communicating with a device having a secure name, the method comprising:
>
> sending a message to a **name service**, the message requesting an address associated with the **secure name** of the device;
>
> receiving a message containing the address associated with the secure name of the device; and
>
> sending a message to the address associated with the secure name of the device using a secure communication link.

*See* Ex. 5 at 3 (Dec. 8, 2009 Amendment "A") (emphasis added).

The USPTO rejected all the newly added claims under 35 U.S.C. § 112, specifically citing "name service" and "secure name" as being indefinite:

> Claims 2-30 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.
>
> In claim 2, at line 3, it is unclear from where a message is sent. ***It is unclear what kind of "name service" that the applicants are talking about (i.e., is it a secure domain name service? or is it a domain name service?)*** It is unclear what kind of an address that the applicants are talking about (i.e., is it an address of a secure computer network?). At line 5, it is unclear where a message is received.
>
> In claims 3-23, they contain similar languages and problems as in claim 2 above. ***In claim 24, it is unclear what kind of "secure name" that the applicants are talking about (i.e., is it a secure domain name?).*** At line 4, it is unclear that kind of an address that the applicants are talking about. It is unclear what kind of the first device and the second device that the applicants are talking about. Are they the same or different?
>
> In claims 25-30, they contain similar languages and problems as in claim 24 above.

*See* Ex. 6 at 2-3 (Apr. 8, 2010 Office Action) (emphasis added).   In response, VirnetX amended the claims into the form they now appear in the '181 patent.  In doing so, VirnetX emphasized the open-ended nature of the terms "secure name service" and "secure name," noting that a "secure name service offers functionality that cannot be accomplished by a standard domain name service" and that a "secure name includes, but is not limited to, a secure domain name":

> Second, the Applicant has amended "name service" to read "secure name service." This secure name service is a service for resolving secure names into network addresses. ***This secure name service offers functionality that cannot be accomplished by a standard domain name service.***
>
> The Applicant responds to the rejection of claim 24 as follows. First, the Applicant submits that a "secure name" is a name associated with a network address of a first device. The name can be registered such that a second device can obtain the network address associated with the first device from a secure name registry and send a message to the first device. The first device can then send a secure message to the second device. ***The claimed "secure name" includes, but is not limited to, a secure domain name.*** For example, a "secure name" can be a secure non-standard domain name, such as a secure non-standard top-level domain name (e.g., .scom) or a telephone number.

*See* Ex. 7 at 8-9 (Oct. 8, 2010 Amendment "B") (emphasis added).

In its next office action, the USPTO again rejected all claims, but shifted its rejection to anticipation under Section 102 over the Aventail Connect v3.1/v2.6 Administrator's Guide (hereinafter "Aventail").  *See* Ex. 8 (Dec. 7, 2010 Office Action).  Although the USPTO did not reassert its indefiniteness rejection, it made no express statement that VirnetX's amendment and remarks were sufficient to overcome that rejection.  To counter the new prior-art rejection, VirnetX attempted to substantively argue around Aventail, claiming that Aventail failed to disclose "secure names," "secure name services," and "secure communication links."  According to VirnetX, Aventail disclosed only "conventional domain name services" and "domain names":

> Aventail fails to disclose "a secure name service" and a "secure name."  ***Aventail discloses conventional domain name services and domain names***.  Indeed, in reexamination of the '180 Patent, the Patent Office found that Aventail discloses a conventional "DNS server and the creation of a secure tunnel to a secure remote site," Reexamination Control No. 95/001,270, Action Closing Prosecution, June 16, 2010, Exhibit B, at 6-7.  Aventail does not disclose a non-conventional system.  *Id.*  In contrast to Aventail, paragraphs [0318] --- [0320] of the present application distinguish the claimed invention from conventional systems.

*See* Ex. 9 at 6 (June 7, 2011 Response to Office Action).  On July 18, 2011, the Patent Office issued a Notice of Allowance, allowing the then-pending claims in the '416 application without providing any reason for allowance.  *See* Ex. 10 (July 18, 2011 Notice of Allowance).

## STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

Whether the terms "secure name," "unsecured name," and "secure name service" used in the claims of the '181 patent are insolubly ambiguous and therefore render those claims indefinite.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      VirnetX asserts claims 1, 2, 5-9, 14-15, 17-20, 22, and 24-29 of the '181 patent against Apple in this action.

