**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **VIRNETX INC., and** | **§** | |
| **SCIENCE APPLICATIONS** | **§** | |
| **INTERNATIONAL CORPORATION,** | **§** | |
| | **§** | |
| **Plaintiffs,** | **§** | **Civil Action Nos. 6:12-CV-563-LED** |
| | **§** | **6:12-CV-855-LED** |
| **v.** | **§** | |
| | **§** | |
| **APPLE INC.,** | **§** | **JURY TRIAL DEMANDED** |
| | **§** | |
| **Defendant.** | **§** | |

**PLAINTIFF VIRNETX INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON APPLE'S INVALIDITY COUNTERCLAIMS ASSERTED IN THE PRIOR LITIGATION**

## TABLE OF CONTENTS

**I. INTRODUCTION** ..... 1

**II. APPLE CANNOT CHALLENGE THE VALIDITY OF THE TRIED CLAIMS** ..... 1

A. Collateral Estoppel Bars Apple's Attempt to Re-Litigate the Validity of Tried Claims ..... 1

B. Res Judicata Bars Apple's Attempt to Attack This Court's Judgments by Arguing That the Tried Claims Are Invalid ..... 3

**III. COLLATERAL ESTOPPEL BARS APPLE FROM RE-LITIGATING ITS DERIVATION AND NON-JOINDER DEFENSES** ..... 4

**IV. RES JUDICATA BARS APPLE FROM RE-LITIGATING ITS INVALIDITY THEORIES REGARDING ANY PREVIOUSLY ASSERTED CLAIM** ..... 6

A. Apple's Invalidity Counterclaims In This Case Are the Same as Apple's Invalidity Counterclaims in the Prior Case. ..... 7

B. This Court was a "Court of Competent Jurisdiction" Over Apple's Untried Invalidity Counterclaims ..... 9

**V. NO ORDER OR AGREEMENT AVOIDS THE FINAL JUDGMENT'S PRECLUSIVE EFFECT** ..... 11

A. The iMessage Stipulation Did Not Preserve Apple's Invalidity Counterclaims. ..... 11

B. The Court's February 26, 2013 Order Did Not Narrow the Judgment's Effect ..... 12

**VI. CONCLUSION** ..... 13

## TABLE OF AUTHORITIES

### Cases

*Acumed LLC v. Stryker Corp.*,
525 F.3d 1319 (Fed. Cir. 2008) .......... 9

*Allen v. McCurry*,
449 U.S. 90 (1980) .......... 6

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
352 F. Supp. 2d 1119 (C.D. Cal. 2005) .......... 3

*Aspex Eyewear Inc. v. Marchon Eyewear, Inc.*,
672 F.3d 1335 (Fed. Cir. 2012) .......... 7

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*,
713 F.3d 1377 (Fed. Cir. 2013) .......... 2

*Astrazeneca UK Ltd. v. Watson Labs, Inc.*,
905 F. Supp. 2d 596 (D. Del. 2012) .......... 3

*Ballard v. First Nat'l Bank of Birmingham*,
259 F.2d 681 (5th Cir. 1958) .......... 5

*Cardinal Chem. Co v. Morton International, Inc.*,
506 U.S. 83 (1993) .......... 7, 8, 9, 10, 11

*Comer v. Murphy Oil USA, Inc.*,
718 F.3d 460 (5th Cir. 2013) .......... 2

*Copeland v. Merrill Lynch & Co.*,
47 F.3d 1415 (5th Cir. 1995) .......... 6

*Crossroads Sys. (Texas), Inc. v. Dot Hill Sys. Corp.*,
2006 WL 1544621 (W.D. Tex. May 31, 2006) .......... 3

