# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| VIRNETX INC. AND SCIENCE APPLICATIONS INTERNATIONAL CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC..,<br><br>Defendant. | Civil Action No. 6:12-cv-855<br>LEAD CONSOLIDATED CASE<br><br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT APPLE'S WRITTEN OBJECTION TO CLOSING ARGUMENT BY VIRNETX AND MOTION FOR MISTRIAL

During closing argument, counsel for VirnetX made arguments outside the evidence, blatantly misrepresenting the testimony of Apple witnesses, which served to confuse, mislead, and inflame the jury, to render a verdict not based on the record. Apple objected to such statements immediately following closing and now further provides its written objection to those statements. Apple further moves for a mistrial, because the improper argument outside the record has deprived Apple of the opportunity for a fair trial.

It is well-settled that a "trial judge may order a new trial if he suspects that the jury verdict reflects confusion." *Nissho–Iwai Co., Ltd. v. Occidental Crude Sales*, 729 F.2d 1530, 1538 (5th Cir.1984). The Fifth Circuit considers three factors—simplicity of the issues, the extent to which the evidence is in dispute, and the absence of any pernicious or undesirable occurrence at trial—in determining whether a mistrial or new trial is warranted. *See Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930-931 (5th Cir. 1982). Grounds for a mistrial include improper attorney argument. "The role of the attorney in closing argument is 'to assist the jury

1

in analyzing, evaluating and applying the evidence. It is not for the purpose of permitting counsel to 'testify' as an 'expert witness.' The assistance permitted includes counsel's right to state his contention as to the conclusions that the jury should draw from the evidence." *United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978). "To the extent an attorney's closing argument ranges beyond these boundaries it is improper. Except to the extent he bases any opinion on the evidence in the case, he may not express his personal opinion on the merits of the case or the credibility of witnesses." *US v. Garza*, 608 F.2d 659 (1979) (collecting cases); *see US v. Gallardo-Trapero*, 185 F.3d 307 (1999). "Furthermore, he may not suggest that evidence which was not presented at trial provides additional grounds for finding [against] defendant." *Id*.

Here, VirnetX's closing was replete with misrepresentations of the record, assertions about the credibility of witnesses not grounded in the record, and similar misstatements. For example, VirnetX's counsel grossly misrepresented the testimony of Mr. Simon Patience in asserting that he testified that he received an opinion of counsel in April 2013, before Mr. Lee Van Pelt had even been retained. At closing, VirnetX's counsel said: "But apparently, Mr. Patience didn't get the memo on when Mr. Van Pelt got hired, because he told you that he got the opinion in April of 2013. A few months before Mr. Van Pelt said he even gave an oral opinion. Mr. Patience took the stand and tells you, oh, I got it in April of 2013." 2/2/2016 Tr. at 195:7-11. That is emphatically not what he testified. Mr. Patience testified his "best guess was since the release [of iOS7] was in September, [he] probably heard of his opinion in May or June," "[o]r July. I'm -- that's a possibility, too." 1/28/2016 Trial Tr. at 150:2-5. As for April 2013, all Mr. Patience testified was he was aware Apple sought to retain opinion counsel around that "time frame":

> **25** Q. (By Mr. Caldwell) You've told us that you think you
> **1** first learned that Mr. Van Pelt had been hired probably

2

> **2** around the 6.1 time frame. Do you recall that testimony
> **3** from a few days ago?
> **4** A. Yes, that's definitely possible.
> **5** Q. And the -- well, I mean, would you like me to show
> **6** it to you or --
> **7** A. No, no, no. I meant the time frame was possible.
> **8** Q. So that would have meant that you first learned
> **9** that Mr. Van Pelt would have been hired probably around
> **10** April of 2013?
> **11** A. I did not know it was Mr. Van Pelt.
> **12** Q. But you -- you were aware that -- whether you knew
> **13** his name or not, it's your view that you knew that
> **14** counsel had been retained -- outside counsel had been
> **15** retained probably around April of 2013, correct?
> **16** A. Somewhere around there.

