IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| VIRNETX INC. | § § | No. 6:12-cv-00855-RWS |
| Plaintiff, | § § | (Lead Consolidated Case) |
| v. | § § | JURY TRIAL DEMANDED |
| APPLE INC. | § § | |
| Defendant. | § § § | |

## JURY INSTRUCTIONS

**1.   Introduction**

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and argument of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in understanding the evidence and the parties' contentions.

**1.1   General Instruction**

A verdict form has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.

Answer each question on the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. With respect to each question asked, your answers and your verdict must be unanimous.

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We met because often during a trial something comes up that does not involve the jury. You should not speculate on what was discussed during such times.

### 1.2 Considering Witness Testimony

You the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence. By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made

a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

In deciding whether to accept or rely upon the testimony of any witness, you may also consider any bias of the witness.

**1.3   How to Examine the Evidence**

Certain testimony in this case has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weight and otherwise considered by you insofar as possible the same as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence such as testimony of an eyewitness. The other is indirect or circumstantial evidence the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from all the evidence, both direct and circumstantial.

The parties have stipulated, or agreed, to some facts in this case. When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard the fact as proved. Additionally, a prior jury determined that Apple infringed certain claims of two patents via its VPN on Demand feature in iOS 3 through iOS 6, which was from 2009 to 2013. Throughout these instructions, I will refer to this feature as Apple's "Original Version of VPN on Demand." Just like stipulated facts, that determination is binding, and you must regard it as proved. However, all other infringement allegations are contested and you must determine whether those claims are infringed. You may not assume or infer that the other patents and claims are infringed simply because of this prior finding of infringement.

### 1.4   Objections to Evidence

Attorneys representing clients in Courts such as this one have an obligation in the course of trial to assert objections when they believe testimony or evidence is being offered that is contrary to the rules of evidence. The essence of a fair trial is that it be conducted pursuant to the rules of evidence and that your verdict be based only on legally admissible evidence.

So, you should not be influenced by the objection or by the Court's ruling on it. If the objection is sustained, then ignore the question. If the objection is overruled, then you may treat the answer to that question just as you would treat the answer to any other question.

**1.5    Expert Witnesses**

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field (he or she is called an expert witness) is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether the witness's testimony is believable or not, whether it is supported by the evidence and whether to rely upon it. In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness.

**2.    Contentions of the Parties**

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on these issues.

As I have mentioned, a previous jury determined that the Original Version of VPN on Demand has been found to infringe claims 1, 3, 7, and 8 of the '135 patent and claim 13 of the '151 patent. The parties dispute the remaining allegations of infringement. And VirnetX makes the following additional allegations of infringement.

VirnetX contends that Apple makes, uses, sells, or offers to sell in the United States, or imports into the United States, certain features that infringe certain claims of the '135 patent, the '151 patent, the '504 patent, and the '211 patent. Specifically,

(1) VirnetX alleges that Apple's FaceTime system in Apple's iOS 4 through 6 and OS X 10.7 through 10.8, which is from 2010 to 2013, infringes claims 1, 2, 5, and 27 of the

'504 patent and claims 36, 47, and 51 of '211 patent. Throughout these instructions, I will refer to this feature as Apple's "Original Version of the FaceTime system."

(2) VirnetX also alleges that Apple's FaceTime system in its iOS 7 and 8 and OS X 10.9 and 10.10, from 2013 to the present, infringes claims 1, 2, 5, and 27 of the '504 patent and claims 36, 47, and 51 of the '211 patent. Throughout these instructions, I will refer to this feature as Apple's "2013 Version of the FaceTime system."

(3) VirnetX also alleges that Apple's VPN on Demand in iOS 7 and iOS 8, which is from 2013 to the present, infringes claims 1 and 7 of the '135 patent and claim 13 of the '151 patent. Throughout these instructions, I will refer to this feature as Apple's "2013 Version of VPN on Demand."

(4) Finally, VirnetX alleges that all versions of Apple's iMessage feature infringes claims 1, 2, 5, and 27 of the '504 patent and claims 36, 47, and 51 of the '211 patent.

In addition to contending that Apple directly infringes these claims, VirnetX also contends that Apple is indirectly infringing these claims of the patents-in-suit because Apple allegedly induces infringement by its customers, or end-users. VirnetX also contends that certain of Apple's alleged infringement has been willful. VirnetX is seeking damages for Apple's alleged infringement.

