IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | § | |
|---|---|---|
| **VIRNETX INC. AND SCIENCE APPLICATIONS INTERNATIONAL CORPORATION,** | § § § § § | |
| Plaintiffs, | § | CASE NO. 6:12-CV-855 |
| vs. | § § § | |
| **APPLE INC.,** | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION

On January 7, 2016, the Court heard oral argument on various motions. This document provides the written opinion of the Court's prior rulings on January 11, 2016. *See* Docket No. 362. This opinion addresses: (1) Defendant Apple Inc.'s ("Apple") denied Motion for Partial Summary Judgment of Noninfringement by FaceTime (Docket No. 315); (2) Plaintiff VirnetX Inc.'s ("VirnetX") granted-in-part and denied-in-part Motion for Partial Summary Judgment of No Invalidity on Dependent Claims of Previously Tried Claims (Docket No. 320); (3) VirnetX's granted Motion for Summary Judgment of No Inequitable Conduct (Docket No. 322); and (4) VirnetX's granted Motion to Strike Portions of the Opinion and Testimony of Mr. Christopher Bakewell (Docket No. 316).

1. **Apple's Motion for Partial Summary Judgment of Noninfringement by FaceTime (Docket No. 315)**

Summary judgment shall be rendered when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). An issue of material fact is genuine if the evidence could lead a reasonable jury

to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of fact exists, a court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In a summary judgment motion, Apple argued that the FaceTime feature does not infringe because it is not anonymous as required by the claim term "secure communication link." Docket No. 352 at 1; *see VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1319 (Fed. Cir. 2014) (construing "secure communication link" as "a direct communication link that provides data security and anonymity"). Apple first explained that, in the specifications of the patents asserted against the FaceTime feature, the preferred embodiment requires "anonymity" by describing a first layer of obfuscation for content and a second layer of obfuscation for source and destination Internet Protocol ("IP") addresses. Docket No. 352 at 1. Apple concluded that FaceTime is not anonymous because it does not conceal IP addresses as described in the patent specifications. Docket No. 315 at 1. Apple stated that VirnetX incorrectly interpreted "anonymity" as the inability to "correlate" a person or machine to an IP address, instead of as "concealment of source and designation IP addresses." Docket No. 352 at 5.

Apple effectively asked the Court to further construe a "secure communication link" as implementing a particular process of providing anonymity. *See* Docket No. 315 at 4–7. The particular examples of providing anonymity to a communication link disclosed in the patent specifications should not limit the claims. *See VirnetX*, 767 F.3d at 1319. Based on how the FaceTime feature operates, a jury determined what degree of anonymity is sufficient to infringe the claims. Therefore, a genuine issue of material fact existed as to whether the FaceTime feature satisfied the "anonymity" requirement of the asserted claims.

Apple further stated that Network Address Translations ("NATs"), which were relied on by VirnetX in one of its two "anonymity" theories, are not part of the FaceTime feature.[1] Docket No. 352 at 1–3. The only specific argument that Apple identified as support for NATs being distinct from the FaceTime feature is third party control. *Id.* at 1–2. Apple described a NAT as a "new device." *Id.* at 2. However, the asserted claims are not directed to a single device. *E.g.,* U.S. Patent No. 7,921,211 ("the '211 Patent") at claim 1 (claiming a system). In addition, Apple did not provide support of its position that the introduction of another component, which is not under Apple's control, negates infringement of the FaceTime feature. *See* Docket No. 352 at 2.

Apple next argued that NATs do not provide the necessary "anonymity" because private and public IP addresses are the same; however, Apple did not explain in what respects the IP addresses are the same. *Id.* at 3. Further, Apple did not claim that the IP addresses are identical, and a description of an IP address as public or private appears to provide some meaning as to how it operates. *See* Docket No. 336 at 4.

