# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **VIRNETX INC., and** | § | |
| **SCIENCE APPLICATIONS** | § | |
| **INTERNATIONAL** | § | |
| **CORPORATION,** | § | |
| | § | No. 6:12-cv-00855-RWS |
| Plaintiffs, | § | |
| | § | ~~FILED UNDER SEAL~~ |
| v. | § | |
| | § | PUBLIC VERSION |
| **APPLE INC.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |

**PLAINTIFF VIRNETX INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF A $1.20 PER UNIT IN DAMAGES IF INFRINGEMENT IS FOUND**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1
II. ISSUES TO BE DECIDED ......................................................................................... 1
III. STATEMENT OF UNDISPUTED MATERIAL FACTS. .................................................. 1
IV. VIRNETX IS ENTITLED TO SUMMARY JUDGMENT OF $1.20 PER
   INFRINGING UNIT IF INFRINGEMENT IS FOUND. ..................................................... 4
   A. Because All Disputed Issues Were Resolved by the -417 Trial, the Issue Here
      Is Identical. ........................................................................................................ 4
   B. Even if the General Issue of "Damages" Is Different in Some Respect, the
      Identical Issues Between the Two Cases Still Compels Summary Judgment. .................. 6
   C. Apple's Attempts to Inject New Facts into the -855 Case Does Not Create a
      New Issue for Purposes of Preclusion. ............................................................... 8
   D. There Are No Special Circumstances Counseling Against Preclusion. ........................... 9
V. Conclusion ............................................................................................................. 11

## **TABLE OF AUTHORITIES**

**Cases**

*Applied Medical Resources Corp. v. U.S. Surgical Corp.*
   435 F.3d 1356 (Fed. Cir. 2006) ................................................................................. 5, 6, 10

*Arlington Indus., Inc. v. Bridgeport Fittings Inc.*
   106 F. Supp. 3d 506 (E.D. Pa. 2015) ................................................................................. 5, 6

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*
   713 F.3d 1377 (Fed. Cir. 2013) ................................................................................. 4

*Copeland v. Merrill Lynch & Co., Inc.*
   47 F.3d 1415 (5th Cir. 1995) ................................................................................. 4

*In re Shuler*
   722 F.2d 1253 (5th Cir. 1984) ................................................................................. 6

*Smith & Nephew Inc. v. Arthrex, Inc.*
   No. 3:08-cv-713-MO, 2016 WL 3406232 (D. Or. June 15, 2016) ............................................. 5

*Yamaha Corp. of Am. v. United States*
   861 F.2d 245 (D.C. Cir. 1992) ................................................................................. 8, 9

**Other Authorities**

Wright & Miller, 18 FED. PRAC. & PROC. § 4416 (3d ed.) ........................................................... 11

## I. INTRODUCTION

If the Court enters judgment as to any of the accused features, the Court should enter judgment that VirnetX is entitled to $1.20 per infringing unit. Concerning damages, the parties are proceeding with identical expert opinions, based on identical facts, with an identical hypothetical negotiation, and identical hypothetical negotiation dates. It is also undisputed between the parties and their experts (at least now) that the relevant royalty rate should be the same regardless of whether all accused features infringe or only one. In these circumstances, if infringement is found, there is no issue of material fact concerning damages. Because the first jury already resolved those questions in VirnetX's favor, VirnetX is entitled to $1.20 per unit per infringing device.

## II. ISSUES TO BE DECIDED

1. Whether, based on the doctrine of issue preclusion, VirnetX is entitled to judgment as a matter of law of $1.20 per infringing unit in damages.

2. Whether, based on the doctrine of issue preclusion, Apple is barred from relitigating an expert theory based on the weighted average of VirnetX's licenses.

3. If Apple is barred from relitigating an expert theory based on the weighted average of VirnetX's licenses, whether there is any remaining issue of material fact precluding summary judgment of $1.20 per unit in damages if any accused feature is found to infringe.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS.

1. On September 30, 2016, a jury determined that VirnetX was entitled to $1.20 per unit for each infringing device.

2. This $1.20 per unit award was a running royalty beginning on the date of the hypothetical negotiation in June 2009.

3. The parties' most recent expert reports in this case also include the same hypothetical negotiation date for addressing the -855 units. *See, e.g.*, Ex. A, Dec. 23, 2014 Weinstein Rep. at ¶ 108. While Apple's expert, Mr. Bakewell, originally offered an opinion assuming the hypothetical negotiation date was in either June 2011 or April 2013, Mr. Bakewell subsequently recognized that the June 2009 hypothetical negotiation date should govern the royalty for the -855 units. Ex. B, August 7, 2015 Supp. Bakewell Rep. at ¶ 5 (opining that hypothetical negotiation should be June 2009 for -855 units).[1] *See also* -855 Dkt. No. 428 at 15 (agreed jury instruction in case involving -855 units providing that "the parties agree that the date of the hypothetical negotiation between Apple and VirnetX would have been in June 2009").

4. At least for purposes of their presentation at the upcoming trial, the parties' experts also agree that the same royalty is appropriate in this case regardless of the number of accused features found to infringe the asserted claims. *See, e.g.*, 9/28/2016 Trial Tr. (Weinstein) at 60:5–17 (offering opinion that reasonable royalty should be awarded on per unit not per feature basis); -855 Dkt. No. 468 at 10 (striking Mr. Bakewell's opinion related to per feature royalty).

5. Both at the September 2016 trial and in this one, the parties' expert opinions assume that the reasonable royalty in this case should be decided by relying on

---

[1] Mr. Bakewell also recognized that the date of the hypothetical negotiation was irrelevant to his damages opinion. Ex. C, 3/12/2015 Bakewell Depo Tr. at 241:9–17.

various VirnetX licenses. Indeed, at the September 2016 trial, the only real dispute between the parties lay in the relative weight given to those licenses. 9/29/16 Trial Tr. (Bakewell) at 54:25–55:2 ("Q. [By Ms. Heffernan]: Now, the – the only calculations made for damages by both sides' experts, by you and Mr. Weinstein are based on VirnetX's licenses, right? A. That's correct."); *see also id.* at 15:25–16:7 ("Q. And then the other disagreement is whether you do a true average, where you add them – add the number of licenses up and divide the rate by however many licenses there are versus a weight average, which is what you've done? A. I think that's right. I think it's a simple average versus a weighted average, and I believe the proper way is the – the true average is the weighted average."). VirnetX contended that each license should be averaged equally, while Apple advocated for a weighted average based on the total number of royalty-bearing units per rate.

6. While the experts relied on an assortment of different facts at the September 2016—including, for example, whether the licensed products from non-Microsoft licenses were sufficiently comparable—these facts were all related to the experts' fundamental dispute concerning whether the per unit royalties from the licenses should be weighted based on the number of licensed units under those licenses.

7. At the September 2016 trial, the jury accepted VirnetX's theory and rejected Apple's theory, weighing the licenses equally, and awarding a royalty of $1.20 per unit.

## IV. VIRNETX IS ENTITLED TO SUMMARY JUDGMENT OF $1.20 PER INFRINGING UNIT IF INFRINGEMENT IS FOUND.

As the Court has previously recognized, a party is precluded from relitigating an issue when "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine." Dkt. No. 181 at 5 (quoting *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1422 (5th Cir. 1995)). "It is the issues litigated, not the specific claims around which the issues were framed, that is determinative." *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1382 (Fed. Cir. 2013). Assuming infringement is found, the issues related to the appropriate per unit royalty rate were already fully litigated in the -417 trial and those issues were necessary to the Court's damages judgment. Additionally, while patent damages issues are not *always* identical issues when addressing redesigned features in subsequent proceedings, the issues adjudicated in the -417 case are the same issues presented here. Accordingly, the elements of issue preclusion are met and VirnetX is entitled to summary judgment of $1.20 per unit in damages.

### A. Because All Disputed Issues Were Resolved by the -417 Trial, the Issue Here Is Identical.

A reasonable royalty damages analysis is designed to determine what royalty a patent owner and an infringer would have agreed upon the date that infringement first began. At the -417 Trial, the jury determined that the parties would have agreed to a running royalty of $1.20 per infringing unit from the date of the hypothetical negotiation. Because each party here is offering an opinion that the relevant hypothetical negotiation in this case is the same as the previous one, and because the parties further agree that the royalty should be the same regardless of whether one, two, or three features infringe, the damages issues are identical between the two

4

cases. Because the -417 jury already determined the appropriate measure of damages is $1.20 per infringing device, the Court should grant summary judgment that VirnetX is entitled to damages of $1.20 multiplied by the number of infringing devices, if infringement is found.

There are no circumstances changing the damages analysis into a different issue. Apple's infringement has continued uninterrupted from the date of the hypothetical negotiation throughout the damages period of the -855 case. *See Smith & Nephew Inc. v. Arthrex, Inc.*, No. 3:08-cv-713-MO, 2016 WL 3406232, at *9 (D. Or. June 15, 2016) (granting summary judgment of damages based on issue preclusion in part because infringement was continuous in time). The parties' expert theories are identical between the theories evaluated and determined by the -417 jury. *See Arlington Indus., Inc. v. Bridgeport Fittings Inc.*, 106 F. Supp. 3d 506, 522 (E.D. Pa. 2015) (granting summary judgment of lost profits and reasonable royalty damages in part because "there [was] substantial overlap between the arguments and evidence put forth by the parties regarding the instant motion and [the previous trial.]"). And the parties' experts agree that damages should relate to the original June 2009 hypothetical negotiation. In such circumstances, preclusion is appropriate.

To be sure, the Federal Circuit has indicated that re-design cases *sometimes* present new damages issues that do not estop a party from seeking a new royalty amount. In *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356 (Fed. Cir. 2006), the Federal Circuit held that a patentee was not precluded from *increasing* the royalty rate adjudicated at the first trial in the follow-on redesign case. *Id.* at 1363–64. The Federal Circuit determined that the patentee could seek a larger royalty rate because "the two infringements caused by [the two products] began at *different times*, and require two different hypothetical negotiation dates" and the parties sought to offer different evidence about different market conditions and license agreements. *Id.*

at 1363. The Federal Circuit recognized, however, that "there may be instances, . . . . in which two products, even if not identical, may present the same damages analysis." *Id.* This is one of those instances. Unlike *Applied Medical*, the parties' expert theories have no new evidence about changed market conditions or new license agreements; instead, the parties offer the same opinions, addressing the same disputes, based on the same hypothetical negotiation date. Issue preclusion should apply.

### B. Even if the General Issue of "Damages" Is Different in Some Respect, the Identical Issues Between the Two Cases Still Compels Summary Judgment.

As discussed above, the general damages issue between the cases is identical and preclusion should apply. However, even if the general issue of damages is somehow changed between the two cases, the subsidiary issues that were previously adjudicated in the -417 case nevertheless counsel toward summary judgment here. Issue preclusion applies to both ultimate issues (like damages) and subsidiary issues (like appropriate damages methodologies and facts underlying them). *See, e.g.*, *In re Shuler*, 722 F.2d 1253, 1255 (5th Cir. 1984) (indicating that collateral estoppel can apply to "subsidiary facts" determined in prior litigation when necessary to the judgment). Thus, even if the ultimate issue of damages is somehow different, issue preclusion can and should still apply. *See Arlington Indus.*, 106 F. Supp. 3d at 521 (applying preclusion where jury necessarily accepted one theory and rejected another).

A number of these subsidiary issues were determined in the -417 case. For example, the parties disputed how the parties to the hypothetical negotiation would weigh the relevant licenses between VirnetX and its licensees. Apple contended that the various licenses should be weighted based on the number of licensed products pursuant to each license (*i.e.*, a weighted average) while VirnetX contended that each royalty rate should be weighted equally (*i.e.*, a "true" average). The -417 jury necessarily reached its verdict was by rejecting Apple's theory

6

and applying a "true" average between the licenses, which resulted in a royalty rate of exactly $1.20 per unit, the identical number proposed by VirnetX's expert as the low end of his proposed range.

This finding concerning the parties' decision at the hypothetical negotiation should apply in this case regardless of whether the redesigned features present a technically different *ultimate* issue for issue preclusion. Even if the mere fact that a product has been redesigned did create a new general issue of damages, the subsidiary factual issue as to whether the parties would calculate a true or a weighted average is no different in this case than the last one. No circumstance has possibly changed such that Apple should be allowed to re-litigate this issue.

Similarly, the parties initially disputed whether the royalty should be a running royalty or a lump sum royalty. *E.g.*, Ex. D, Jan. 29, 2015 Bakewell Rep. at ¶ 310. While Mr. Bakewell's "lump sum" or "one-time payment" opinion was not expressly presented to the jury, Apple nevertheless recognized that the jury accepted VirnetX's theory that the parties would have agreed to a running royalty. -417 Dkt. No. 1066 at 28–29 (Apple arguing that a running royalty was "consistent with the jury's award"). There are no changed factual circumstances here that would warrant a departure from applying the jury's running royalty finding.

When the preclusive effect of these two findings are applied to the current case, there is no issue of material fact concerning any other disputed issue related to damages upon a finding of infringement.[2] Apple's only affirmative damages theory depends on weighting the Microsoft

---

[2] Additionally, to the extent Apple argues that the limited nature of these disputes is based solely on its role in rebutting VirnetX's affirmative case rather than admitting any fact, this argument is irrelevant to the current preclusion analysis. Because Apple moved for JMOL on the sufficiency of VirnetX's evidence to support its $1.20 royalty rate award, the sufficiency of VirnetX's evidence is also an issue that has been fully litigated and precludes contrary arguments here. *See* -417 Dkt. No. 1079 at 30 (denying Apple's JMOL and motion for new trial on damages). Because the Court has determined that VirnetX's evidence is sufficient, and Apple has no evidence to

license more than the remaining ones. *See* Ex. D, Jan. 29, 2015 Bakewell Rep. at ¶¶ 11–22. And while Apple's expert had various criticisms of VirnetX's expert theory, those criticisms were data points for considering whether to weigh the Microsoft license heavily or equally. That issue has now been conclusively resolved.[3] This is so regardless of whether Apple may want to rely on different or additional facts at trial to persuade an -855 jury to reach different result. *See Yamaha Corp. of Am. v. United States*, 861 F.2d 245, 254 (D.C. Cir. 1992) ("[O]nce an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it." (emphasis in original)). And with the issues of the licenses' relative weight and the structure of royalty already resolved, there is simply no issue of fact related to damages left for the -855 jury to decide. Thus, even if the mere fact that Apple's product is redesigned prevents the application of ultimate issue preclusion, the nature of the parties' theories combined with the subsidiary issues that were resolved in the -417 trial nevertheless estop Apple from contesting an award of $1.20 per infringing unit in damages.

### C. Apple's Attempts to Inject New Facts into the -855 Case Does Not Create a New Issue for Purposes of Preclusion.

In an attempt to avoid what Apple knows is the preclusive effect of the -417 jury's damages verdict, Apple has indicated to VirnetX that it intends to bring two witnesses that were not disclosed in Apple's live initial disclosures, one of which has never been deposed, the other of which was deposed in only a limited capacity prior to the consolidated trial. Apple has also

---

dispute VirnetX's evidence other than theories and an opinion already rejected, summary judgment is appropriate.

[3] For example, Mr. Bakewell opined that the non-Microsoft licenses were "largely based upon companies and products that are not comparable to Apple or the accused products," and were therefore entitled to "no probative value toward the amount of a reasonable royalty" "when compared to other, more meaningful data." *See, e.g.*, Ex. D, Jan. 29, 2015 Bakewell Rep. at ¶ 260, ¶ 265. This opinion involves the relative weight accorded to VirnetX's licenses and was thus conclusively rejected by the -417 jury's verdict.

8

indicated that it intends to seek depositions of VirnetX's licensees other than Aastra, even though all licensees have been the same since the original fact discovery period closed in November of 2014 (over three years ago), and even though the Court allowed additional "limited and focused" fact discovery after consolidation in 2015.[4] VirnetX will respond more completely concerning why such requests should be denied in due course of briefing Apple's contemplated motion. But for purposes of the issues raised in this one, these proposed additional facts, while intended to confuse the Court and give the appearance of new factual issues to be resolved, do not create any new damages issue because, as in *Yamaha*, these proposed new facts are only "particular arguments" sought to be "raised in support" of the ultimate and subsidiary damages issues that were determined by the -417 trial. *See Yamaha*, 861 F.2d at 254.

### D. There Are No Special Circumstances Counseling Against Preclusion.

Like with the motion concerning infringement by FaceTime, there are also no special circumstances present to avoid applying the doctrine of issue preclusion. Apple had a full and fair opportunity to litigate the issues related to reasonable royalty damages and the subsidiary issues whether the parties would have used a weighted or true average in considering the Microsoft license and whether the parties would have agreed to a running royalty or lump sum structure. There is no serious dispute otherwise.

In fact, summary judgment of $1.20 per infringing unit in damages is in many respects beneficial to Apple. No reliable expert opinion could ignore the determination that the parties

---

[4] VirnetX did enter into an amendment to the existing Microsoft license in connection with the litigation involving Skype in December 2014, after general fact discovery closed in November 2014. However, Apple had not previously deposed Microsoft within the fact discovery period, nor did Apple seek to leave to depose Microsoft at any point between December 2014 and the January 2016 consolidated trial, between the consolidated trial and the September 2016 trial, between the September 2016 trial and the Court's -417 Final Judgment, or between the Court's entry of final judgment, in September 2017, and today.

agreed to $1.20 per unit on the date of the first infringement. And no reliable expert could opine that VirnetX would agree to a *smaller* royalty than the running royalty agreed for Apple's first infringement simply for implementing an unsuccessful re-design. Thus, if preclusion did not apply, the reasonable royalty would only go *up*. *See Applied Medical*, 435 F.3d at 1363-64 (holding that patentee was not estopped from seeking *higher* royalty rate in redesign case). However, rather than seeking to increase the royalty to which the parties would have agreed, VirnetX is seeking only to apply the same royalty rate that the jury already determined.[5]

As with the FaceTime motion, Apple may argue that the Court should defer application of the doctrine pending the -417 appeal. For the same reasons, the Court should not do so. As discussed in that motion, the Court already determined in the context of another preclusion motion that the doctrine should be applied notwithstanding the pendency of an appeal from the preclusive judgment. *See* -855 Dkt. No. 181 at 9 (precluding re-litigation of invalidity prior to Federal Circuit decision). And, as further discussed in that motion, deferring ruling would make no sense. Just like with the infringement issues with FaceTime, because the appeal of the -417 case will not be complete by the time of trial in this case, deferring the application of preclusion is effectively refusing to apply it. Additionally, as with the infringement issues, there is no reason to defer applying the preclusive effects of the judgment to avoid complications specifically arising from application of a preclusion doctrine based on a judgment on appeal since that judgment on appeal would, if reversed, likely cause complications in any subsequent -855 judgment regardless of whether preclusion is applied.

---

[5] To the extent the Court believes that any damages issues require jury resolution, VirnetX intends to seek leave to update its report to include the determination of the $1.20 royalty with Apple as well as move for leave to file a *Daubert* motion seeking to strike Mr. Bakewell's report to the extent it seeks a royalty lower than $1.20 per infringing unit. VirnetX also reserves the right to seek a higher royalty than $1.20 if that royalty is not resolved as a matter of law by this motion.

Were the Court to decline to apply the doctrine, the Court would be faced with a second trial where VirnetX and Apple both present identical evidence and arguments to a second jury that have already been evaluated and determined by the first. To allow Apple to attempt to convince a new jury what it failed to convince the first would only present "the risk of the clearest and most embarrassing inconsistencies"—if Apple were to prevail—and would otherwise "burden[] [the] court and [VirnetX] with mere repetition." Wright & Miller, 18 FED. PRAC. & PROC. § 4416 (3d ed.). The Court should grant summary judgment of $1.20 per infringing unit in damages.

## V. CONCLUSION

For the reasons stated above, VirnetX requests that the Court grant summary judgment.

DATED: January 8, 2018.                    Respectfully submitted,

**CALDWELL CASSADY & CURRY**

/s/ *Bradley W. Caldwell*_____
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
Email: acurry@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848

Robert M. Parker
Texas State Bar No. 15498000
Email: rmparker@pbatyler.com
R. Christopher Bunt
Texas State Bar No. 00787165
Email: rcbunt@pbatyler.com
**PARKER, BUNT & AINSWORTH, P.C.**
100 East Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Telecopier: (903) 533-9687

T. John Ward, Jr.
Texas State Bar No. 00794818
Email: jw@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR PLAINTIFF
VIRNETX INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served on counsel of record via email on January 8, 2018, to the extent allowed by the Agreed Protective Order.

                                              */s/ Bradley W. Caldwell*
                                              Bradley W. Caldwell

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that the foregoing document is authorized to be filed under seal pursuant to the Agreed Protective Order submitted in this case.

                                              */s/ Bradley W. Caldwell*
                                              Bradley W. Caldwell