**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| VIRNETX INC. and  LEIDOS, INC., | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO.  6:12-CV-00855-RWS |
| | § | |
| | § | |
| v. | § | |
| | § | |
| APPLE INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Defendant Apple Inc. ("Apple") filed a Motion to Stay (Docket No. 518) on February 28, 2017.  On September 29, 2017, the Court denied the motion with memorandum order to follow and ordered Plaintiff VirnetX Inc. ("VirnetX") and Apple to meet and confer on a trial date for this case.  Docket No. 527.[1]  The Court now issues this memorandum opinion detailing the reasons for its ruling.[2]

## BACKGROUND

The case has both a lengthy and complex procedural history.  On August 11, 2010, VirnetX filed Case No. 6:10-cv-417 against Apple alleging infringement of U.S. Patent Nos. 6,502,135 ("the '135 Patent"), 7,418,504 ("the '504 Patent"), 7,490,151 ("the '151 Patent") and 7,921,211 ("the '211 Patent") (collectively, "the asserted patents").  Case No. 6:10-cv-417 ("417 action"),

---

[1] Unless otherwise specified, references to the docket refer to the docket in Case No. 6:12-cv-855 (the "855 action").
[2] The Court recognizes that Apple filed a petition for writ of mandamus with the Federal Circuit on January 5, 2018 asking the Federal Circuit to vacate the Court's September 29, 2017 Order and to stay the case pending the appeals of several Patent Office ("PTO") proceedings.  *See* Docket No. 547; Petition for Writ of Mandamus, *In re Apple*, No. 18-123 (Fed. Cir. Jan. 5, 2018).  In its September 29, 2017 Order, the Court provided the parties with its ruling to avoid undue delay and uncertainty while it prepared its full opinion.  Although the Court was hesitant to issue this memorandum opinion in light of the pending petition, the parties are entitled to the opinion as initially promised.

Docket No. 1. On November 6, 2012, a jury found that Apple's accused VPN On Demand and FaceTime features infringed the asserted patents and that the asserted patents were not invalid. 417 action, Docket No. 790. On the same day, VirnetX filed Case No. 6:12-cv-855. Docket No. 1.

In the 417 action, Apple and VirnetX both filed post-trial motions, which the Court ruled on. 417 action, Docket No. 851. The matter was appealed, and the Federal Circuit affirmed-in-part, reversed-in-part and remanded for further proceedings. 417 action, Docket No. 853; *see VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1313–14 (Fed. Cir. 2014).

The Federal Circuit affirmed the jury's finding of infringement of VPN On Demand and affirmed the Court's denial of Apple's motion for judgment as a matter of law on invalidity. *Id.* The Federal Circuit vacated the infringement finding for FaceTime based upon a change in claim construction, holding that the term "secure communication link" requires both "security and anonymity," and vacated damages for VPN On Demand and FaceTime because it found that the jury relied on a flawed damages model. *Id.* at 1314.

Upon receipt of the Federal Circuit's mandate, the Court solicited the parties' proposals on how to proceed. 417 action, Docket No. 855. The parties submitted a status report in which VirnetX proposed the Court consolidate the remaining issues in the 417 action with the upcoming trial in the 855 action. Docket No. 864 at 4. Apple opposed the consolidation. *See* 417 action, Docket No. 873 at 45:20–46:6. After a status conference on March 10, 2015, the Court consolidated the 855 and 417 actions, designating the 855 action as the lead case with a revised schedule. Docket No. 220. After extensive motion practice (*see* Docket Nos. 315, 317–323, 326; *see also* Docket Nos. 362, 468), the case was tried to a jury, and the jury returned a verdict finding infringement of the '135, '151, '504 and '211 patents.

Again, both Apple and VirnetX filed post-trial motions (Docket Nos. 462, 463). On July 29, 2016, the Court granted Apple's Motion for a New Trial Based Upon the Consolidation of Cause Nos. 6:10-cv-417 and 6:12-cv-855. Docket No. 500. The Court reasoned that the consolidation and repeated discussion of the complex procedural history and previous jury verdict in front of the jury resulted in an unfair trial. Docket No. 500 at 14. In its Order, the Court explained that "Cause No. 6:10-cv-417 will be retried with jury selection to begin on September 26, 2016, unless the parties agree otherwise on an alternative date, and immediately followed by a second trial on the issue of willfulness. Cause No. 6:12-cv-855 will be retried after Cause No. 6:10-cv-417." *Id.* at 15.

After another round of extensive motion practice (*see, e.g.*, 417 action, Docket Nos. 930–931, 937, 944–945), the 417 action was again tried to a jury. The jury returned a verdict finding that FaceTime infringed the '211 and '504 patents and awarded approximately $302 million in damages for the collective infringement of the VPN On Demand and FaceTime features in the accused Apple products. 417 action, Docket No. 1025. After the September trial, both parties submitted post-trial motions (*see* Docket Nos. 1018–1019, 1047, 1062–1063).

While the post-trial motions were pending, on February 9, 2017, the Court requested that the parties meet and confer about the timing of the 855 trial and propose a schedule. The parties each filed a response (Docket Nos. 519, 520), and Apple simultaneously filed this motion to stay (Docket No. 518). The Court held a telephonic hearing regarding the parties' responses, during which VirnetX requested that a schedule for this case not be entered until the post-trial motions from the 417 retrial had been ruled upon. Docket No. 521 at 6:5–11. The Court took no further action on the remaining 855 retrial until September 29, 2017, when the Court issued its memorandum opinion and order on the post-trial motions and issued final judgment in the 417

action. 417 action, Docket Nos. 1079, 1082. At that point, the Court denied Apple's motion to stay the 855 action explaining that this memorandum opinion would follow. Docket No. 527.

## **LEGAL STANDARD**

A district court has the inherent power to control its own docket. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The party seeking a stay bears the burden of showing that the stay is appropriate. *Landis*, 299 U.S. at 254–55. This inherent power includes "the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988). In deciding whether to stay litigation pending PTO proceedings, courts typically consider: (1) whether the stay will unduly prejudice the nonmoving party, (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set and (3) whether the stay will likely result in simplifying the case before the court. *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015) (Bryson, J.) (citing *Lennon Image Techs., LLC v. Macy's Retail Holdings, Inc.*, No. 2:13-cv-235, 2014 WL 4652117, at *2 (E.D. Tex. Sept. 17, 2014); *Market–Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F.Supp.2d 486, 489 (D. Del. 2013); *Soverain Software LLC v. Amazon.com*, Inc., 356 F.Supp.2d 660, 662 (E.D. Tex. 2005)).

These factors are not exclusive, and, ultimately, deciding whether to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55; *see also TruePosition, Inc. v. Polaris Wireless, Inc.*, No. 12-646, 2013 WL 5701529, at *2 (D. Del. Oct. 21, 2013) (citing *SoftView LLC v. Apple, Inc.*, No. 10-389-LPS, 2012 U.S. Dist. LEXIS 104677, at *6–7 (D. Del. July 26, 2012)).

## DISCUSSION

With this background, the Court now considers the three factors relevant to granting a stay pending PTO proceedings: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmovant; (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set; and (3) whether the stay will likely result in simplifying the case before the court. As outlined below, each of these factors weighs against granting a stay.

### (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmovant

The Court first considers whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant. Under this factor, courts consider whether the timing of the request for a stay suggests any dilatory motive on behalf of the movant. *Market-Alerts*, 922 F. Supp. 2d at 494.

Granting a stay in this case would result in undue prejudice to VirnetX. VirnetX has an interest in timely enforcing its patents, which is entitled to weight, but is "not sufficient, standing alone, to defeat a stay motion." *NFC Tech.*, 2015 WL 1069111, at *2. As discussed above, VirnetX first tried this case to verdict in 2012, and, "due to the necessity of [] retrial[s], [VirnetX] has still received no damages award as compensation." *Apple, Inc. v. Samsung Elecs*. Co., No. 11-CV-01846-LHK, 2013 WL 6225202, at *5 (N.D. Cal. Nov. 25, 2013) (finding that the prejudice factor weighed against a stay when the plaintiff opposed defendant's motion to stay pending reexamination after a jury found the patent valid and infringed).

Aside from the prejudice relating to the timely enforcement of its patent rights, VirnetX identifies competitive harm it will suffer in the form of lost sales, lost market share, and reputation harm and identifies the unique prejudice from the pendency of the litigation and the impending

expiration of VirnetX's patent terms. Docket No. 522 at 13–14. Apple disputes VirnetX's assertion, arguing that "VirnetX has never identified a single lost sale, any lost market share, or any reputational harm, nor can VirnetX shield itself behind a presumption of irreparable harm (because none exists)." Docket No. 523 at 8.

While it is unclear whether VirnetX will suffer more than generalized prejudice resulting from a delay in enforcing its patent rights, the Court is also concerned with the tactical disadvantage to VirnetX that would result from a stay. In considering this factor, the Court considers the timing of Apple's request for a stay and how granting a stay at this late stage of the proceedings would present a distinct tactical advantage to Apple.

To be clear, Apple asked the Court to order the two new trials while it engaged in significant practice at the PTO. When the Court granted Apple's motion for a new trial—setting aside a significant consolidated jury trial verdict and unconsolidating these cases—it did not take that decision lightly. The Court made a decision it believed the law and fairness required, but it was always the intention of the Court that the two newly unconsolidated trials would be tried seriatim, recognizing the considerable prejudice VirnetX suffered as a result of setting aside the jury's verdict. Staying the case now would allow Apple to essentially reverse its request for two new trials after the fact, providing Apple with an undue tactical advantage over VirnetX.

In sum, a further delay in VirnetX's ability to enforce its patent rights creates some measure of prejudice, and, coupled with the fact that granting the motion would provide Apple with an unfair tactical advantage, this factor weighs slightly against granting a stay.

### (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set

At the time of Apple's motion, Apple's and VirnetX's dispute in this Court had already spanned almost seven years. As detailed in the lengthy procedural history above, this case has

gone through multiple rounds of dispositive and post-trial motion practice, numerous pretrial conferences and three trials—the last of which was at Apple's request. There can be no question that the case has reached an advanced stage. Discovery was completed four years ago, and the Court had solicited the parties' proposals regarding a date for the 855 retrial when Apple filed its motion. The only aspect of the case now remaining before the Court is a retrial of the 855 case, the second of Apple's requested new trials.

In its brief, Apple argues that the most "burdensome task" in the litigation is ahead, the 855 trial. Docket No. 518 at 12 (citing *Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed. Cir. 2015)). To the extent the Court's decision is informed by the remaining burden on the parties and the Court, the burden of the 855 trial is somewhat minimized by the fact that it is a retrial. Moreover, the burden of the upcoming retrial is relatively minimal when compared to the resources thus far expended in this litigation. The vast majority of litigation costs have already been spent and the heaviest burden of the litigation has already fallen upon the Court. Given this late stage of the litigation, the resources expended thus far by both the Court and the parties—and the fact that the remaining trial is a retrial—this factor strongly disfavors granting a stay.

### (3) *whether the stay will likely result in simplifying the case before the court*

The third factor relates to the simplification of the issues before the trial court and "[i]n its entirety, the focus of this factor is on streamlining or obviating the trial by providing the district court with the benefit of the PTO's consideration of the validity of the patents before either the court or the jury is tasked with undertaking that same analysis." *Smartflash*, 621 F. App'x at 1000. "When the motion to stay is made post-trial, many of the advantages flowing from the agency's consideration of the issues—such as resolving discovery problems, using pre-trial rulings to limit defenses or evidence at trial, limiting the complexity of the trial, etc.—cannot be realized." *Id.*

"The simplification contemplated by the first factor is far less likely to occur once all the legal, procedural, and evidentiary issues involved in a trial have already been resolved." *Id.*

This case was first tried in 2012. The appeal of the 2012 verdict was resolved by the Federal Circuit, and, on remand, the case was tried again. At Apple's request, the Court granted a new trial and ordered two new retrials. The first of the new retrials has already been held, post-trial motions have been ruled on, and the verdict is on appeal before the Federal Circuit. Validity is not an issue remaining in the 855 retrial; indeed, the only remaining issues for the jury are infringement and damages—issues "with which the PTO is not concerned." *Smartflash*, 621 F. App'x at 1001. Accordingly, it is unclear how the PTO proceedings will simplify the case. Indeed, because this is a retrial of a case that the parties and the Court have already tried to a jury twice, there are few issues for the parties to brief or for the Court to resolve going forward.

When Apple filed its motion to stay, the asserted claims had been held unpatentable in various PTO proceedings. Docket No. 518 at 1. Apple contends in its brief that PTO proceedings may be affirmed by the Federal Circuit and result in an "ultimate simplification of the issues." Docket No. 518 at 12 (citing *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014)). But the potential for a PTO proceeding to result in cancelled claims—thereby mooting a parallel district-court proceeding—is present in almost every case where a petitioner seeks a stay. Just as with the prejudice factor—because this factor is present in nearly every case where a motion to stay is filed, it should be insufficient, standing alone, to support a stay motion.[3] *See NFC Tech.*, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015).

---

[3] In its motion to stay, Apple also discusses the Federal Circuit's *Baxter* decision, arguing that "[t]he same fate awaits this case once the Tried Patent Claims, which are now before the Federal Circuit, are cancelled." Docket No. 518 at 9 (citing *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1347 (Fed. Cir. 2013)). Apple's *Baxter* argument is not materially different from its argument that a stay could result in the "ultimate simplification" of the case.

Even accounting for the fact that the stay may result in the ultimate cancellation of claims, this factor weighs at least slightly against granting a stay.

* * *

While the prejudice and simplification of issues factors both weigh slightly against granting Apple's motion, the advanced stage of the proceedings weighs strongly against staying the case. This case has been through a first trial, an appeal, a second consolidated trial and a third trial in the 417 action. The case is far past discovery, and there are limited issues left for the Court or the jury to decide going forward. The case is in its latest stages, and no issue remaining in the case would be simplified by the ultimate return of the PTO appeals. Even if the Court considers that the PTO appeals could ultimately moot these proceedings, that singular factor—which would be true for almost all district-court cases with parallel proceedings—does not outweigh the late stage of the case and the undue prejudice to VirnetX if a stay were granted.

The Court acknowledges that, "since the circuit court's decision in *VirtualAgility*, courts have been nearly uniform in granting motions to stay proceedings in the trial court" in light of instituted PTO proceedings. *NFC Tech.*, 2015 WL 1069111, at *6 (collecting cases and citing *VirtualAgility, Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307 (Fed. Cir. 2014)). But, as explained above, this case presents unique circumstances that separate it from the mine-run of cases. The Court must exercise its judgment to maintain an even balance, and the unique circumstances of this case counsel against granting a stay. *Landis*, 299 U.S. at 254–55. Accordingly, as indicated in the Court's September 29, 2017 Order, Apple's Motion (Docket No. 518) is **DENIED**.

**So ORDERED and SIGNED this 12th day of January, 2018.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE