IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| VIRNETX INC. AND<br>LEIDOS, INC., | §<br>§<br>§<br>§ | Civil Action No. 6:12-cv-855-RWS |
| v. | §<br>§ | JURY TRIAL DEMANDED |
| APPLE INC. | §<br>§<br>§ | |

**APPLE'S MOTIONS *IN LIMINE***

**TABLE OF CONTENTS**

**Page**

I. APPLE'S DEFENSE OF THIS ACTION ........................................................................ 1

II. ANY REFERENCE AT THE LIABILITY TRIAL THAT THE DESIGN CHANGES WERE A RESULT OF A PRIOR INFRINGEMENT VERDICT, OR DESIGN CHANGES TO IOS 6.1 ................................................................................ 2

III. ANY SUGGESTION THAT FACETIME OR VPN ON DEMAND INFRINGE, OR THAT SUCH INFRINGEMENT WAS WILLFUL, BECAUSE OTHER VERSIONS OF THOSE FEATURES WERE FOUND TO INFRINGE AND/OR FOUND TO CONSTITUTE WILLFUL INFRINGEMENT ............................................ 4

IV. REFERENCES TO OBJECTIONABLE CONTENT ON THE INTERNET, INCLUDING TOR ........................................................................................................ 5

V. SUGGESTION THAT APPLE PURPORTEDLY "BROKE" IOS 6 FACETIME ........... 6

VI. REFERENCES TO IPHONE BATTERY HEALTH AND PERFORMANCE MANAGEMENT ............................................................................................................ 8

VII. EXPERT TESTIMONY FROM MR. LARSEN RELATING TO LICENSING ............... 9

VIII. ARGUMENT THAT APPLE FACT WITNESSES SHOULD HAVE REVIEWED NON-APPLE CONFIDENTIAL INFORMATION .................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adv. Tech. Incubator, Inc. v. Sharp Corp.*,
  5:09-CV-135, 2010 WL 11451797 (E.D. Tex. Mar. 31, 2010) .................................................6

*Clinton v. Brown & Williamson Holdings, Inc.*,
  No. 05-CV-9907 (CS), D.I. 327, slip op. (S.D.N.Y. Aug. 7, 2012) .........................................2

*Coleman Motor Co. v. Chrysler Corp.*,
  525 F.2d 1338 (3d Cir. 1975).........................................................................................2, 4, 5

*Commonwealth Sci. Indus. Research Org. v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015)..............................................................................................3, 7

*Compaq Comput. Corp. v. Ergonome Inc.*,
  387 F.3d 403 (5th Cir. 2004) ................................................................................................8, 9

*Criscuolo v. Grant Cnty.*,
  No. 10-CV-0470-TOR, 2014 WL 11515840 (E.D. Wash. Feb. 24, 2014)...............................2

*DataTreasury Corp. v. Wells Fargo & Co.*,
  2:06-CV-72 DF, 2010 WL 11538713 (E.D. Tex. Feb. 26, 2010).....................................6, 8, 9

*Grace, et al. v. Apple Inc.*,
  No. 5:17-CV-00551 (N.D. Cal.) .........................................................................................7, 8

*Mendenhall v. Cedarapids, Inc.*,
  5 F.3d 1557 (Fed. Cir. 1993).....................................................................................................3

*Mobile Telecomms. Techs., LLC v. LG Elecs. Mobilecomm U.S.A., Inc.*,
  Case No. 2:13-cv-947-JRG-RSP, 2016 WL 3611559 (E.D. Tex. Feb. 4, 2016) .....................10

*Mondis Tech., Ltd, v. LG Elecs., Inc.*,
  No. 2:07-CV-565, D.I. 528, slip op. (E.D. Tex., June 3, 2011)...........................................8, 9

*Procter & Gamble Co. v. Haugen*,
  No. 1:95-CV-94 TS, 2007 WL 701812 (D. Utah Mar. 2, 2007) ..............................................2

*Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*,
  No. 9:09-CV-176, 2011 WL 7563868 (E.D. Tex. Sept. 23, 2011)...........................................4

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014)................................................................................................9

*Whitserve, LLC v. Comp. Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012) ............................................................................................. 3

**Rules**

Fed. R. Evid. 401. ................................................................................................................ *passim*

Fed. R. Evid. 402. ................................................................................................................ *passim*

Fed. R. Evid. 403. ................................................................................................................ *passim*

Fed. R. Evid. 404. ................................................................................................................ 3, 4, 5

Fed. R. Evid. 608. ....................................................................................................................... 6

Fed. R. Evid. 701. ..................................................................................................................... 10

Fed. R. Evid. 702. ..................................................................................................................... 10

**Other Authorities**

*Propriety & Prejudicial Effect of Reference by Counsel in Civil Case to Result of
    Former Trial of Same Case, or Amount of Verdict Therein*, 15 A.L.R.3d 1101
    (1967) ................................................................................................................................ 4

## **EXHIBITS**

| Ex. No. | Document |
|---|---|
| 1. | -417 Trial Transcript Extract, September 30, 2016 PM |
| 2. | PX1007 |
| 3. | PX1012.03 |
| 4. | PX1126 |
| 5. | -855 Trial Transcript Extract, February 2, 2016 |
| 6. | -417 Trial Transcript Extract, September 30, 2016 AM |
| 7. | -855 Sealed Trial Transcript Extract, January 29, 2016 |
| 8. | -855 Trial Transcript Extract, January 29, 2016 |
| 9. | -417 Trial Transcript Extract, September 26, 2016 PM |
| 10. | -417 Trial Transcript Extract, September 28, 2016 AM |
| 11. | -417 Trial Transcript Extract, September 29, 2016 PM |

## I.     APPLE'S DEFENSE OF THIS ACTION

Apple respectfully moves the Court to preclude VirnetX from introducing argument, evidence, or testimony concerning the pendency of this litigation, purported delay in resolution of this matter, non-payment for alleged infringement (including the amount of the verdict in the September 2016 -417 Action trial), lack of apology, or discussions (or silence) between the parties regarding infringement, damages, or design changes.  The Court should preclude reference to such matters because they are not relevant to the disputed issues and they are unfairly prejudicial.  For instance, in prior trials, VirnetX introduced inflammatory rhetoric suggesting that it was improper for Apple to defend itself in this action and not "apologize" before and during trial, and that the jury should consider the duration and expense of litigation in reaching a verdict:

- "Did you ever hear anyone from Apple – well, one of their lawyers, turn and say, Dr. Short, we're sorry that we used your property without permission and that we owe you $23 million?  We're sorry about that.  *Not even an 'I'm sorry.'  Maybe they'll say it today for the first time.  We'll see.*"

- "Now, *after six years and $10 million in litigation fees*, we can figure out at the – once Apple starts presenting their case, that they're only going to challenge one thing . . . .."

- "We'd probably keep you here for two weeks if we could *because after six years, we want to make sure we present all the evidence we can* . . . ."

Ex. 1, 9/30/2016 PM Trial Tr. at 35:15–19, 36:1–8, 38:19–22 (emphasis added); *see also id.* at 86:24–87:2; 87:3–10.

Apple is entitled to defend itself in this action, and was under no obligation to "apologize" to VirnetX or to consult VirnetX on the issues of infringement, damages, and product design changes.  Nor does the existence of the verdict in the -417 Action (including the amount of that verdict), bear on the issues that the jury must decide in this case.  Indeed, telling the jury in this case that a jury in another case between Apple and VirnetX awarded damages,

whether the amount or per-unit rate, for infringement of different accused features would be highly prejudicial and would seriously risk that the jury "defer[s] to the earlier result and … decide[s] [the] case on evidence not before it." *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975). Such irrelevant and unduly prejudicial matters should be precluded. Fed. R. Evid. 401–403; *see, e.g.*, *Procter & Gamble Co. v. Haugen*, No. 1:95-CV-94 TS, 2007 WL 701812, at *2 (D. Utah Mar. 2, 2007) (precluding "any testimony on the length of the proceedings and/or the effect of such length on any person or business" on grounds of irrelevance, undue prejudice, and confusion); *Criscuolo v. Grant Cnty.*, No. 10-CV-0470-TOR, 2014 WL 11515840, at *3 (E.D. Wash. Feb. 24, 2014) (precluding reference to lack of apology); *Clinton v. Brown & Williamson Holdings, Inc.*, No. 05-CV-9907 (CS), D.I. 327, slip op. at 3 (S.D.N.Y. Aug. 7, 2012) (same).

II. **ANY REFERENCE AT THE LIABILITY TRIAL THAT THE DESIGN CHANGES WERE A RESULT OF A PRIOR INFRINGEMENT VERDICT, OR DESIGN CHANGES TO iOS 6.1**

The Court should exclude any reference at the liability trial[1] that the reason for design changes to FaceTime or VPN On Demand were due to a prior infringement verdict. The prior verdicts are inadmissible for any purpose under Rules 401–403. *See* D.I. 500 at 9–10. VirnetX should not be permitted to make backdoor references to the prior verdict by contending it was the reason for the design changes. The jury at the liability trial will be instructed that it must decide whether VPN On Demand and FaceTime in iOS 7–8 infringe. The fact that another jury decided this question with respect to different versions of VPN On Demand and FaceTime is not relevant and may again "prevent[ the jury] from evaluating the evidence without improperly relying on the [-417] verdict." D.I. 500 at 10. Indeed, referencing the prior verdict for this purpose will

---

[1] The Court bifurcated liability from willfulness. D.I. 500 at 15.

2

have a prejudicial effect and creates the risk that the jury "defer[s] to the earlier result and … decide[s] [the] case on evidence not before it." *Id.* at 9; *Coleman*, 525 F.2d at 1351. The jury should decide the issues before it without the "improper influence" of the past verdicts. *See Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1574 (Fed. Cir. 1993).

The Court should also exclude any reference in any phase of the trial to what Apple did or did not modify in VPN On Demand in iOS 6.1 because it is irrelevant, would cause confusion, and lead to unfair prejudice. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ VPN On Demand in iOS 6.1 is not accused of infringement in this case—it was adjudicated as part of the -417 case—and its functionality is not relevant to the question of whether VPN On Demand in iOS 7–8 infringes or whether any infringement concerning those versions was willful. Further, Apple's design decisions for iOS 6.1 have nothing to do with the "incremental value that the patented invention adds to" the accused VPN On Demand features in iOS 7–8, if any. *See Commonwealth Sci. Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (citation omitted). Instead, introduction of this evidence would create a sideshow meant to confuse the jury and unfairly prejudice Apple. At the consolidated -855 trial, VirnetX suggested to the jury that rather than remove the VirnetX technology from VPN On Demand in iOS 6.1, Apple preferred to "keep on infringing" VirnetX's patents. Ex. 5, 2/2/2016 Trial Tr. at 177:21–23, 192:6–10. Not only would this lead to prejudicial references to the prior infringement verdict, D.I. 500 at 9–10; Fed. R. Evid. 403, but it would also confuse the infringement analysis required for this case with evidence concerning already-adjudicated conduct, and suggest that the jury should punish Apple for delaying the implementation of design changes. Fed. R. Evid. 403,

3

404; *see, e.g.*, *Whitserve, LLC v. Comp. Packages, Inc.*, 694 F.3d 10, 34 n.18 (Fed. Cir. 2012) ("It is beyond debate that juries may not award litigation costs or punish infringers"). The Court should exclude references to this irrelevant and unfairly prejudicial evidence.

### III.   ANY SUGGESTION THAT FACETIME OR VPN ON DEMAND INFRINGE, OR THAT SUCH INFRINGEMENT WAS WILLFUL, BECAUSE OTHER VERSIONS OF THOSE FEATURES WERE FOUND TO INFRINGE AND/OR FOUND TO CONSTITUTE WILLFUL INFRINGEMENT

The Court should preclude any argument or suggestion that the versions of FaceTime and VPN On Demand at issue in this case infringe, or that such infringement was willful, because other versions of those features were found to infringe and/or found to constitute willful infringement, including but not limited to referring to the accused features in this case as "redesigned." Such arguments are irrelevant, unfairly prejudicial, and constitute an impermissible use of character evidence to prove that the Apple conduct at issue in *this case* constitutes infringement and/or willful infringement. *See* Fed. R. Evid. 401, 402, 403, & 404.

As the Court has noted, "describing a prior verdict before a jury often prejudices a party." D.I. 500 at 9 (citing D.C. Barrett, *Propriety & Prejudicial Effect of Reference by Counsel in Civil Case to Result of Former Trial of Same Case, or Amount of Verdict Therein*, 15 A.L.R.3d 1101 (1967) (collecting cases)); *see also Coleman*, 525 F.2d at 1351 ("A jury is likely to give a prior verdict against the same defendant more weight than it warrants. The admission of a prior verdict creates the possibility that the jury will defer to the earlier result and thus will, effectively, decide a case on evidence not before it."); *Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, No. 9:09-CV-176, 2011 WL 7563868, at *1 (E.D. Tex. Sept. 23, 2011) (excluding "any evidence about [prior] reasonable royalty jury verdict"). The potential for unfair prejudice was demonstrated when VirnetX referred extensively to a prior verdict in the consolidated trial. Before that consolidated trial, Apple similarly raised concerns about introducing aspects of the

4

prior trial to the jury. D.I. 308 at 1–3; *see also* D.I. 500 at 3. Apple's motion was denied, and the prior verdict was referred to extensively during trial. D.I. 500 at 4–5. As the Court noted when granting Apple's motion for a new trial, "[t]he combination of the consolidation and numerous statements about the prior jury verdict in Cause No. 6:10-cv-417 ('Apple I') (Docket No. 598) . . . unfairly prejudiced Apple's right to a fair trial." D.I. 500 at 1. That was, in part, "because it was repeatedly used as a shortcut for the infringement analysis." D.I. 500 at 10. Apple seeks to prevent the jury from once again relying on "the earlier result and thus . . . decid[ing this] case on evidence not before it." *Coleman*, 525 F.2d at 1351.

Likewise, any reference to prior orders of this Court concerning willfulness, and any jury verdict concerning willfulness, should be precluded, as those orders and verdicts have no relevance to issues the jury must decide in this case other than to improperly suggest that Apple acted in accordance with prior adjudicated behavior. Fed. R. Evid. 403, 404. Accordingly, the Court should exclude any suggestion of infringement, willful or otherwise, based on prior findings of infringement and/or willful infringement.

IV. **REFERENCES TO OBJECTIONABLE CONTENT ON THE INTERNET, INCLUDING TOR**

The Court should preclude references to alleged criminal, pornographic, or immoral activity conducted on the Internet, including via the Tor application, as irrelevant and highly prejudicial. Fed. R. Evid. 401–403. At the -417 retrial, counsel for VirnetX asked Apple's expert witness, Dr. Matthew Blaze, on cross examination whether Tor, a not-for-profit software application that provides secure and private Internet communications, is used to "facilitate criminal activity, including drugs, illicit finance, [and] extreme pornography." (Ex. 6, 9/30/2016 AM Trial Tr. at 137:4–138:3.) Because Dr. Blaze chairs the Tor Project's non-profit Board of Directors, any argument, evidence, or testimony related to alleged criminal, immoral, or

5

objectionable conduct on the Internet by unidentified individuals with whom Dr. Blaze has no affiliation or contact would cause confusion and only serve to inflame the jury if permitted.

Moreover, none of this alleged criminal or immoral conduct bears on Dr. Blaze's testimony in this case, and does not relate to Dr. Blaze's truthfulness. *See* Fed. R. Evid. 608. Courts have excluded reference to such allegations in similar contexts. *See, e.g. DataTreasury Corp. v. Wells Fargo & Co.*, 2:06-CV-72 DF, 2010 WL 11538713, at *8 (E.D. Tex. Feb. 26, 2010) (granting motion *in limine* to preclude reference to a party "potentially being involved in pornography services."); *Adv. Tech. Incubator, Inc. v. Sharp Corp.*, 5:09-CV-135, 2010 WL 11451797, at *10 (E.D. Tex. Mar. 31, 2010) (granting motion *in limine* to preclude statements that certain companies "*generally* engaged in illegal or inappropriate business conduct" which was "irrelevant to issues of patent infringement, invalidity, or damages") (emphasis in original).

Additionally, Federal Rule of Evidence 403 provides for the exclusion of evidence where its probative value is substantially outweighed by the danger of unfair prejudice. Here, references to this alleged criminal and immoral conduct have no probative value whatsoever, as VirnetX is able to cross examine Dr. Blaze and test the strength of his opinions on infringement without referencing "drugs, illicit finance, extreme pornography" or other objectionable conduct. Introducing such alleged conduct, on the other hand, would pose a substantial danger of unfair prejudice by inflaming or offending the jury.

**V.    SUGGESTION THAT APPLE PURPORTEDLY "BROKE" iOS 6 FACETIME**

The Court should preclude any reference to the software bug that caused an interruption in iOS 6 FaceTime service because VirnetX's theory is knowingly false, irrelevant to any issue in this action, and amounts to a classic "skunk in the box" intended to confuse, mislead, and inflame the jury. Fed. R. Evid. 401–403. VirnetX argued in the consolidated -855/-417 trial that Apple deliberately "broke" FaceTime in iOS 6 to reduce relay server costs following the

November 2012 verdict. *E.g.*, Ex. 5, 2/2/2016 Trial Tr. at 243:21–24; Ex. 7, 1/29/2016 Sealed Trial Tr. at 35:4–10. Although FaceTime service was interrupted for some iOS 6 users, the April 2014 service interruption in iOS 6 FaceTime was caused by software code that assigned a 2014 expiration to a digital certificate in iOS. That software was coded in 2007, well before VirnetX sued Apple in August 2010 and well before the November 2012 verdict. Ex. 8, 1/29/2016 Trial Tr. at 58:10–19. Thus, VirnetX's claim that Apple ███████████████████ ███████████████████ Ex. 7, 1/29/2016 Sealed Trial Tr. at 35:7–8, is an anachronism and an impossibility.

Nor does this allegation have any relevance to the disputed issues. VirnetX alleges that Apple's *iOS 7–8* FaceTime feature infringes the '504 and '211 patents. The jury's task is to compare Apple's iOS 7–8 FaceTime to the asserted claims and determine the "incremental value that the patented invention adds to" Apple's iOS 7–8 FaceTime, if any. *See CSIRO*, 809 F.3d at 1301 (citation omitted). VirnetX's claim that Apple deliberately "broke" *iOS 6* FaceTime bears no relevance to those questions. Fed. R. Evid. 401–402. VirnetX, however, plans to muddy the jury's task by suggesting that Apple deliberately "broke" FaceTime in response to the prior verdict and Apple's design changes. *See, e.g.*, -417 D.I. 965 at 2–4 (arguing that evidence of prior verdict and -855 case was relevant to damages in -417 trial). VirnetX should not be permitted to confuse, mislead, and taint this jury with irrelevant and inflammatory rhetoric that defies logic. *See* Fed. R. Evid. 403. Indeed, this risk of juror confusion and undue prejudice is yet another reason the Court should sequence the upcoming trial. D.I. 545; D.I. 563.

Moreover, counsel for VirnetX filed a putative consumer class action against Apple last year, *Grace, et al. v. Apple Inc.*, No. 5:17-CV-00551 (N.D. Cal.), alleging trespass to chattels and unfair competition based on these same false allegations. For similar reasons, and because the

*Grace* matter involves unrelated plaintiffs and unrelated causes of action, the Court also should preclude any reference to the *Grace* class action suit at the upcoming trial. Fed. R. Evid. 401–403; *see Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 409 (5th Cir. 2004) (affirming exclusion of evidence of past lawsuits because "any probative value . . . was outweighed by its prejudicial and inflammatory nature and by its tendency to confuse the jury with tangential litigation."); *DataTreasury*, 2010 WL 11538713, at *1–2 (granting motion *in limine* to preclude evidence of prior litigation by the plaintiff's counsel); *Mondis Tech., Ltd, v. LG Elecs., Inc.*, No. 2:07-CV-565, D.I. 528, slip op. at 3 (E.D. Tex., June 3, 2011) (granting motion *in limine* to preclude evidence of class actions against defendants).

## VI. REFERENCES TO iPHONE BATTERY HEALTH AND PERFORMANCE MANAGEMENT

The Court should exclude any reference to iPhone performance management and its relation to battery health, and any claims, allegations, or lawsuits concerning these issues. In January 2017, Apple delivered a software update that improved power management during peak workloads to avoid unexpected shutdowns of older iPhone models caused by diminished performance of aged batteries. After some users reported app launch delays and other reductions in performance, criticism surfaced in the press in December 2017 (describing the feature as supposed "throttling"), and a number of consumer class actions were filed. But battery life and performance management have nothing to do with the asserted patents, and have no relevance to infringement. Moreover, the January 2017 software update post-dates the accused features—***by years***: iOS 7–8 VPN On Demand (released in September 2013); iOS 7–8 FaceTime (released in

September 2013); and iOS 5–8 iMessage (released in October 2011).[2] Nor is this issue, which occurred years after the hypothetical negotiation, relevant to reasonable royalty damages. *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("the hypothetical negotiation approach . . . 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.'") (citation omitted). Because this issue has no relevance to this case and would cause confusion and undue prejudice at trial, the Court should not allow introduction of any evidence related to the issue. Fed R. Evid. 401–403; *see Compaq*, 387 F.3d at 409.

For similar reasons, the Court should also exclude any mention of related claims, allegations, or lawsuits pertaining to this issue, all of which concern matters not relevant to this case. *See DataTreasury*, 2010 WL 11538713, at *2 ("unrelated litigation is not relevant under Rules 401 and 402 . . ."); *see also Mondis Tech.*, slip op. at 3 (granting motion *in limine* on "unrelated news," including "class actions against Defendants").

## VII. EXPERT TESTIMONY FROM MR. LARSEN RELATING TO LICENSING

Prior to the -417 Action retrial, the Court granted-in-part Apple's motion *in limine* to preclude VirnetX fact witnesses from offering expert testimony. The sole exception was that Dr. Short could testify concerning issues "based upon his personal knowledge[.]" -417 D.I. 978 at 6. At the -417 Action retrial, however, Mr. Kendall Larsen (VirnetX's CEO), offered extensive expert testimony on licensing. Indeed, Mr. Larsen testified that he was an expert in licensing:

---

[2] The Court previously rejected VirnetX's improper attempt to introduce evidence of irrelevant events post-dating the period of accused infringement. *E.g.*, Ex. 9, 9/26/2016 PM Trial Tr. at 4–13 (sustaining objection to introduction of speech given in 2015).

9

> Q. Now, Mr. Larsen, you were asked a bunch of questions about the hypothetical negotiation. And I think we can all agree, you're an expert in licensing, right?
>
> A. Yes, sir.

Ex. 10, 9/28/2016 AM Trial Tr. at 148:15–18. Mr. Larsen also testified, among other things, that "[t]here are other licenses in the industry on products for hundreds and hundreds of features for more than what VirnetX is asking for here[]", *id.* at 45:14–17, to explain why VirnetX's licensing policy is reasonable, *id.* at 84:20–85:11, whether VirnetX's "approach to licensing [is] typical in the market[]" and "the real world[,]" *id.* at 92:19–23, and whether the amount requested from Apple is "fair[,]" *id.* at 94:10–14. This testimony—and Mr. Larsen's claim that he is a licensing expert—is not the testimony of a fact witness. It is the testimony of an expert. *See* Fed. R. Evid. 701, 702. VirnetX, however, cannot evade Rule 702 by "proffering an expert in lay witness clothing." Fed. R. Evid. 701, Advisory Committee Notes to 2000 Amendment. Mr. Larsen was never disclosed as an expert, nor did he serve an expert report, as Rule 26(a)(2)(B) requires. Accordingly, Mr. Larsen should be precluded from offering expert testimony, including, at a minimum, with respect to the amount of the royalty owed, the reasonableness of that royalty, and general licensing practices beyond those in which he was personally involved. *See Mobile Telecomms. Techs., LLC v. LG Elecs. Mobilecomm U.S.A., Inc.*, Case No. 2:13-cv-947-JRG-RSP, 2016 WL 3611559, at *1 (E.D. Tex. Feb. 4, 2016) (granting motion *in limine* to prohibit "improper opinion testimony made by a lay witness").

**VIII. ARGUMENT THAT APPLE FACT WITNESSES SHOULD HAVE REVIEWED NON-APPLE CONFIDENTIAL INFORMATION**

VirnetX should be precluded from introducing any argument or testimony asserting that Apple's fact witnesses should have reviewed information designated as confidential by another party in this case. This motion should be uncontroversial. Not only did the parties include this very provision in the Protective Order, D.I. 55 ¶ 22(i), the parties included it in their *agreed*

motions *in limine*. D.I. 392 ¶ 28. But based on VirnetX's conduct at the -417 trial, this motion *in limine* is necessary. Specifically, during the cross-examination of Mr. Bakewell in the -417 trial, VirnetX suggested that an Apple witness should have been present to testify about VirnetX's licenses. Although Mr. Bakewell explained that these licenses were designated "Confidential—Attorneys' Eyes Only" under the Protective Order, *compare* Ex. 11, 9/29/2016 PM Trial Tr. at 4:3–13:1 *with id.* at 54:19–56:21, VirnetX twice represented to the jury during its closing arguments that its licenses were public and that Apple employees should have read them.

> Now, I heard a couple of interesting excuses during the trial as to why Apple didn't show up. One of them was, oh, well, you all showed some licenses and they were marked confidential and our -- our employees couldn't have been present to see those.
>
> We didn't seal the courtroom when we were showing those licenses. Lots of folks have seen those licenses. That -- that's just an excuse that rings hollow.
>
> \*           \*           \*
>
> And, you know, you can have different perspectives on this idea of bringing witnesses. Apple argues, well, we don't bring witnesses because your contracts are -- are confidential; but you know what, they've been using it in open Court for years.

Ex. 1, 9/30/2016 PM Trial Tr. 34:16–23, 87:6–15. And despite telling the jury that Apple employees could see VirnetX's license agreements, VirnetX then moved to seal these very licenses after the trial, just as it did after every other trial. -417 D.I. 1048 at 1. Thus, VirnetX should not be permitted to falsely suggest that its licenses are public and freely viewable by Apple employees.

Dated: March 5, 2018                                    Respectfully submitted,

                                                        By: */s/ Robert A. Appleby*

                                                        Gregory S. Arovas
                                                        greg.arovas@kirkland.com

11

Robert A. Appleby
robert.appleby@kirkland.com
Jeanne M. Heffernan
jeanne.heffernan@kirkland.com
Joseph A. Loy
joseph.loy@kirkland.com
Leslie M. Schmidt
leslie.schmidt@kirkland.com
David N. Draper
david.draper@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Akshay Deoras
akshay.deoras@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael E. Jones
Texas Bar No. 10969400
mikejones@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College Avenue, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

*Attorneys for Apple Inc.*

**CERTIFICATE OF SERVICE**

I hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail on March 5, 2018. I also herby certify that all counsel of record who have consented to electronic service are being service with a notice of this document, under seal, pursuant to Local Rule CV-5(a)(7) on March 5, 2018.

/s/  Robert A. Appleby

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that the parties have complied with Local Rule CV-7(h)'s meet and confer requirement. Counsel for VirnetX and counsel for Apple have conferred via telephone conference and email during the past week.  The parties met and conferred, in good faith, and concluded, in good faith, that the discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve. VirnetX opposes the relief sought in this motion.

/s/  David N. Draper

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

/s/  Robert A. Appleby