*Exhibit B*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **VIRNETX INC. and,** | § | |
| **LEIDOS, INC.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **C.A. No. 6:12-cv-00855-RWS** |
| **v.** | § | |
| | § | |
| **APPLE INC.,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § | |
| | § | |

**PROPOSED JURY INSTRUCTIONS**

**1.    Introduction**

MEMBERS OF THE JURY:

You have now heard the evidence in this case, and I will instruct you now on the law that you must apply.  It is your duty to follow the law as I give it to you. On the other hand, you, the jury, are the sole judges of the facts.  Do not consider any statement that I may have made during the trial or make in these instructions as an indication that I have any opinion about the facts of the case. After I instruct you on the law, as I suggested, the attorneys will have an opportunity to make their closing arguments.  Statements and argument of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist you in understanding the evidence and what the parties' contentions are.

**1.1 General Instruction**

A verdict form has been prepared for you, and you will take this form with you to the jury room.  And when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. At the end of the instructions, I will take you through the verdict form before the parties begin their closing arguments.  Answer each

question on the verdict form from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.  With respect to each question asked, your answers and your verdict must be unanimous.

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all witnesses regardless of who may have called them and all exhibits received in evidence regardless of who may have produced them.  At times during the trial, it was necessary for the Court to talk with the lawyers here at the bench out of your hearing or by calling a recess.We met at the bench or when you were in the jury room because during trial, sometimes things come up that don't involve the jury. You should not speculate on what was discussed during such times. You are the jurors, and you are the sole judges of the credibility of all the witnesses and the weight and effect of all evidence. By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

### 1.2 Considering  Witness Testimony

[VirnetX proposes: In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact or whether there was evidence that some other time the witness said or did something or failed to say or do something that was different from the testimony the witness gave before you during trial.  You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory.  And the significance of that may

depend on whether it has to do with an important fact or with only an unimportant detail. In deciding whether to accept or rely upon the testimony of any witness, you may also consider any bias of the witness.][1]

[Apple proposes: You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not

---

[1] VirnetX proposed instruction has been agreed to in the past two trials.  Apple provides no reason that this instruction is no longer sufficient or that there is any compelling reason related to the Court's deconsolidation requiring a new instruction concerning the credibility of witnesses.

Additionally parts of Apple's instruction are already addressed elsewhere in the charge, at least with respect to the number of witnesses and how a single witness is sufficient to establish a fact if you believe that witness.

It also appears that Apple is making its proposal because its proposed instruction gives less discussion to intentional falsehoods.  As the Court is aware, Apple has misrepresented facts in this case, as will be shown yet again at this trial, and the jury should be informed about how to evaluate whether someone is testifying falsely.

the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.][2]

### 1.3    How to Examine the Evidence

Certain testimony in this case has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness testimony may be presented under oath in the form of a deposition.  Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  This deposition testimony is entitled to the same consideration and is to be judged by you as to the credibility and weight and otherwise considered by you insofar as possible the same as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.  The testimony of a single witness may be sufficient to prove

[2] Apple proposes using the Fifth Circuit Pattern Jury Instruction 3.4 on Witnesses.  This instruction is a more fulsome explanation of how to measure witness credibility, including demeanor, bias, and prejudice concerning the case.  It also informs the jury that the interest of a witness in a case outcome is no reason to discount the testimony, nor is number of witnesses necessarily determinative of credibility.  By contrast, VirnetX's proposed instruction focuses exclusively on impeachment and bias and does not inform the jury of other considerations in deciding witness credibility.  This is the first time this deconsolidated -855 case has been tried to a jury.  VirnetX's arguments about misrepresentation are baseless and not appropriate for jury instructions.  This instruction is appropriate in this section entitled "Considering Witness Testimony" and is taken verbatim from the Fifth Circuit Pattern Instruction.

any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case.  One is direct evidence, such as testimony of an eyewitness.  The other is indirect or circumstantial evidence, the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from all of the evidence, both direct and circumstantial.

[VirnetX proposes: The parties have stipulated, or agreed, to some facts in this case. When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the fact as proved.] [Apple proposes: Delete][34]  [VirnetX proposes: Additionally, it has been previously determined that prior versions of Apple's VPN on Demand and FaceTime features infringed the asserted claims of the patents-in-suit.  Like stipulated facts, these facts are binding, and you must regard them as proved.  You may not assume or infer, however, that the redesigned versions of VPN on Demand or FaceTime infringes, or that iMessage infringes, simply because of these prior determinations.] [Apple proposes: Delete or, if VirnetX is permitted to reference Apple's redesigns, Apple proposes: As I

---

[3]   Apple objects to this instruction as confusing and improper.  The jury should only be instructed that the parties have stipulated to certain facts if the trial record reflects such stipulations. Indeed, VirnetX identifies no stipulated facts that exist in this case, and thus, whether this instruction was agreed to or given in the vacated consolidated trial or the -417 trial does not govern whether the jury should be instructed about non-existent stipulations in this case.
[4]   The Court read these instructions at both the consolidated trial and the September 2016 -417 trial.  Apple has never objected to these instructions and certainly Apple provides no very clear, very compelling reason . . . based on the vacated consolidation order," 8/15/16 Tr. at 5-29, to raise an objection now.

explained to you at the beginning of the case, because a patent's claims put the public on notice

of the patent's boundaries, and because Apple was aware of VirnetX's patents, Apple could

design products or methods or change the design of existing products or methods so they do not

fall within the boundaries of those claims][6]

---

[5] Apple objects to VirnetX's proposed instruction.  Apple has moved *in limine* to preclude reference to the previously adjudicated versions of FaceTime and VPN On Demand.  Introducing such evidence is confusing and prejudicial, and has no relevance to the issues the jury must decide in this case. Moreover, it is error to suggest to the jury that the infringement analysis entails a comparison between "the accused product or process with … ***other version[s] of the product or process***" because "the only proper comparison is with the claims of the patent." *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994).  In contrast, Apple's proposed instruction is appropriate because the jury was instructed in the preliminary instructions how patent claims provide notice to the public of what those boundaries are.  This instruction is also appropriate because this deconsolidated -855 case has never been tried before.  VirnetX's argues about the merits of its infringement allegations.  Whether Apple's products infringe is an issue for the jury to decide, but this instruction objectively describes the public notice function of patent claims that jurors may not readily understand.

[6] VirnetX believes that it should be allowed to discuss the redesigns in this case at least because those adjudicated facts are relevant to the disputed issues in this one and for all the reasons stated in its forthcoming response to Apple's motion in *limines* related to prior versions of the accused features.  If VirnetX is permitted to discuss these determinations, the Court should instruct on the ways in which the jury is entitled to rely on them, as VirnetX's proposal proposes.  While adjudicated facts bind the jury, they should not be used inappropriately to infer character-based infringement because Apple has been found to infringe before.

VirnetX also objects to Apple's instructions about the public's theoretical ability to design products around patents.  First, the instruction could have been proposed in the consolidated trial, was not, and is therefore waived.  It does not raise any very clear, very compelling reason related to the deconsolidation.  Second, it is a misleading comment on the evidence.  While the public is permitted to design around patents, not all attempts to design around patents are valid, and VirnetX obviously contends that Apple has not designed its products in a way such that they "do not fall within the boundaries of those claims."  It is also misleading at least as to FaceTime in that it implies that Apple's non-infringement position at trial related to whether FaceTime includes the claimed indication is in fact the reason that Apple changed its products.  Finally, it is unnecessary.  The jury is being instructed on the meaning of the claim language and how to analyze infringement.  It is inherent in that analysis that parties can change their products to read differently on the claims.

### 1.4    Objections to Evidence

Attorneys representing clients in courts such as this one have an obligation in the course of trial to assert objections when they believe testimony or evidence is being offered that is contrary to the rules of evidence.  The essence of a fair trial is that it be conducted pursuant to the rules of evidence and that your verdict be based only on legally admissible evidence.  So you should not be influenced by the objection or by the Court's ruling on it.  If the objection is sustained, then ignore the question. If the objection is overruled, then you may treat the answer to that question just as you would treat the answer to any other question.

### 1.5    Expert Witnesses

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field, he or she is called an expert witness, is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether the witness's testimony is believable or not, whether it is supported by the evidence, and whether to rely upon it.  In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness.

## 2.    Contentions of the Parties

I will first give you a summary of each side's contentions in this [VirnetX proposal: in this phase of the] case.  I will then tell you what each side must prove to win on these issues.

VirnetX seeks damages from Apple for allegedly infringing certain claims of four VirnetX patents—specifically the '504, '211, '135, and '151 patents.  VirnetX contends that Apple has made, used, sold, or offered for sale in the United States, or imported into the United

States, products that practice the asserts claims of these patents.  Specifically, VirnetX contends that:

Apple's VPN on Demand feature infringes claim 1 and 7 of the '135 patent and claim 13 of the '151 patent.

Apple's FaceTime feature infringes claims 1, 2, 5, and 27 of the '504 and claims 36, 47, and 51 of the '211 patent.

Apple's iMessage feature infringes claims 1, 2, 5, and 27 of the '504 and claims 36, 47, and 51 of the '211 patent.

VirnetX seeks damages in the form of a reasonable royalty for this  infringement. VirnetX also contends that Apple induces this infringement.

In response to VirnetX's infringement contentions, Apple contends that these features do not infringe any claim of VirnetX's patents.  Apple further contends that it has not induced any other party's infringement.  Because Apple contends that none of the VPN On Demand, FaceTime, and iMessage features infringe, Apple further contends that VirnetX is not entitled to damages.

**3.     Burdens of Proof**

As I told you at the beginning of this trial, in any legal action, facts must be proved by a required amount of evidence known as the "burden of proof."  The burden of proof in this case is on VirnetX.  VirnetX has the burden of proving infringement and damages by a preponderance of the evidence. Preponderance of the evidence means the evidence that persuades you that a claim is more likely true than not true.  If the proof establishes that all parts of one of VirnetX's infringement claims are more likely true than not true, then you should find for VirnetX as to that claim.  [Apple proposes: But if you find that VirnetX has failed to prove any element of its claim

by a preponderance of the evidence, then VirnetX may not recover on its claim.][7,8]  In

determining whether any fact has been proved by a preponderance of the evidence, you may,

unless otherwise instructed, consider [VirnetX proposes: the stipulations] [Apple proposes:

Delete],[9] [10] the testimony of all witnesses, regardless of who may have called them, and all

exhibits received in evidence, regardless of who may have produced them.

## 4.     The Patent Claims

Before you can decide many of the issues in this case, you will need to understand the

role of patent "claims." The patent claims are the numbered sentences at the end of each patent.

The claims are important because it is the words of the claims that define what a patent covers.

The figures and text in the rest of the patent provide a description and/or examples of the

invention and provide a context for the claims. But it is the claims that define the breadth of the

patent's coverage.  Each claim is effectively treated as if it were a separate patent. And each

claim may cover more or less than another claim.  Therefore, what a patent covers depends in

turn on what each of its claims covers.

---

[7]  Apple proposes including this statement, which is taken directly from the Fifth Circuit Civil
Pattern Jury Instruction 3.2, so the jury understands that if a claim is not proven by a
preponderance of the evidence, it cannot find for VirnetX.  The previous sentence provides
clarity about the meaning of the term "claim" and the meaning of the term "element" is defined
from other sections of these instructions, including Section 5.1.  Moreover, this deconsolidated -
855 case has never been tried.
[8]  VirnetX objects to this proposal.  The Court has not read this instruction in either the
consolidated or September 2016 -417 trial.  Apple has never proposed a similar instruction and
provides no compelling reason to include it, particularly no reason related to the Court's decision
to deconsolidate the cases.  This instruction is also confusing, particularly is it relates to the word
"claim," which is ambiguous as it relates to a legal claim and a patent claim, and as it relates to
"element," which has not be defined and thus the jury would not know what it meant for VirnetX
to fail to prove any element of its claim.
[9]  *See supra* note 3.
[10]  The Court read these instructions at both the consolidated trial and the September 2016 -417
trial.  Apple has never objected to these instructions and certainly Apple provides no "very clear,
very compelling reason . . . based on the vacated consolidation order," 8/15/16 Tr. at 5-29, to
raise an objection now.

You will first need to understand what the Asserted Claims cover in order to decide whether or not there is infringement. The law says that it is the Court's role to define the terms of the claims and it is your role to apply these definitions to the issues that you are asked to decide in this case.  Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms at issue in this case.  And I have provided you those definitions of those terms in your juror notebook.  You must accept the definitions of these words in the claims as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including infringement.  The claim language I have not interpreted for you in your notebook is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art.

### 4.1 How a Patent Claim Defines What It Covers

I will now explain how a patent claim defines what it covers.  A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  If a device or system satisfies each of these requirements then it is covered by the claim.  In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing, such as a feature, product, process, or system meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a feature, product, process, or system where each of the claim elements or limitations is present in that feature, product, process, or system. Conversely, if the feature, product, process, or system meets only some, but not all, of the claim elements or limitations, then that feature, product, process, or system is not covered by the claim.

### 4.2 Independent and Dependent Claims

This case involves two types of patent claims: Independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, for example, Claim 1 of the '504 patent is an independent claim.

Other claims in the case are "dependent claims."  A dependent claim refers to another claim and includes all the requirements or parts of the claim to which it refers.  In this case, for example, Claim 2 of the '504 patent depends from Claim 1.  In this way, the claim "depends" on another claim.  The dependent claim then adds its own additional requirements.[11,12] To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers.  A product, feature, method or system that meets all of the requirements of both the dependent claim and the claims to which it refers is covered by that dependent claim.

### 4.3 Open-Ended  or "Comprising"  Claims

The beginning portion, or preamble, to some of the claims uses the word "comprising." "Comprising" and "comprises" mean "including but not limited to,"or "containing but not limited to."  Thus, if you decide that an accused feature includes all the requirements in that claim, the claim is infringed.  This is true even if the accused instrumentality includes components in addition to those requirements. For example, a claim to a table comprising a tabletop, legs, and

---

[11] For clarity, Apple proposes reordering the foregoing sentences as follows: "Other claims in the case are "dependent claims."  In this case, for example, Claim 2 of the '504 patent depends from Claim 1.  A dependent claim refers to another claim and includes all the requirements or parts of the claim to which it refers.  The dependent claim then adds its own additional requirements.  In this way, the claim "depends" on another claim."  VirnetX does not dispute that Apple's proposal adds clarity to the instruction, only that a different instruction was given in the vacated consolidated trial and the -417 case.  This -855 case, however, has not yet been tried and there is no reason not to clarify instructions, where possible.

[12] The Court read these instructions at both the consolidated trial and the September 2016 -417 trial.  Apple has never objected to these instructions and certainly Apple provides no very clear, very compelling reason . . . based on the vacated consolidation order," 8/15/16 Tr. at 5-29, to raise an objection now.  The parties are far beyond negotiating over minor wordsmithing.

glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

5.      **Infringement – Generally**

[VirnetX proposes: Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention.  Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent] [Apple proposes: Delete][1314].  [VirnetX proposes: You can have more than one patent governing an area of technology, although it may relate to different aspects of that technology.  The mere fact that Apple has patents related to part of the technology of the accused features is not a defense to the fact that someone else may have a patent related to another part of those features.][15][Apple proposes: The fact that multiple patents cover just one feature is a factor to consider in determining a particular patent or patents' value.][1617]

---

[13]  Apple objects to this proposal as incomplete, legally incorrect, misleading, and prejudicial.  By discussing the right to exclude in the context of a "valid patent," this proposal is likely to mislead jurors into believing that the patents in suit have been approved by the Patent Office when, in fact, the issued final written decisions show the Patent Office has found them unpatentable.  D.I. 970.  Furthermore, the proposal is entirely duplicative of instructions contained in the sections immediately following and Apple, therefore, respectfully submits that the objected to language should be removed from the instructions.  Finally, the -855 case alone has never been tried before.

[14] The Court read these instructions at both the consolidated trial and the September 2016 -417 trial.  Apple has never objected to these instructions and certainly Apple provides no very clear, very compelling reason . . . based on the vacated consolidation order," 8/15/16 Tr. at 5-29, to raise an objection now.

[15] VirnetX proposes this instruction only if Apple is specifically permitted to introduce evidence of its patents related to the accused feature and Apple actually does so.  Otherwise, this instruction would be inappropriate.

[16] Apple proposes this instruction only if VirnetX's proposed instruction immediately before is included in the final jury instructions.

[17] VirnetX objects to Apple's additional proposal.  When the Court read VirnetX's proposed instruction in the consolidated trial, Dkt. 428 at 10,

I will now instruct you as to the rules you must follow when deciding whether VirnetX has proven that Apple infringed the Asserted Claims.

### 5.1 Direct Infringement-  Literal Infringement

If a person makes, uses, offers to sell, or sells in the United States or imports into the United States what is covered by the claims of a patent without the patent owner's permission, that person is said to literally infringe the patent.  To determine literal infringement, you must compare [Apple proposal: independently] each of the accused features with the Asserted Claims, using my instructions as to the meaning of those patent claims.

A patent claim is literally infringed only if an accused feature, product, system, or method includes each and every element in that patent claim.  If the accused feature, product, system, or method does not contain one or more of the elements recited in a claim, then that feature, product, system, or method does not literally infringe that claim.   If you find that the accused product or method includes each element of the claim, then that product or method infringes the claim even if such product or method contains additional elements that are not recited in the claims.

[**VirnetX proposal:** An accused product directly infringes a claim if it reasonably capable of satisfying the claim elements even though it may also be capable of non-infringing modes of operation.  If a claim requires only that the product have the capacity to perform a

function, one who makes a product with that capability without the patent owners' authority is a direct infringer even though the maker's customer do not use the capacity.][18, 19]

If you find that the accused feature, product, system, or method includes each element of the claim, then that feature, product, system, or method infringes the claim, even if such feature, product, system, or method contains additional elements that are not recited in the claims.

A person may literally infringe a patent, even though in good faith the person believes that what it is doing is not an infringement of any patent, and even if it did not know of the patent. Literal infringement does not require proof that the person copied a product or the patent. You must consider each of the Asserted Claims individually. You must be certain to compare each accused feature, product, or system with each claim such feature, product, or system is alleged to infringe. Each accused feature, product, or system should be compared to the

---

[18] VirnetX proposes this instruction for error preservation purposes. The basis for this instruction is the following: All but the method claims are drawn to reasonable capability. For example, claim 36 of the '211 patent is drawn to "A non-transitory machine-readable medium comprising *instructions executable* . . ."). Claim 13 of the '151 patent is drawn to "A computer readable medium storing a domain name server (DNS) module comprised of computer readable instructions that, *when executed* . . ." Similar claims have been found to be drawn to capability. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217 (Fed. Cir. 2014); *Finjan, Inc. v. Secure Computing, Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010).

VirnetX also notes that the parties previously agreed in the -417 case to a stipulation concerning error preservation related to jury instructions. Apple apparently does not wish to abide by a similar stipulation in this case. Thus, VirnetX reserves the right to re-urge other objections from the consolidated trial for error preservation purposes, if necessary.

[19] Apple objects to VirnetX's statement that the parties have entered into a stipulation concerning the jury instructions. Apple further objects to this instruction as confusing, misleading, and irrelevant. VirnetX asserts both method and system claims in this case. Method claims are only infringed if each and every step of the method is performed. Contrary to what VirnetX proposes, "capability" alone is insufficient to establish infringement of a method claim. *ePlus, Inc v. Lawson Software, Inc.*, 700 F.3d 509, 521-22 (Fed. Cir. 2012) (reversing denial of JMOL of noninfringement because patentee only proved capability of performing the patented method, without evidence of actual use of the method).

limitations recited in the Asserted Claims, not to any preferred or commercial embodiment of the claimed invention.

You must analyze each Asserted Claim and each accused feature separately.  If you find that VirnetX has proved by a preponderance of the evidence that each and every limitation of that claim is present in the accused feature, method, or system, then you must find that such feature, method, or system infringes that claim.

[VirnetX proposes: You have heard evidence that Apple's VPN on Demand and FaceTime features at issue in this case were redesigned from prior versions previously determined to infringe the patents-in-suit.  While you may consider how those prior versions operated when evaluating whether the redesigned versions meet the requirements of the asserted claims of the patents-in-suit, you may not assume or infer that the redesigned VPN on Demand or FaceTime features infringe simply because of these prior determinations.] [Apple proposes: Delete or, if VirnetX is permitted to discuss redesigns, further instruction the jury that: As I explained to you at the beginning of the case, because a patent's claims put the public on notice of the patent's boundaries, and because Apple was aware of VirnetX's patents, Apple could change the design of the VPN On Demand and FaceTime features so they do not fall within the boundaries of those claims.  There is no minimum amount of change that Apple had to implement in the VPN On Demand and FaceTime features to avoid infringement.  What matters

is whether VirnetX has proven by a preponderance of the evidence that those features infringe][20,21]

[VirnetX Proposes: **Direct Infringement – Doctrine of Equivalents**

---

[20] *See supra* note 5.  Apple has filed motions in *limine* on this issue.  VirnetX bears the burden of showing that each limitation of each asserted claim is present in the accused products, and VirnetX's opposition to this instruction further undermines its contention that it should be able to discuss the fact that FaceTime and VPN On Demand are redesigns.  Specifically, VirnetX contends that Apple did not implement the "minimum" amount of change required to avoid infringement.  But this is exactly the question the jury must answer for itself by comparing the accused features to the asserted claims, not by comparing changes between one version of FaceTime and another.

[21] VirnetX believes that it should be allowed to discuss the redesigns in this case at least because those adjudicated facts are relevant to the disputed issues in this one and for all the reasons stated in its forthcoming response to Apple's motion in *limines* related to prior versions of the accused features.  If VirnetX is permitted to discuss these determinations, the Court should instruct on the ways in which the jury is entitled to rely on them, as VirnetX's proposal proposes.  While adjudicated facts bind the jury, they should not be used inappropriately to infer character-based infringement because Apple has been found to infringe before.

VirnetX also objects to Apple's instructions about the public's theoretical ability to design products around patents.  First, the instruction could have been proposed in the consolidated trial, was not, and is therefore waived.  It does not raise any very clear, very compelling reason related to the deconsolidation.  Second, it is a misleading comment on the evidence.  While the public is permitted to design around patents, not all attempts to design around patents are valid, and VirnetX obviously contends that Apple has not designed its products in a way such that they "do not fall within the boundaries of those claims."  It is also misleading at least as to FaceTime in that it implies that Apple's non-infringement position at trial related to whether FaceTime includes the claimed indication is in fact the reason that Apple changed its products.  Finally, it is unnecessary.  The jury is being instructed on the meaning of the claim language and how to analyze infringement.  It is inherent in that analysis that parties can change their products to read differently on the claims.

Finally, Apple's final two sentences are misleading.  There *is* a minimum amount of change that Apple had to implement in VPN on Demand and FaceTime to avoid infringement; they had to change the products sufficiently to avoid practicing at least one limitation adjudicated to infringe.  Apple's instruction incorrectly implies that any change in product design avoids infringement when it is only particularly designs sufficient to design around the actual words of the actual claims that could avoid infringement.

A claim limitation is present in an accused product or method under the doctrine of equivalents if the differences between the claim limitation and a comparable element of the accused product are insubstantial.

One way to determine whether a difference is insubstantial is to look at whether the accused product or method performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed invention.

You may also consider whether, at the time of the alleged infringement, a person having ordinary skill in the field of technology of the patent would have known of the interchangeability of the alternative feature and the unmet requirement of the claim.

Interchangeability at the present time is not sufficient. In order for the structures to be considered to be interchangeable, the interchangeability of the two structures must have been known to persons of ordinary skill in the field of technology at the time the infringement began.

Thus, the inventor need not have foreseen and the patent need not describe all potential equivalents to the invention covered by the claims. Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be considered equivalent for the purposes of the doctrine of equivalents. In order to prove direct infringement by the doctrine of equivalents, VirnetX must prove the requirements are met by a preponderance of the evidence.[22] [**Apple proposes:** Delete].[23]

---

[22] Verbatim from the Court's charge in the November 2012 trial, the last *VirnetX* trial including a doctrine of equivalents theory.

[23] Apple objects to any assertion of infringement under the doctrine of equivalents because VirnetX confirmed that it "will not be presenting a doctrine of equivalents theory" before the consolidated -855 trial.  1/24/2016 Summers to Loy and Mizzo.  Because doctrine of equivalents was not presented at the consolidated -855 trial, and because VirnetX is asserting infringement in this case against feature that were at issue the consolidated case, VirnetX has no basis for resurrecting this theory now and VirnetX cannot assert infringement under the doctrine of equivalents.

### 5.3 Indirect Infringement

VirnetX alleges that Apple is also liable for indirect infringement by actively inducing others to directly infringe the Asserted Claims.  As with direct infringement, you must determine whether there has been indirect infringement by active inducement on a claim-by-claim and feature-by-feature basis.

Although VirnetX need not prove that Apple has directly infringed to prove indirect infringement, VirnetX must prove that someone has directly infringed.  If there is no direct infringement by anyone, Apple cannot have actively induced the infringement of the patent.

To show active inducement of infringement, VirnetX must prove by a preponderance of the evidence that Apple's customers **[VirnetX's proposal:** or end-users][**Apple proposes: Delete**][24][25] have directly infringed the asserted claims of the patents-in-suit, and that Apple has actively and knowingly aided and abetted that direct infringement.

Apple is liable for active inducement of a claim only if:

(1)      Apple has taken action during the time the patent is in force which encourages acts by someone else;

(2)      the encouraged acts constitute direct infringement of that claim;

(3)      Apple

- is aware of the patent and knows that the encouraged acts constitute infringement of the patent, or;

---

[24] Apple objects to "or end-users" as confusing, misleading and prejudicial because VirnetX has not explained who "end users" are or how Apple can allegedly induce infringement by people other than its customers. This deconsolidated trial has never been tried.

[25] The Court read VirnetX's proposed instruction at the consolidated trial.  Apple raises no unique issue to re-litigate it.

- is willfully blind to the infringement of the patent.  Willful blindness requires that Apple subjectively believed that there was a high probability that the encouraged acts constituted infringement of the patent and Apple took deliberate actions to avoid learning of the infringement.

(4)  Apple has the intent to encourage infringement by someone else; and

(5)  The encouraged acts are actually carried out by someone else.

In order to prove active inducement, VirnetX must prove that each of the above requirements is met by a preponderance of the evidence.  That is, that it is more likely true than not that each of the above requirements has been met.  If you find that Apple was aware of the patent but believed that the acts it encouraged did not infringe that patent, Apple cannot be liable for active inducement of infringement.  In order to establish active inducement of infringement, it is not sufficient that Apple was aware of the acts that allegedly constituted the direct infringement.  Rather, you must find that Apple specifically intended to cause the acts that constitute the direct infringement and must have known or was willfully blind that the action would cause direct infringement.  If you do not find that Apple meets these specific intent requirements by a preponderance of the evidence, then you must find that Apple has not actively induced the alleged infringement.

**6.     Damages – Generally**

I will now instruct you on damages.  If you find that Apple has infringed any claim of VirnetX's patents-in-suit, you must determine the amount of damages to which VirnetX is entitled.

The amount of damages must be adequate to compensate VirnetX for the infringement. At the same time, your damages determination must not include additional sums to punish Apple

or to set an example.  You may award compensatory damages only for the loss that VirnetX proves was more likely than not caused by Apple's infringement.

VirnetX seeks damages in the form of a reasonable royalty.  **[VirnetX's proposal:** Generally, a reasonable royalty is the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the patent owner should expect

to receive.]²⁶²⁷   [**Apple's proposal:** Generally, a reasonable royalty is the reasonable amount that someone wanting to use the patented invention would be willing to pay to the patent owner and the patent owner would be willing to receive.]

---

[26] The Court read VirnetX's instruction in both the consolidated and -417 trial.  This decision was fully supported by the case law.  And the Court has already determined that the instructions as a whole adequately instructed the jury about damages and the hypothetical negotiation.  There is no reason to change the instruction now.  This is particularly true for the reasons VirnetX has previously objected to Apple's instruction:

VirnetX's proposal more accurately captures the relevant framework of the hypothetical negotiation.  The jury is later instructed about willing licensor and willing licensee and Apple's proposed sentence, as written, places undue emphasis on willingness, which is something that is assumed away in the hypothetical negotiation.  Further, the authority cited by Apple does not fit the facts of the case.  First, Apple has not cited a single cased which indicates that the reasonable royalty is anything about what the patentee is "willing to receive."  That is not the appropriate test.  In fact, this is expressly *not* the test.  *See, e.g.*, *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 900 (Fed.Cir.1986) ('That [the patentee] might have agreed to a lesser royalty is of little relevance, for to look only at that question would be to pretend that the infringement never happened.").  Further, the authority relied on by Apple is a line of statements concerning an infringer's willingness to pay "and yet be able to make[, use, or sell] the patented article, in the market, at a reasonable profit." *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766 (Fed. Cir. 2014).  Because the parties have offered no evidence concerning Apple's profits, profit margins, or the like, this concept has no place in the jury's consideration of the reasonable royalty.  For this additional reason, Apple's "willing to pay" and "willing to receive" proposal should be rejected.

For the avoidance of doubt, this instruction is routinely given in this district, by this Court and others, to introduce this concept to the jury.  *See, e.g.*, *Adaptix. Inc. v. Alcatel-Lucent USA, Inc.*, 12:cv-22-RWS (Dec. 21, 2015), Dkt. 594 at 27 ("Generally, a reasonable royalty is defined by the patent laws as the reasonable amount the someone wanting to use the patented invention should expect to pay to the patent owner and the Owner should expect to receive."); *NobelBiz, Inc. v. Global Connect, LLC*, 12-cv-00244-RWS, Dkt. at 327 at 33 (E.D. Tex. Sept. 16, 2015) (same); *EVEM Sys. LLC v. Rex Med., LP*, 13-cv-184-RWS (E.D. Tex. Aug. 24, 2015), Dkt. 210 at 25 (same); Court's Final Jury Instruction, *VirnetX v. Apple Inc.*, Case No. 6:10-cv-417, Dkt. 597 (E.D. Tex. Nov. 6, 2012) (same).

[27] VirnetX's instruction is contrary to the law.  "The Federal Circuit has made clear that a reasonable royalty is the amount that 'a person, desiring to manufacture [, use, or] sell a patented article, as a business proposition, ***would be willing to pay*** as a royalty and be able to make[, use, or] sell the patented article, in the market, at a reasonable profit." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (quoting *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984)) (emphasis added); *see also Powell v. Home*

6.1 **Damages- Burden of Proof**

Where the parties dispute a matter concerning damages, it is VirnetX's burden to prove the amount of damages by a preponderance of the evidence.  VirnetX must prove the amount of damages with reasonable certainty but need not prove the amount of damages with mathematical precision.  However, VirnetX is not entitled to damages that are remote or speculative.  In other words, you should award only those damages that VirnetX establishes that it more likely than not suffered.

6.2 **Damages – Reasonable Royalty**

A reasonable royalty is the amount of money a willing patent owner and a willing prospective licensee would have agreed upon at the time the infringement began for a license to make, use, or sell the invention.  It is the royalty that would have resulted from an arm's length negotiation between a willing licensor and a willing licensee.  This is known as the hypothetical negotiation.  **[VirnetX proposes:** Unlike in a real world negotiation, all parties to the hypothetical negotiation are presumed to believe that the patent is infringed and valid.]**[Apple**

_____

*Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011) (discussing evidence "regarding a reasonable royalty that Home Depot would have been ***willing to pay*** for the ongoing use of his invention") (emphasis added). VirnetX has no support for its contention that this long-standing precedent should be changed to suit its proposed instruction.  VirnetX contends that this instruction cannot be given because Apple's profits are not relevant to damages.  True, but irrelevant.  The willing licensor/willing licensee construct cannot be separated from the hypothetical negotiation.  VirnetX's desire to do so invites legal error.

**proposes:  Delete**][2829] In considering this hypothetical negotiation, you should focus on what the expectations of patent owner and the infringer would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred.  Should you find that iMessage infringes, the time of the hypothetical negotiation would be October 2011.  [**VirnetX proposes**: Otherwise, the date of the hypothetical negotiation would be September 2013, when the redesigned versions of VPN on Demand and FaceTime were released.][30], [**Apple proposes**: If you find that iMessage does not infringe but that VPN On Demand or FaceTime infringe, then the date of the hypothetical negotiation is September 2013.][31]

---

[28] The Court read VirnetX's instruction in both the consolidated and -417 trial.  This decision was fully supported by the case law.  This is an axiomatic principle of reasonable royalties and the hypothetical negotiation that, although sometimes phrased differently, is instructed upon in literally every case.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) ("The hypothetical negotiation also assumes that the asserted patent claims are valid and infringed.")  Further, both Mr. Weinstein and Mr. Bakewell rely on this assumption in their damages models.  Finally, the infringement and invalidity assumption, as distinguished from real world negotiations, is extremely important to the comparability analysis which the jury will be required to conduct.

[29] Apple objects to this proposal as an incorrect statement of the law.  It is VirnetX's burden to prove infringement and cannot ask the Jury to assume that it has done so.  Further, validity is not an issue in this case.  Injecting validity into this instruction is confusing, misleading, and unnecessary.

[30] VirnetX proposes this instruction only in the event that its motion for partial summary judgment of damages is denied.  As stated in that motion, VirnetX believes both parties agreed that the hypothetical negotiation in June 2009 would govern any subsequent infringements in this case.  VirnetX also disagrees with Apple's objections, as the immediately preceding sentence makes clear that infringement by iMessage is disputed.

[31] Apple objects to VirnetX's proposed instruction because it suggests that FaceTime and VPN On Demand have been found to infringe, which is not correct.  Moreover, for the reasons

23

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when Apple first infringed that patent and the facts that existed at that time.  However, evidence of things that happened after the infringement first began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

Your determination does not depend on the actual willingness of the parties to the lawsuit to engage in such negotiations [**Apple proposes**: in the real world].[32][33]  Your focus should be on what the parties' expectations would have been had they entered into negotiations for royalties [**Apple proposes**: and both sides were willing participants][34][35] at the time of the hypothetical negotiation.

## 6.2 Reasonable Royalty Factors

---

explained in Apple's opposition to VirnetX's motion for summary judgment, D.I. 555, 569, the date of the hypothetical negotiation in this case is not, as a matter of law, June 2009.

[32]  As written, the instruction is confusing and suggests that the jury need not assume that the parties would enter into negotiations, even though the hypothetical negotiation construct assumes that the parties would do so.  It would be helpful to clarify that the jury need not assume that the parties would engage in such negotiations in the real world.  Apple did not waive an objection to this, or any, jury instruction in this case.  This case has never been tried separate from the -417 case.

[33] Yet again, this is an objection that was waived from the consolidated trial and rejected on that basis in the September 2016 -417 trial.  Thus, the Court has read instructions without this language in both prior trials.

[34]  Apple proposes reminding the jury that it must assume that the parties are willing participants in the negotiation, to further clarify differences between a hypothetical negotiation and a real world negotiation.  Apple did not waive an objection to this, or any, jury instruction in this case.  This case has never been tried separate from the -417 case.

[35] Yet again, this is an objection that was waived from the consolidated trial and rejected on that basis in the September 2016 -417 trial.  Thus, the Court has read instructions without this language in both prior trials.

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that the patent owner and the alleged infringer would consider in setting the amount the alleged infringer should pay. I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.  They are as follows[36]:

- The royalties received by the patentee for licensing of the patents-in-suit, proving or tending to prove an established royalty.

- Royalties paid for other patents comparable to the patents-in-suit.

- The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory, or with respect to the parties to whom products may be sold.

- Whether or not the licensor had an established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

- The commercial relationship between the licensor and the licensee, such as whether they are competitors in the same territory, in the same line of business, or whether they are inventor and promoter.

- Whether being able to use the patented invention helps in making sales of other products or services.

- The duration of the patent and the term of the license.

---

[36] Apple objects to the inclusion *Georgia-Pacific* factors for which evidence related to those factors is not introduced at trial.

- The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

- The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

- The extent of the licensee's use of the patented invention and any evidence probative of that use.

- The portion of the profits that is due to the patented invention as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by the licensee.

- Expert opinions as to what would be a reasonable royalty.

- The amount that a licensor and a licensee would have agreed upon if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which an accused infringer would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to the patent owner if it had been willing to create a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. [VirnetX proposes: In determining a reasonable royalty, you may also consider whether or not Apple had a commercially acceptable non-infringing alternative to taking a license from the patent holder that was available at the time of the hypothetical negotiations and whether that would have affected the reasonable royalty the

parties would have agreed upon.][Apple proposes: Delete]37 38 The framework which you should use in determining a reasonable royalty is a hypothetical negotiation between normally prudent business people. In considering the evidence of a reasonable royalty, you're not required to accept one specific figure or another for the reasonable royalty.  You are entitled to determine what you consider to be a reasonable royalty based upon your consideration of all of the evidence presented by the parties, whether that evidence is of a specific figure or a range of figures.

---

37 Apple objects to this instruction as prejudicial, duplicative, and likely to lead to confusion. The jury will be instructed on the *Georgia-Pacific* factors, which already address the relevance of non-infringing alternatives.  Therefore, this instruction prejudicially raises the importance of this factor above the other *Georgia-Pacific* factors and is also an improper commentary on the evidence to be presented.

38 The Court read this instruction verbatim at the September 2016 -417 retrial.  The Court ruled that the existence or non-existence of non-infringing alternatives was relevant to damages and the parties presented evidence on that point.  The Court then overruled Apple's objection and read this proposed instruction.

The instruction is appropriate.  The Federal Circuit has indicated that "non-infringing alternatives" are not simply a defense to damages; they are the "core economic question" in hypothetical negotiation.  *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) ("In hypothetical negotiation terms, the ***core economic question*** is what the infringer, in a hypothetical pre-infringement negotiation under hypothetical conditions, would have *anticipated* the profit-making potential of use of the patented technology to be, ***compared to using non-infringing alternatives***."); *See* 10/18/12 Pre-Trial Conference Tr. at 204:21-23 (APPLE'S COUNSEL: "The cost to design around and remove infringement basically tells you what the value of patented feature is.").  Accordingly, the jury is entitled to consider whether ***or not*** any commercially acceptable alternative exists.  VirnetX also notes that this identical instruction is routinely given in cases in the District.  *See, e.g.*, The Court's Final Instructions, *VirnetX v. Apple*, 10-cv-417 (E.D. Tex.) (Dkt. 597 at 39); *Personal Audio v. CBS Corp*. 13-cv-270-JRG (E.D. Tex.) (Dkt. 68 at 54); *SimpleAir v. Google*, 11-cv-416-JRG (E.D. Tex.) (Dkt. 654 at 39); *DDR Holdings v. Digital River*, 6:cv-0042-JRG (E.D. Tex.) (Dkt. 532 at 66).

VirnetX also notes that Apple's argument concerning *Georgia-Pacific* is wrong.  Apple objects based on confusion and inclusion in the *GP* factors, but that's not accurate.  GP factor 9 deals with "old modes" and does not adequately address "non-infringing" modes or alternatives.

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question or for rights to similar technologies.  A license agreement need not be perfectly comparable to a hypothetical license that would have been negotiated between VirnetX and Apple in order for you to consider it. However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between VirnetX and Apple when you make your reasonable royalty determination, including the type of technology licensed, whether the license contained a cross-license and/or similar patent protections, whether the license contained any value related to a release of liability, the date when the license was entered, the financial or economic conditions of the parties at the time the parties entered into the license, the extent of use, if any, of any particular licensed patents, the number of patents involved in the license, whether or not the license covered foreign intellectual property rights, the extent to which litigation may have affected the license, and whether contrary to the hypothetical negotiation the licensee in the real world license, at the time of entering the license, believed that the patents were either not infringed or were invalid.

VirnetX has relied on license agreements in which royalties were based on a percentage of the entire price of the licensed end-products.  But in determining a reasonable royalty, you must not rely on the overall price of Apple's accused products at issue in this case. Damages for patent infringement must be apportioned to reflect the value the invention contributes to the accused products or features and must not include value from the accused products or features that is not attributable to the patent.

**[Apple's proposal:**

**6.3      Reasonable Royalty: Entire Market Value Rule**

There is one exception to the general rule that damages must be apportioned to reflect only the value the invention contributes to the accused products or features.  Only if you find by a preponderance of the evidence that VirnetX has proven that the patented functionality in the accused products or features alone creates the basis for customers' demand for the entire product or feature, may you calculate damages based on the value of the entire product or feature.  However, merely showing that the patented functionality is viewed as valuable, important, or even essential to the use of the product or feature is not enough to show that the patented functionality is the basis for customers' demand for the product or feature.][39] [40]

### 7.    Instructions for Deliberations

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences. You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  All persons, including corporations, and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you, as well as the exhibits which the Court has admitted into evidence.  You will select your foreperson and conduct your deliberations.  If you recess during your deliberations, please follow all of the instructions that the Court has given you about your conduct during the trial.

---

[39] Because VirnetX's damages models invoke the entire-market value rule, the jury should be instructed on this issue.

[40] The Court should reject this instruction for the same reasons it has done so in the prior two trials.  VirnetX is not relying on an EMVR analysis, as the Court has already held.

After you have reached your verdict, your foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

Any notes that you may have taken during the trial, of course as we discuss at the beginning, are only aids to your memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  Your notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, please give a written message or a question to the Court Security Officer, and we will provide you with sheets on which to do that, and she will bring it to me.  I will then respond as promptly as possible, either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

And then finally, after you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.