**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **VIRNETX INC. AND** | § | |
| **LEIDOS, INC.,** | § | |
| | § | **Civil Action No. 6:12-cv-855-RWS** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **FILED UNDER SEAL** |
| | § | |
| **APPLE INC.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendant**. | § | |

**APPLE'S OPPOSITION TO VIRNETX'S MOTION FOR ENTRY OF JUDGMENT AND**
**EQUITABLE AND STATUTORY RELIEF**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     **Introduction** ....................................................................................................... 1

II.    **Enhanced Damages Should Be Denied** ........................................................ 1

     A.    Apple Did Not Misrepresent Facts Regarding FaceTime ....................... 2

     B.    The Jury's Willfulness Finding Alone Does Not Warrant Enhanced Damages ................................................................................................... 5

     C.    The *Read* Factors Confirm Enhancement is Not Warranted .................. 5

         1.    Apple Did Not Deliberately Copy VirnetX's Ideas or Design .................. 6

         2.    Apple Investigated the Scope of VirnetX's Patents and Formed a Good-Faith Belief They Were Invalid and Not Infringed .......................... 8

         3.    Apple Litigated Fairly ............................................................................. 11

         4.    Apple's Success Is No Reason to Increase Damages ............................... 16

         5.    Apple Presented Reasoned and Justified Defenses .................................. 16

             a.    Redesigned FaceTime ...................................................................... 17

             b.    Redesigned VPN On Demand ......................................................... 18

             c.    The Damages and Willfulness Verdicts ........................................... 19

         6.    Apple Promptly Redesigned Its Products ................................................ 19

         7.    Apple Took Remedial Action ................................................................... 21

         8.    Apple Had No Motivation to Harm VirnetX ........................................... 21

         9.    Apple Did Not Conceal Any Alleged Misconduct .................................. 22

III.    **VirnetX's Motion for Attorneys' Fees Should Be Denied** ........................... 24

IV.    **An Accounting for Supplemental Damages Should Occur after Appeals Are Decided** ........................................................................................................... 27

V.     **VirnetX Is Not Entitled to Equitable Relief** ............................................... 27

     A.    No Equitable Factor Favors Entry of an Injunction ............................... 29

i

1.      VirnetX Has Not Suffered Irreparable Harm............................................ 29

        a.      VirnetX Will Not Suffer Irreparable Harm without an
                Injunction ...................................................................................... 30

        b.      No Nexus Exists Between Any Harm to VirnetX and Any
                Infringement by Apple .................................................................. 33

2.      Monetary Remedies Can Remedy Any Harm to VirnetX ........................ 35

3.      The Balance of Hardships Weighs Against an Injunction ........................ 36

4.      An Injunction Is Contrary to the Public Interest ...................................... 38

B.      If an Ongoing Royalty Is Awarded, It Should Not Be Enhanced ......................... 40

C.      Equitable Relief Should Be Stayed Pending the Appeal of this Case and the
        Appeal of the PTO Proceedings for the Patents-in-Suit ....................................... 42

**VI.     Prejudgment Interest Should Not Be Awarded, and Costs and Postjudgment
          Interest Should Only Be Awarded If Judgment Is Entered for VirnetX................... 44**

A.      Withholding Prejudgment Interest Is Justified ...................................................... 44

B.      Costs and Postjudgment Interest Are Warranted Only If Judgment Is
        Entered for VirnetX ............................................................................................... 45

**VII.    Conclusion ..................................................................................................................... 45**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Med. Optics, Inc. v. Alcon Labs., Inc.*,
  No. 03-1095, 2005 WL 3454283 (D. Del. Dec. 16, 2005), *dismissed*, 197 F.
  App'x 939 (Fed. Cir. 2006) ................................................................................................44

*Amado v. Microsoft Corp.*,
  517 F.3d 1353 (Fed. Cir. 2008)..........................................................................................40

*Apple Inc. v. Samsung Elecs. Co.*,
  735 F.3d 1352 (Fed. Cir. 2013).................................................................................29, 34, 35

*Apple, Inc. v. Samsung Elecs. Co.*,
  No. 12-00630, 2014 WL 6687122 (N.D. Cal. Nov. 25, 2014) ..............................................40

*Arctic Cat Inc. v. Bombardier Recreational Prods.*,
  198 F. Supp. 3d 1343 (S.D. Fla. 2016) ................................................................................20

*Barry v. Medtronic, Inc.*,
  250 F. Supp. 3d 107 (E.D. Tex. 2017).............................................................................7, 14

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
  402 U.S. 313 (1971)............................................................................................................40

*Braun Inc. v. Dynamics Corp.*,
  975 F.2d 815 (Fed. Cir. 1992).............................................................................................10

*Calypso Wireless v. T-Mobile USA Inc.*,
  No. 08-cv-441, 2015 WL 1022745 (E.D. Tex. Mar. 5, 2015) ..............................................27

*Canon, Inc. v. Color Imaging, Inc.*,
  292 F. Supp. 3d 1357 (N.D. Ga. 2018) ................................................................................7

*Cohesive Techs., Inc. v. Waters Corp.*,
  543 F.3d 1351 (Fed. Cir. 2008)...........................................................................................11

*Conceptus, Inc. v. Hologic, Inc.*,
  No. 09-02280, 2012 WL 44064 (N.D. Cal. Jan. 9, 2012).....................................................45

*Consol. Canal Co. v. Mesa Canal Co.*,
  177 U.S. 296 (1900)............................................................................................................38

*Convolve, Inc. v. Dell Inc.*,
  No. 08-cv-244, 2017 WL 2463398 (E.D. Tex. June 7, 2017) ..................................................5

*Core Wireless Licensing S.a.r.l. v. Apple Inc.*,
   No. 12-100, 2015 WL 4880624 (E.D. Tex. Aug. 11, 2015) ........................................26, 27, 42

*Creative Compounds, LLC v. Starmark Labs., Inc.*,
   No. 07-22814, 2010 WL 2757196 (S.D. Fla. 2010) .................................................................20

*CSIRO v. Buffalo Tech. Inc.*,
   492 F. Supp. 2d 600 (E.D. Tex. 2007) ....................................................................................36

*Cybor Corp. v. FAS Techs., Inc.*,
   138 F.3d 1448 (Fed. Cir. 1998) ...............................................................................................19

*Davis v. Alaska*,
   415 U.S. 308 (1974) .................................................................................................................15

*DietGoal Innovations LLC v. Chipotle*,
   No. 12-764, 2015 WL 1284669 (E.D. Tex. Mar. 20, 2015) (Bryson, J., sitting
   by designation) .........................................................................................................................27

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
   717 F.3d 1336 (Fed. Cir. 2013) ..........................................................................................32, 33

*E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*,
   835 F.2d 277 (Fed. Cir. 1987) .............................................................................................42, 43

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) .................................................................................................................37

*Electro Sci. Indus., Inc. v. Ge. Scanning Inc.*,
   247 F.3d 1341 (Fed. Cir. 2001) ...............................................................................................21

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
   No. 13-cv-5038, 2016 WL 4208236 (N.D. Cal. Aug. 10, 2016) ........................................16, 24

*Fractus, S.A. v. Samsung Elecs. Co.*,
   876 F. Supp. 2d 802 (E.D. Tex. 2012) ....................................................................................39

*Fractus, S.A. v. Samsung Elecs. Co.*,
   No. 09-cv-203, 2013 WL 1136964 (E.D. Tex. Mar. 15, 2013) ..................................................5

*Freeman v. Pitts*,
   503 U.S. 467 (1992) .................................................................................................................40

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
   721 F.3d 1330 (Fed. Cir. 2013) ...............................................................................................10

*Gen. Motors Corp. v. Devex Corp.*,
   461 U.S. 648 (1983) .................................................................................................................44

*Genband US LLC v. Metaswitch Networks Corp.*,
No. 14-cv-33, 2016 U.S. Dist. LEXIS 5158 (E.D. Tex. Jan. 15, 2016)....................................6

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016) ................................................................................................ *passim*

*Howlink Glob. v. Centris Info. Servs., LLC*,
No. 11-cv-71, 2015 WL 216773 (E.D. Tex. Jan. 8, 2015) ................................................25, 27

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010), *aff'd,* 564 U.S. 91 (2011) ................................................32, 37

*Int'l Rectifier Corp. v. IXYS Corp.*,
383 F.3d 1312 (Fed. Cir. 2004)........................................................................................37

*Interform Inc. v. Staples Inc.*,
No. 13-281, 2015 WL 4575224 (E.D. Tex. July 29, 2015) ....................................................27

*Itron, Inc. v. Benghiat*,
No. Civ. 99-501, 2003 WL 22037710 (D. Minn. Aug. 29, 2003) ...........................................27

*Judkins v. HT Window Fashions Corp.*,
704 F. Supp. 2d 470 (W.D. Pa. 2010)..............................................................................20, 21

*Jurgens v. CBK, Ltd.*,
80 F.3d 1566 (Fed Cir. 1996).............................................................................................8

*Mears Tech., Inc. v. Finisar Corp.*,
No. 13-cv-376, 2015 WL 9269243 (E.D. Tex. Dec. 21, 2015) ........................................25, 27

*Mentor H/S, Inc. v. Med. Device All., Inc.*,
244 F.3d 1365 (Fed. Cir. 2001).........................................................................................21

*MercExchange, L.L.C. v. eBay, Inc.*,
500 F. Supp. 2d 556 (E.D. Va. 2007) .......................................................................36, 38, 39

*Mondis Tech. Ltd. v. Chimei Innolux Corp.*,
No. 11-378, 2012 WL 1554645 (E.D. Tex. Apr. 30, 2012)...............................................41, 42

*Nichia Corp. v. Everlight Ams., Inc.*,
855 F.3d 1328 (Fed. Cir. 2017).........................................................................................30

*Nken v. Holder*,
556 U.S. 418 (2009)........................................................................................................42

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014)...........................................................................................24, 25, 27

*Odetics, Inc. v. Storage Tech. Corp.*,
185 F.3d 1259 (Fed. Cir. 1999)..........................................................................22

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
138 S. Ct. 1365 (2018)......................................................................................26

*Ortho Pharm. v. Smith*,
959 F. 2d 936 (Fed. Cir. 1992)..........................................................................11

*Paice LLC v. Toyota Motor Corp.*,
504 F.3d 1293 (Fed. Cir. 2007).....................................................................28, 40

*Peach State Labs, Inc. v. Envtl. Mfg. Sols., LLC*,
No. 09-395, 2012 WL 503839 (M.D. Fla. Jan. 13, 2012), *report and
recommendation adopted*, 2012 WL 503837 (M.D. Fla. Feb. 15, 2012) ..............43

*Pope Mfg. Co. v. Gormully*,
144 U.S. 224 (1892).........................................................................................39

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*,
No. 11-cv-761, 2016 WL 6537977 (N.D.N.Y. Nov. 3, 2016).................................7

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
875 F.3d 1369 (Fed. Cir. 2017)............................................................................5

*R-BOC Reps., Inc. v. Minemyer*,
233 F. Supp. 3d 647 (N.D. Ill. 2017) ...................................................................5

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992)................................................................... *passim*

*Riles v. Shell Expl. & Prod. Co.*,
298 F.3d 1302 (Fed. Cir. 2002)..........................................................................23

*Romag Fasteners, Inc. v. Fossil, Inc.*,
No. 10-1827, 2014 WL 4073204 (D. Conn. Aug. 14, 2014), *vacated and
remanded on other grounds*, 866 F.3d 1330 (Fed. Cir. 2017)................................25

*Rondeau v. Mosinee Paper Corp.*,
422 U.S. 49 (1975)............................................................................................37

*Server Tech., Inc. v. Am. Power Conversion Corp.*,
No. 06-00698, 2015 WL 1505654 (D. Nev. Mar. 31, 2015), *rev'd in part on
other grounds*, 657 F. App'x 1030 (Fed. Cir. 2016)....................................... *passim*

*Shockley v. Arcan, Inc.*,
248 F.3d 1349 (Fed. Cir. 2001)..........................................................................37

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
   No. 07-335, 2010 WL 2522428 (E.D. Tex. June 18, 2010)...................................................43

*Smith & Nephew, Inc. v. Interlace Med., Inc.*,
   955 F. Supp. 2d 69 (D. Mass. 2013) ...................................................................................42

*SRI Int'l, Inc. v. Cisco Sys.*,
   254 F. Supp. 3d 680 (D. Del. 2017)....................................................................................23

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
   897 F.2d 511 (Fed. Cir. 1990)............................................................................................43

*Stragent, LLC v. Intel Corp.*,
   No. 11-cv-421, 2014 WL 6756304 (E.D. Tex. Aug. 6, 2014)........................................26, 27

*Texas Advanced Optoelectronics Sols., Inc. v. Renesas Elecs. Am., Inc.*,
   888 F.3d 1322 (Fed. Cir. 2018)...........................................................................................33

*Trover Grp., Inc. v. Dedicated Micros USA*,
   No. 13-1047, 2015 WL 4910875 (E.D. Tex. Aug. 17, 2015) (Bryson, J., sitting
   by designation)....................................................................................................................27

*United States v. Marine Shale Processors*,
   81 F.3d 1329 (5th Cir. 1996) ..............................................................................................37

*VirnetX Inc. v. Apple Inc.*,
   925 F. Supp. 2d 816 (E.D. Tex. 2013), *aff'd in part, vacated in part, rev'd in
   part on other grounds sub nom. VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d
   1308 (Fed. Cir. 2014)................................................................................................ *passim*

*WBIP LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016)............................................................................................5

*WBIP, LLC v. Kohler Co.*,
   No. 11-10374, 2014 WL 585854 (D. Mass. Feb. 12, 2014), *vacated on other
   grounds*, 829 F.3d 1317 (Fed. Cir. 2016) ...........................................................................40

*WCM Indus., Inc. v. IPS Corp.*,
   721 F. App'x 959 (Fed. Cir. 2018) ......................................................................................21

*Whitserve, LLC v. Comput. Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012)...............................................................................................28

## Statutes

28 U.S.C. § 1961 ......................................................................................................................45

35 U.S.C. § 284..............................................................................................................5, 24, 44

35 U.S.C. § 285 ................................................................................................................24

35 U.S.C. § 318(b) ...........................................................................................................42

**Rules**

Fed. R. Civ. P. 62(c) .........................................................................................................42

<u>**Emphasis added unless otherwise noted**</u>

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | Jones Expert Report, 12/23/2014 |
| 2 | Blaze Expert Report, 1/29/2015 |
| 3 | Oct. 18, 2013 Email from D. Kim to J. Cassady |
| 4 | Apple's 2nd Supplemental Responses to VirnetX's First Set of Interrogatories |
| 5 | May 2, 2014 Letter from J. Loy to J. Cassady |
| 6 | Gokul Thurumalai Dep. Tr. (May 15, 2014) |
| 7 | Thomas Jansen Dep. Tr. (Sept. 18, 2014) |
| 8 | Aug. 20, 2014 Letter from J. Loy to J. Cassady |
| 9 | Gabriel Collaboration Suite Datasheet |
| 10 | U.S. Digital Future in Focus 2014, ComScore |
| 11 | Bakewell Expert Report, 1/29/2015 |
| 12 | Google Play Store - Gabriel Collaboration Suite |
| 13 | Bakewell Declaration |
| 14 | VirnetX Form 10-Q, May 2018 |
| 15 | VirnetX Form 10-QSB, 2007 |
| 16 | VirnetX Form 10-K for year ending 12/31/2017 |
| 17 | ██████████████████████████████████████ |
| 18 | ██████████████████████████████████████ |
| 19 | ECF Notice for VirnetX's Motion for Permanent Injunction, *VirnetX, Inc. v. Microsoft Corp.*, No. 6:07-00080-LD, D.I. 401 (VX00322952) |
| 20 | VirnetX licensing policy (June 2018) |
| 21 | March 29, 2018 Email from J. Cassady to L. Schmidt |
| 22 | Comscore 2018 Total U.S. Smartphone Subscribers |
| 23 | Statista Desktop Operating System Market Share U.S. |
| 24 | 2/28/2013 Sealed Prehearing Conference Transcript |
| 25 | Greenbot, Google Play Store now showcases app download numbers with new badges, Aug. 12, 2014 |

## I. Introduction

VirnetX asks this Court to enhance a verdict of over $502 million, to find this case exceptional, and to award attorneys' fees, all based on mischaracterizations of the record and baseless attacks against Apple's counsel. The evidence, however, presents a different story: Apple's defenses were reasonable and justified, and Apple's counsel acted diligently, responsibly, and professionally. Moreover, that Apple has availed itself (successfully) of the appeal process and review proceedings at the United States Patent and Trademark Office confirms the reasonableness of its actions. VirnetX, by contrast, seeks not only to collect, but to enhance, a verdict rendered on patents that have been declared unpatentable at the PTO. Imposing enhanced damages to further reward VirnetX based on invalid patents would be inequitable. Moreover, the jury's award itself significantly overcompensates VirnetX for the patents-in-suit, and thus there is no reason to add to VirnetX's windfall with the additional unwarranted equitable relief it seeks. Accordingly, VirnetX's motion should be denied.

## II. Enhanced Damages Should Be Denied

VirnetX's request for enhancement is baseless and seeks to punish Apple for exercising its right to mount a vigorous defense. The Supreme Court's *Halo* decision confirms no enhancement is warranted, as Apple's actions are not "characteristic of a pirate," nor has Apple exhibited "egregious infringement behavior" warranting the "'punitive' or 'vindictive' sanction" of enhancement. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). In any event, the Court should decline to enhance damages in light of the Federal Circuit's nine-factor *Read* test that guides this equitable analysis. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826–27 (Fed. Cir. 1992) ("The paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances.").

VirnetX's motion, at most, establishes that this was a hard-fought, high-stakes patent case

1

between two well-represented, public companies. That the jury ultimately reached a verdict for the plaintiff is no reason to increase an already-excessive damages award. Apple's defenses were non-frivolous, asserted with reasonable care and sufficient justification, and Apple and its counsel acted diligently, responsibly, and professionally. Accordingly, VirnetX's motion should be denied.

### A.    Apple Did Not Misrepresent Facts Regarding FaceTime

VirnetX centers its request for enhanced damages on a deliberate mischaracterization of Apple's summary-judgment position, a mischaracterization it uses as a jumping-off point to litter its motion with inflammatory language accusing Apple of lying to the Court. But when the full context is considered, it is clear that nothing Apple did was inappropriate.

VirnetX moved for partial summary judgment of infringement by redesigned FaceTime in January 2018. D.I. 541. In its motion, VirnetX contended that the jury's finding of infringement of original FaceTime "preclude[d] relitigating infringement of the redesigned version of FaceTime here." *Id.* at 1. The crux of VirnetX's argument was that the jury necessarily relied upon "additional information" other than the IP address in the accept message to satisfy the claimed "indication" because the Court's construction excluded "conventional DNS records, such as an IP address or key certificate" from meeting the "indication" limitation. *Id.* at 6–7. Thus, although VirnetX conceded that Apple removed the IP address from the accept message in redesigned FaceTime, it contended that this removal was irrelevant. VirnetX acknowledged, however, that Apple and its expert Dr. Blaze relied on this removed IP address to argue non-infringement. *Id.* at 9–10.

Importantly, VirnetX's motion was limited to this specific issue of whether the removed IP address was sufficient to generate a genuine issue of material fact regarding infringement. Indeed, VirnetX's statement of undisputed material facts for that motion explicitly states "[t]here [wa]s *only* one difference between the first and third versions of FaceTime arguably relevant to whether FaceTime infringes": the omission of the IP address in the accept message in the

redesigned version. *Id.* at 2–3. Although VirnetX acknowledged that certain changes were made to allow the callee device to initiate a peer-to-peer connection with the caller under certain circumstances, it noted that "[t]his change is not relevant to the current analysis":

> ***FaceTime was also changed to allow for the callee device to initiate a peer-to-peer connection with the caller under some circumstances, depending on particular NAT configurations. Ex. B, Blaze Jan. 29, 2015 Rebuttal Report at ¶165. This change is not relevant to the current analysis.***

*Id.* at 3 n.2. VirnetX omits this crucial information from its request for enhanced damages, never once acknowledging that it was ***VirnetX*** who limited the scope of the summary-judgment motion.

Apple's opposition to VirnetX's motion therefore focused on the fact that the FaceTime server had not changed in any relevant respects between the version VirnetX agreed did not infringe and the version at issue, because it was undisputed that "[i]n what VirnetX refers to as the 'second' and 'third versions' of FaceTime, the accept message sent to the caller does not include the IP address of the callee." *See, e.g.*, D.I. 554 at 3; *see also* 4/3/18 PM Tr. 167:23–168:11; 4/4/18 AM Tr. 49:17–20. All of the statements regarding the lack of changes to the FaceTime server that VirnetX cites in its motion, *see* D.I. 774 at 2–5, were made in this context. This is confirmed by VirnetX's failure to raise any concerns about Apple's statements during the summary judgment process itself. Now, however, VirnetX takes umbrage with these statements, arguing that Apple did in fact make changes to the FaceTime server after April 2013. Having explicitly stated that other changes made to FaceTime were ***irrelevant*** to its motion, it is disingenuous—at best—for VirnetX to now argue that Apple should have discussed those irrelevant changes in its opposition.

VirnetX further faults Apple for questioning Dr. Jones during cross examination about whether he pointed to any changes made to the FaceTime server for his infringement analysis. D.I. 774 at 3; 4/3/18 PM Tr. 164:4–22. But again, VirnetX fails to note that Dr. Jones never before identified any changes made to the FaceTime server after April 2013 that were allegedly relevant

to infringement—not in his expert reports, deposition testimony, or prior trial testimony. To the contrary, Dr. Jones referred to the changes made to FaceTime to allow peer-to-peer connections as "***client*** modifications." Ex. 1 at 8. And Dr. Jones tellingly did not point to a single server change purportedly relevant to his infringement analysis during his direct examination.

Having laid the groundwork with these mischaracterizations, VirnetX concocts a conspiracy that Apple "switched" its infringement theory mid-trial to argue that IP addresses were necessary for direct communications. D.I. 774 at 4. VirnetX even suggests—without any support—that Apple deferred its opening as part of this alleged scheme. *Id.* This again does not withstand scrutiny, as Apple's non-infringement theory has remained consistent for years. Apple explicitly stated during summary judgment that the redesigned "FaceTime server affirmatively negates support for a secure communication link by depriving the caller of the key information necessary to establish a 'direct' connection with the callee." D.I. 554 at 9. Dr. Blaze included this argument in his non-infringement report in ***January 2015***. Ex. 2 ¶¶ 164–65. And Apple deferred its opening—an opening addressing the same three-year-old non-infringement argument—to present the issues effectively, not to "switch" theories as VirnetX groundlessly charges.

In any case, whether or not Apple made changes to the FaceTime server after April 2013 is irrelevant to VirnetX's infringement theory, which concerned whether the "accept push" message sent by the FaceTime server provided the claimed "indication" that "the domain name service system supports establishing a secure communication link." 4/3/18 PM Tr. 166:13–17. It is undisputed that the version of the FaceTime server in April 2013 omitted the callee's IP address in the accept push message sent to the caller ***and*** that the version of the FaceTime server in September 2013 did the same. *Id.* at 167:6–11, 168:21–25. It is further undisputed that ***both*** versions of the accept push message failed to provide the caller with enough information to initiate

4

a direct FaceTime call to the callee. *Id.* at 167:23–168:11; 4/10/18 Tr. 79:24–80:2.

**B.    The Jury's Willfulness Finding Alone Does Not Warrant Enhanced Damages**

VirnetX argues, citing two cases from 1986 and 1991, that the jury's finding of willful infringement *itself* is sufficient to enhance damages. D.I. 774 at 6–7. But as the Supreme Court, Federal Circuit, and this Court have all recently explained, it is at the Court's discretion whether or not to enhance damages under 35 U.S.C. § 284, despite a finding of willful infringement. *Halo*, 136. S. Ct. at 1931, 1933 ("none of this is to say that enhanced damages must follow a finding of egregious misconduct"); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017) ("award of enhanced damages does not necessarily flow from a willfulness finding"); *WBIP LLC v. Kohler Co.*, 829 F.3d 1317, 1341 n.13 (Fed. Cir. 2016) (same); *Convolve, Inc. v. Dell Inc.*, No. 08-cv-244, 2017 WL 2463398, at *4–5 (E.D. Tex. June 7, 2017) (similar).

Similarly, VirnetX's contention that any enhancement analysis must *start* from the Court's prior 50% damages enhancement—which was entered in the prior -417 Action, D.I. 774 at 7–8— is wrong and should be rejected. This case concerns features that Apple redesigned after the original -417 verdict, redesigns that Apple believed in good faith avoided further infringement, and for which the parties presented different evidence to the jury. *See* 4/6/18 AM Tr. 68:24–69:19; 4/6/18 PM Tr. 161:8–162:5; 4/11/18 AM Tr. 90:10–96:14; 4/11/18 PM Tr. 6:14–8:21, 13:9–15:21; *see also* D.I. 181 at 5 (finding that the redesigned products were not essentially the same as the products at issue in the -417 Action). The cases cited by VirnetX are thus inapposite. *See Fractus, S.A. v. Samsung Elecs. Co.*, No. 09-cv-203, 2013 WL 1136964, at *2 (E.D. Tex. Mar. 15, 2013) (addressing an ongoing royalty with defendant *conceding* it sold infringing model after a verdict); *R-BOC Reps., Inc. v. Minemyer*, 233 F. Supp. 3d 647, 687 (N.D. Ill. 2017) (defendants offered "no credible and believable evidence" that they even thought to change the infringing designs).

**C.    The *Read* Factors Confirm Enhancement is Not Warranted**

### 1.      Apple Did Not Deliberately Copy VirnetX's Ideas or Design

Under *Read* factor 1, courts analyze "whether the infringer deliberately copied the ideas or designs of another." It is undisputed that no such evidence was presented to the jury (or exists). Indeed, before trial, VirnetX ***agreed*** to a motion *in limine **precluding*** "any argument, evidence, testimony, or reference suggesting that Apple copied, took or otherwise used in any way information about VirnetX's or SAIC's technology or patents or patent applications in the development of Apple's accused software or products."   D.I. 304 at 2. In closing, VirnetX affirmatively told the jury: "I don't think Apple copied VirnetX's products." 4/11/18 PM Tr. 122:6–7; *see also* 4/11/18 AM Tr. 64:4–21 (conceding that Apple did not copy VirnetX's product).

Seeking to circumvent those representations, VirnetX argues that *Read* factor 1— "deliberately cop[ying] the ideas or designs of another"—favors enhancement simply because Apple's redesigns were found to infringe. D.I. 774 at 9–10. But that theory lacks merit. Copying and infringement are not equivalent. *See, e.g.*, *Genband US LLC v. Metaswitch Networks Corp.*, No. 14-cv-33, 2016 U.S. Dist. LEXIS 5158, at *1–5 (E.D. Tex. Jan. 15, 2016). As such, the infringement analysis only compares the products to the claims—it does not determine whether copying exists. 4/10/18 Tr. 131:11–19.

Moreover, Apple did ***not*** deliberately copy any of VirnetX's ideas or designs. Indeed, as Apple's engineers and executives testified, Apple could not possibly have copied VirnetX because VirnetX had no product when Apple was redesigning its features. 4/11/18 AM Tr. 99:14–19; 4/11/18 PM Tr. 12:23–13:8; *see also* 4/3/18 AM Tr. 35:20–36:2; 4/4/18 PM Tr. 66:1–10; 4/11/18 AM Tr. 64:6–21 (conceding VirnetX had no product during Apple's redesigns). Rather, Apple engineers made a good-faith effort to redesign its features to avoid further infringement, and retained outside counsel to evaluate whether the redesigns infringed. *See* 4/11/18 AM Tr. 108:24– 109:3; 4/11/18 PM Tr. 6:23–7:21, 23:16–20, 40:17–41:15, 60:24–61:1. Regarding VOD, Apple's

engineers and managers, in consultation with Apple's legal department, identified the VOD configurations impacted by the -417 Action verdict and developed solutions that they believed in good faith would avoid infringement. *See, e.g.*, 4/3/18 AM Tr. 61:19–62:17, 77:19–78:2; 4/3/18 PM Tr. 162:6–12, 165:15–19, 173:9–12; 4/4/18 AM Tr. 75:18–22; 4/6/18 AM Tr. 68:24–69:19; 4/6/18 PM Tr. 161:5–162:18; 4/11/18 PM Tr. 6:24–8:21, 13:14–15:21. Likewise, for FaceTime, Apple's engineers believed in good faith that they had developed a way to initiate peer-to-peer calls differently than VirnetX's patents—and the PTO granted a patent for Apple's solution ***over VirnetX's patents-in-suit***. 4/9/18 PM Tr. 254:23–257:1; 4/11/18 AM Tr. 98:22–99:7; *see also* DTX201. Those facts demonstrate the reasonableness of Apple's good-faith belief that it had designed around VirnetX's patents and indicate "[Apple's] intent to not copy [VirnetX's ideas or design]." *Canon, Inc. v. Color Imaging, Inc.*, 292 F. Supp. 3d 1357, 1363 (N.D. Ga. 2018).

The cases cited by VirnetX are distinguishable. In *PPC Broadband*, the district court found that *Read* factor 1 supported enhancement where a particular "taper" was previously found to infringe, and the defendant incorporated that ***same*** "taper" into its accused products. *See PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, No. 11-cv-761, 2016 WL 6537977, at *6 (N.D.N.Y. Nov. 3, 2016). Here, Apple did not just roll out the same features previously found to infringe, but rather ***redesigned*** its features in a way that it believed would set up VPNs and peer-to-peer communications ***differently*** than the VirnetX patents. The jury's disagreement does not mean that Apple copied. In *Barry*, the court found copying where the defendant's agent had learned of the accused technology from the plaintiff, and the defendant subsequently failed to conduct any investigation before incorporating that technology into the accused products. *Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 114 (E.D. Tex. 2017). Here, by contrast, Apple conducted a significant investigation into VirnetX's patents before releasing its redesigns, including by engaging outside

counsel to perform an independent review of the redesigns in view of VirnetX's patents. 4/11/18 AM Tr. 51:13–20, 51:24–52:4, 90:10–94:1, 99:24–100:4; 4/11/18 PM Tr. 6:24–8:3, 11:16–22, 13:14–16:1, 34:11–21, 40:17–41:2, 42:25–43:4, 60:24–61:1.

### 2. Apple Investigated the Scope of VirnetX's Patents and Formed a Good-Faith Belief They Were Invalid and Not Infringed

The evidence also shows that Apple had a good-faith belief that the patents-in-suit were invalid and that the accused features did not infringe the asserted claims. And as outlined in Apple's JMOL and new trial motion, Apple's non-infringement defenses—for products specifically redesigned to avoid infringing the patents-in-suit—were more than reasonable. As an initial matter, the jury's verdict does not preclude consideration of this factor, as VirnetX suggests. D.I. 774 at 15–16 (citing *Jurgens v. CBK, Ltd.*, 80 F.3d 1566 (Fed Cir. 1996)). In *Jurgens*, the district court's jury instructions regarding willfulness required the jury to determine "whether under all the circumstances the defendants conducted themselves willfully *and* in bad faith in selling their product." 80 F.3d at 1569. Here, by contrast, the jury received no such instruction, and the Court retains discretion to weigh the evidence in analyzing this factor.

As to VOD, while VirnetX repeatedly denigrates Apple's non-infringement arguments as "facially unreasonable," VirnetX offers nothing to substantiate this position. D.I. 774 at 12. Instead, as it did at trial, VirnetX advances its argument that redesigned VOD "can simply replicate" the prior infringing version. *Id.* But VirnetX's "replication" contention was not based on VOD's actual operation but on an out-of-context quote from an Apple engineer's testimony. As Dr. Jones admitted, that testimony was predicated on "a series of hypothetical assumptions" that VirnetX never showed the jury. 4/4/18 AM Tr. 13:10–12. And when the full testimony was shown, it became clear that redesigned VOD operates in a "completely different" way than the prior version. *Id.* at 15:19–25. Moreover, although VirnetX claims that VOD "*could*" replicate the

8

old version, VirnetX presented no evidence of any such replication occurring. The evidence instead

showed that redesigned VOD was location-based—as VirnetX's expert admitted—and thus could

not infringe. 4/3/18 PM Tr. 193:18–194:1; 4/4/18 AM Tr. 9:4–8. VirnetX also asserts that ███

████████████████████████████████████████████████████████████████████████

████ D.I. 774 at 12–13. VirnetX further contends that ████████████████████████

██████████████████████████ *Id.* Putting aside that Apple never made this argument, VirnetX

points to no evidence of any such "admission." Instead, VirnetX cites to ***its own counsel's***

unsubstantiated statements during cross examination of Dr. Blaze. *Id.*

As to FaceTime, VirnetX's entire discussion of Apple's alleged improper infringement

theories is irrelevant. VirnetX suggests that Apple improperly introduced direct, peer-to-peer

FaceTime calls, but there is no dispute that VirnetX ***did not invent*** direct communication links, as

the inventor of the patents-in-suit conceded. 4/2/18 PM Tr. 249:1–7; 4/3/18 AM Tr. 5:10–13. Thus,

whether or not Apple reduced relay usage by allowing direct FaceTime calls is immaterial to the

reasonableness of Apple's non-infringement arguments. The proper inquiry is whether redesigned

FaceTime has a "domain name service system" that provides an indication of support for

establishing a direct link. The only possible "indication" VirnetX identified—the accept push

message—omits the information necessary for the FaceTime server to indicate support for a direct

call. 4/10/18 Tr. 79:24–80:2. Finally, contrary to VirnetX's contention, Apple never argued at trial

that the term "domain name service system" required returning an IP address (although, as

explained in Apple's motion for JMOL and for a new trial, Apple respectfully believes

construction of that term should be reversed), and VirnetX cites no evidence to the contrary.

Further, Apple had, and continues to have, a good-faith belief that the patents-in-suit are

invalid. VirnetX contends only that Apple's reliance on that good-faith belief was unreasonable

after a jury's 2012 verdict. D.I. 774 at 11–12. Since that 2012 verdict, the PTO proceedings have confirmed again and again that Apple's continued reliance on its good-faith belief of invalidity was not only reasonable, it was correct. At the time of the verdict, every asserted claim stood rejected by the PTO on multiple, independent grounds (not just the single ground presented at the 2012 trial), and the PTO has subsequently issued final rejections on every one of those claims, again on multiple, independent grounds. D.I. 717, ¶ 24(b)(xii). Under established Federal Circuit law, the claims will be cancelled once the rejections are confirmed on appeal—eliminating VirnetX's infringement claims entirely. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1347 (Fed. Cir. 2013). The PTO's cancellation of many near-identical VirnetX patents portends the same result here. *See* D.I. 717. Under the circumstances, Apple's continued reliance on its invalidity positions was reasonable and does not warrant enhancement.

VirnetX's argument that Apple somehow "elected to forego a defense of good faith belief of invalidity," D.I. 774 at 12, should likewise be rejected. Apple was precluded from asserting invalidity and from presenting evidence of PTO proceedings invalidating the asserted claims. *See* D.I. 181 at 5–9; D.I. 362 at 3; D.I. 403; 3/20/18 Hr'g Tr. 172:20–173:2. And, minutes before the start of the willfulness trial, VirnetX elected not to present evidence of prior verdicts—thereby preventing Apple from introducing evidence of the PTO proceedings under the Court's ruling. 4/10/18 Tr. at 223:18–19, 225:5–16; 4/11/18 AM Tr. at 8:1–23, 20:5–15.

VirnetX also attempts to impugn Apple's non-infringement opinions from independent counsel Lee Van Pelt—likely because such opinions typically foreclose willfulness or enhancement. *Braun Inc. v. Dynamics Corp.*, 975 F.2d 815, 819, 822–24 (Fed. Cir. 1992) (reversing willfulness verdict where accused infringer consulted opinion counsel during all stages of the design-around effort). ***First***, VirnetX argues that Mr. Van Pelt's opinions should be

10

disregarded because Apple allegedly received them only *after* implementing the redesigned features. D.I. 774 at 14. That is wrong. Mr. Van Pelt orally provided his non-infringement conclusions to Apple *before* Apple implemented the redesigns, and Apple executives approved the redesigns only after being informed of his conclusions. 4/6/18 AM Tr. 69:9–15; 4/11/18 PM Tr. 13:9–15:21, 34:11–21, 42:25–43:4. Mr. Van Pelt later confirmed his oral opinions in writing. 4/11/18 PM Tr. 43:12–20.

*Second*, VirnetX argues that Mr. Van Pelt's opinions were deficient because they were "directly contradicted by the testimony of the Apple engineer responsible for developing the redesign." D.I. 774 at 15 (citing 4/3/18 PM Tr. 132:20–133:1). VirnetX, however, relies on its *own* expert's paraphrasing of an Apple engineer, not the testimony itself. And whether Mr. Van Pelt had perfect recall of certain VOD and FaceTime details at trial does not mean his four-year-old opinions are somehow deficient. *Read*, 970 F.2d at 828–29; *Ortho Pharm. v. Smith,* 959 F. 2d 936, 944–45 (Fed. Cir. 1992).

*Finally*, VirnetX argues that Mr. Van Pelt relied in part on an incorrect claim construction of "domain name service system." That is not true—Mr. Van Pelt testified that he interpreted the term "domain name service system" under its plain meaning, which he believed meant a system that contains a "domain name service."  4/11/18 PM Tr. 85:8–87:16. That is consistent with the Court's ruling that no construction is necessary. D.I. 266 at 15, 19–20; 1/19/16 Hr'g Tr. 65:1–3. None of those criticisms renders Mr. Van Pelt's opinions substantively deficient or warrants enhancing damages. *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1374 (Fed. Cir. 2008).

For all of the reasons set forth above, this factor weighs against enhancement.

### 3.    Apple Litigated Fairly

Apple did not engage in improper litigation behavior. VirnetX tries to cobble together half-truths and worse to suggest otherwise. For example, VirnetX claims that Apple "hid" its continued

infringement by concealing the changes made to the client software that allowed direct peer-to-peer calls to take place in certain situations. Not so. Setting aside Mr. Thirumalai's deposition testimony that Apple's FaceTime servers were configured to relay 100% of calls—which was accurate, for the reasons explained below—Apple provided more than sufficient information for VirnetX to understand redesigned FaceTime. The changes to the client software were made with the release of iOS 7, on September 18, 2013, while the current litigation was ongoing. Apple produced the iOS 7 source code to VirnetX immediately following its release. Indeed, on October 18, 2013—one month following the public release of iOS 7—Apple informed VirnetX that the iOS 7 FaceTime code was available for inspection. Ex. 3. Apple also detailed the changes made in the iOS 7 FaceTime software and explained why such changes avoided infringement of the patents-in-suit in interrogatory responses served on February 14, 2014—months before Mr. Thirumalai's May 2014 deposition. Ex. 4 at 15–16. VirnetX had access to all the information regarding Apple's iOS 7 changes to FaceTime long before it took Mr. Thirumalai's deposition.

Moreover, the entire premise of VirnetX's concealment theory is incorrect, because Mr. Thirumalai accurately testified during his deposition about the operation of the FaceTime *server*. Apple designated Mr. Thirumalai to testify regarding the "*server-side* functionality" of FaceTime. Ex. 5. 

Ex. 6, 148:1–5. Thus Mr. Thirumalai's deposition testimony was clear and correct: Apple reconfigured the FaceTime *server* to route all calls over relay servers, and that server configuration did not change after the release of iOS 7. 4/6/18 AM Tr. 26:15–27:4.

*See* Ex. 7, 46:15–48:13, 63:20–65:7. Moreover,

while VirnetX now contends that Apple hid FaceTime's operation, VirnetX tellingly never moved to compel Apple to provide any additional information or sought other relief from the Court.

Next, VirnetX claims that Apple concocted a falsehood to avoid summary judgment. As explained *supra* § II.A, this is a baseless mischaracterization of Apple's position. Apple correctly described all the facts relevant to summary judgment, as VirnetX itself set forth in its motion.

VirnetX also theorizes that Apple turned down the "knob" in August 2013 to stop routing all calls over relay. *See* D.I. 774 at 17–18. The only evidence VirnetX cites is ████████

████████████████████████████████████████████████████████████

████████████████████ *See* D.I. 774 at 17; PX1197. Mr. Thirumalai, Apple's FaceTime witness, explained that this request was insufficient to describe FaceTime's functionality and to reach any conclusions, one would "have to look at the source code with our configuration and the tickets together." 4/6/18 A.M. Tr. 98:20–99:2. VirnetX's contention also makes little sense, given that the parties agree that Apple did not infringe during the April to September 2013 period, a fact VirnetX used affirmatively when presenting its damages case. 4/5/18 AM Sealed Tr. 72:5–74:22.

VirnetX further contends that Apple improperly used its own patent to confuse the jury. Again, this contention is baseless. Apple only used its FaceTime patent with one witness during the liability trial, Apple's damages expert Mr. Bakewell, as allowed by the Court. 4/9/18 AM Tr. 138:13–19. Apple never discussed the patent with its technical witnesses. And while VirnetX criticizes Apple for discussing the patent in its closing, Apple never once suggested that it excused infringement. *See, e.g.*, 4/10/18 Tr. 172:11–173:1. In fact, Apple did not discuss non-infringement at all during the brief period of time it referred to its patent. *Id.* Moreover, Apple's use of the patent during closing was appropriate: the public nature of the patent rebutted VirnetX's suggestion throughout trial that Apple allegedly concealed the iOS 7 operation of FaceTime. *Id.* at 151:1–8.

VirnetX's claim that Apple "tried to present rejected claim construction theories" is likewise demonstrably false. D.I. 774 at 19. Dr. Blaze never argued that FaceTime avoided the asserted claims because it lacked a "domain name service" or that "domain name service" required returning an IP address. To the contrary, Dr. Blaze **agreed** that the Court did not incorporate the "domain name service" construction into the term "domain name service system." 4/9/18 AM Tr. 113:23–114:1. Dr. Blaze instead made the entirely appropriate—and correct—point that the only way for the accept push message to satisfy the claimed indication of support for establishing a direct communication link was to return the IP address of the callee device. *Id.* at 129:5–7.

VirnetX next attacks Apple for cross-examining Mr. Larsen. While Apple's cross-examination of Mr. Larsen was adversarial, it was not "unsavory" or "bullying" as VirnetX suggests. *See Barry*, 250 F. Supp. 3d at 117 ("Enhancement … is not an opportunity for this court to penalize a zealous trial team that engaged in hard-fought battles but ultimately lost the war."). **First**, VirnetX complains that Mr. Larsen was charged with "lying," D.I. 774 at 18, but that does not render the cross-examination improper or warrant enhancement of damages. Mr. Larsen's credibility was a key issue at trial. VirnetX put Mr. Larsen's credibility at issue by soliciting his testimony concerning the circumstances of VirnetX's license agreements and VirnetX's financial position—which, in turn, formed the basis of VirnetX's damages analysis. 4/5/18 AM Tr. 31:14–22, 40:10–41:23, 44:24–45:11, 50:20–51:15, 52:20–53:10; 4/5/18 PM Tr. 147:14–148:11, 158:5–11, 160:22–161:14, 172:4–7, 177:22–178:1, 183:14–20. Importantly, Mr. Larsen's testimony on these issues was plainly **inconsistent** with his prior testimony and the testimony of former Avaya executive Mr. Binns. *See*, *e.g.*, 4/9/18 PM Tr. 203:19–204:4, 204:25–205:10, 205:22–206:19. *Compare* 4/4/18 AM Tr. 105:21–23, 111:9–17, 116:5–8 *with* 4/4/18 PM Tr. 27:25–28:2, 34:20–23, 35:1–38:15, 40:11, 48:8–51:19. The jury was required to weigh Mr. Larsen's credibility,

14

particularly against that of Mr. Binns. *See* 4/10/18 Tr. 120:22–121:8. And in evaluating that credibility, the jury was entitled to consider Mr. Larsen's unwillingness to provide clear, consistent, and truthful testimony on an issue as basic as his employment status. *See*, *e.g.*, 4/4/18 PM Tr. 36:18, 35:8–9, 35:15–16, 36:9, 37:25, 44:10, 45:15, 130:6–7, 163:3–4; *see also id.* 40:20–41:7. Asking a witness whether he has lied under oath—particularly where, as here, the testimony given to the jury was plainly inconsistent with prior sworn testimony—is fair grounds for cross-examination, and certainly does not constitute the bad faith acts required of litigation misconduct. *See Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness."). Indeed, the Court noted that Mr. Larsen's cross examination "certainly had some relevance in terms of the witness's credibility." 4/4/18 PM Tr. 168:3–4.

**Second**, VirnetX alleges that Apple "violated a ruling *in limine* by cross examining Mr. Larsen on his divorces."  D.I. 774 at 18. ███████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████  Instead, Apple's

counsel inquired only about Mr. Larsen's family, 4/4/18 PM Tr. 62:2–64:8, a topic about which VirnetX solicited testimony from Mr. Larsen during his direct examination, 4/4/18 AM Tr. 99:24–100:1.

*Third*, VirnetX contends that Apple "insinuated that Mr. Larsen engaged in improper workplace romance with someone at VirnetX (despite the fact that Mr. Larsen is married to this individual)" and "gratuitously emphasized that Mr. Larsen had hired some of his children (the boys) but not others (the girl) to work at VirnetX." D.I. 774 at 18. Neither assertion is true.[1]  To the contrary, Apple's cross-examination confirmed that Mr. Larsen's wife and children work at and draw a salary from VirnetX. Those facts established that Mr. Larsen's entire family stands to benefit from a damages award (which is relevant to Mr. Larsen's bias), and that VirnetX's poor financial condition was attributable in part to its decision to pay multiple members of Mr. Larsen's family, and not attributable to Apple.

### 4.    Apple's Success Is No Reason to Increase Damages

Due to its culture of innovation, *see* 4/6/18 AM Tr. 56:21–57:5, Apple is a successful company in strong financial condition. But the fact that Apple's innovation has led to success—a feat entirely unrelated to VirnetX and the patents-in-suit—is no reason to magnify an already-inflated damages verdict. *Cf. Enplas Display Device Corp. v. Seoul Semiconductor Co.*, No. 13-cv-5038, 2016 WL 4208236, at *8 (N.D. Cal. Aug. 10, 2016).

### 5.    Apple Presented Reasoned and Justified Defenses

This factor weighs significantly against enhancement given Apple's reasoned and justified defenses. After the Court denied VirnetX's motion for summary judgment of infringement, D.I.

---

[1] Apple elicited testimony that when Mr. Larsen "started working at VirnetX in 2005, [his] current wife was already working for VirnetX."  4/4/18 PM Tr. 63:10–12. And it was Mr. Larsen who referenced his daughter when asked on cross-examination about only his sons. *Id.* 63:20–21.

624, this case proceeded to trial where the parties gave, in the Court's view, "[o]utstanding presentations by both sides." 4/11/18 PM Tr. 149:11–15. Faced with Apple's strong defenses, VirnetX dodges the pertinent considerations under this factor, conflates it with Factor 3 (litigation conduct), *see* D.I. 774 at 20, and would have the Court reflexively enhance damages in contravention of *Halo*. *See id.* at 21. As discussed below, Apple's reasoned and supported defenses weigh against any enhancement under this factor.

a.      **Redesigned FaceTime**

Apple presented a strong defense for why redesigned FaceTime does not infringe the asserted patents: VirnetX failed to prove that the redesigned FaceTime servers—the alleged "domain name service system" required by the asserted claims—provide an "***indication***" that, among other things, ***indicates support*** for a "***direct***" communication link that provides both "data security and ***anonymity***." 4/3/18 PM Tr. 148:14–149:19. The evidence at trial showed that in April 2013, Apple redesigned FaceTime by zeroing out—effectively removing—the callee's IP address from the "accept push" message returned from the FaceTime invitation server to the caller. 4/3/18 PM Tr. 167:6–11. This had the effect of depriving the calling device of any information indicating that FaceTime supported establishing a direct peer-to-peer communication link with the callee device. *Id.* at 167:23–168:7. Notably, Dr. Jones alleged at trial that it was the "accept push" message that satisfied the claimed "indication" of support for the communication link between two devices conducting a FaceTime call. 4/3/18 PM Tr. 121:2–16. But as a result of Apple's redesign of the FaceTime servers in April 2013 the "accept push" message "would not satisfy [the] requirements of the claims to be an indication of support" for a direct communication link, as Dr. Jones admitted. *Id.* at 167:23–168:11. As Apple showed at trial, FaceTime continued to avoid infringement following subsequent changes to FaceTime that were made in September 2013. *See* D.I. 775 at 1–5. In particular, Apple released a software update that allowed FaceTime ***clients*** to

17

establish peer-to-peer connections for FaceTime calls under certain circumstances. But Apple presented evidence at trial showing that even after the September 2013 client update, the accept push message sent by the FaceTime servers—the alleged "indication[,]" *see* 4/10/18 Tr. 79:24–80:2—continued to omit the callee's IP address. 4/3/18 PM Tr. 168:21–25; 4/4/18 AM Tr. 40:14–22. Apple's reasoned and supported non-infringement defense, notwithstanding the jury's verdict, weighs against enhancement of damages in this case.

### b.     Redesigned VPN On Demand

Apple also presented a well-reasoned and justified non-infringement defense for the redesigned VOD feature. ***First***, Apple presented evidence at trial showing that redesigned VOD does not satisfy the claim requirement of "determining whether ***a DNS request*** sent by a client corresponds to a secure server."  Instead, Apple presented conclusive evidence that redesigned VOD initiates VPNs not based on DNS requests, but rather based on location. Specifically, when Apple redesigned VOD to remove the "Always" mode, *see, e.g.*, 4/6/18 PM Tr. 161:5–7, it creates a VPN ***only*** if a user needs one to connect to the requested site. 4/3/18 PM Tr. 193:18–194:1; 4/4/18 AM Tr. 9:4–8. VirnetX's only remaining theory of infringement was premised on the optional HTTPS probe in redesigned VOD. *See* 4/3/18 PM Tr. 177:23–178:6 (admission from Dr. Jones that operation of VOD without optional HTTPS probe does not infringe). But the evidence at trial showed that the optional HTTPS probe did not alter VOD's fundamental non-infringing operation, but rather it would make a further determination of the user's location, *i.e.*, whether the user is inside or outside the private network, 4/3/18 AM Tr. 80:4–11; 4/3/18 PM Tr. 185:1–23, by determining whether the private network is reachable from the location of the requesting device. *See* D.I. 775 at 9. The evidence thus showed that the optional HTTPS probe did not make any determination as to any requested server's ***security***, as required by the asserted claims.

***Second***, the evidence showed that redesigned VOD does not "initiat[e] the VPN" or "create

a secure channel" *in response* to determining that the DNS request is requesting access to a secure site or server, as required by the claims. As was shown at trial, redesigned VOD makes a determination based on the *location* of a user attempting to access a site, *see* 4/3/18 PM Tr. 193:18– 194:1, *not* based on a DNS request as required by the asserted claims.

    *Third*, as to claim 13 of the '151 patent, the evidence showed that redesigned VOD does not "forward[] the DNS request to a DNS function that returns an IP address of a nonsecure computer" "when the DNS request does not correspond to a secure server."  Instead, as Apple showed at trial, redesigned VOD *always* forwards a DNS request to a DNS function for *all* requests, 4/4/18 AM Tr. 17:11–14, and never conditions a DNS query on access to a non-secure site. Thus, as to redesigned VOD, Apple's reasonable and supported defenses to liability likewise weigh against enhancement of the jury's award.

### c.    **The Damages and Willfulness Verdicts**

    VirnetX also argues that "this case was not close" because the jury returned the damages verdict requested by VirnetX, and because the jury returned a finding of willfulness. D.I. 774 at 21. However, the jury's verdict is no substitute for the Court's independent assessment of the closeness of the case under this factor. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1461 (Fed. Cir. 1998) ("[A]lthough Cybor was found to infringe all twenty of the claims, this result does not mean that the case was not close…."). That the jury followed VirnetX's lead and awarded an outsized damages verdict is no reason to enhance damages, particularly given that VirnetX's damages model was premised on a flawed theory that lacked apportionment, was based on non-comparable licenses, and completely distorted the claimed inventions' "footprint" in the marketplace. *See* D.I. 775 at 17–27. A favorable jury verdict does not compel enhanced damages.

### 6.    **Apple Promptly Redesigned Its Products**

    Under this factor, the Court considers the duration of any alleged misconduct. *Read*, 970

F.2d at 827. Here, this factor weighs against any enhancement. As a threshold matter, the evidence at trial showed that Apple acted prudently—and certainly and not in a manner tantamount to misconduct—when redesigning FaceTime and VOD following the original November 2012 verdict in the -417 Action. Immediately following that verdict, Apple diligently began redesigning FaceTime and VOD even though Apple intended to (and successfully did) appeal. Apple redesigned these features in reliance on independent advice of counsel and in a manner that Apple believed would not infringe. *See, e.g.*, 4/3/18 AM Tr. 61:19–62:17, 77:19–78:2; 4/11/18 AM Tr. 30:13–18, 49:1–10, 53:3–54:13, 57:21–24, 58:22–59:4, 90:10–94:1, 95:12–96:14; 4/11/18 PM Tr. 6:14–8:21, 11:11–12:1, 13:9–15:21, 34:11–21, 42:25–43:4; DTX93 at 4–5; DTX94 at 4–5; DTX97 at 2–4; DTX98 at 2–4. Despite the complexity of the features, Apple implemented its redesigns within a year of the November 2012 verdict through collaboration among its engineers, management, and legal team. 4/6/18 AM Tr. 68:24–69:19; 4/6/18 PM Tr. 161:8–162:5; 4/11/18 AM Tr. 90:10–96:14; 4/11/18 PM Tr. 6:14–8:21, 13:9–15:21. Though the jury ultimately found the redesigns insufficient, Apple's prompt, good-faith efforts to redesign its products do not amount to "misconduct."  Contrary to VirnetX's claim, this case is nothing like *Arctic Cat*, which involved evidence of defendant's copying its competitor's product, covert efforts to buy the asserted patents, and no attempt whatsoever to design around the asserted patents. *Arctic Cat Inc. v. Bombardier Recreational Prods.*, 198 F. Supp. 3d 1343, 1350–54 (S.D. Fla. 2016).

Moreover, VirnetX never sought a preliminary injunction against the redesigned features. Under prevailing precedent, the duration factor under *Read* weighs against enhancement when a patentee elects not to move for preliminary injunctive relief. *See, e.g.*, *Creative Compounds, LLC v. Starmark Labs., Inc.*, No. 07-22814, 2010 WL 2757196, at *6 (S.D. Fla. 2010) (citing *Judkins v. HT Window Fashions Corp.*, 704 F. Supp. 2d 470, 482 (W.D. Pa. 2010)). As the *Judkins* court

noted, a court "cannot fault [a defendant], and punish it with enhanced damages, for continuing to sell its product in the absence of a preliminary injunction." 704 F. Supp. 2d at 482. Accordingly, "[t]his factor weighs against enhancing damages." *Id.*

### 7.    Apple Took Remedial Action

This factor likewise weighs against enhancement. Following the original verdict in the -417 Action, Apple redesigned the adjudicated features so that they would not infringe VirnetX's patents. Apple did so through collaboration among its engineers, management, and legal team, and obtained independent opinion of counsel to confirm the redesigns avoided infringement. *See, e.g.*, 4/3/18 AM Tr. 61:19–62:17, 77:19–78:2; 4/11/18 AM Tr. 30:13–18, 49:1–10, 53:3–54:13, 57:21–24, 58:22–59:4, 90:10–94:1, 95:12–96:14; 4/11/18 PM Tr. 6:14–8:21, 11:11–12:1, 13:9–15:21, 34:11–21, 42:25–43:4; DTX93 at 4–5; DTX94 at 4–5; DTX97 at 2–4; DTX98 at 2–4.

Although VirnetX argues that the redesign efforts and opinions of counsel were ineffective, D.I. 774 at 23–24, the evidence showed that Apple took remedial action in good faith. *See WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 973 (Fed. Cir. 2018) (noting this factor "may also weigh slightly against enhancement because IPS attempted to take remedial action (albeit ineffectively) when it modified its Classic Product"); *Electro Sci. Indus., Inc. v. Ge. Scanning Inc.*, 247 F.3d 1341, 1353–54 (Fed. Cir. 2001) (no enhancement, notwithstanding willfulness verdict, where defendant obtained an oral opinion, and later a written opinion, of counsel); *Mentor H/S, Inc. v. Med. Device All., Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) (no enhancement, notwithstanding willfulness verdict, where defendant obtained non-infringement opinion of counsel). Thus, despite the jury's verdict of infringement and willfulness, the circumstances surrounding Apple's remedial actions weigh against enhancement in this case.

### 8.    Apple Had No Motivation to Harm VirnetX

VirnetX has offered no evidence that Apple was motivated to harm VirnetX, which

strongly weighs against enhancement. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274 (Fed. Cir. 1999) ("STK had evinced no motivation to harm Odetics," a factor that "***weighed in favor of STK***"). In the absence of any such evidence, VirnetX conflates this factor with Factor 3 (litigation conduct), arguing for enhancement based on Apple's defense of this case and its lawful (and successful) invocation of available administrative remedies at the PTO. D.I. 774 at 24–25. VirnetX should not be permitted to swap one *Read* factor for another, but in any event, Apple litigated this case fairly. *See supra* §§ II.C.3 (Factor 3).

### 9. Apple Did Not Conceal Any Alleged Misconduct

Apple also did not conceal any alleged misconduct. To the contrary, Apple preserved evidence and provided extensive discovery to VirnetX, including producing more than 860,000 documents and making Apple fact witnesses available for more than 50 depositions. Apple also provided interrogatory responses about the design and operation of the accused features, *e.g.*, Ex. 4 at 8–19, produced technical documentation and source code underlying their implementation, and voluntarily disclosed the privileged advice of counsel that Apple had obtained from Mr. Van Pelt.

Despite receiving significant discovery regarding the accused features, VirnetX nonetheless argues that Apple's 30(b)(6) and trial testimony somehow concealed the design and operation of the FaceTime servers. D.I. 774 at 26. Not so. In April 2013, Apple made a change at the FaceTime ***server*** that forced all FaceTime calls to travel over relay servers. In September 2013, Apple released a new operating system for iOS ***clients*** (*i.e.*, iOS 7) that permitted certain calls to travel over a peer-to-peer connection, if possible. But the server functionality—what VirnetX accused of infringement—remained the same. This is the exact information that Apple provided during discovery and presented at trial.

████████████████████████████████████████

████████████████████████████████████████



There was no concealment as VirnetX claims, and this factor weighs against enhancement.

VirnetX's request—to increase a jury verdict that already vastly exceeds any reasonable damages award supported by the evidence—should be denied. As is clear from its motion, VirnetX essentially asks the Court to award enhanced damages simply because the jury reached a verdict on liability and willfulness in VirnetX's favor. But under the Supreme Court's holding in *Halo* and the *Read* factors, enhancement would be entirely inappropriate. Apple's defenses were non–frivolous, asserted with reasonable care and sufficient justification, and Apple and its counsel acted diligently, responsibly, and professionally. *See supra* §§ II.C.2, II.C.5. Indeed, the district court case primarily discussed by VirnetX, D.I. 774 at 29–30, is distinguishable. *Cf. SRI Int'l, Inc. v. Cisco Sys.*, 254 F. Supp. 3d 680, 722–23 (D. Del. 2017). There, the district court found defendant multiplied proceedings by dropping 17 of 19 invalidity theories on the eve of trial and designated 48,000 lines of testimony from 53 deposition transcripts for trial, but only presented 22 lines from a single transcript. *Id.* at 722–23. Moreover, the sheer magnitude of the jury's verdict in this case (should it stand, and Apple strongly contends it should not, *see* D.I. 775 at 17–27, 38–45) further weighs against enhancement. *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1314 (Fed. Cir. 2002) (because the jury "could have awarded substantially less damages," but did not, justified

denial of enhancement); *Enplas*, 2016 WL 4208236, at *8 (court may consider the size of the damages award in ruling on enhancement).

But if the Court were inclined to entertain VirnetX's request to enhance the jury's damages award, it should certainly reject VirnetX's rigid approach to impose an arbitrary 100% enhancement on the basis of prior enhancement in the -417 Action and an arithmetic summing of the *Read* factors. *See* D.I. 774 at 27–28. Such a formulaic approach is inconsistent with binding Supreme Court and Federal Circuit precedent, which require a far more nuanced assessment of the totality of the circumstances. *Halo*, 136 S. Ct. at 1932 ("[T]here is 'no precise rule or formula' for awarding damages under § 284," and "a district court's 'discretion should be exercised in light of the considerations' underlying the grant of that discretion."); *id.* at 1934 ("[W]e eschew any rigid formula for awarding enhanced damages under § 284."); *Read*, 970 F.2d at 826 ("The paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances. The court must consider factors that render defendant's conduct more culpable, as well as factors that are mitigating or ameliorating."). As set forth above, the facts of this case—including the fact that Apple obtained opinions of counsel and redesigned its products in a good-faith effort to avoid infringement—clearly do not warrant a 100% enhancement determination. *See supra* §§ II.C.2, II.C.5–7. VirnetX's request to double the jury's outsized damages award should be denied.

## III.   VirnetX's Motion for Attorneys' Fees Should Be Denied

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The decision whether to award attorneys' fees is a discretionary one, considering the "totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). The district court's discretion, however, is constrained by statute, insofar as "[that] power is reserved for 'exceptional' cases." *Id.* at 1755–56. An

"exceptional" case is one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. Even if the Court finds a case exceptional, it "must [then] determine whether attorney fees are appropriate,' which is within the Court's discretion." *Mears Tech., Inc. v. Finisar Corp.*, No. 13-cv-376, 2015 WL 9269243, at *2 (E.D. Tex. Dec. 21, 2015); *accord Howlink Glob. v. Centris Info. Servs., LLC*, No. 11-cv-71, 2015 WL 216773, at *6 (E.D. Tex. Jan. 8, 2015) ("Even in exceptional cases, a court must determine independently whether the award of attorneys' fees is appropriate.").

The totality of the circumstances—including the substantive strength of Apple's positions, its reasonableness in litigating this case, and the remaining *Read* factors—mandate denial of VirnetX's motion because this case is not "exceptional" and an attorneys' fees award is inappropriate. **First**, Apple's non-infringement defenses for redesigned VOD and FaceTime were substantively strong, and certainly not frivolous so as to justify an award of fees. *Supra* § II.C.5. Indeed, the Court denied VirnetX's motion for summary judgment of infringement as to redesigned FaceTime and also denied VirnetX's motions for judgment as a matter of law under Rule 50(a). Those rulings by themselves "preclude[] a finding that [Apple's] argument[s] [were] so frivolous or groundless as to justify an award of fees." *See Romag Fasteners, Inc. v. Fossil, Inc.*, No. 10-1827, 2014 WL 4073204, at *3 (D. Conn. Aug. 14, 2014), *vacated and remanded on other grounds*, 866 F.3d 1330 (Fed. Cir. 2017). As to iMessage, Apple developed strong non-infringement defenses through discovery and pretrial; indeed, VirnetX decided not to present **any** iMessage evidence at trial. And, although the jury was unable to evaluate the validity of VirnetX's patents, Apple also formed a well-founded belief that each of the patents-in-suit is invalid, a belief that has been confirmed by the PTAB and PTO. *See supra* § II.C.2. In sum, Apple defended this

25

case reasonably and presented strong defenses. A hard-fought case does not equal an exceptional one, *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, No. 12-100, 2015 WL 4880624, at *1 (E.D. Tex. Aug. 11, 2015), and VirnetX's fee-shifting motion should be denied.

**Second**, VirnetX's allegations of litigation misconduct are unfounded. As discussed above, Apple did not misrepresent facts regarding the design and operation of FaceTime, and it did not present false or inconsistent testimony and evidence at trial. *See supra* §§ II.A, II.C.3. Additionally, VirnetX's claims of impropriety in PTO proceedings are incorrect and misplaced. *See* D.I. 774 at 32. Apple's participation in PTO proceedings that have resulted in the invalidation of the patents-in-suit is not misconduct, and there is nothing "abusive" about using congressionally implemented PTO procedures designed to reevaluate the validity of dubious patents like VirnetX's. *See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1374 (2018) ("Patent claims are granted subject to the qualification that the PTO has 'the authority to reexamine—and perhaps cancel—a patent claim' in an *inter partes* review. Patents thus remain 'subject to [the Board's] authority' to cancel outside of an Article III court.").

**Third**, VirnetX's invitation for the Court to reflexively follow its previous ruling awarding fees associated with the retrial of the -417 Action should be rejected. *See* D.I. 774 at 31. In arriving at that determination, the Court considered facts unrelated to this retrial of the 855 Action. -417 Action, D.I. 1079 at 54–55 (citing "handling of the conflicts issues that arose"). Moreover, at the close of this trial, the Court commended counsel on their professionalism demonstrated in this case:

> Outstanding presentations by both sides. You all worked very hard and well together. We've been down the road a long ways on this case, and it was a pleasure and a privilege to get to work with you. And you all did a great job.

4/11/18 PM Tr. 149:11–14. This too confirms that an award of attorneys' fees is unwarranted. *Stragent, LLC v. Intel Corp.*, No. 11-cv-421, 2014 WL 6756304, at *6 (E.D. Tex. Aug. 6, 2014).

At bottom, this case falls far short of being "exceptional."  Following *Octane*, courts here have routinely denied requests for attorneys' fees in cases that do not involve substantively unreasonable litigation positions or litigation misconduct.[2]  "[A]wards of attorneys' fees in patent cases should be reserved for ***rare and unusual circumstances***."  *Stragent*, 2014 WL 2756304, at *3. This is not such a case, and VirnetX's request for attorneys' fees should be denied.

## IV.     An Accounting for Supplemental Damages Should Occur after Appeals Are Decided

Apple agreed before the January 2016 consolidated trial to provide an accounting for products sold with the accused features that were not included in the jury's award. Any accounting should be should be stayed pending the resolution of all appeals in this case, the -417 Action, and in the PTO proceedings relating to the asserted patents. Because the appeals in this case, the -417 Action, or the PTO proceedings could moot any damages award in this action, such a delay is in the interests of "avoid[ing] potentially unnecessary expenditures of time and money in preparing such an accounting[.]"  *Itron, Inc. v. Benghiat*, No. Civ. 99-501 (JTR/FLN), 2003 WL 22037710, at *16 (D. Minn. Aug. 29, 2003); *see also* 4/10/18 Tr. 226:25–227:2 (VirnetX's counsel agreeing that, if the PTO determinations are affirmed on appeal, "[t]he whole case is moot").

## V.      VirnetX Is Not Entitled to Equitable Relief

VirnetX presumes that it is entitled to relief for alleged acts of future infringement. But this presumption is unwarranted, as there is no requirement that the Court impose the equitable

---

[2] *E.g.*, *Mears Tech.*, 2015 WL 9269243, at *2–4; *Trover Grp., Inc. v. Dedicated Micros USA*, No. 13-1047, 2015 WL 4910875, at *2–8 (E.D. Tex. Aug. 17, 2015) (Bryson, J., sitting by designation); *Core Wireless*, 2015 WL 4880624, at *1; *Interform Inc. v. Staples Inc.*, No. 13-281, 2015 WL 4575224, at *1–4 (E.D. Tex. July 29, 2015); *DietGoal Innovations LLC v. Chipotle*, No. 12-764, 2015 WL 1284669, at *1–7 (E.D. Tex. Mar. 20, 2015) (Bryson, J., sitting by designation); *Calypso Wireless v. T-Mobile USA Inc.*, No. 08-cv-441, 2015 WL 1022745, at *1–5 (E.D. Tex. Mar. 5, 2015); *Howlink*, 2015 WL 216773, at *5–6; *Stragent*, 2014 WL 6756304, at *1–6 (Dyk, J., sitting by designation).

remedies of an injunction or an ongoing royalty after a verdict. Rather than awarding such relief, the Court "can exercise its discretion to conclude that no forward-looking relief is appropriate [under] the circumstances." *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012); *see also Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314–15 (Fed. Cir. 2007) ("[A]warding an ongoing royalty where 'necessary' to effectuate a remedy … does not justify the provision of such relief as a matter of course whenever a permanent injunction is not imposed."). The Court should exercise that discretion here. At the time this case was filed, VirnetX had no commercial product. After years of beta testing and little investment, Gabriel became commercially available in 2016, long after VirnetX had licensed the most popular video-calling app on the market (Skype). Further, much of the delay in obtaining a final judgment in this case is due to ***VirnetX's*** conduct. In the original -417 Action, VirnetX proposed a legally flawed claim construction and offered three legally flawed damages models. Apple appealed successfully, and had to go through another trial, consolidated with the -417 Action. Because of repeated and improper references to the prior verdict at that consolidated trial, the Court granted Apple's motion for a new trial and deconsolidated the cases, which required two additional trials. VirnetX seeks to take advantage of these "delays" because, after 15 years, it has finally managed to release a commercial product. Allowing VirnetX to take advantage of the passage of time would be contrary to equitable principles underlying injunctive relief.

An ongoing royalty based on the jury verdict would similarly be inequitable. As explained in Apple's JMOL and new trial motion, the jury's damages award is based on an unapportioned model, is based upon non-comparable licenses, and grossly overcompensates VirnetX. Any injunction or royalty would also reward VirnetX for patents that have already been found invalid at the PTO. Equitable relief is not warranted here.

### A.      No Equitable Factor Favors Entry of an Injunction

VirnetX is not entitled to a permanent injunction. Contrary to VirnetX's assertions, the "factual underpinnings for Judge Davis's opinion" have not changed. D.I. 774 at 34. In 2013, the Court "assum[ed] VirnetX's technology was available for purchase" and concluded that "Apple does not directly compete with VirnetX." *VirnetX Inc. v. Apple Inc.*, 925 F. Supp. 2d 816, 846 (E.D. Tex. 2013), *aff'd in part, vacated in part, rev'd in part on other grounds sub nom. VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014). Because "Apple's sale of cell phones has not restricted VirnetX's ability to market and sell its Gabriel technology to other tablet, cellphone or computer manufacturers," the Court further found that "VirnetX's damages [should be] limited to the loss of Apple as a customer," which is compensable with monetary damages. *Id.* Even "[a]ssuming Apple could have implemented VirnetX's technology for all the accused products, and assuming Apple would have decided to license the technology, one cannot say this would have guaranteed VirnetX's success." *Id.* Nor was there evidence "VirnetX lost goodwill because of Apple's infringement." *Id.* By contrast, the Court found that "Apple [would bear] a considerable burden to comply with the proposed injunction" and "an injunction would not only harm Apple, but also its customers and other third parties." *Id.* at 846–847. All of these "factual underpinnings" are as true today as they were in 2013. As explained further below, VirnetX's request for an injunction should be denied now, just as it was in 2013.

### 1.      VirnetX Has Not Suffered Irreparable Harm

Proving irreparable harm requires a patentee to "establish both of the following requirements: 1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1359–60 (Fed. Cir. 2013) ("*Apple III*"). VirnetX can establish neither and is not entitled to an injunction.

a. **VirnetX Will Not Suffer Irreparable Harm without an Injunction**

VirnetX does not assert that its Gabriel product competes with VOD (which is neither a "messaging" nor a "video conferencing solution"), and alleges no irreparable harm based on Apple's alleged infringement with VOD. This alone suffices to deny VirnetX's request for an injunction regarding VOD.

VirnetX's claim for irreparable harm is premised on the notion that Apple's infringement has prevented VirnetX from competing with Apple. That is simply untrue. ***First***, VirnetX is able to compete in markets that are wholly unavailable to Apple. Gabriel is a "cross-platform" app, like Skype, that is available not only on Apple's operating system but also on Android, Windows, and Linux. Ex. 9. Gabriel can be used to communicate between devices using both the same platform (*e.g.*, two Windows devices) or between devices using different platforms (*e.g.*, a Windows device and an Android device). Those non-Apple platforms comprise over 50% of the U.S. market share of smartphone operating systems and nearly 80% of the U.S. market share of computer operating systems. Ex. 10, Ex. 11 ¶¶ 137–39; Exs. 22–23. As the Court found in the -417 Action, not only is VirnetX able to "market and sell its Gabriel technology to … tablet, cellphone or computer manufacturers" other than Apple, but in over 50% of the smartphone operating system market and nearly 80% of the computer operating system market, VirnetX has done so without any competition from Apple. See *VirnetX*, 925 F. Supp. 2d at 846. Moreover, VirnetX has licensed Skype, a nearly ubiquitous app that is available on both Apple and non-Apple platforms. Skype has been downloaded over 1 billion times on Android (non-Apple) devices, 4/5/18 PM Tr. 162:1–163:2, whereas Gabriel has only been downloaded between 500 and 1000 times on the Android platform. Exs. 12, 25. VirnetX's decision to license a "significant competitor[] who posed [a] major threat to [its] flagship product[]" counsels against any finding of irreparable harm. *Nichia*

30

*Corp. v. Everlight Ams., Inc.*, 855 F.3d 1328, 1343 (Fed. Cir. 2017) (internal quotations omitted).

**Second**, even in the iOS and OS X markets, Gabriel is not a *de facto* competitor of Apple by its mere presence in the App Store. Apple sells smartphones and computers that include FaceTime. *See VirnetX*, 925 F. Supp. 2d at 846. VirnetX offers one of hundreds of thousands of apps on the App Store. VirnetX does not intend to compete with Apple in the smartphone market and has not invested in the infrastructure to compete with Apple or any other video-calling app. Despite over $230 million in settlements, VirnetX has spent its money enriching its officers and employees and filing lawsuits, not investing meaningfully in R&D, marketing, sales, or infrastructure. Ex. 13 ¶¶ 31–34. As Dr. Short and Mr. Larsen testified, VirnetX sought to develop Gabriel not on its own, but through a partnership with Apple, which "shows that monetary damages [are] adequate compensation to [VirnetX]." *Compare Server Tech., Inc. v. Am. Power Conversion Corp.*, No. 06-00698, 2015 WL 1505654, at *4 (D. Nev. Mar. 31, 2015), *rev'd in part on other grounds*, 657 F. App'x 1030 (Fed. Cir. 2016), *with* 1/26/16 Tr. 36:5–24 (VirnetX wanted to engage in a "joint team effort" with Apple to develop Gabriel and that partnering with VirnetX would "benefit Apple"), *and* 1/27/16 Tr. 122:16–19 (VirnetX would have spoken to Apple "about a business arrangement").

**Third**, Gabriel offers far different functionality than FaceTime and purports to serve different customers. VirnetX markets Gabriel as an "integrated set of secure applications including Mail, Messaging, File Sharing & Backup, Voice Calls and Video Calls." Ex. 9. FaceTime does not offer mail, messaging, or file-sharing and back up. Moreover, VirnetX touts the security of Gabriel to its small-to-medium business customers, seeking to appeal to companies that place a high value on security. Ex. 14 at 17. By contrast, Apple serves the consumer market, and 99% of Apple's customers are unaware that FaceTime calls are encrypted at all, let alone that they are

31

always encrypted. 4/9/18 PM Tr. 168:4–21; *e.g.*, PX-1134–8; PX-1182–8; PX-1186–5. Thus, these products are not competing for the same customers.

*Fourth*, even after FaceTime was included on Apple devices, customers continued to download *additional* video-calling apps on their devices. Ex. 13 ¶¶ 39 & Exs. 4, 4.1. The App Store includes many video-calling apps, ███████████████████████████████ *Id.* FaceTime's release did not impede the popularity of these apps, and their numerous downloads show that consumers frequently have more than one such application on their devices. *Id.* VirnetX identifies no reason why Gabriel would be affected differently than competitors' apps.

Even assuming direct competition existed, no categorical rule provides that direct competition creates irreparable harm. Instead, courts must rely on "[t]he evidence submitted" to conclude whether the patentee "has suffered irreparable injury from [defendant's] infringement." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). This "evidence" can include "lost market share"; lost sales; price erosion; "chang[ing] … business strategy to survive"; "never licens[ing] the infringed patents… [to] maintain market exclusivity"; "dedicat[ing] significant amounts of time and money towards marketing and sales, engineering, and research and development"; and "[o]ver the years … earn[ing] … a reputation in the marketplace as an innovator and trusted supplier." See *id.* at 1344–45; *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010), *aff'd,* 564 U.S. 91 (2011). VirnetX has failed to present any such evidence. D.I. 774 at 35–37; Ex. 13 ¶¶ 13–15, 23–24, 40. VirnetX also alleges harm because it charges for its app, D.I. 774 at 35–36, but Gabriel is an outlier. Other apps like Skype and Google Hangouts are offered for free. Ex. 13 ¶ 38. Nor is there evidence of demand for Gabriel, let alone a willingness of consumers to pay for it. *Id.* at ¶¶ 17–19, 38–40. "In absence of any evidence, Apple cannot be held solely responsible for VirnetX's failure to obtain a foothold in the

market." *VirnetX*, 925 F. Supp. 2d at 846. VirnetX's business strategy has been and remains the same: licensing its patent portfolio. *Compare* Ex. 15 at 29 ("We expect to depend on our intellectual property licensing fees for the majority of our revenues.") *with* Ex. 16 at 14 ("our business strategy and revenues will depend on intellectual property licensing fees and royalties for the majority of our revenues.").

*Texas Advanced Optoelectronics Sols., Inc. v. Renesas Elecs. Am., Inc.*, 888 F.3d 1322 (Fed. Cir. 2018), on which VirnetX relies, does not change this analysis. That case stands for the uncontroversial proposition that "the form of a reasonable royalty may be relevant to [irreparable harm], but it is not conclusive without further analysis." *Id.* at 1350. Here, the "further analysis" discussed in detail above, confirms that VirnetX has suffered no irreparable harm from any infringement by Apple.

VirnetX's allegations of reputational harm are equally unavailing. While reputational harm may exist when a company's products may "lose some of [their] distinctiveness and market lure because competitors could contend that they had 'similar features' without noting that those features infringe [the patentee's] proprietary technologies[,]" *Douglas Dynamics*, 717 F.3d at 1344, that is not the case here. Indeed, the only VirnetX alleges is supposed harm from being called a "patent troll" in certain media reports. This is not harm based on alleged infringement. Indeed,

█████████████████████████████████████████████████████ Exs. 17–18. Nor is there any allegation regarding how VirnetX's "reputation" has injured its business of licensing its patents, which would be necessary to prove irreparable harm. Indeed, the repeated confirmation that its patents are invalid confirms that VirnetX is not the innovator it claims to be. VirnetX cannot show it suffered irreparable harm, and therefore its motion for an injunction should be denied.

        **b.**     **No Nexus Exists Between Any Harm to VirnetX and Any Infringement by Apple**

To assess whether a causal nexus exists, the Court must consider whether there is "some connection between the patented features and the demand for [Apple's] products." *Apple III*, 735 F.3d at 1364. VirnetX alleges that the accused features are a driver of customer demand. D.I. 774 at 35–36. But VirnetX declined to present any evidence of this fact during the trial, failing to prove that it could satisfy the Entire Market Value Rule. Indeed, FaceTime as a whole (let alone the allegedly infringing portion of FaceTime) is not a significant driver of consumer demand. 4/5/18 AM Tr. 98:22–100:23; 4/5/18 AM Sealed Tr. 77:2–6 (explaining only ███████████ ███████████ entire FaceTime feature, which encompasses more than the patented technology); 4/9/18 PM Tr. 168:22–169:1. And over 99% of consumers are unaware of the allegedly patented feature, and thus the patents could not drive consumer demand. 4/9/18 PM Tr. 168:4–21. Nor is there any such proof for VPN on Demand. VirnetX's reliance upon *Apple III* is inapposite. In *Apple III*, the Federal Circuit provided a counterfactual to elucidate the requirements for causal nexus, stating that "if the first person to invent a laptop battery had obtained ***a patent covering all laptop batteries***, then it would be reasonable to say that the patented invention was a driver of demand for laptops" because "it is indisputable that the ability to carry around a [laptop] computer without having to plug it in is one of the reasons people buy laptops." 735 F.3d at 1364. But that is not the case here: VirnetX's patents do not cover all of video calling. 4/5/18 AM Tr. 101:7–105:6. Nor do they cover any portion that drives customer demand, and therefore there is no causal nexus between the patented features and demand for Apple's products.

Dr. Wecker's survey is irrelevant to causal nexus. D.I. 774 at 36 (citing PX1091). Dr. Wecker did not testify at this trial, and in the consolidated trial, VirnetX was not permitted to rely on his survey to quantify damages. 1/27/16 Tr. 290:18–295:8; Ex. 13 ¶¶ 27–29. His survey also failed to separate the iMessage and FaceTime features in his questions, and thus it cannot support

a nexus as to FaceTime. 1/27/15 Tr. 234:10–25. Even if Dr. Wecker's survey showed customers like and use both FaceTime and iMessage as a whole, "evidence showing the importance of a general feature of the type covered by a patent is typically insufficient to establish a causal nexus." *Apple III*, 735 F.3d at 1366. Dr. Wecker's survey provides no information about the patented feature, i.e., one way of establishing a secure communication link. 1/27/16 Tr. 237:11–238:11, 240:25–241:15; 1/28/16 Tr. 10:4–17, 12:12–16. Instead, his survey asked about FaceTime as a whole along with iMessage, which include "a whole host of … features" not covered by VirnetX's patents. *Apple III*, 735 F.3d at 1365; Ex. 13 ¶¶ 27–30. VirnetX made "no attempt to prove that any more specific element of [FaceTime], let alone one covered by one of [patents-in-suit], actually drives customer demand." *Apple III*, 735 F.3d at 1365.

### 2.     Monetary Remedies Can Remedy Any Harm to VirnetX

The release of Gabriel has not altered VirnetX's willingness to accept monetary compensation for its patents, which confirms that "monetary damages are sufficient and adequate to compensate [VirnetX] for infringement of its patents." *Server Tech.*, 2015 WL 1505654, at *4. In 2010, VirnetX agreed to license its patents to Microsoft after it won a jury verdict and sought a permanent injunction. See Ex. 19; PX409. In 2014, VirnetX ***expanded*** that license with Microsoft to cover nearly three-quarters of the market for computer operating systems and hundreds of millions of Android and iOS users who have downloaded the Skype app. *See supra* § V.A.1.a.

Likewise, VirnetX enacted no change in its licensing policy once it released Gabriel. *Compare* PX-411 at 27 (policy in June 2011) *and* PX1092 (policy in December 2014) *with* Ex. 20 (policy in June 2018, with identical terms). VirnetX's website continues to advertise that those "who want to develop their own implementation of the VirnetX patented techniques" can simply "purchase a patent license." Ex. 20; Ex. 13 ¶¶ 13–15. VirnetX continues to represent to the U.S. government and the public that its "business strategy includes licensing our patents and technology

to other companies in order to reach a larger end-user base than we could reach through direct sales and marketing efforts." Ex. 16 at 14. Indeed, whether VirnetX receives royalties from customers for Gabriel sales or receives royalties from Apple, it "would result in the same end: a fixed royalty to [VirnetX]." *See MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 584–85 (E.D. Va. 2007); *see also VirnetX*, 925 F. Supp. 2d at 846 ("VirnetX's damages are limited to the loss of Apple as a customer," which is compensable with monetary damages).

VirnetX contends monetary damages are inadequate because an ongoing royalty is "difficult mathematically and temporally" and because it lost the ability to negotiate various terms in a license with Apple. D.I. 774 at 38. VirnetX has never asserted that its licensing policy, which requires an ongoing royalty, poses any challenges. To the contrary, VirnetX's CEO, Mr. Larsen, explained that VirnetX prefers running royalties over lump sum payments, and that VirnetX is willing to accept the risks of such an arrangement. 4/4/18 AM Tr. 133:16–134:13. Moreover, VirnetX's proposed license terms are wholly unrelated to "control[ling its] inventions," *CSIRO v. Buffalo Tech. Inc.*, 492 F. Supp. 2d 600, 605 (E.D. Tex. 2007). Instead, VirnetX wants to prevent Apple from challenging the validity of its patents (many of which have been canceled or will soon be canceled) and to constrain Apple's right to challenge whether royalties are owed for future products, terms that could essentially require Apple to pay royalties on non-infringing products for the life of the patents. D.I. 774 at 27. Monetary damages are not rendered inadequate because VirnetX wants to negotiate license terms that are contrary to public policy and improperly expand the scope of whatever remains of its patent rights. Therefore, remedies at law are adequate to compensate VirnetX, and an injunction is improper.

### 3.    The Balance of Hardships Weighs Against an Injunction

VirnetX argues that if infringement is willful or if there is continued infringement after a verdict, Apple is not entitled to any equitable consideration under this factor. D.I. 774 at 38–39.

The Supreme Court, however, has made clear that "categorical" rules, such as the one VirnetX proposes, are inapplicable to whether an injunction "may" be entered, which is itself "an act of equitable discretion by the district court." *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Ignoring harm to an infringer runs contrary to *eBay*'s mandate to "consider[] the balance of hardships between the plaintiff and defendant[.]" *Id.* Moreover, the purpose of an injunction is "to deter, not to punish." *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 61 (1975). Departing from this binding precedent is unwarranted, and the cases VirnetX cites do not compel otherwise. *See Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1361 (Fed. Cir. 2001) (analyzing whether to enforce equitable intervening rights, not to impose an injunction); *United States v. Marine Shale Processors*, 81 F.3d 1329, 1359–60 (5th Cir. 1996) (remanding for district court to "exercise its discretion to decide whether to enjoin" defendant because the "hallmark of equity is flexibility").

Nor is VirnetX's assertion sufficient that the equities "tilt toward VirnetX[]" because "VirnetX's patented technology is critical to its business." D.I. 774 at 39. Unlike in *i4i*, where the patentee was a competitor in a market cornered by the defendant, 598 F.3d at 862, here, VirnetX's "Gabriel" is one of myriad video and messaging apps in a large market that VirnetX does not intend to enter. *See* § V.A.1, *supra*. As discussed above, VirnetX can be adequately compensated with monetary damages and thus the equities, unlike in *i4i*, do not weigh in favor of an injunction.

On the other hand, Apple would suffer significant hardship from an injunction. *VirnetX*, 925 F. Supp. 2d at 846. As Judge Davis recognized, "an injunction would not only harm Apple, but also its customers and other third parties." *Id.* at 847. Further, VirnetX seeks to enjoin far more than the use of the accused technology, attempting to impose an even more significant burden on Apple and to exceed the scope of a permissible injunction. D.I. 774, Proposed Judgment at 4–5; *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004) (injunction overbroad

where it "applies to many more devices than those actually adjudicated"). *First*, VirnetX's "VPN

On Demand Infringing and Future Products" definition does not relate to the feature that was found

to infringe, which was  the specific steps of checking the domain name against a list, making a

DNS query, successfully obtaining an address, configuring an HTTPS probe, having the HTTPS

probe fail, and then initiating a VPN. *See, e.g.*, D.I. 775 at 6–7. VirnetX's definition is so broad

that it does not even require the capability to initiate a VPN and would cover functionality VirnetX

*conceded* was non-infringing. *See id.* at 8–9.

Second, VirnetX's "FaceTime Infringing and Future Products" and "FaceTime Infringing

and Future Servers" definitions are not limited to the specific functionality found to infringe.

VirnetX seeks to enjoin Apple products from even having the capability to use a FaceTime server,

regardless of whether that server is ever used, or whether use of that server would infringe. For

example, VirnetX's definition would encompass Apple devices "capable" of using a FaceTime

server even if that server could not establish a FaceTime call. VirnetX also seeks to enjoin Apple

servers from having the capability to support a FaceTime call, even if that capability is never used.

*Finally*, an injunction should "not issue to enforce a right that is doubtful …." *Consol.*

*Canal Co. v. Mesa Canal Co.*, 177 U.S. 296, 302 (1900). The PTO has held each asserted claim

unpatentable. Forcing Apple to alter the accused features, affecting millions of customers, "only

to later discover that the [patents-in-suit] were never valid and that [Apple] always had the legal

right to utilize such functionality" constitutes a "substantial risk of harm." *MercExchange*, 500 F.

Supp. 2d at 585. The balance of the hardships weighs heavily against entering an injunction.

### 4.      An Injunction Is Contrary to the Public Interest

VirnetX argues that the public interest weighs in its favor because "[t]he public interest is

served by issuing a narrow injunction that protects VirnetX's patent rights."  D.I. 774 at 39. As

explained in § V.A.3, *supra*, VirnetX's proposed injunction is not narrow. And VirnetX must do

more than recite "patent rights" to create a public interest sufficient to support an injunction. *See Fractus, S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802, 854 (E.D. Tex. 2012) (explaining public interest weighed against an injunction where patentee "has not identified a specific public interest" that injunction would serve). Instead of "defend[ing] its right to exclude and prevent[ing] development of its patent by others," VirnetX "repeatedly chose to license its patents to market participants allegedly utilizing such patents, including licensing its entire patent portfolio subsequent to obtaining a favorable jury verdict" against Microsoft. *See MercExchange, Inc.*, 500 F. Supp. 2d at 587. VirnetX's "utilization of its patent[s] in a manner inconsistent with its right to exclude indicates that a 'strong patent system' need not rescue [VirnetX] through equitable measures as [VirnetX's] harm can be adequately compensated through damages at law." *See id.*

By contrast, enjoining Apple would disserve the public because it would harm "[Apple's] customers and other third parties." *VirnetX*, 925 F. Supp. at 846–47. Because millions of consumers worldwide use the accused features, disruptions in product and feature availability and reliability would cause significant harm. Further, each of VirnetX's patents-in-suit has been rejected as invalid at the PTO. "It is as important to the public that competition should not be repressed by worthless patents, as that the patentee of a really valuable invention should be protected in his monopoly …." *Pope Mfg. Co. v. Gormully*, 144 U.S. 224, 234 (1892); *see also eBay*, 547 U.S. at 396–97 (Kennedy, J., concurring) ("When the patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest."). The public interest is not served by issuance of an injunction based on invalid patents.

Because no factor weighs in favor of an injunction, no injunction should issue.

### B.    If an Ongoing Royalty Is Awarded, It Should Not Be Enhanced

If the Court decides to award post-verdict relief to VirnetX, that relief should be in the form of an ongoing royalty (another equitable remedy). *Paice*, 504 F.3d at 1313. In determining an ongoing royalty, courts may consider the "change in economic circumstances, resulting from the determination of liability."  *See Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008). VirnetX ignores the critical "changed circumstance" in this case, *i.e.*, every asserted claim has been held unpatentable at the PTO, and those decisions are now before the Federal Circuit. The jury was not permitted to hear this evidence or to consider Apple's invalidity defenses. D.I. 181 at 5; 1/19/16 Pretrial Conf. Tr. 143:4. The fact that the patents-in-suit have been found invalid strongly counsels against enhancing the ongoing royalty—or awarding one at all. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 343 (1971) ("A patent yielding returns for a device that fails to meet the congressionally imposed criteria of patentability is anomalous.").

VirnetX nonetheless demands an ongoing royalty that is ***one hundred fifty percent more than*** the jury's $1.20 per-unit rate. VirnetX bases this outsized request on the assumption that the verdict will be enhanced 100% (to over $1 billion), and that another 50% increase is needed to "deter[]" "post-judgment infringement." D.I. 774 at 41. As explained in § II, *supra*, VirnetX's 100% enhancement request has no merit, and VirnetX has no independent basis for applying that enhancement to the ongoing royalty. VirnetX's reliance on "deterrence" fares no better. If the Court decides VirnetX is not entitled to an injunction, Apple should not be punished with the imposition of a royalty intended to "deter" sales that the Court has permitted. Reflexively enhancing an ongoing royalty is the antithesis of the "flexible" equitable analysis required. *Freeman v. Pitts*, 503 U.S. 467, 487 (1992); *see also, e.g.*, *WBIP, LLC v. Kohler Co.*, No. 11-10374, 2014 WL 585854, at *9 (D. Mass. Feb. 12, 2014) (awarding ongoing royalty at the royalty rate jury awarded), *vacated on other grounds*, 829 F.3d 1317 (Fed. Cir. 2016); *Apple, Inc. v.*

40

*Samsung Elecs. Co.*, No. 12-00630, 2014 WL 6687122, at *20 (N.D. Cal. Nov. 25, 2014) ("[T]he Court determines that the proper ongoing royalty rates are those reflected in the jury verdict.").

To the extent the Court awards an ongoing royalty, that royalty should be no more than $0.08. Ex. 13 ¶¶ 47–61. In addition to being predicated on invalid patents, the jury derived its $502M award from the per-unit royalties for VirnetX's licenses, which include rights to 16–19 patents (VoIP licenses) and 64 patents (2010 Microsoft) PX406–09, PX1084–86 at Ex. A. VirnetX admitted each of its patents is equally important and each contributes value to those licenses. 4/5/18 AM Tr. 113:11–24, 132:18–133:15; 4/4/18 PM Tr. 95:21–97:13. Because the jury did not apportion its award to reflect value contributed to those licenses by patents other than those asserted in this case, VirnetX's injury from Apple's infringement is therefore less than the jury's $1.20 royalty rate. Awarding an ongoing royalty at the $1.20 per-unit rate, or an enhancement thereof, would be inequitable. The only equitable ongoing royalty award, if one is awarded at all, is no more than $0.08 per-unit. Ex. 13 ¶¶ 47–61.

VirnetX also asks for numerous, unwarranted, and draconian terms in the ongoing royalty. Specifically, VirnetX wants "Apple to provide VirnetX notice of any material change to its business of importing or selling products containing the accused functionalities within fourteen days of such change[,]" to extend "Apple's duty to pay VirnetX ongoing royalties … to Apple's successors and assigns," unfettered "audit rights," and "Apple to mark its products with VirnetX's patents." D.I. 774 at 42. *Mondis Tech. Ltd. v. Chimei Innolux Corp.*, No. 11-378, 2012 WL 1554645 (E.D. Tex. Apr. 30, 2012), on which VirnetX relies for support, does not compel the imposition of these burdensome conditions on Apple. In *Mondis*, the financially troubled defendant was in "urgent debt restructuring talks" and "intend[ed] to transfer its … business to a corporate affiliate …." *Id.* at *3. None of those circumstances exists here, and imposing such

conditions would give VirnetX a tremendous windfall and jeopardize Apple's business. For example, VirnetX wants to know about "any material change in [Apple's] business of importing or selling products," regardless of whether that change affects Apple's U.S. sales or the accused products in this case. Further, it wants Apple to do so within "fourteen days" of the change becoming "known *to* [*Apple*,]" not the public. *Id.* VirnetX should not be privy to confidential information about Apple's business wholly unrelated to the issues in this case. Likewise, VirnetX's proposed requirement that Apple's "duty" to pay royalties extend to any of Apple's successors and assigns would place unnecessary restrictions on Apple's business. VirnetX's command that Apple mark its products with VirnetX's patents is inconsistent with VirnetX's own practices, as VirnetX does not mark and has never required any licensee to do so. PX406–09, PX1084–86; Exs. 9, 12.

### C.     Equitable Relief Should Be Stayed Pending the Appeal of this Case and the Appeal of the PTO Proceedings for the Patents-in-Suit

A court, "as part of its traditional equipment for the administration of justice … can stay the enforcement of a judgment pending the outcome of an appeal." *Nken v. Holder*, 556 U.S. 418, 421 (2009) (citation omitted); *see* Fed. R. Civ. P. 62(c). In making that decision, a court considers:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 426 (citation omitted). Each of these factors favors a stay.

***First***, the PTO has held every patent claim tried to the jury unpatentable. D.I. 717. Those decisions are currently before the Federal Circuit. D.I. 717. Once the Federal Circuit affirms those decisions, the patent claims will be canceled. 35 U.S.C. § 318(b). This warrants, at the very least, staying VirnetX's request for an injunction. *See E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987) (staying injunction where patent "was finally rejected by the examiner"); *Smith & Nephew, Inc. v. Interlace Med., Inc.*, 955 F. Supp. 2d 69, 79

(D. Mass. 2013) (staying injunction where "all the asserted claims currently stand rejected in the ongoing PTO reexaminations"); *Peach State Labs, Inc. v. Envtl. Mfg. Sols., LLC*, No. 09-395, 2012 WL 503839, at *5 (M.D. Fla. Jan. 13, 2012) (recommending staying injunction "based on the PTO's non-final office action rejecting all of the claims of the … Patent"), *report and recommendation adopted*, 2012 WL 503837 (M.D. Fla. Feb. 15, 2012). In addition, as explained in Apple's opening post-trial brief, Apple has demonstrated a strong or, at minimum, a substantial likelihood of prevailing in an appeal. "Although disputed questions of infringement and invalidity are present in nearly every patent case following a jury verdict, … the facts and legal issues of this case are particularly close" and Apple submits that these questions should be decided in its favor. *See Smith & Nephew, Inc. v. Arthrex, Inc.*, No. 07-335, 2010 WL 2522428, at *4 (E.D. Tex. June 18, 2010); *see Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514–15 (Fed. Cir. 1990) (staying injunction where defendant "argue[d] that the admission of certain evidence was improper and prejudicial to its case before the jury").

**Second**, and relatedly, requiring Apple to undergo the expense of altering the accused features while VirnetX's patents stand rejected at the PTO is a significant hardship. Having to alter the accused features unnecessarily could produce irreparable harm such as the loss of goodwill of its customers and damages to Apple's reputation. *See supra* §§ V.A.3.

**Third**, VirnetX will not be injured by a stay. "Of great importance here," VirnetX "has never sought to exclude others from the … market, but rather has licensed all willing competitors." *E.I. DuPont*, 835 F.2d at 278; *see supra* § V.A.1.a. Indeed, one month after requesting an injunction in the Microsoft Action, VirnetX licensed its patents to Microsoft, covering approximately 2 billion units through expiration of the patents in 2021. Ex. 19; PX409. As explained *supra* § V.A.1.a, VirnetX did not allege here that it lost market share, or even a single

sale, as a result of Apple's actions. Nor did VirnetX establish that the patented technology is what

drives consumers to use FaceTime and VOD, let alone Apple's iPhone, iPad, iPod Touch, and Mac

products. *See Advanced Med. Optics, Inc. v. Alcon Labs., Inc.*, No. 03-1095, 2005 WL 3454283,

at *11 (D. Del. Dec. 16, 2005) (staying injunction where patentee "did not show that it could have

made additional sales but for [defendant's] infringement" and "the demand for the [accused]

devices is not driven by the patented [invention]"), *dismissed*, 197 F. App'x 939 (Fed. Cir. 2006).

*Fourth*, the public interest weighs in favor of granting a stay. As explained *supra*

§ V.A.1.a, disrupting Apple's product offerings seriously impacts its customers, who should not

be penalized with the enforcement of invalid patents. Moreover, there is no evidence that VirnetX

has the infrastructure (or even invested in obtaining the infrastructure) to support the use of Gabriel

on the tens of millions of devices Apple sells. *See supra* § V.A.4.

## VI.    Prejudgment Interest Should Not Be Awarded, and Costs and Postjudgment Interest Should Only Be Awarded If Judgment Is Entered for VirnetX

### A.    Withholding Prejudgment Interest Is Justified

Under § 284, damages generally "consist not only of the value of the royalty payments but

also of the forgone use of the money between the time of infringement and the date of the

judgment" to "make the patent owner whole."  *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648,

656 (1983). The district court has discretion whether and how to award prejudgment interest to

compensate for that "foregone use" and to withhold such interest when justified. *Id.* at 656.

Withholding prejudgment interest is justified here. *See id.* The jury's award of over $502

million more than "make[s VirnetX] whole," compensating VirnetX far beyond what the parties

would have agreed to in September 2013. *See id.* at 656; D.I. 775 at 17–25. The jury's award is

more than double what VirnetX received from Microsoft—VirnetX's only licensee that competes

with Apple—through the life of 184 worldwide patents and patent applications. D.I. 775 at 23–25.

44

"The jury award was generous enough" and no prejudgment interest should be awarded. *See Conceptus, Inc. v. Hologic, Inc.*, No. 09-02280, 2012 WL 44064, at *4 (N.D. Cal. Jan. 9, 2012).

If the Court awards prejudgment interest, interest should not be awarded from February 4, 2016 (the day after the consolidated-trial verdict) to April 2, 2018 (the first -855 re-trial day). VirnetX caused this delay by requesting consolidation and then introducing argument and evidence that forced deconsolidation and two retrials. Apple should not be punished for delays caused by VirnetX. Ex. 13 at Exs. 5, 5.1.  And any prejudgment interest should be awarded at the prime rate, compounded annually, with interest calculated on sales accruing quarterly, not as if damages were awarded as a "lump sum," as VirnetX proposes. The parties agreed that neither expert would suggest the jury could award a "lump sum." Ex. 21. At trial, VirnetX repeatedly stated that its licensing policy requires a "running royalty," and the jury relied on licenses supposedly consistent with that policy in awarding damages. 4/5/18 AM Tr. 43:19–44:21. Thus, consistent with the jury's award and VirnetX's request for a quarterly accounting for an ongoing royalty (D.I. 774 at 42), prejudgment interest should be calculated on a quarterly basis ($45.7M through May 31, 2018, and $65,928 per-day from June 1, 2018 until judgment is entered). Ex. 13 ¶¶ 65–66. If the Court disturbs the jury's damages verdict, prejudgment interest should be adjusted accordingly.

### B.    Costs and Postjudgment Interest Are Warranted Only If Judgment Is Entered for VirnetX

VirnetX's request for costs is premature, as the Court has not yet ruled on the parties' post-trial motions, which may affect whether VirnetX is the prevailing party. Apple also reserves its right to contest VirnetX's bill of costs. With respect to postjudgment interest, if the Court enters judgment for VirnetX, Apple does not dispute that 28 U.S.C. § 1961 governs the award.

### VII.    Conclusion

For the reasons set forth herein, VirnetX's motion should be denied.

Dated: June 13, 2018

Respectfully submitted,

*/s/Joseph A. Loy*

Gregory S. Arovas
greg.arovas@kirkland.com
Robert A. Appleby
robert.appleby@kirkland.com
Jeanne M. Heffernan
jeanne.heffernan@kirkland.com
Joseph A. Loy
joseph.loy@kirkland.com
Leslie M. Schmidt
leslie.schmidt@kirkland.com
David N. Draper
david.draper@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

F. Christopher Mizzo
chris.mizzo@kirkland.com
**KIRKLAND & ELLIS LLP**
665 Fifteenth Street, N.W.
Washington, D.C. 20005

Akshay S. Deoras
akshay.deoras@kirkland.com
**KIRKLAND & ELLIS LP**
555 California Street
San Francisco, California 94104

John M. Desmarais
jdesmarais@desmaraisllp.com
Michael P. Stadnick
mstadnick@desmaraisllp.com
Ameet A. Modi
amodi@desmaraisllp.com
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

Michael E. Jones
Texas Bar No. 10969400
mikejones@potterminton.com
**POTTER MINTON**
A Professional Corporation

46

110 N. College Avenue, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

**ATTORNEYS FOR APPLE INC.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail on June 13, 2018. I also hereby certify that all counsel of record who have consented to electronic service are being service with a notice of this document, under seal, pursuant to Local Rule CV-5(a)(7) on June 13, 2018.

*/s/Joseph A. Loy*

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/Joseph A. Loy*