# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **VIRNETX INC. AND** | § | |
| **LEIDOS, INC.,** | § | |
| | § | **Civil Action No. 6:12-cv-855-RWS** |
| | § | |
| **Plaintiffs**, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **APPLE INC.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendant**. | § | |


## APPLE'S REPLY IN SUPPORT OF ITS OMNIBUS MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b) AND FOR A NEW TRIAL

## TABLE OF CONTENTS

**Page**

I.  **VirnetX Failed to Present Sufficient Evidence to Support a Finding of Infringement** ........................................................................................................ **1**

    A.    Apple Is Entitled to JMOL of No Infringement on FaceTime ............................. 1

    B.    Apple Is Entitled to JMOL of No Infringement by VOD ...................................... 4

    C.    Apple Is Entitled to JMOL of No Infringement on iMessage ............................... 6

    D.    Apple Is Entitled to JMOL of No Indirect Infringement ....................................... 7

II.  **VirnetX Failed to Present Sufficient Evidence to Support the Damages Award** ........................................................................................................................... **7**

III.  **VirnetX Failed to Present Sufficient Evidence to Support a Finding of Willfulness** ...................................................................................................... **12**

IV.  **Apple Is Entitled to a New Trial on Infringement** ........................................ **14**

V.  **Apple Is Entitled to a New Trial on Damages** ............................................... **15**

VI.  **Apple Is Entitled to a New Trial on Willfulness** ........................................... **15**

VII.  **Conclusion** ........................................................................................................ **15**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
    501 F.3d 1307 (Fed. Cir. 2007)..............................................................................7

*Acumed LLC v. Stryker Corp.*,
    483 F.3d 800 (Fed. Cir. 2007).............................................................................12

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993)...............................................................................................8

*Brown v. Bryan Cty.*,
    219 F.3d 450 (5th Cir. 2000) ..............................................................................10

*Canon, Inc. v. Color Imaging, Inc.*,
    292 F. Supp. 3d 1357 (N.D. Ga. 2018) ..........................................................12, 13

*CSIRO v. Cisco Sys., Inc.*,
    809 F.3d 1295 (Fed. Cir. 2015).............................................................................9

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*,
    836 F.2d 1320 (Fed. Cir. 1987).............................................................................7

*Ericsson Inc. v. D-Link Corp.*,
    No. 10-473, 2013 WL 2242444 (E.D. Tex. May 21, 2013)....................................9

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014).............................................................................8

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
    879 F.3d 1332 ......................................................................................................15

*Gaia Techs. Inc. v. Recycled Prods. Corp.*,
    175 F.3d 365 (5th Cir. 1999) ..............................................................................10

*Hewlett-Packard Co. v. Acceleron LLC*,
    587 F.3d 1358 (Fed. Cir. 2009).............................................................................6

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007), *abrogated on other grounds by Halo Elecs.,
    Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016) ...............................................12

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009).........................................................................9, 11

*Mass Eng. Design, Inc. v. Ergotron, Inc.*,
    633 F. Supp. 2d 361 (E.D. Tex. 2009) ...................................................................6

*Mirror Worlds, LLC v. Apple, Inc.*,
    784 F. Supp. 2d 703 (E.D. Tex. 2011), *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012) .......................6

*ParkerVision, Inc. v. Qualcomm Inc.*,
    621 F. App'x 1009 (Fed. Cir. 2015) ...................................................................3

*Pers. Audio, LLC v. Apple, Inc.*,
    No. 09-111, 2011 WL 3269330 (E.D. Tex. July 29, 2011) .................................9, 11

*PPC Broadband, Inc. v. Corning Optical Commc'ns*,
    No. 11-cv-761, 2016 WL 6537977 (N.D.N.Y. Nov. 3, 2016) ................................13

*R.A.C.C. Indus., Inc. v. Stun-Tech, Inc.*,
    No. 98-1186, 1998 WL 834329 (Fed. Cir. Dec. 2, 1998) .......................................6

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)...........................................................................15

*Versata Software, Inc. v. SAP America, Inc.*,
    717 F.3d 1255 (Fed. Cir. 2013)............................................................................8

*VirnetX, Inc. v. Cisco Sys.*,
    767 F.3d 1308 (Fed. Cir. 2014)................................................................7, 11, 15

*Westvaco Corp. v. Int'l Paper Co.*,
    991 F.2d 735 (Fed. Cir. 1993)............................................................................13

*Whitserve, LLC v. Comput. Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012)..............................................................................10

I.      **VirnetX Failed to Present Sufficient Evidence to Support a Finding of Infringement**

   A.      **Apple Is Entitled to JMOL of No Infringement on FaceTime**

   **FaceTime Does Not Include an "Indication."** VirnetX identified the accept push message as the claimed "indication," but VirnetX does not dispute that the accept push message omits the callee's IP address. That alone suffices to grant JMOL, as VirnetX cannot identify anything else in the accept push message that could indicate support for a direct link. Nonetheless, VirnetX argues that the "indication" need not contain an IP address and, even worse, that "the fact that the caller cannot establish a FaceTime call with just the accept message ***alone*** does nothing to disprove infringement." D.I. 779 at 3, 6. But the claims do require indicating support for a ***direct*** link, and it is undisputed that the callee's IP address is necessary for the caller to make a direct call. 4/9/18 AM Tr. 130:21–131:1 (Dr. Blaze); 4/10/18 Tr. 79:16–19 (Dr. Jones). Indeed, Dr. Jones agreed that when Apple removed the IP address from the accept push message, the accept push message at that time no longer provided the claimed indication. 4/10/18 Tr. 79:24–80:2.

   Faced with a record mandating JMOL, VirnetX falls back on irrelevant arguments and even attempts to advance an entirely new infringement theory never presented to the jury. None of this supports the jury's verdict. First, VirnetX argues that the accept push message is "the last thing that happens in the provisioning process" and "indicates that the FaceTime servers have successfully authenticated and provisioned both devices." D.I. 779 at 2–3 (citing 4/10/18 AM Tr. 72:24–73:14). VirnetX also argues that the accept push message contains a key certificate, push token, and session token. *Id.* at 3. But this information indicates nothing about support for a ***direct*** call, as they apply equally to a ***non-infringing relayed*** call. 4/9/18 AM Tr. 20:9–22:1. Similarly, VirnetX's argument that clients can establish a direct link "without the caller having initially received the callee's IP address," D.I. 779 at 3, misses the point. Whether clients communicate directly at some later time is irrelevant; the relevant inquiry is whether the ***domain name service***

1

*system* provides an indication that *it* supports a direct link. '504 patent at cl. 1.

Second, VirnetX resurrects its unsuccessful summary-judgment argument, positing that the accept push message in redesigned FaceTime is just like the message in the original FaceTime. *See, e.g.*, 2/9/18 Tr. 8:2–9:10; D.I. 624. But while the accept push message in the original version of FaceTime included the information necessary for the caller to initiate a direct call, the message in the redesigned system does not. 4/10/18 Tr. 79:24–80:2.

Third, VirnetX accuses Apple of arguing the "opposite" of its arguments in the consolidated trial JMOL. D.I. 776 at 4. Not so. Apple's prior JMOL was based in part on VirnetX's failure to meet the requirement of "an indication *other than merely returning of requested DNS records*, such as an IP address or key certificate . . . ." D.I. 180 at 10; D.I. 475 at 7. The Court's construction requires that the indication do something *more* than "merely" return an IP address— not that it *cannot* return an IP address. *Id.* That an indication requires something *in addition* to the callee's IP address does not change the fact that when *no* IP address is returned, as in redesigned FaceTime, the FaceTime server cannot indicate that it supports establishing a direct link.

Fourth, VirnetX misstates the record regarding the steps taken to send FaceTime calls to relay servers starting in April 2013. Contrary to VirnetX's assertion (D.I. 779 at 5), Apple forced calls over relay servers by removing the callee's IP address from the accept push message. 4/3/18 PM Tr. 167:6–11, 167:23–168:7. Including an IP address in the *invite* push message in May 2013 had no effect: all calls were undisputedly still forced over relay servers after that change. *Id.* at 168:12–20. It was only iOS 7's client-side changes in September 2013 that made direct calls possible, and even then, the FaceTime servers (the accused domain name service system) still provided no indication of support for a direct link. *Id.*

Finally, betraying the weakness of the "accept push" message theory it put before the jury,

VirnetX concocts a brand-new infringement theory in its opposition, contending that the "invite push" message alternatively satisfies the claimed "indication." D.I. 779 at 7. VirnetX never articulated this "alternative" theory before—not in its expert reports, depositions, or at trial. Instead, Dr. Jones repeatedly testified that it was the "accept push" message that allegedly satisfied the claimed "indication." *See, e.g.*, 4/3/18 PM Tr. 121:2–4; 4/4/18 AM Tr. 31:5–7, 39:11–21. Dr. Jones agreed that he was "very clear that the indication is the accept push message that the FaceTime servers send to the calling device." 4/10/18 Tr. 79:2–5. Not once did Dr. Jones identify the "invite push" message as the claimed indication, and VirnetX cites no case sustaining a verdict based on a theory not argued to the jury. D.I. 779 at 7–8; *see also ParkerVision, Inc. v. Qualcomm Inc.*, 621 F. App'x 1009, 1015 (Fed. Cir. 2015) (affirming JMOL of non-infringement where patentee attempted to advance a theory never presented to the jury and contradicted by patentee's own expert).

In any event, VirnetX's untimely "invite push" theory also fails. The invite push message is sent from the FaceTime server to the callee, before the callee has even accepted the call request—which must occur ***before*** the system can support establishing a direct link. 4/3/18 AM Tr. 106:3–9. VirnetX points to no evidence demonstrating how this message could indicate support for a direct call with data security and anonymity. D.I. 779 at 7–8. The invite push message also cannot be the claimed "indication" because it is never returned to the caller. The construction of the "indication" terms in the '504 and '211 patents requires more than "merely ***returning***" requested DNS records; nothing in the construction suggests that the "indication" can be met without "returning" ***anything*** to the caller. Indeed, the asserted claims of the '211 patent expressly confirm this point by requiring "indicating, ***in response to the query***" sent by the caller. '211 patent at cl. 36.

3

**FaceTime Does Not Support a "Secure Communication Link" or Include a "Domain Name Service System."** Contrary to VirnetX's argument, Apple did not voluntarily withdraw its anonymity defense. Apple presented this defense in the -417 Action, now on appeal. Because the Court admonished the parties not to "repeat arguments that are identical to ones from the previous case," 4/2/18 AM Tr. 19:19–20, Apple filed an offer of proof to preserve its rights. D.I. 628 at 8 n.2. Regarding "domain name service system," VirnetX does not dispute that redesigned FaceTime does not infringe if "domain name service system" incorporates the term "domain name service." JMOL is thus warranted under the correct construction.

### B.      Apple Is Entitled to JMOL of No Infringement by VOD

**VOD Does Not Infringe.** Redesigned VOD does not "determin[e] whether a DNS request sent by a client corresponds to a secure [server/web site]" or "initiat[e] the VPN" or "create a secure channel" in response to such a determination because VOD will only create a VPN if a user is outside a private network, *not* if a user is inside. 4/4/18 AM Tr. 7:17–9:8. This is no "nontechnical gloss" (D.I. 779 at 10–11); it is how VOD works. VirnetX's contention that "whether the requesting device is inside or outside the private network affects whether a server requires authorization for access" leads to the nonsensical conclusion that the same server could simultaneously be secure and insecure. D.I. 779 at 10–11. As Mr. Patience explained, a "secure server" requires authorization for access *regardless* of the location of the requesting device, and VirnetX never explains how a device's location could affect the server's security. 4/6/18 PM Tr. 204:11–25. Moreover, VirnetX's attempt to distinguish redesigned VOD from the old "If Needed" mode fails. According to VirnetX, old "If Needed" did not infringe because it "would trigger a VPN only if the domain name could not be resolved by conventional DNS." D.I. 779 at 13. Redesigned VOD operates in the same way: it first attempts to connect insecurely and only creates a VPN if needed. *See* DTX162; 4/3/18 PM Tr. 193:18–194:1.

VirnetX ignores the patents' discussion of intercepted DNS requests, calling it a preferred embodiment. D.I. 779 at 12. But claim 13 of the '151 patent requires an "*intercepted* DNS request" to determine whether to start a VPN. '151 patent at cl. 13. And the patents note that DNS requests must be intercepted *before* transmission to avoid "hamper[ing] anonymous communications on the Internet." *Id.* at 37:19–20. VOD transmits requests to a conventional DNS before any determination, confirming that VOD does not make any determination based on the request.

Apple's other non-infringement arguments elicit scattershot responses from VirnetX (D.I. 779 at 14), but none succeeds. *First*, VirnetX contends that VOD bases the determination to start a VPN on a DNS request. *Id.* Under VirnetX's infringement theory, however, no infringement exists unless the optional probe fails. 4/10/18 Sealed Tr. 92:3–25. Because infringement depends solely on the optional probe's failure, any "determination" is based on the probe, not the request. *Second*, VirnetX states that the probe's results are checked after the DNS request, and that the probe server and the requested server are on the same network (D.I. 779. at 14) but these facts are irrelevant to Apple's argument that VOD starts a VPN based on the device's location, not a DNS request. *Third*, for claim 13 of the '151 patent, VirnetX concedes that VOD "forwards all DNS requests to conventional DNS," but argues that redesigned VOD only "returns an IP address of a nonsecure computer" "if the DNS request does not correspond to a secure server." *Id.* at 15. VirnetX is wrong: claim 13 conditions the "*forwarding* of the DNS request" on the server's security, not the *return* of an IP address. Because VOD forwards *all* requests to a conventional DNS server, this limitation cannot be met: the requesting device will receive an IP address even if a secure server was requested. 4/3/18 AM Tr. 82:4–10. Moreover, what VirnetX calls the "determination"—the optional probe check—happens *after* the request is forwarded, contrary to the claims. 4/10/18 Sealed Tr. 92:3–25.

**No Evidence of Infringement of the '135 and '151 Patents Exists.** VirnetX identifies no instance of direct infringement. Although Dr. Jones testified generally that Apple tests VOD, 4/3/18 PM Tr. 131:10–12, he did not testify that Apple performed the allegedly infringing steps, particularly where VOD operates in non-infringing ways. 4/3/18 PM Tr. 173:9–175:2, 177:7–178:1; *see Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 715 (E.D. Tex. 2011), *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012). The only other evidence cited by VirnetX—PX1018—is a "draft" of a "test plan," and only one draft test case mentions the HTTPS probe (and even then, as an "optional" parameter). VirnetX points to no evidence suggesting this test was actually presented to customers or carried out; such a finding could be based only on speculation.

VirnetX contends that it was not required to show evidence of infringement for claim 13 of the '151 patent, an apparatus claim. Claim 13 is not merely drawn to capability; it requires "computer readable instructions that, ***when executed***, cause a data processing device to perform" claimed steps. VOD has numerous non-infringing uses and the only accused configuration (with the probe) is not implemented by default. 4/3/18 PM Tr. 173:9–175:2, 177:7–178:1. Mere capability is thus insufficient for the claimed configuration. VirnetX's citations are inapposite. *See Mass Eng. Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 378 (E.D. Tex. 2009) (claims were drawn to mere capability); *R.A.C.C. Indus., Inc. v. Stun-Tech, Inc.*, No. 98-1186, 1998 WL 834329 at *3 (Fed. Cir. Dec. 2, 1998) (addressing whether a claim was a hybrid method and apparatus claim).

## C.    Apple Is Entitled to JMOL of No Infringement on iMessage

VirnetX cites no case law supporting its assertion that the Court lacks subject-matter jurisdiction over VirnetX's infringement claims regarding iMessage. VirnetX clearly engaged in "conduct that can be reasonably inferred as demonstrating intent to enforce a patent." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009). VirnetX accused iMessage

from the complaint through the pretrial order and refused to dismiss those claims with prejudice or provide Apple with a covenant not to sue. Unlike in the -417 Action, where VirnetX affirmatively *withdrew* its infringement allegations for certain patent claims (-417 D.I. 732 at 45–46), VirnetX continues to assert that Apple infringes the same '504 and '211 patent claims—it merely declined to present evidence supporting that assertion regarding iMessage. The Court has jurisdiction and should enter judgment that VirnetX failed to prove infringement by iMessage.

### D.       Apple Is Entitled to JMOL of No Indirect Infringement

VirnetX fails to identify any specific instructions Apple allegedly gave its customers to encourage infringement. *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007). Moreover, although VirnetX relies on its willfulness allegations as evidence of Apple's knowledge or willful blindness, the evidence shows that Apple had a reasonable basis for believing that its actions ***did not*** induce infringement, including opinions of counsel. D.I. 775 at 27–35.

## II.    VirnetX Failed to Present Sufficient Evidence to Support the Damages Award

VirnetX seeks to avoid the merits of Apple's arguments through various procedural assertions. VirnetX first contends that Apple's JMOL is a "waste of time" due to the Court's -417 Action post-trial order. D.I. 779 at 21. The Court has repeatedly rejected VirnetX's preclusion arguments. *E.g.*, D.I. 624; D.I. 639; 3/20/18 Tr. 114:10; 3/26/18 Tr. 105:2. The cases have different records, different accused features, and different hypothetical negotiation dates and this case "requires determination on its own facts." *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1324 (Fed. Cir. 1987).

Next, VirnetX claims the Federal Circuit "held" its "licenses and [] licensing policy are sufficiently comparable to form the basis of a royalty rate analysis." D.I. 779 at 22. Although it was not an "abuse of discretion" to permit testimony about VirnetX's licenses, the Federal Circuit confirmed that these licenses were "not immune from challenge." *VirnetX, Inc. v. Cisco Sys.*, 767

F.3d 1308, 1330 (Fed. Cir. 2014). And even if VirnetX's licenses are "comparable enough" to be admitted, that does not justify reliance on any and every analysis that uses them, especially one not apportioned to the value of the claimed invention. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

Finally, VirnetX characterizes Apple's JMOL as a "re-urg[ing]" of its "*Daubert* attacks against Mr. Weinstein's damages theory." D.I. 779 at 20. But there is no bar to citing expert testimony in a JMOL—especially where, as VirnetX does not deny, the jury adopted Mr. Weinstein's theory. In *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255 (Fed. Cir. 2013) (on which *Rembrandt* and *SimpleAir* rely), the Federal Circuit disapproved of making non-appealed expert admissibility arguments "under the guise" of JMOL. *Id.* at 1264. But Apple preserved its Weinstein *Daubert*, D.I. 546; 4/5/18 AM Tr. 21:15–25, and separately argued in its JMOL that the *evidence* cannot support the verdict. *See* D.I. 775 §§ II.A–B; *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (If "an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or [the] indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.").

**The Damages Award Is Not Apportioned.** Mr. Weinstein admitted that Apple's accused products are "more complex" than the VoIP phones and he did not adjust his royalty to account for these differences; he ignored one billion licensed units in his Microsoft per-unit royalty; and he made no adjustment for the value of the licensed patents not at issue here. *See* D.I. 775 §§ II.A–B. Thus, contrary to VirnetX's assertion, Mr. Weinstein admittedly did not "carefully account[] for distinguishing facts related to the comparability of VirnetX's licenses." D.I. 779 at 22.

VirnetX attempts to excuse Mr. Weinstein's failure to apportion by claiming that "is what companies actually paid." D.I. 779 at 26 (emphasis omitted). But the question remains: paid ***for***

*what*? The answer is indisputably more than the inventions claimed in the four patents-in-suit, and claiming an agreement's existence is equivalent to apportionment is not economic analysis. It is sheer "speculation" that "does not constitute 'substantial evidence.'" *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009). Indeed, VirnetX undermines its contention that its licenses are necessarily "apportioned" by admitting that Apple's and Microsoft's products **would not be covered under the VoIP licenses**. D.I. 779 at 24.

Although VirnetX claims that *Ericsson* holds an expert need not adjust license rates to remove the value of licensed patents beyond the patents-in-suit, D.I. 779 at 15–16, the expert in *Ericsson* did just that. After performing a "first level of apportionment," limiting the "revenue pool" to eight Ericsson 802.11 standard patent portfolio licenses, the *Ericsson* expert performed a "second level of apportionment" and "'very conservatively assumed that the Patents–in–Suit represent at least 50 percent of the total value of the Ericsson 802.11 Portfolio,' **and he reduced his per unit royalty accordingly**." *Ericsson Inc. v. D-Link Corp.*, No. 10-473, 2013 WL 2242444, at *2–3 & n.3 (E.D. Tex. May 21, 2013). By contrast, neither Mr. Weinstein nor the jury made "a realistic and thorough attempt to apportion revenue to only the asserted patents," *id.*, at *3, even though the undisputed evidence demonstrates the nonasserted patents in the VoIP and Microsoft licenses contributed value to those licenses. D.I. 775 § II.A. Thus, unlike *CSIRO*, where "the parties negotiated over the value of **the asserted patent**, '**and no more**'[,]" here, VirnetX's licensees received valuable rights to far more than the asserted patents. *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015). And even though Mr. Bakewell's per-unit rate would have similarly needed further apportionment, D.I. 779 at 30, that is irrelevant. Mr. Bakewell corrected some of Mr. Weinstein's errors, but it was not Apple's burden to fix them. *Pers. Audio, LLC v. Apple, Inc.*, No. 09-111, 2011 WL 3269330, at *11 (E.D. Tex. July 29, 2011).

VirnetX's reference to a "*Georgia-Pacific* analysis," D.I. 779 at 22, 25, is likewise unhelpful as Mr. Weinstein's "analysis" did not explain "how much each [*G-P*] factor affected the rate" and did not change any of his per-unit rates. *See Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012). This "superficial recitation of the *[G-P]* factors, followed by conclusory remarks, can not support the jury's verdict." *Id.* Simply put, VirnetX's claim that Mr. Weinstein "apportioned" is "'so overwhelmed by contrary proof' as to warrant judgment as a matter of law" on damages. *See Gaia Techs. Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 375 (5th Cir. 1999).

**The Jury's Award Compensates beyond the Footprint of the Invention.** Mr. Weinstein did not justify his theory that Apple would pay the same royalty regardless of what infringes. Contrary to VirnetX's claim, D.I. 779 at 27, there is no waiver, *see Brown v. Bryan Cty.*, 219 F.3d 450, 453 n.1 (5th Cir. 2000) (explaining that after vacatur, law of the case does not apply), and unlike Mr. Weinstein, Mr. Bakewell provided different royalty rates depending on which features infringed. 4/9/18 PM Tr. 259:16–21, 262:18–264:9.

VirnetX attempts to defend the application of its $1.20 royalty to FaceTime by claiming that the $0.99 FaceTime market price was not set in "an arm's length negotiation." D.I. 779 at 27–28. But this is a quintessential arm's-length negotiation: third parties (customers) voluntarily paid $0.99 to obtain the standalone FaceTime app. Apple's subsequent decision to include FaceTime in its multi-featured devices does not "reset" that market price to zero as VirnetX suggests. It simply reaffirms the need to apportion the value of the patented technology in FaceTime from the device as a whole. D.I. 779 at 28. No reasonable jury could conclude that Apple would agree to pay more for the patented technology (which does not cover all of FaceTime) than the price of the entire app.

VirnetX also claims that the record establishes the "huge importance … of the infringing functionality" in VOD. D.I. 779 at 28. VirnetX, however, points to no evidence that anyone configured VOD to use the optional HTTPS probe (the only configuration accused of infringement). D.I. 775 § I.B.2. VirnetX also tries to blame Mr. Bakewell for including all VOD units in his royalty base. D.I. 779 at 28. Once again, Apple need not remedy every deficiency in Mr. Weinstein's damages model. 4/9/18 PM Tr. 263:22–25; *Pers. Audio*, 2011 WL 3269330, at *11. No reasonable jury could conclude that VirnetX deserves hundreds of millions of dollars for an invention that it could not prove anyone used. *Lucent Techs.*, 580 F.3d at 1334 (vacating $357M damages verdict where record lacked evidence of use).

**Mr. Weinstein Violated the EMVR**. VirnetX agrees its patented technology does not drive demand for the Apple's products, 4/9/18 PM Tr. 172:1–4, but contends that the Federal Circuit somehow approved Mr. Weinstein's approach. D.I. 779 at 29 (citing *VirnetX*, 767 F.3d at 1330). That is impossible, as Mr. Weinstein's per-unit model was not before the Federal Circuit in the first -417 Action appeal. Moreover, Mr. Weinstein admitted that his mechanical conversion of the licenses' percentage-based royalties at this trial was a "function" of the EMV of the licensed products, for which he did no apportionment. 4/5/18 AM Tr. 119:8–11; D.I. 775 § II.A.

**VirnetX Has No Answer for Double-Recovery.** VirnetX's only response to Apple's double-recovery defense is to say that Apple waived its "license" defense. D.I. 779 at 29. Apple is not arguing that *Apple* is licensed. Apple is arguing that VirnetX cannot be compensated twice for the same units, which are defenses Apple pleaded, D.I. 219 at 23 (double recovery and exhaustion), and included in the pretrial order, D.I. 622 at 13. VirnetX asserts that its licensing policy is one royalty "for every unit … independent of the usage by [the] customer[,]" PX1092, and the 2014 Microsoft license, which expressly licenses Skype cross-platform, establishes that VirnetX has

already been fully compensated for iOS and OS X units that include Skype. PX1084. Because VirnetX does not dispute that it was compensated for these units, it is not entitled to double recovery.

## III. VirnetX Failed to Present Sufficient Evidence to Support a Finding of Willfulness

**Apple Redesigned in Good Faith.** VirnetX elides the substantial authority foreclosing willfulness in similar situations involving redesigns, arguing instead that Apple inappropriately relied on undisclosed opinions of in-house counsel. *See* D.I. 779 at 33. Not so. Apple's engineers, management, and legal all collaborated on the redesign. D.I. 775 at 29. And VirnetX concedes that Apple received a patent on its FaceTime redesign. That the patent issued after VirnetX's patents misses the point: Apple's patent shows that Apple intended to develop a novel design to avoid infringing. *See Canon, Inc. v. Color Imaging, Inc.*, 292 F. Supp. 3d 1357, 1363 (N.D. Ga. 2018).

**Apple's Reliance on Independent Counsel Was Reasonable.** Apple's reliance on independent counsel's non-infringement opinions precludes willfulness under VirnetX's cited authority. *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 810 (Fed. Cir. 2007); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016). VirnetX's arguments concerning the timing and substance of those opinions should be rejected. As to timing, VirnetX wrongly argues that Apple determined its redesigns before receiving outside legal opinions and without knowledge of the patents-in-suit. D.I. 779 at 31, 34-35. But Apple redesigned the accused products in collaboration with its legal team, which was aware of the patents, and Apple executives did not approve release of the redesigns until ***after*** receiving Mr. Van Pelt's opinions. *See id.* at 29-31. Mr. Van Pelt's written opinions corroborate that testimony. D.I. 775 at 31; 4/11/18 PM Tr. 52:24-53:3, 58:19-22. And Mr. Van Pelt formed his opinions after the lawsuit began because VirnetX filed suit on the day of the verdict in the -417 Action, with no basis to allege the (still-to-come) redesigns infringed.

12

VirnetX criticizes Mr. Van Pelt for his "review of the file history," but that review *supports* the legitimacy of his opinions. *See Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 744 (Fed. Cir. 1993); *see also* 4/11/18 PM Tr. 49:7-50:12. Similarly, while VirnetX contends that Mr. Van Pelt failed to apply the "domain name service system" construction, D.I. 779 at 35, Mr. Van Pelt testified that he applied the plain meaning consistent with the then-prevailing claim construction Order. 4/11/18 PM Tr. 51:6-22, 85:8-87:16. Finally, that Mr. Van Pelt and Apple's engineers could not recall specific details of meetings and conversations—four years after the fact—is irrelevant to the reasonableness of his opinions.

**Apple's Reasonable Defenses Preclude Willfulness.** VirnetX's challenges to Apple's non-infringement defenses fall short. Mr. Van Pelt correctly applied what he believed to be the plain meaning of DNSS. 4/11/18 PM Tr. 51:6-22, 85:8–87:16. Apple was precluded from pursuing its invalidity defenses at trial, D.I. 778 at 10, and VirnetX wrongly argues that the PTO's invalidation of VirnetX's patents is irrelevant, citing cases where (unlike here, D.I. 775 at 34-35) the PTO confirmed the validity of the claims at issue. D.I. 779 at 38-39 (citing cases).

**No Evidence of Copying Exists.** VirnetX presented no evidence of copying to the jury, and none exists. *See id.*; D.I. 778 at 5-7. Unlike the defendant in *PPC Broadband, Inc. v. Corning Optical Commc'ns*, No. 11-cv-761, 2016 WL 6537977 (N.D.N.Y. Nov. 3, 2016), Apple redesigned the accused products to operate *differently* from the old designs. And Apple's patent on redesigned FaceTime, which issued over the patents-in-suit, demonstrates that Apple acted with at least a good faith intent to avoid copying VirnetX's alleged technology. *See Canon*, 292 F. Supp. 3d at 1363.

**Apple's Appeals Preclude Willfulness.** While VirnetX contends that Apple needed to present evidence of its good-faith appeals from prior adverse judgments, VirnetX's granted MIL precluded just that. D.I. 779 at 36-37; D.I. 644. Moreover, Apple's non-infringement arguments

regarding anonymity and "domain name service system," which have not yet been addressed by the Federal Circuit, are both meritorious and correct.

## IV.    Apple Is Entitled to a New Trial on Infringement

Because Apple never argued that FaceTime lacked a "domain name service," VirnetX's instruction was improper. Nor did Dr. Blaze's testimony necessitate the instruction. VirnetX asked if the "domain name service" term applied to the '504 and '211 patents. 4/9/18 AM Tr. 104:19–24. Dr. Blaze correctly noted that the term appears in the claims and said the question was unclear. *Id.* After VirnetX clarified, Dr. Blaze *agreed* that the "domain name service" construction was not incorporated into "domain name service system." *Id*. at 113:23–114:1. VirnetX's unnecessary "corrective" instruction prejudiced Apple.

VirnetX's response to Apple's infringement new trial motion is simply to refer back to its arguments opposing Apple's JMOL motion, which lack merit. § I, *supra*. For FaceTime, VirnetX cannot justify its repeated references to Apple's changes to FaceTime to reduce relay usage, simply stating that it proved infringement. D.I. 779 at 40. But no evidence of infringement exists and VirnetX's incessant focus on irrelevant issues prejudiced Apple and confused the jury. For the "domain name service system" term, the parties' positions have been briefed extensively. *See, e.g.*, D.I. 369; D.I. 373; D.I. 377. Under the correct construction, redesigned FaceTime does not infringe. 4/3/18 PM Tr. 167:9–11. As for VOD, VirnetX asserts—citing no evidence—that Apple "moved the relevant portion of the functionality of 'Always mode' to the new version of FaceTime [*sic*]" and that it did not compare the new and old products for infringement. D.I. 779 at 40–41. Both are incorrect. *See* D.I. 775 at 37. While VirnetX suggests that customers who used the Always mode would also use redesigned VOD in an infringing manner, VOD has several non-infringing uses and no evidence exists that "Always" customers necessarily would use redesigned VOD in an infringing manner. 4/3/18 PM Tr. 174:12–22, 178:2–23.

14

## V.     Apple Is Entitled to a New Trial on Damages

**Mr. Weinstein's Testimony Should Have Been Excluded.** The jury's more than half-a-billion-dollar verdict is premised on unreliable and inadmissible testimony from Mr. Weinstein. A new trial without that testimony is necessary. *VirnetX*, 767 F.3d at 1331–34.

**The PTO Proceedings Should Have Been Admitted**. The Federal Circuit did not "resolve[]" the admissibility of the PTO proceedings for this case in September 2014. Then, the reexamination proceedings were working their way towards finality, and the IPR proceedings were in early stages or were not filed. Now, the PTO has declared every asserted claim unpatentable and those final written decisions are on appeal. Those determinations undermine the evidence VirnetX offered at trial that the claims have advantages and differences over prior art. D.I. 775 at 39–40. *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1352.

**The Jury Instructions Were Incorrect.** VirnetX claims an EMVR instruction was not needed because it did not present EMV-based evidence. But VirnetX specifically invited the jury, over Apple's objection, to multiply Apple's revenue by a percentage-based royalty. 4/5/18 AM Tr. 60:17–19, 61:23–25. This EMV-based evidence improperly leant "legitimacy to the reasonableness of [VirnetX's] damages calculation." *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1321 (Fed. Cir. 2011).

## VI.    Apple Is Entitled to a New Trial on Willfulness

VirnetX's opposition regarding willfulness is incorrect as stated in section III, *supra*.

## VII.   Conclusion

For the foregoing reasons and those in Apple's opening brief, Apple's motion for judgment as a matter of law, or in the alternative for a new trial, should be granted.

Dated: June 20, 2018

Respectfully submitted,

*/s/Joseph A. Loy*

Gregory S. Arovas
greg.arovas@kirkland.com
Robert A. Appleby
robert.appleby@kirkland.com
Jeanne M. Heffernan
jeanne.heffernan@kirkland.com
Joseph A. Loy
joseph.loy@kirkland.com
Leslie M. Schmidt
leslie.schmidt@kirkland.com
David N. Draper
david.draper@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

F. Christopher Mizzo
chris.mizzo@kirkland.com
**KIRKLAND & ELLIS LLP**
665 Fifteenth Street, N.W.
Washington, D.C. 20005

Akshay S. Deoras
akshay.deoras@kirkland.com
**KIRKLAND & ELLIS LP**
555 California Street
San Francisco, California 94104

John M. Desmarais
jdesmarais@desmaraisllp.com
Michael P. Stadnick
mstadnick@desmaraisllp.com
Ameet A. Modi
amodi@desmaraisllp.com
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

Michael E. Jones
Texas Bar No. 10969400
mikejones@potterminton.com
**POTTER MINTON**
A Professional Corporation

16

110 N. College Avenue, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

**ATTORNEYS FOR APPLE INC.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 20, 2018.

*/s/Joseph A. Loy*

18