2.     The specification of the '181 patent does not contain the terms "secure name," "unsecured name," or "secure name service."

3.     "Secure name," "unsecured name," and "secure name service" are coined terms with no recognized or generally accepted meaning to one of ordinary skill in the art.

## LEGAL STANDARD

Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material if it bears on the outcome of the proceedings; and an issue of fact is genuine only "if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In analyzing a motion for summary judgment, the Court must draw all inferences in favor of the non-moving party. *Celotex*, 477 U.S. at 323.

An analysis of whether the claims meet the requirement of 35 U.S.C. § 112 ¶ 2 necessarily begins with an attempt at claim construction.  "It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quotation omitted).  This stems from the requirement that a patentee "define precisely what his invention is" and the Supreme Court's admonition that it "is unjust to the public, as well as an evasion of the law, to construe [a claim] in a manner different from the plain import of its terms." *Phillips*, 415 F.3d at 1312 (quoting *White v. Dunbar*, 119 U.S. 47 (1886)); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995) ("[I]t is only fair (and statutorily required)

that competitors be able to ascertain to a reasonable degree the scope of the patentee's right to exclude.").

"Indefiniteness under 35 U.S.C. § 112 ¶ 2 is an issue of claim construction and a question of law." *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1331 (Fed. Cir. 2009). Beyond the statutory presumption of validity, the USPTO's findings in granting an application are not entitled to any deference by the District Court when determining indefiniteness. *See Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1356-57 (Fed. Cir. 2013). A term which is "not amenable to construction" and "insolubly ambiguous" is indefinite. *See Datamize, LLC v. Plumtree Software, Inc.,* 417 F. 3d 1342, 1347 (Fed. Cir. 2005). 35 U.S.C. § 112 ¶ 2 requires that a patent specification conclude "with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." Indefiniteness is established "where an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008). Importantly, "[e]ven if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." *Id.* at 1251. The claims are indefinite if they are not "sufficiently precise to permit a potential competitor to determine whether or not he is infringing." *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993).

This inquiry therefore requires an analysis of what the claims mean. If the court determines that a claim is insolubly ambiguous and not amenable to construction, the claim is invalid as indefinite under 35 U.S.C. § 112 ¶ 2. *Honeywell Int'l, Inc. v. Int'l Trade Comm'n,* 341 F.3d 1332, 1338 (Fed. Cir. 2003). In *Honeywell*, the claim construction dispute focused on the

method of measuring one claimed feature—the "melting point elevation." *Honeywell*, 341 F.3d at 1335.  The Federal Circuit found the claims insolubly ambiguous and hence indefinite, because "the claims, the written description, and the prosecution history fail[ed] to give [the court], as interpreter of the claim term, any guidance as to what one of ordinary skill in the art would interpret the claim to require." *Id.* at 1340.

## ARGUMENT

The terms "secure name," "unsecured name," and "secure name service" are coined phrases that have no recognized or generally accepted meaning to one of ordinary skill in the art. *See* Kelly Decl. at ¶¶ 26, 33, 42; *see also* VirnetX's Opp. Ltr. Br., Dkt. No. 131 Ex. A, at 4.  As such, the terms' potential meaning must be found in the intrinsic record.  *See Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1303 (Fed. Cir. 2004).  But as explained below, here the intrinsic record lacks guidance as to how one of ordinary skill would construe these terms.  This Court should find these terms insolubly ambiguous and, for that reason, invalid as indefinite.

**I.**     **"Secure Name" and "Unsecured Name" Are Insolubly Ambiguous and Therefore Indefinite.**

The terms "secure name" and "unsecured name" appear ***only*** in the claims of the '181 patent.  The claims do not define the terms, and "secure name" and "unsecured name" ***do not appear anywhere in the specification*** of the '181 patent.  Indeed, the terms "secure name" and "unsecured name" were not part of the original filing of the application that became the '181 patent.  Rather, the terms were added by an amendment filed December 8, 2009, more than ten years after the patent's earliest possible filing date.

During prosecution, the USPTO recognized the ambiguity of "secure name" and rejected claims that used that term as being indefinite:  "In claim 24, it is unclear what kind of 'secure name' that the applicants are talking about (i.e., is it a secure domain name?)." *See* Ex. 6 at 2.  In

9

responding to the indefiniteness rejection, rather than attempt to ***define*** the term, VirnetX simply

gave two ***examples*** of what it considered to be "secure names":

> The Applicant responds to the rejection of claim 24 as follows. First, the
> Applicant submits that a "secure name" is a name associated with a network
> address of a first device.  The name can be registered such that a second device
> can obtain the network address associated with the first device from a secure
> name registry and send a message to the first device.  The first device can then
> send a secure message to the second device.  The claimed "secure name"
> includes, but is not limited to, a secure domain name.  ***For example, a "secure***
> ***name" can be a secure non-standard domain name, such as a secure***
> ***nonstandard top-level domain name (e.g., .scom) or a telephone number.***

*See* Ex. 7 at 9 (emphasis added).  Even if the two examples that VirnetX offered for "secure

name" were viable, the record still provides no objective measure for a person of ordinary skill in

the art to consider in determining whether something qualifies as a "secure name."  *See*

*Halliburton*, 514 F. 3d at 1251.  VirnetX expressly argued that the term "includes, ***but is not***

***limited to***" the two examples provided, *i.e.*, the term "secure name" should be considered

unrestrained by the examples.  Its response to the USPTO's rejection of the claims over Aventail

is similarly telling.  Even faced with an allegedly anticipatory reference, VirnetX failed to

provide a definition of "secure name" and "secure name service," instead choosing to emphasize

examples of what the terms purportedly did ***not*** cover:  "Aventail fails to disclose 'a secure name

service' and a 'secure name.'  ***Aventail discloses conventional domain name services and***

***domain names***."  Ex. 9 at 6.  As a consequence, the patentee left the term without boundaries to

consider when determining what other than the two specifically cited examples would also be

"secure names," thus rendering the term indefinite.  *See Acacia Media Techs. Corp. v. New*

*Destiny Internet Grp.*, 405 F. Supp. 2d 1127, 1134 (N.D. Cal. 2005) ("If a patentee uses a coined

technical term as an element of a claim and fails to clearly define the term elsewhere in the

specification or prosecution history, the meaning of the term is left to speculation and subjective

judgment. A patent claim, which includes as an element a term, the meaning of which is left to speculation and subjective judgment, is indefinite.").

As noted above, the specification does not use or define the term "secure name" or otherwise assist in resolving the vagueness and ambiguity concerning the boundaries of the term. The specification does disclose and use the terms "***domain name***" and "***secure domain name***," however, which are terms previously construed by this Court. *See, e.g.*, Ex. 1 at 50:9-16, 50:19-22, 50:60-67, 52:25-27, Fig. 33. Moreover, "domain name" is a term familiar to persons of skill in the art. But as already shown, the patentee explicitly stated that a "secure domain name" is just one ***non-limiting*** example of a "secure name."

The '181 patent is a continuation of another VirnetX patent, U.S. Patent No. 7,188,180, which contains a virtually identical specification. *Compare* Ex. 1 *with* Ex. 11 ('180 patent). Unlike the claims of the '181 patent, however, the claims of the '180 patent use the terms "secure ***domain*** name" and "secure ***domain*** name service"—terms that are discussed throughout the patent specification. As explained above, during prosecution of the '181 patent, the patentee replaced the terms disclosed terms "secure domain name" and "secure domain name service" with the coined terms "secure name" and "secure name service." *See* Ex. 7. VirnetX's decision to untether those terms from the "domain names" described in the specification renders them insolubly ambiguous. And as dependent claim 3 of the '181 patent further specifies that the "secure name" in claim 2 be a "secure domain name," the construction of the term "secure name" must encompass something more than a "secure domain name." Because the disclosure in the '181 patent specification is limited solely to a "secure domain name" and "secure domain name service," however, the specification does not provide any guidance for a person of ordinary skill in the art to determine whether something is a "secure name."

The term "unsecured name" suffers a similar infirmity and compounds the ambiguity present with "secure name."  "Unsecured name" is another coined term neither described in the specification nor discussed in the prosecution history of the '181 patent.  As such, the term "unsecured name" is also not amenable to construction.

VirnetX's proposed constructions highlight the inherent vagueness in these terms. Presumably, a name that is not "secure" is unsecured.  In other words, one of ordinary skill in the art would expect that the terms "secure name" and "unsecured name" would be mutually exclusive.  *See* Kelly Decl. at ¶ 28. VirnetX's proposed constructions for these terms, however, reject that intuitive understanding.  Those constructions do not preclude a name from being both "secure" and "unsecured" at the same time, which is nonsensical:

| VirnetX's Proposed Constructions | |
|---|---|
| **"secure name"** | **"unsecured name"** |
| An authenticated name that can be resolved by a secure name service and can be used for establishing a secure communication link | A name that can be resolved by a conventional name service |

*See* Dkt. No. 136 at 18-19.  If an unsecured name can be "secure" under the '181 patent, the word "secure" has no meaning.  *See Skyhook Wireless, Inc. v. Google, Inc.*, C.A. No. 10–11571–RWZ, 2014 WL 898595 at *3-4 (D. Mass. Mar. 6, 2014) ("But if a non-estimated property can be 'estimated' according to the language of the patent, the word 'estimated' has no meaning.  It is therefore superfluous.").

VirnetX is exploiting the terms' vagueness to maintain its infringement claims here. Despite the terms' grammatical difference, and the claims' reference to the terms as separate limitations, VirnetX's arbitrary constructions allow it to allege that the ***same*** feature is both a "secure" and "unsecured name."  Indeed, VirnetX relies on this ambiguity in its contentions:

The Apple FaceTime software resides in the flash storage of an Apple device, such as an iPhone, (a "non-transitory machine-readable medium") comprising instructions for a method of communicating with an Apple device, such as an iPhone, ("a first device associated with a secure name and an unsecured name") which is associated with a FaceTime ID (a phone number and/or AppleID registered with FaceTime) and a phone number registered with a cellular network carrier (e.g., AT&T). ***Even in the case where the secure name and unsecure name is the same phone number, it is registered in different name services and used in different ways.***

*See, e.g.*, Ex. 12, Attachment A-2, at 2 (VirnetX's P.R. 3-1 Disclosure) (emphasis added).  The lack of any guidance in the intrinsic record as to the terms "secure name" or "unsecured name"—terms that have no generally recognized meaning in the art—is fatal to validity.

Moreover, VirnetX's constructions themselves rely on other coined terms that do not have recognized or accepted meanings to persons of ordinary skill in the art and are not disclosed in the intrinsic record.  For example, the phrase "authenticated name" and "conventional name service" do not appear in the claims, the specification, or the file history of the '181 patent.  And as noted below, VirnetX's proposed constructions are circular and therefore lack a defined scope.  VirnetX contends that a "secure name" is a name that can be resolved by a "secure name service" and that a "secure name service" is something that can resolve "secure names."  This roundabout does not provide any meaningful guidance in understanding the scope of the claims.

Accordingly, the claims of the '181 patent are invalid as indefinite under 35 U.S.C. § 112 ¶ 2 because a person of ordinary skill in the art would not be able to understand the claims' scope in light of "secure name."  Further, independent claims 1 and 26, and all the claims dependent therefrom, are invalid as indefinite under 35 U.S.C. § 112 ¶ 2 because a person of ordinary skill in the art could not understand the claims' scope in light of "unsecured name."

## II.     "Secure Name Service" Is Insolubly Ambiguous and Therefore Indefinite.

Like "secure name" and "unsecured name," the term "secure name service" appears only in the claims of the '181 patent.  The claims do not define the term, and "secure name service"

does not appear anywhere in the specification of the '181 patent.  The term "secure name service" was not part of the original filing of the application that became the '181 patent.  Rather, the term was added by an amendment filed October 8, 2010, more than ten years after VirnetX's earliest possible filing date.

During the prosecution of the '181 patent, the Patent Office rejected claims as being indefinite based on their use of the term "name service":

> In claim 2, at line 3, it is unclear from where a message is sent. It is unclear what kind of "name service" that the applicants are talking about (i.e., is it a secure domain name service? or is it a domain name service?) It is unclear what kind of an address that the applicants are talking about (i.e., is it an address of a secure computer network?). At line 5, it is unclear where a message is received.

*See* Ex. 6 at 2.  In response, the patentee replaced the term "name service" with "secure name service" and offered the following explanation for the term:

> Second, the Applicant amended "name service" to read "secure name service." This secure name service is a service for resolving secure names into network addresses. This secure name service offers functionality that cannot be accomplished by a standard domain name service.

*See* Ex. 7 at 8.  As discussed above, VirnetX's attempt to ascribe meaning to the coined term "secure name service" during the prosecution of the '181 patent is circular and unhelpful because it relies on "secure name," another coined term that does not have a recognized or accepted meaning to persons of ordinary skill in the art.  Further, the explanation purports to define the term "secure name service" by what it is not—a standard domain name service—as opposed to what it is.  Yet the ***only*** "secure" service described in the specification is a "secure domain name service."  Here, nothing in the intrinsic record "clearly distinguish[es] what is claimed from what went before in the art and clearly circumscribe[s] what is foreclosed from future enterprise." *Datamize,* 417 F.3d at 1347; *see also Interval Licensing, LLC v. AOL, Inc.*, No. C10-1385 MJP, 2013 WL 792791 at *3 (W.D. Wash. Feb. 28, 2013) (holding a patent's claims indefinite where "[t]he intrinsic record provides no basis for a person of ordinary skill in the art to determine

14

whether" an accused feature meets the disputed claim limitation.).  Presumably, the term "secure name service" possesses a scope greater than "secure domain name service." *Compare* Ex. 1 at cl. 2 *with* Ex. 11 at cl. 1. But with no assistance provided by the intrinsic record, no way exists to determine that scope.

Indeed, VirnetX implicitly concedes that the terms "secure name" and "secure name service" are insolubly ambiguous through its inability to propose constructions for the terms besides those that are circular and tautological:

| VirnetX's Proposed Constructions | |
| --- | --- |
| **"secure name"** | **"secure name service"** |
| *An authenticated name that can be resolved by a secure name service* and can be used for establishing a secure communication link | *Lookup service that returns a network address for a requested secure name* and facilitates establishing a secure communication link based on a secure name |

*See* Dkt. No. 136 at 16-19.  In VirnetX's paradigm, a "secure name" is that which can be resolved by a "secure name service" and a "secure name service" is that which resolves "secure names."  These constructions define nothing, but rather leave the true meaning of the terms to "speculation and subjective judgment." *Acacia Media*, 405 F. Supp. 2d at 1134. As a result, independent claims 2 and 28 and the asserted claims depending from claim 2 are indefinite under 35 U.S.C. § 112 ¶ 2 because a person of ordinary skill in the art would not be able to understand the scope of the claims in light of the term "secure name service."

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court grant summary judgment that claims 1, 2, 5-9, 14-15, 17-20, 22, and 24-29 of the '181 patent are invalid as indefinite.

Dated:  April 18, 2014                         Respectfully submitted,


                                        By: */s/ Robert A. Appleby*_____
                                            Gregory S. Arovas
                                            greg.arovas@kirkland.com
                                            Robert A. Appleby
                                            robert.appleby@kirkland.com
                                            Jeanne M. Heffernan
                                            jeanne.heffernan@kirkland.com
                                            Joseph A. Loy
                                            joseph.loy@kirkland.com
                                            Akshay S. Deoras
                                            akshay.deoras@kirkland.com
                                            KIRKLAND & ELLIS LLP
                                            601 Lexington Avenue
                                            New York, New York 10022
                                            Telephone:  (212) 446-4800
                                            Facsimile: (212) 446-4900

                                            Danny L. Williams
                                            State Bar No. 21518050
                                            danny@wmalaw.com
                                            Drew Kim
                                            Texas Bar No. 24007482
                                            dkim@wmalaw.com
                                            WILLIAMS, MORGAN & AMERSON, P.C.
                                            10333 Richmond, Suite 1100
                                            Houston, Texas 77042
                                            Telephone:  (713) 934-7000
                                            Facsimile: (713) 934-7011

                                            Michael E. Jones
                                            Texas Bar No. 10969400
                                            mikejones@potterminton.com
                                            Allen F. Gardner
                                            Texas Bar No. 24043679
                                            allengardner@potterminton.com
                                            POTTER MINTON
                                            A Professional Corporation
                                            110 N. College Avenue, Suite 500
                                            Tyler, Texas 75702
                                            Telephone: (903) 597-8311
                                            Facsimile: (903) 593-0846

                                            *Attorneys for Apple Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on this the 18th day of April 2014.

*/s/ Wendy K. Adams*_____
Wendy K. Adams