*Foster v. Hallco Mfg. Co.*,
947 F.2d 469 (Fed. Cir. 1991) .......... 7, 8

*Hallco Mfg. Co. v. Foster*,
256 F.2d 1290 (Fed. Cir. 2001) .......... 8

*In re Pancake*,
106 F.3d 1242 (5th Cir. 1997) .......... 5

*In re West Texas Marketing Corp.*,

12 F.3d 497 (5th Cir. 1994) .......... 13

*Jet, Inc. v. Sewage Aeration Sys.*,
223 F.3d 1360 (Fed. 2000) .......... 9

*MedImmune v. Genentech*,
549 U.S. 118 (2007) .......... 11

*Meritor Transmission Corp. v. Eaton Corp.*,
2006 WL 3951711 (W.D.N.C. Sept. 26, 2006), *aff'd* 258 F. App'x 320 (Fed. Cir. 2007) .......... 3

*Nasalok Coating Corp. v. Nylok Corp.*,
522 F.3d 1320 (Fed. Cir. 2008) .......... 4

*Next Level Commc'ns LP v. DSC Commc'ns Corp.*,
179 F.3d 244 (5th Cir. 1999) .......... 2

*Petro-Hunt, LLC v. United States*,
365 F.3d 385 (5th Cir. 2004) .......... 6

*Reese v. Verizon Cal., Inc.*,
498 F. App'x 980 (Fed. Cir. 2012) .......... 13

*Russell v. Place*,
94 U.S. 606 (1877) .......... 12

*Streck, Inc. v. Research & Diag. Sys.*,
665 F.3d 1269 (Fed. Cir. 2012) .......... 8

*Westwood Chem., Inc. v. United States*,
525 F.2d 1367 (Ct. Cl. 1975) .......... 5

*Yachts Am. v. United States*,
673 F.2d 356 (Ct. Cl. 1982) .......... 13

*Yamaha Corp. of Am. v. United States*,
861 F.2d 245 (D.C. Cir. 1992) .......... 3

*Zip Dee Corp. v. Dometic Corp.*,
905 F. Supp. 535 (N.D. Ill. 1995) .......... 1

**Statutes**

28 U.S.C. § 1367 .......... 8

**Other Authorities**

RESTATEMENT (SECOND) OF JUDGMENTS § 22(2)(b) .......................................................................... 4

RESTATEMENT (SECOND) OF JUDGMENTS § 27.............................................................................. 3, 5

Wright, Miller & Cooper § 4414 ................................................................................................ 4

## I. INTRODUCTION

A final judgment is a powerful tool with well-established effect. Via the doctrines of collateral estoppel and res judicata, final judgments protect prevailing parties (e.g., VirnetX) from perpetual attacks by defeated adversaries (e.g., Apple) based on already-decided issues. More importantly, final judgments preserve the resources of the entire judicial system from the burden of limitless piecemeal litigation—forcing parties to pursue their entire cause of action at once or forego any relief not sought. These age-old doctrines are intended to finally grant VirnetX and this Court repose from Apple's endless invalidity challenges. Accordingly, VirnetX requests that the Court grant VirnetX's motion for partial summary judgment, dismissing Apple's invalidity counterclaims[1] regarding any Previously Asserted Claim,[2] and barring Apple from pursuing its derivation and non-joinder defenses against any patent claim.

## II. APPLE CANNOT CHALLENGE THE VALIDITY OF THE TRIED CLAIMS.

### A. Collateral Estoppel Bars Apple's Attempt to Re-Litigate the Validity of Tried Claims.

Collateral estoppel, or issue preclusion, bars re-litigation of already-decided issues. Specifically, the doctrine bars litigation of any issue in a subsequent proceeding when: (1) the issue is identical in both actions; (2) the issue was actually litigated in the prior action; and (3)

---

[1] For purposes of the instant motion, VirnetX uses the phrase "invalidity counterclaim" to refer to a counterclaim seeking a declaration that a particular patent claim is invalid. A particular prior art reference is only an argument in support of such a counterclaim. *See, e.g.*, *Zip Dee Corp. v. Dometic Corp.*, 905 F. Supp. 535, 537 (N.D. Ill. 1995) (rejecting narrow view of collateral estoppel by explicitly distinguishing between legal issue of invalidity and arguments raised in support of that issue).

[2] In the 417 case, VirnetX asserted that Apple infringed claims 1, 3, 7–10, and 12 of the '135 Patent, claims 1, 2, 5, 6, 14–23, 26–28, 33–37, 50–52, and 57–60 of the '504 Patent, claims 1, 6, 7, 12, and 13 of the '151 Patent; claims 1, 2, 5, 6, 14–23, 26–28, 33–47, 50–52, and 57–60 of the '211 Patent (collectively, the "Previously Asserted Claims"). Apple pursued counterclaims seeking declarations that all of these patent claims were invalid.

the issue was necessary to the judgment in the prior action. *Next Level Commc'ns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 250 (5th Cir. 1999). It applies even if the final judgment is on appeal. *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013). "A full and fair opportunity to litigate is the touchstone of any preclusion analysis." *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1382 (Fed. Cir. 2013).

At trial, Apple asserted that the following claims were invalid: claims 1, 3, 7, and 8 of U.S. Patent No. 6,502,135; claims 1 and 13 of U.S. Patent No. 7,490,151; claims 1, 2, 5, 16, 21, and 27 of U.S. Patent No. 7,418,504; and claims 36, 37, 47, and 51 of U.S. Patent No. 7,921,211 (collectively, "the Tried Claims"). The jury specifically rejected Apple's arguments and the Court entered judgment on the jury's verdict. Final Judgment [Dk. 742], *VirnetX v. Cisco Sys., Inc.*, No. 6:10-cv-417 (E.D. Tex. ) (hereinafter "*VirnetX v. Cisco*"). In this case, Apple is again asserting all of the Tried Claims are invalid. This identical issue—whether the Tried Claims are invalid—was actually litigated, actually rejected, and necessary to the Final Judgment in the 417 case. As such, collateral estoppel bars its re-litigation.

In a naked attempt to avoid the effects of collateral estoppel, Apple attempts to confuse the Court by improperly redefining the scope of the issue to which collateral estoppel applies, arguing that collateral estoppel applies only to the "issue" of whether the Tried Claims are anticipated by the Kiuchi reference. *See* Dkt. No. 134, Ex. A at 2-3. This is legally incorrect. "[T]he overwhelming weight of authority suggests that the 'issue' that is to be given issue-preclusive effect . . . in the patent context is the ultimate determination on patent validity itself, not the sub-issues or the individual pieces of evidence and arguments that may have been

necessary to support the validity determination." *Crossroads Sys. (Texas), Inc. v. Dot Hill Sys. Corp.*, A-03-CA-754-SS, 2006 WL 1544621, at *5 (W.D. Tex. May 31, 2006).[3]

Therefore, Apple is wrong to argue that the facts underlying the issue must be identical in each action in order for collateral estoppel to apply. RESTATEMENT (SECOND) OF JUDGMENTS § 27 ("When an issue of fact ***or*** law is actually litigated . . . ." (emphasis added)). It is a fundamental policy underlying preclusion doctrines that the enormous resources spent in preparing for and conducting a jury trial should resolve entire disputed legal issues, and not be wasted only on determining whether the certain arguments, theories, or sub-set of facts chosen by Apple's lawyers are persuasive. *See Yamaha Corp. of Am. v. United States*, 861 F.2d 245, 254 (D.C. Cir. 1992) ("[O]nce an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it." (emphasis in original)). Apple's attempts to narrowly confine the issue should thus be rejected. Apple—having had a full and fair opportunity to actually litigate the issue of the invalidity of the Tried Claims, and having lost—is precluded from arguing that any of the Tried Claims are invalid.

**B. Res Judicata Bars Apple's Attempt to Attack This Court's Judgments by Arguing That the Tried Claims Are Invalid.**

Apple's invalidity counterclaims regarding the Tried Claims were actually litigated and rejected in the prior litigation, and are thus barred by collateral estoppel. Nonetheless, even if Apple is correct (and it is not) that the issue for collateral estoppel purposes is merely whether

[3] *See also Astrazeneca UK Ltd. v. Watson Labs, Inc.*, 905 F. Supp. 2d 596, 602-03 (D. Del. 2012) (rejecting Defendants' argument that collateral estoppel bars only individual invalidity theories pursued); *Meritor Transmission Corp. v. Eaton Corp.*, 1:04CV178, 2006 WL 3951711, at *5 (W.D.N.C. Sept. 26, 2006) ("[T]his Court . . . finds the validity of a patent is a single issue to be decided which is attacked using numerous arguments, such as obviousness, anticipation, public use, and actual reduction to practice."), *aff'd* 258 F. App'x 320 (Fed. Cir. 2007); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 352 F. Supp. 2d 1119, 1126 (C.D. Cal. 2005) ("[V]alidity, in the patent context, is a single issue for purposes of collateral estoppel.").

the Tried Claims are anticipated by the Kiuchi reference, res judicata prevents Apple from challenging the validity of the Tried Claims for any other reason.

> When a former defendant attempts to undermine a previous judgment by asserting in a subsequent action a claim or defense that was or could have been asserted in the earlier case, the rules of [res judicata] will apply. . . . The clearest need for these rules is shown by cases that have involved a variety of direct attacks on the original judgment based on defenses or claims that could have been advanced in the first action.

*Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1328 (Fed. Cir. 2008) (citing and quoting RESTATEMENT (SECOND) OF JUDGMENTS § 22(2)(b); Wright, Miller & Cooper § 4414). Here, the Court entered its Final Judgment. Apple's current invalidity counterclaims directly attack the validity of this Court's Final Judgment and "would effectively undo the relief granted." *Id.* Under *Nasalok*, Apple cannot bring these counterclaims in this case. *See id.* at 1330 (holding res judicata bars former defendant from bringing cancellation proceeding to attack trademark infringement judgment).

## III. COLLATERAL ESTOPPEL BARS APPLE FROM RE-LITIGATING ITS DERIVATION AND NON-JOINDER DEFENSES.

Contrary to Apple's express, unambiguous statement to this Court that it "respects and will abide by" this Court's decision rejecting its derivation and non-joinder defenses, Apple is asserting this identical already-rejected theory in this case. Apple's Reply Emer. Mot. Dismiss at 2 [Dk. 565 in *VirnetX v. Cisco*]. Because these theories are identical, were actually litigated, and were necessary to the Court's Final Judgment, collateral estoppel precludes these theories.

Importantly, this preclusion applies to all of Apple's current counterclaims, whether or not regarding patent claims previously tried or asserted. Collateral estoppel bars not only ultimate legal issues (such as invalidity), but also precludes re-litigation of factual questions necessarily determined when deciding those ultimate issues:

> It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become [collateral estoppel] and may not again be litigated in a subsequent action between the same parties . . . regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, or seek different relief."

*Ballard v. First Nat'l Bank of Birmingham*, 259 F.2d 681, 684 (5th Cir. 1958). By granting summary judgment on Apple's derivation and non-joinder defenses, the Court necessarily determined that Apple could not raise even an issue of fact supporting their theory that Dr. Henning Schulzrinne contributed to the conception of VirnetX's claimed technology. Dkt. No. 555 at 11 in *VirnetX v. Cisco*. Thus, for collateral estoppel purposes, the Court necessarily determined the fact that Schulzrinne did not contribute to VirnetX's technology. Because Apple's current non-joinder and derivation invalidity contentions rely on facts identical to those in the last case (and only those facts), these issues were actually litigated.[4] The Court rejected them, and Apple is now entirely precluded from pursuing these theories against any of VirnetX's patents. *Westwood Chem., Inc. v. United States*, 525 F.2d 1367, 1371 (Ct. Cl. 1975) ("It is the issues litigated, not the specific claims around which the issues were framed, that is determinative."); RESTATEMENT (SECOND) OF JUDGMENTS § 27 ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to that judgment, the determination is conclusive in a subsequent action between the parties, *whether on the same or a different claim*.").

[4] Apple is wrong to contend that the issues of derivation and non-joinder were not actually litigated in the last action. Dkt. No. 134, Ex. A at 3. Even if Apple were correct that the Court's summary judgment grant in the last case was partially procedural, this does not prevent that order from having a preclusive effect in this case. *See In re Pancake*, 106 F.3d 1242, 1244 (5th Cir. 1997) (holding default judgment, entered as result of a stricken answer, had preclusive effect).

## IV. RES JUDICATA BARS APPLE FROM RE-LITIGATING ITS INVALIDITY THEORIES REGARDING ANY PREVIOUSLY ASSERTED CLAIM.

Traditional res judicata bars a second suit on all causes of action that either have been litigated or should have been litigated in an earlier suit. *Petro-Hunt, LLC v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). Res judicata is intended to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Res judicata bars a cause of action in subsequent litigation when: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same cause of action was involved in both actions. *Id.* The doctrine is a non-discretionary substantive right. *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1423 (5th Cir. 1995) (distinguishing collateral estoppel from res judicata, in part, because collateral estoppel has discretionary attributes). The facts of this case meet these elements, and Apple does not even contest elements one or three. Because Apple's invalidity counterclaims in this case regarding the Previously Asserted Claims are the "same claim[s] or cause[s] of action" as those in the 417 case, and because the Court had jurisdiction to enter the Final Judgment in the 417 case, Apple is now precluded from asserting its invalidity counterclaims[5] against the Previously Asserted Claims. *See id.*

---

[5] Apple's invalidity counterclaims were live at the time of judgment in the 417 case, and were thus rejected. Apple pleaded separate causes of action of invalidity of every Previously Asserted Claim. Apple specifically asked this Court to dismiss these counterclaims twice. First, Apple tried to dismiss the entirety of its invalidity defense, strategically preferring to forum shop at the PTO. Apple's Emerg. Mot. Dismiss [Dk. 557 in *VirnetX v. Cisco*]. Apple then attempted to dismiss its untried counterclaims, this time for lack of jurisdiction. Apple's Mot. Dismiss [Dk. 589]. The Court correctly denied both requests. Dk. 566, 742. Accordingly, at the time of judgment, each of these counterclaims was an active part of the case and denied by the Court's Final Judgment. Dk. 742 ("All relief not specifically granted herein is denied.").

### A. Apple's Invalidity Counterclaims In This Case Are the Same as Apple's Invalidity Counterclaims in the Prior Case.

As to the Previously Asserted Claims, Apple does not dispute that its current counterclaims are identical to those asserted in the 417 case. Rather, Apple argues that these identical counterclaims are not the "same claim" because invalidity is merely a defense to a "cause of action" for infringement and the transactional facts giving rise to that "cause of action" depend on the structure of the device accused of infringement. Dkt. No. 134, Ex. A at 4. This is wrong. "A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement." *Cardinal Chem. Co v. Morton International, Inc*., 506 U.S. 83, 96 (1993). Although an allegation of infringement enables a party to challenge the validity of a patent, an allegation of invalidity depends on an entirely separate set of facts from a claim of infringement. Invalidity depends on comparing patent claims to prior art—it has nothing to do with the operation of accused products. And because the structure of the device is wholly irrelevant to the invalidity determination, the facts giving rise to Apple's invalidity counterclaims in this case are identical to those same facts in the 417 case. "[R]es judicata requires a party to assert all claims that the party could have asserted in the earlier lawsuit." *See Aspex Eyewear Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1342 (Fed. Cir. 2012). Apple voluntarily chose to abandon certain invalidity references, and res judicata now bars Apple from asserting those references against the Previously Asserted Claims.

The Court should reject the apparent reasoning in *Foster v. Hallco Mfg. Co.*, 947 F.2d 469 (Fed. Cir. 1991) (hereinafter "*Foster I*"). There, in dicta,[6] the Federal Circuit seemed to reason that an invalidity counterclaim was merely a defense to an allegation of infringement and new claims of infringement thus preserved invalidity counterclaims from the effect of a

[6] The *Foster I* court eventually remanded based on an ambiguity in a consent decree, a holding that would apply equally to both collateral estoppel and res judicata. *Foster*, 947 F.2d at 482.

judgment on the merits. Importantly, however, this rationale has never been applied in a situation, like this one, where a Court has entered a post-trial final judgment. The rare application of *Foster I* has instead been confined to consent decrees and settlements, situations which raise "intent-of-the-parties" considerations not relevant here. *See*, *e.g.*, *Hallco Mfg. Co., Inc. v. Foster*, 256 F.2d 1290, 1297–98 (Fed. Cir. 2001) (hereinafter "*Foster II*"). And the *Foster I* court itself indicated that this was a highly relevant distinction, affirmatively stating: "[W]e are aware of no court which has even suggested the [policy in favor of promoting validity challenges] abrogates the application of res judicata principles based on a judgment imposed ***by a court after full litigation***." 947 F.2d at 476 (emphasis added). The Court thus need not follow *Foster*'s inapposite reasoning in this case.

Moreover, *Foster I's* apparent conclusion that invalidity is only a defense to the "cause of action" of infringement is also irreconcilable with decades of other hornbook patent doctrine. *Cardinal Chem.*, 506 U.S. at 96 ("A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement"). For example, courts routinely engage in a "case and controversy" inquiry concerning the viability of counterclaims asserting invalidity of non-asserted patent claims. *See, e.g.*, *Streck, Inc. v. Research & Diag. Sys.*, 665 F.3d 1269 (Fed. Cir. 2012). The mere engagement in this inquiry presupposes that such counterclaims give rise to a separate cause of action, since a "case and controversy" under Article III cannot be smaller than a cause of action. *See, e.g.*, 28 U.S.C. § 1367 (providing that courts have supplemental jurisdiction over causes "so related" that "*they form part of the same case or controversy under Article III of the United States Constitution*" (emphasis added)); *see also Cardinal Chem.*, 506 U.S. at 98 (1993) (holding that Federal Circuit had authority to review declaratory judgment regarding invalidity despite affirming a finding of non-infringement

because Court had jurisdiction over *entire controversy*). Since the Federal Circuit has held that the infringement "cause of action" is the entire accused device, a Court could never lose "case and controversy" jurisdiction over no longer-asserted patent claims or co-dependent invalidity counterclaims—the Court would retain jurisdiction over the entire device. *See Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008). The fact that courts have cause to question their jurisdictional authority in such a scenario requires that invalidity counterclaims be separate causes. A counterclaim thus presents a separate cause of action than a party's cause of action for infringement and the preclusion-relevant "transactional facts" surrounding those counterclaims are independent from the facts related to the device. *Cf. Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1364 (Fed. 2000) (holding trademark cancellation proceeding does not arise from trademark infringement cause of action because the two contain an "array of differences in transactional facts").

The Court should reject Apple's proposed rule, which ignores fundamental principles of jurisprudence and allows every infringer to perpetually challenge invalidity merely by asserting that the products now accused of infringement are not essentially the same as the last case. Apple's invalidity counterclaims have not changed since the 417 case. Because Apple had a full and fair opportunity to assert its invalidity counterclaims, res judicata bars Apple from reasserting its invalidity counterclaims against the Previously Asserted Claims in this case.

**B. This Court was a "Court of Competent Jurisdiction" Over Apple's Untried Invalidity Counterclaims.**

As previously noted, this Court twice rejected Apple's attempts to dismiss its invalidity counterclaims and denied these counterclaims on the merits at Final Judgment. The Court had authority to make this ruling. As VirnetX has previously briefed, there was a live case and controversy regarding Apple's untried invalidity counterclaims at the time of trial and judgment.

Apple knew that VirnetX would continue to litigate its patent after the initial trial regarding next generation devices. Apple's Mot. Dismiss [Dk. 559 in *VirnetX v. Cisco*] at 2 ("There is a high likelihood that there will be additional litigation between the parties over these patents."). Apple knew that it had already released some of these devices, that it would continue to sell these devices in the future, and that these sales would likely give rise to new infringement causes of action. Apple also knew that VirnetX intended to accuse a different functionality, iMessage, and the parties entered a stipulation essentially promising this imminent iMessage suit. Stipulation [Dk. 551 in *VirnetX v. Cisco*]. Indeed, by the date of this Court's Final Judgment, the current lawsuit had been on file for months.

VirnetX narrowing its case to assert only the Tried Claims did not deprive this Court of jurisdiction over Apple's broader invalidity counterclaims. The Court unquestionably had jurisdiction over Apple's invalidity counterclaims regarding those eventually-dropped patent claims when VirnetX was asserting those patent claims. And once jurisdiction has been established, it was Apple, not VirnetX, who had the burden to prove lack of jurisdiction:

> [W]hile the initial burden of establishing the trial court's jurisdiction rests on the party invoking that jurisdiction, once that burden has been met courts are entitled to presume . . . that jurisdiction continues. If a party . . . suggests that the controversy has . . . become moot, ***that party bears the burden of coming forward with the subsequent events that have produced that alleged result.***

*Cardinal Chem. Co.,* 506 U.S. at 98 (emphasis added). Thus, Apple's choice to forego pursuing its counterclaims of invalidity against the non-Tried Claims did not automatically divest the Court of jurisdiction over those counterclaims. Apple had the burden to establish that the Court lacked jurisdiction. This Court denied Apple's only attempt to do so.[7] Thus, because the Court

[7] *See* Dkt. No. 742 at 2 ("Apple's Motion to Dismiss for Lack of Jurisdiction (Dkt. No. 589) . . . [is] DENIED."). Importantly, Apple ***never even argued*** that there was no "substantial controversy," "under all the circumstances" between parties who had adverse legal interests "of sufficient immediacy and reality to warrant the issue of a declaratory judgment" under

was a court of competent jurisdiction when it rejected Apple's invalidity counterclaims in the Final Judgment, res judicata bars Apple from now reasserting its same invalidity counterclaims as to the Previously Asserted Claims.

## V. NO ORDER OR AGREEMENT AVOIDS THE FINAL JUDGMENT'S PRECLUSIVE EFFECT.

### A. The iMessage Stipulation Did Not Preserve Apple's Invalidity Counterclaims.

The iMessage stipulation in the 417 case did not preserve Apple's rights to pursue its now-precluded invalidity defenses. *See* Dkt. No. 134, Ex. A at 4-5; Dkt. No. 140-1 at 3. That stipulation provides that "nothing in this agreement affects any other rights that Apple has to assert its affirmative defenses and counterclaims with respect to iMessage or any VirnetX patent that may be asserted against Apple." This language states only that that agreement itself has no effect on Apple's defenses and counterclaims in subsequent litigation. It does not preserve or guarantee Apple's right to assert invalidity.

Apple's argument that the stipulation "specifically permits Apple to raise any defense or counterclaim against VirnetX's patents" is thus patently false. Dkt. No. 134, Ex. A at 4. In fact, during the negotiation of the stipulation between the parties, Apple attempted to insert the following underlined language that would have made clear that the parties agreed that Apple would be able to reassert dropped invalidity references (as it attempts to do now): "Nothing in this agreement affects any other rights that Apple has to assert its affirmative defenses and counterclaims with respect to iMessage or any VirnetX patent that may be asserted against

---

*MedImmune v. Genentech*, 549 U.S. 118 (2007). *See* Apple's Mot. Dismiss [Dk. 589]. In light of the overwhelming evidence regarding imminent future litigation—and the existence of such litigation at the time of Final Judgment—this omission is not surprising. Apple's only (incorrect) argument in support of its motion was that dropping patent claims automatically divests the Court of jurisdiction over counterclaims asserting invalidity of those dropped patent claims. *Id.* Under *Cardinal Chemical*, this is wrong, and Apple's requested relief was correctly denied.

Apple, including defenses and counterclaims that the Patents are invalid and/or unenforceable on any grounds not presented to the jury in the Case." *See* Ex. A. VirnetX rejected the underlined language, establishing that VirnetX did not agree that Apple expressly reserved its ability to reassert dropped invalidity counterclaims or theories in support of them. Apple conceded to VirnetX's position, as the Stipulation was filed without this language.

Moreover, the entire reason the parties were forced to enter the stipulation was Apple's own refusal to provide relevant iMessage discovery. VirnetX would not have entered an agreement which gave Apple a unilateral benefit from its own dilatory acts. The parties intended only to make clear that iMessage was not part of the 417 case—not to preserve other claims and defenses that were otherwise precluded. *See* Stipulation [Dk. 551 in *VirnetX v. Cisco*] ("VirnetX and Apple have agreed that iMessage is not an accused feature in this case."). Thus, Apple's invalidity counterclaims are either precluded or not—the agreement does not affect that result.

**B. The Court's February 26, 2013 Order Did Not Narrow the Judgment's Effect.**

Finally, Apple argues that the Court's refusal to grant affirmative judgment against untried counterclaims is akin to explicit preservation of these counterclaims. This is incorrect. This Court never dismissed Apple's invalidity counterclaims, and it denied all relief not granted in Final Judgment. Dkt. No. 742 at 2. Additionally, the Court explicitly rejected Apple's two motions to dismiss these counterclaims from the case. As such, Apple's invalidity counterclaims were live and rejected by the Final Judgment.

By moving for Entry of Judgment on untried counterclaims, VirnetX was merely seeking to preempt this current dispute because explicit language in a judgment is *evidence* of the matters decided within its scope. *See Russell v. Place*, 94 U.S. 606, 608 (1877) (holding that extrinsic evidence is admissible when judgment is unclear regarding matters necessarily determined). But

a judgment operates independently from its language, and the lack of explicit language in a judgment does not alter its subsequent preclusive effect. *In re West Texas Marketing Corp.*, 12 F.3d 497, 501 (5th Cir. 1994) (applying res judicata where formal final judgment was never even entered); *Yachts Am. v. United States*, 673 F.2d 356, 361 (Ct. Cl. 1982) (applying collateral estoppel despite lack of explicit provision in judgment), *cited with approval by Reese v. Verizon Cal., Inc.*, 498 F. App'x 980, 983 (Fed. Cir. 2012). In other words, the Court's refusal to enter a different judgment does not alter or narrow the effect of the judgment it did.

As discussed above, Apple actually litigated whether the Tried Claims were invalid and whether Schulzrinne contributed to VirnetX's claimed technology. This theory and these counterclaims were specifically rejected. Moreover, Apple had a full and fair opportunity to assert in the 417 case every invalidity counterclaim it is now asserting against the Previously Asserted Claims—the transactional facts underlying Apple's invalidity counterclaims have not changed. It voluntarily chose to abandon these counterclaims and is precluded from re-asserting them here.

## VI. CONCLUSION

For the reasons stated above, VirnetX respectfully requests that the Court grant its motion for partial summary judgment.

DATED: April 18, 2014.

Respectfully submitted,

**CALDWELL CASSADY CURRY P.C.**

*/s/ John Austin Curry*

Bradley W. Caldwell
Texas State Bar No. 24040630
E-mail: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
E-mail: jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
E-mail: acurry@caldwellcc.com
Daniel R. Pearson
Texas State Bar No. 24070398
E-mail: dpearson@caldwellcc.com
Hamad M. Hamad
Texas State Bar No. 24061268
E-mail: hhamad@caldwellcc.com
Justin T. Nemunaitis
Texas State Bar No. 24065815
E-mail: jnemunaitis@caldwellcc.com
Chris S. Stewart
Texas State Bar No. 24079399
E-mail: cstewart@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
E-mail: jsummers@caldwellcc.com
Jason S. McManis
Texas State Bar No. 24088032
E-mail: jmcmanis@caldwellcc.com
Warren J. McCarty, III
Illinois State Bar No. 6313452
E-mail: wmccarty@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Robert M. Parker
Texas State Bar No. 15498000
Email: rmparker@pbatyler.com
R. Christopher Bunt
Texas State Bar No. 00787165

Email: rcbunt@pbatyler.com
Charles Ainsworth
Texas State Bar No. 00783521
Email: charley@pbatyler.com
**PARKER, BUNT & AINSWORTH, P.C.**
100 East Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Telecopier: (903) 533-9687

**ATTORNEYS FOR PLAINTIFF VIRNETX INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service on this 18th day of April, 2014. Local Rule CV-5(a)(3)(A).

*/s/ John Austin Curry*
John Austin Curry