1/28/2016 Trial Tr. at 209:25-210:16. But the misrepresentations about Mr. Patience's testimony did not stop there. In an effort to inflame the jury, and exaggerate the importance of its technology to Apple, VirnetX's counsel asserted that, with respect to VPN On Demand, "[w]e heard from Mr. Patience, who at the time was right at the top. He had a boss, and that boss's boss was Tim Cook. And he admits that they decided to keep on infringing. Mr. Patience even said that decision came from over his head." 2/2/2016 Trial Tr. at 177:21-24. Not true. Mr. Patience testified that he had a boss, but that for "all intents and purposes" *he* was the person with "the ultimate authority for VPN On Demand":

> **2** Q. And by comparison, you were the boss, the one with
> **3** the ultimate authority for VPN On Demand, correct?
> **4** A. Yes, to all intents and purposes.
> **5** Q. So in terms of decisions, go/no-go on a release,
> **6** the buck stopped with you when you were at Apple,
> **7** correct?
> **8** A. Not a hundred percent. I have a boss also, and he
> **9** could override me. And there are other mechanisms in the
> **10** company that would, perhaps, influence that decision.
> **11** But I certainly had a voice.
> **12** Q. And how --
> **13** A. A significant voice.
> **14** Q. I'm sorry. I sincerely did not mean to speak over
> **15** you.

3

> 16 How from far from the tiptop of Apple were you
> 17 just before you retired?
> 18 A. So my boss was a senior vice-president, and above
> 19 that was the CEO.
> 20 Q. There was -- and your boss is Craig --
> 21 A. Craig Federighi.
> 22 Q. Craig Federighi?
> 23 A. Uh-huh.
> 24 Q. And he reported directly to Tim Cook?
> 25 A. Yeah.
> Page 130
> 1 Q. Correct?
> 2 And those guys could override you?
> 3 A. Yes.

VirnetX's misrepresentations regarding Mr. Patience testimony were severely misleading, not based on the record, and are grounds for a new trial.

Likewise, in discussing damages, VirnetX's counsel offered an opinion that the jury should consider the IP telephony licenses, rather than the Microsoft license because they were running royalty licenses and the Microsoft license was a lump-sum. *See* 2/2/2016 Trial Tr. at 262:19-23 ("Something that's kind of curious about it, both Mr. Bakewell, when he's on that stand, and Mr. Weinstein, *they both told you the license that Apple and VirnetX would negotiate when they're sitting on opposite ends of that table would be a running royalty.*"). But neither Mr. Weinstein nor Mr. Bakewell said a running royalty should be awarded. 2/1/16 at 251:25-252:23 (Bakewell testifying that license should be lump sum); 1/27/16 Trial Tr. at 307:15-309:13 (Weinstein testifying that Apple should make payment of $532 million to $740 million without mentioning a running royalty). Mr. Larsen also testified that VirnetX is seeking "a one-time payment" not a running royalty. 1/27/16 Trial Tr. at 143:24-144:6. VirnetX's counsel's opinion was not grounded in the record and is grounds for a mistrial.

VirnetX's counsel also offered improper argument about damages, contrary to this Court's orders, and Federal Circuit law. First, counsel improperly tried to link Dr. Wecker's

survey to damages. *See* 2/2/2016 Trial Tr. at 189:24-190:9 ("Let me talk to you about the survey. This was the results of Dr. Wecker's survey where he asked purchasers of the iPhone if the iPhone didn't include these features, would they have purchased it -- or this is the iPad, I'm sorry. Same ones for iPhone and iPod. And the results of his survey were 12 percent of folks would not have. Think about that. You think a company as sophisticated as Apple is willing to pay $1.20 to $1.67 per phone to make sure that 12 out of every 100 phone sales or iPad sales don't walk out the door. This technology -- this technology is valuable."). This statement violates the Court's ruling that *sustained Apple's objection to suggesting damages based on Dr. Wecker's survey*. Specifically, VirnetX attempted to introduce the concept through Mr. Weinstein that, based on Dr. Wecker's survey, there would be a certain amount of profits lost to Apple if FaceTime and iMessage was removed. Apple objected to this testimony because it was based on a damages theory that VirnetX withdrew, and the Court sustained Apple's objection. *See* 1/27/2016 Trial Tr. at 289:6-295:6.

VirnetX's counsel further misrepresented Apple's conduct after the prior verdict, and effectively asked the jury to punish Apple, rather than decide the case on the merits. First he misrepresented Mr. Patience's testimony and Apple's conduct stating: "But I think this testimony from Mr. Patience is telling of Apple's attitude towards VirnetX's intellectual property. He didn't think they had any obligation to make a change even after they'd been found liable for infringement. Keep on infringing. No change to the VPN." 2/2/2016 Trial Tr. at 192:6-10. Yet again, that is not what Mr. Patience said; rather, he testified that Apple began working "immediately" after the prior jury verdict to redesign VPN On Demand. 1/28/2016 Trial Tr. at 136:4-12. VirnetX's counsel then stated: "The question you've got to ask yourself is whether or not you're going to reward them for that infringement and give them the Microsoft deal. Because

5

they say at most we should pay what Microsoft paid. That's what Mr. Bakewell told you. At most." 2/2/2016 Trial Tr. at 195:20-25. VirnetX's suggestion, of course is that the jury should punish Apple. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 34 (Fed. Cir. 2012) ("It is beyond debate that juries may not award litigation costs or punish infringers."). VirnetX's counsel repeatedly used the word "punish," saying it would "punish VirnetX" to award Apple's proposed royalty. 2/2/2016 Trial Tr. at 250:12-25. Setting aside the inappropriateness of that, the message to the jury was clear, Apple should not be rewarded, but based on its purported "attitude towards VirnetX's intellectual property," *Apple* should be punished.

And in asking the jury to award a royalty in its proposed $1.20 range, VirnetX's counsel attempted to skew the damages horizon for the jury, comparing to "the cost of buying a song on your iPhone." 2/2/2016 Trial Tr. at 252:19-20. Damages, however, must be tied "to the claimed invention's footprint in the market place." VirnetX's technology has no relation to the price of a song, and suggesting that such a royalty is simply low enough invites an improper comparison. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317-18 (Fed. Cir. 2011)

For the reasons above, Apple objects to VirnetX's closing argument as outside the record, inconsistent with the law, and served to confuse, mislead, and inflame the jury. Apple requests a mistrial.

Dated: February 3, 2016                                    Respectfully submitted,

By:   /s/ Robert A. Appleby with permission by Michael E. Jones
Gregory S. Arovas
greg.arovas@kirkland.com
Robert A. Appleby
robert.appleby@kirkland.com
Jeanne M. Heffernan
jeanne.heffernan@kirkland.com
Joseph A. Loy
joseph.loy@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

F. Christopher Mizzo
chris.mizzo@kirkland.com
John C. O'Quinn
john.oquinn@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Akshay S. Deoras
akshay.deoras@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael E. Jones
Texas Bar No. 10969400
mikejones@potterminton.com
Allen F. Gardner
Texas Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College Avenue, Suite 500
Tyler, Texas 75702

        Telephone: (903) 597-8311
        Facsimile: (903) 593-0846

        *Attorneys for Apple Inc.*

## **CERTIFICATE OF SERVICE**

 The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 3, 2016.

        */s/ Michael E. Jones*

## **CERTIFICATE OF CONFERENCE**

 The undersigned hereby certifies that this motion is being filed pursuant to the Judge's oral instruction during trial and Plaintiff is opposed to such relief.

        */s/ Michael E. Jones*