In response to VirnetX's infringement contentions, Apple contends that it has not infringed these claims, either directly or indirectly. Because Apple contends that it does not infringe the claims of the patents in suit, Apple contends that VirnetX is not entitled to damages for infringement of these claims. The one exception is that VirnetX and Apple agree that VirnetX is entitled to a reasonable royalty for the claims previously found to be infringed by the

Original Version of VPN on Demand. The parties, however, disagree about the measure of damages associated with the Original Version of VPN on Demand.

### 3. Burdens of Proof

In any legal action, facts must be proved by a required amount of evidence, known as the "burden of proof." The burden of proof in this case is on VirnetX.

VirnetX has the burden of proving infringement and damages by a preponderance of the evidence. Preponderance of the evidence means the evidence that persuades you that a claim is more likely true than not true. If the proof establishes that all parts of one of VirnetX's infringement claims are more likely true than not true, then you should find for VirnetX as to that claim.

VirnetX has the burden of proving willfulness by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If the proof establishes in your mind a firm belief or conviction, then the standard has been met.

In determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

### 4. The Patent Claims

Before you can decide many of the issues in this case, you will need to understand the role of the patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent

covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers. You will first need to understand what the Asserted Claims cover in order to decide whether or not there is infringement.

The law says that it is the Court's role to define the terms of the claims and it is your role to apply these definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms at issue in this case, I have provided to you the definitions of these terms in your juror notebook. You must accept the definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including infringement. The claim language I have not interpreted for you in your notebook is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art.

### 4.1   How a Patent Claim Defines What It Covers

I will now explain how a patent claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or system satisfies each of these requirements, then it is covered by the claim.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a feature, product, process, or system) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a feature, product,

process, or system where each of the claim elements or limitations is present in that feature, product, process, or system. Conversely, if the feature, product, process, or system meets only some, but not all, of the claim elements or limitations, then that feature, product, process, or system is not covered by the claim.

### 4.2 Independent and Dependent Claims

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, for example, claim 1 of the '504 patent is an independent claim. Other claims in the case are "dependent claims." A dependent claim refers to another claim and includes all the requirements or parts of the claims to which it refers. In this case, for example, claim 2 of the '504 patent depends from claim 1. In this way the claim "depends" on another claim. The dependent claim then adds its own, additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers. A feature, product or method that meets all of the requirements of both the dependent claim and the claims to which it refers is covered by that dependent claim.

### 4.3 Open-Ended or "Comprising" Claims

The beginning portion, or preamble, to some of the claims uses the word "comprising." "Comprising" and "comprises" mean "including but not limited to" or "containing but not limited to." Thus, if you decide that an accused feature includes all the requirements in that claim, the claim is infringed. This is true even if the accused instrumentality includes components in addition to those requirements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

### 5. Infringement – Generally

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.

You can have more than one patent governing an area of technology, although it may relate to different aspects of that technology. The mere fact that Apple has patents related to part of the technology of the accused features is not a defense to the fact that someone else may have a patent relating to another part of those features.

I will now instruct you as to the rules you must follow when deciding whether VirnetX has proven that Apple infringed the Asserted Claims.

### 5.1 Direct Infringement – Literal Infringement

If any person makes, uses, offers to sell, or sells in the United States or imports into the United States what is covered by the claims of a patent without the patent owner's permission, that person is said to literally infringe the patent. To determine literal infringement, you must compare the accused features or methods with the Asserted Claims, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if an accused feature, product, system, or method includes each and every element in that patent claim. If the accused feature, product, system, or method does not contain one or more of the elements recited in a claim, then that feature, product, system, or method does not literally infringe that claim. If you find that the accused feature, product, system, or method includes each element of the claim, then that

feature, product, system, or method infringes the claim even if such feature, product, system, or method contains additional elements that are not recited in the claims.

A person may literally infringe a patent even though in good faith the person believes that what it is doing is not an infringement of any patent and even if it did not know of the patent. Literal infringement does not require proof that the person copied a product or the patent.

You must consider each of the Asserted Claims individually. You must be certain to compare each accused feature, method, or system with each claim that such feature, method or system is alleged to infringe. Each accused feature, method or system should be compared to the limitations recited in the patent claims, not to any preferred or commercial embodiment of the claimed invention.

You must analyze each Asserted Claim separately. If you find that VirnetX has proved by a preponderance of the evidence that each and every limitation of that claim is present in the accused feature, method or system, then you must find that such feature, method or system infringes that claim.

## 5.2  Indirect Infringement – Active Inducement of Infringement

VirnetX alleges that Apple is also liable for indirect infringement by actively inducing others to directly infringe the Asserted Claims. As with direct infringement, you must determine whether there has been indirect infringement by active inducement on a claim-by-claim basis.

Although VirnetX need not prove that Apple has directly infringed to prove indirect infringement, VirnetX must prove that someone has directly infringed. If there is no direct infringement by anyone, Apple cannot have actively induced the infringement of the patent.

To show active inducement of infringement, VirnetX must prove by a preponderance of the evidence that Apple's customers, or end-users, have directly infringed the asserted claims

of the patents-in-suit, and that Apple has actively and knowingly aided and abetted that direct infringement. Apple is liable for active inducement of a claim only if:

1. Apple has taken action during the time the patent is in force which encourages acts by someone else;

2. the encouraged acts constitute direct infringement of that claim;

3. Apple (a) is aware of the patent, and knows that the encouraged acts constitute infringement of the patent; or (b) is willfully blind to the infringement of the patent. Willful blindness requires that Apple subjectively believed there was a high probability that the encouraged acts constituted infringement of the patent and Apple took deliberate actions to avoid learning of the infringement;

4. Apple has the intent to encourage infringement by someone else; and

5. the encouraged acts are actually carried out by someone else.

In order to prove active inducement, VirnetX must prove that each of the above requirements is met by a preponderance of the evidence, i.e., that it is more likely true than not that each of the above requirements has been met. If you find that Apple was aware of the patent, but believed that the acts it encouraged did not infringe that patent, Apple cannot be liable for active inducement of infringement.

In order to establish active inducement of infringement, it is not sufficient that Apple was aware of the act(s) that allegedly constitute the direct infringement. Rather, you must find that Apple specifically intended to cause the acts that constitute the direct infringement and must have known or was willfully blind that the action would cause the direct infringement. If you do not find that Apple meets these specific intent requirements by a preponderance of the evidence, then you must find that Apple has not actively induced the alleged infringement.

## 5.3 Willful Infringement

If you have decided that Apple infringed at least one of the claims for which VirnetX has alleged willful infringement, you must go on and address the additional issue of whether

Apple's infringement of that claim was willful. To prove willfulness, VirnetX must show by clear and convincing evidence that Apple knew of the patent and that Apple acted recklessly.

VirnetX alleges that certain of Apple's alleged infringement has also been willful. VirnetX alleges that Apple has willfully infringed claims 1 and 7 of the '135 patent and claim 13 of the '151 patent by committing acts of infringement with its 2013 Version of VPN on Demand. VirnetX also alleges that Apple has willfully infringed claims 1, 2, 5, and 27 of the '504 patent and claims 36, 47, and 51 of the '211 patent via its Original FaceTime system after the prior verdict, November 6, 2012, until April 2013 and via the 2013 Version of the FaceTime system.

To prove that Apple acted recklessly, VirnetX must persuade you by clear and convincing evidence that Apple actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. This depends on the state of mind of Apple. To determine whether Apple had this state of mind, consider all the facts that may include, but are not limited to:

1. Whether or not Apple acted in accordance with the standards of commerce for its industry;

2. Whether or not there is a reasonable basis to believe that Apple did not infringe or had a reasonable defense to infringement;

3. Whether or not Apple made a good-faith effort to avoid infringing the patent, for example, whether Apple attempted to design around the patent; and

4. Whether Apple's reliance on an opinion of counsel as a defense to VirnetX's allegations of willful infringement was reasonable.

None of these factors is determinative, and this list of factors is not an exhaustive list of things you should consider. Your determination of willfulness should incorporate the totality of the circumstances based on the evidence presented at trial.

### 6. Damages – Generally

I will now instruct you on damages. You must determine the amount of damages to which VirnetX is entitled for Apple's previously determined infringement via Apple's Original Version of VPN on Demand. In addition, if you find that Apple has infringed any of the Asserted Claims via its 2013 Version of VPN on Demand, its Original Version of the FaceTime system, its 2013 Version of the FaceTime system, or iMessage, you must also determine the amount of money damages to which VirnetX is entitled for that additional infringement.

The amount of damages must be adequate to compensate VirnetX for the infringement. At the same time, your damages determination must not include additional sums to punish Apple or to set an example. You may award compensatory damages only for the loss that VirnetX proves was more likely than not caused by Apple's infringement.

VirnetX seeks damages in the form of a reasonable royalty. Generally, a reasonable royalty is the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the patent owner should expect to receive.

### 6.1 Damages – Burden of Proof

Where the parties dispute a matter concerning damages, it is VirnetX's burden to prove the amount of damages by a preponderance of the evidence. VirnetX must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision. However, VirnetX is not entitled to damages that are remote or speculative. In other words, you should award only those damages that VirnetX establishes that it more likely than not suffered.

## 6.2 Damages – Reasonable Royalty

A reasonable royalty is the amount of money a willing patent owner and a willing prospective licensee would have agreed upon at the time the infringement began for a license to make, use, or sell the invention. It is the royalty that would have resulted from an arms-length negotiation between a willing licensor and a willing licensee. This is known as the hypothetical negotiation. Unlike in a real world negotiation, all parties to the hypothetical negotiation are presumed to believe that the patent is infringed and valid.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent owner and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

The parties agree that the date of the hypothetical negotiation between Apple and VirnetX would have been in June 2009.

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when Apple first infringed that patent and the facts that existed at that time. However, evidence of things that happened after the infringement first began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations. Your focus should be on what the parties' expectations would have been had they entered negotiations for royalties in June 2009.

### 6.3 Reasonable Royalty Factors

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that the patent owner and the alleged infringer would consider in setting the amount the alleged infringer should pay.

I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty. As used in this list, the term "patented invention" refers to the patent claims for which the prior jury previously found infringement, i.e., the Original Version of VPN on Demand, and any additional patent claims you determine are infringed.

- The royalties received by the patentee for licensing of the patents-in-suit, proving or tending to prove an established royalty.

- Royalties paid for other patents comparable to the patents-in-suit.

- The nature and scope of the license, as exclusive or nonexclusive; or as restricted or nonrestricted in terms of territory, or with respect to the parties to whom the product may be sold.

- Whether or not the licensor had an established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

- The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory and the same line of business, or whether they are inventor and promoter.

- Whether being able to use the patented invention helps in making sales of other products or services.

- The duration of the patent and the term of the license.

- The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

- The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

- The extent of the licensee's use of the patented invention and any evidence probative of that use.

- The portion of the profits that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by the licensee.

- Expert opinions as to what would be a reasonable royalty.

- The amount that a licensor and a licensee would have agreed upon if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which an accused infringer would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a patent owner if it would have been willing to create a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.

The framework which you should use in determining a reasonable royalty is a hypothetical negotiation between normally prudent business people.

In considering the evidence of a reasonable royalty, you are not required to accept one specific figure or another for the reasonable royalty. You are entitled to determine what you consider to be a reasonable royalty based upon your consideration of all of the evidence presented by the parties, whether that evidence is of a specific figure or range of figures.

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question, or for rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between VirnetX and Apple in order for you to consider it. However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between VirnetX and Apple when you make your reasonable royalty determination including, the type of technology licensed, whether the license contained a cross-license and/or similar patent

protections, whether the license contained any value related to a release of liability, the date when the license was entered, the financial or economic conditions of the parties at the time the parties entered into the license, the extent of use (if any) of any particular licensed patents, the number of patents involved in the license, whether or not the license covered foreign intellectual property rights, the extent to which litigation may have affected the license, and whether, contrary to the hypothetical negotiation, the licensee in the real world license, at the time of entering the license, believed that the patents were either not infringed or were invalid.

VirnetX has relied on license agreements in which royalties were based on a percentage of the entire price of the licensed end-products, but in determining a reasonable royalty, you must not rely on the overall price of Apple's accused products at issue in this case. Damages for patent infringement must be apportioned to reflect the value the invention contributes to the accused products or features and must not include value from the accused products or features that is not attributable to the patent.

## 7.     Instructions for Deliberations

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons, including corporations, and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits, which the Court has admitted into evidence. Select your

Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during trial. After you have reached your verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. Your notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.