Apple also stated that NATs do not provide anonymity because a communication link contains a participant's private IP address before it interacts with a NAT. Docket No. 352 at 3–4. During this window before a communication reaches a NAT, the participant's private IP address is allegedly accessible by eavesdroppers. *Id.* VirnetX retorted that, when eavesdroppers intercept packets of an ongoing FaceTime call between participating devices located behind NATs (*i.e.*, after the packets reach the NATs), eavesdroppers cannot correlate a device to a participant. *See* Docket No. 336 at 4, n.1. A reasonable jury could have found that the IP address conversion performed by a NAT early in the communication's path is sufficient to establish anonymity.

---

[1] In addition, Apple disagreed with VirnetX's characterization of anonymous because it would encompass NAT technology that was invented before the asserted patents. Docket No. 352 at 4. This is an invalidity position, which is unrelated to noninfringement.

Apple also shed doubt on VirnetX's second basis for "anonymity" within the FaceTime feature—the call setup process establishing "anonymity" of a communication. Apple stated that any anonymity established during the call setup process is irrelevant because it is the secure communication link that must be anonymous. Docket No. 352 at 4–5. VirnetX responded that the call setup process creates a secure communication link for the remainder of the communication. *Id.* Drawing all inferences in the light most favorable to VirnetX, a reasonable jury could have found that the call setup process establishes anonymity.

Apple finally argued that the construction of "domain name service system" incorporates the Court's construction of "domain name service." Docket No. 365 at 54:24–59:13; *see also* Docket No. 369 (VirnetX filing an Emergency Motion to Clarify Under *O2 Micro*). Apple relied on previous Court proceedings in attempting to infer that the construction of a "domain name service system" was meant to include the construction of a "domain name service." However, the Court previously interpreted "domain name service" and "domain service system" as separate terms with different constructions. Case No. 6:10-cv-417 ("*Apple I*"), Docket No. 266 at 15, 20. These two separate terms generally appear in different contexts: the claim preamble versus the body of the claim. Docket No. 369 at 8–10; *e.g.,* '211 Patent at claims 1, 36. Accordingly, the original constructions of "domain name service system" and "domain name service" continue to apply.

Apple did not demonstrate the absence of a genuine issue of material fact as to whether the FaceTime feature infringed the asserted patents. Accordingly, the Court denied Apple's Motion for Partial Summary Judgment of Noninfringement by FaceTime (Docket No. 315). Docket No. 362.

## 2. VirnetX's Motion for Partial Summary Judgment of No Invalidity on Dependent Claims of Previously Tried Claims (Docket No. 320)

VirnetX filed a motion for partial summary judgment based upon the *Apple I* jury finding of no invalidity of the asserted claims. Docket No. 320. VirnetX argued that, because the independent claims in U.S. Patent No. 7,418,504 ("the '504 Patent") and the '211 Patent were found not invalid in *Apple I*, the five newly asserted claims that depend from the previously tried claims must also be not invalid. *Id.* at 4–6. VirnetX submitted that, if a claim is not invalid, a claim that depends from it also cannot be invalid because it is narrower in scope. *Id.* at 5–6. More specifically, VirnetX alleged that the five newly asserted dependent claims are not invalid under (1) anticipation; (2) obviousness; (3) derivation; or (4) nonjoinder. Docket No. 359 at 1.

The newly asserted dependent claims are not captured by issue preclusion, because "[e]ach claim of a patent . . . shall be presumed valid independently of the validity of other claims." *See* 35 U.S.C. § 282(a). Although issue preclusion does not dictate that the newly asserted dependent claims are not invalid as anticipated and obvious, the relationship between the scope of independent claims and that of dependent claims does.

A dependent claim further defines an independent claim. *See* 35 U.S.C. § 112(d); 37 C.F.R. § 1.75(c). In other words, the scope of subject matter captured by an independent claim is broader than a claim that depends from it. *See* 35 U.S.C. § 112(d); 37 C.F.R. § 1.75(c). In the context of anticipation, if a reference does not read on the limitations of an independent claim, it cannot read on the limitations of a dependent claim that includes additional requirements. *See Aspex Eyewear, Inc. v. Zenni Optical, Inc.*, 713 F.3d 1377, 1381 (Fed. Cir. 2013). This is also true of obviousness. *See id.* If an independent claim is nonobvious, then a claim that depends from it is also nonobvious. *See id.*

In contrast to anticipation and obviousness, invalidity based upon derivation from another and nonjoinder of all inventors is not similarly limited by the relationship between independent and dependent claims. If the inventive entity of an independent claim is accurate, a claim that depends from it may not have the same inventive entity. *See* 25 U.S.C. § 116(a). For instance, an inventor may contribute to a patent by conceiving a limitation that is only present in a dependent claim. *See id.* A particular limitation in a dependent claim could be derived from another or cause an inventor to be excluded from a patent, while the inventive entity may accurately reflect the inventors of an independent claim. *See id.*

Accordingly, this motion (Docket No. 320) was granted with respect to Apple's anticipation and obviousness defenses and denied as to its derivation and nonjoinder defenses. Docket No. 362.

### 3. Granting VirnetX's Motion for Summary Judgment of No Inequitable Conduct (Docket No. 322)

"Inequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988). "Intent and materiality are separate requirements." *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc). But-for materiality is required to establish inequitable conduct. *Id.* at 1291.

"When an applicant fails to disclose prior art to the [U.S. Patent and Trademark Office ("Patent Office")], that prior art is but-for material if the [Patent Office] would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* "Hence, in assessing the materiality of a withheld reference, a court must determine whether the [Patent Office] would have allowed the claim if it had been aware of the undisclosed reference." *Id.*

When examining the intent to deceive requirement, the alleged conduct must be "viewed in light of all the evidence, including evidence indicative of good faith." *Kingsdown*, 863 F.2d at 876. To demonstrate the intent requirement of inequitable conduct, "the single most reasonable inference able to be drawn from the evidence" must be a specific intent to deceive the Patent Office. *Therasense*, 649 F.3d at 1290. This standard applies at the summary judgment stage. *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 695 (E.D. Tex. 2014). Intent may be shown from indirect and circumstantial evidence. *Therasense*, 649 F.3d at 1290.

In its motion, VirnetX addressed a number of issues, including an explanation of why the single most reasonable inference is not that VirnetX's prosecuting attorney, Mr. Toby Kusmer, had an intent to deceive the Patent Office. Docket No. 322 at 7–8. VirnetX explained that there was no intent to deceive the Patent Office when Mr. Kusmer allegedly: (1) disclosed too much information to the Patent Office; (2) failed to disclose evidence from related patents in Case No. 6:07-cv-80 ("the *Microsoft* litigation") and reexamination proceedings initiated by Apple; and (3) made misleading statements during prosecution regarding the publication date of a prior art reference by Aventail ("the Aventail reference"). *Id.* at 7–21.

Apple responded by stating, among other things, that the intent requirement for inequitable conduct was well-supported by the evidence. Docket No. 339 at 20. Apple identified evidence that it believed supported inferring an intent to deceive the Patent Office. *Id.* at 20–21. Apple's alleged evidence was the following: (1) Mr. Kusmer incorrectly told the Patent Office that the publication date of the Aventail reference was not discussed during the *Microsoft* litigation; (2) Mr. Kusmer withheld testimony from the *Microsoft* litigation during prosecution of U.S. Patent Nos. 8,051,181 and 8,504,697 ("the '181 Patent" and "the '697 Patent," respectively); (3) Mr. Kusmer misled the Patent Office by inundating it with

approximately 132,500 pages of documents, which were listed on information disclosure statements; (4) Mr. Kusmer admitted he did not review all of the documents listed on the information disclosure statements before submitting them to the Patent Office; (5) Mr. Kusmer lulled the Patent Office into a false sense of complacency by promising to notify it of any evidence of the Aventail reference publication date, but then failed to do so; (6) Mr. Kusmer withheld the three reexamination declarations during prosecution of the '181 Patent; and (7) Mr. Kusmer described the three reexamination declarations related to the publication date of the Aventail reference as "insufficient" during prosecution of the '697 Patent. *Id.* at 20–21.

During the *Microsoft* litigation, the publication date of the Aventail reference was discussed in the context of a confidential deposition transcript. *See* Docket No. 322 at 10–11. Mr. Kusmer had no obligation to disclose documents under the protection of a protective order to the Patent Office. *See id.* With respect to the documents listed on the information disclosure statements, Apple did not indicate how Mr. Kusmer intended to deceive the Patent Office other than by filing information disclosure statements that totaled many pages and were not reviewed by him personally before being filed.[2] *See* Docket No. 339 at 20. Further, the examiner rejected the pending claims using the Aventail reference during prosecution of the '697 Patent, which indicates that the Aventail reference was not hidden from the Patent Office. *See id.* at 11.

Mr. Kusmer promised to update the Patent Office with information relevant to the publication date of the Aventail reference, and did so. *See id.* at 11–12. Apple's main complaint appears to be the speed with which he updated the Patent Office. *See id.* Mr. Kusmer received the three declarations from Apple's reexamination filings a few days before a notice of allowance was mailed for the '181 Patent. *See* Docket No. 322 at 13. However, Mr. Kusmer

---

[2] The Aventail reference was listed on a supplemental information disclosure statement with twenty-seven other references. *See* Docket No. 322 at 3 n.1.

brought the three declarations addressing the publication date of the Aventail reference to the examiner's attention during prosecution of the '697 Patent, which issued after the '181 Patent. *See* Docket No. 339 at 11–12. Additionally, the parties continue to dispute the Aventail reference publication date. See Docket No. 322 at 17.

In view of the foregoing, the single most reasonable inference was not that Mr. Kusmer had an intent to deceive the Patent Office by not disclosing the declarations. Therefore, the Court granted VirnetX's Motion for Summary Judgment of No Inequitable Conduct (Docket No. 322). Docket No. 362.

### 4. Granting VirnetX's Motion to Strike Portions of the Opinion and Testimony of Mr. Christopher Bakewell (Docket No. 316)

In the consolidation order, the Court warned that "while there is substantial overlap between the two cases, incorporating the issues remanded in *Apple I* may require limited and focused fact discovery, as well as supplemental expert reports." Docket No. 220 at 1–2. As a result, Apple served several interrogatories and requests for admission on VirnetX. Docket No. 333 at 4. Apple then supplemented the report of its damages expert, Mr. Christopher Bakewell. *Id.*

In its motion to strike, VirnetX stated that Mr. Bakewell improperly supplemented his report under the ruse that it was related to the Court's consolidation of *Apple I* and Case No. 6:12-cv-855 ("*Apple II*"). Docket No. 316 at 5. As VirnetX described it, Mr. Bakewell's supplemental expert report introduced a new damages model based on a per-feature-per-product amount, or "a reasonable royalty rate that applies to each of the three accused features [was] $0.017 per unit (*i.e.*, each worth one-third of $0.05 per unit)." *Id.* at 3. Apple responded by explaining that the supplemental report accounts for the multiple versions of Virtual Private Network ("VPN") On Demand and FaceTime that would be at issue in the newly consolidated

case. Docket No. 333 at 5–6. According to Apple, because the cases were consolidated, a distinction needed to be made between the value of various versions of VPN On Demand and FaceTime and this somehow also affected the reasonable royalty if less than three infringing features were on a product. *Id.*

If Mr. Bakewell intended to present information about the relative value of the accused features (*i.e.*, VPN On Demand, FaceTime, or iMessage), that information should have already been included in an earlier expert report. Before the cases were consolidated, Mr. Bakewell's expert report addressed all three accused features. *See* Docket No. 316 at 2. Further, the post-consolidation discovery collected by Apple does not justify a shift to determining a royalty rate based on the number of infringing features on a product. *See* Docket No. 333 at 4.

Mr. Bakewell's new method of calculating damages did not sufficiently relate to the consolidation of *Apple I* and *Apple II*. Accordingly, the Court granted VirnetX's motion (Docket No. 316). Docket No. 362.

**SIGNED this 22nd day of March, 2016.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE