# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| VIRNETX INC., ET AL., | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 6:12-CV-00855-RWS |
| | § | |
| v. | § | **SEALED** |
| | § | |
| APPLE INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER

Before the Court is VirnetX's Motion for Entry of Judgment. Docket No. 824. The Court heard argument on April 15, 2020. For the following reasons, VirnetX's motion is **DENIED**. VirnetX's requests for pre-judgment interest, post-judgment interest and a sunset royalty are **DENIED-AS-MOOT**.

## I. Background

For almost a decade, VirnetX and Apple have locked horns in a bitter patent dispute. In the most recent bout, a jury found that Apple's redesigned VPN on Demand and FaceTime features infringed VirnetX's patents[1] and awarded VirnetX $502,567,709 in reasonable royalty damages— approximately $1.20 per accused device. Docket No. 722 at 2. After trial, the Court denied Apple's post-trial motions, granted VirnetX's requests for certain equitable relief and entered final judgment. Docket No. 798 (order on post-trial motions); Docket No. 801 (Final Judgment).

Apple appealed. Docket No. 812. The Federal Circuit reversed this Court's claim construction, held that FaceTime did not infringe and remanded to this Court for a determination on the necessity of a new damages trial. *VirnetX Inc. v. Apple Inc.*, 792 F. App'x 796 (Fed. Cir.

---

[1] U.S. Pat. Nos. 6,502,135 and 7,490,151 (asserted against VPN on Demand); U.S. Pat. Nos. 7,418,504 and 7,921,211 (asserted against FaceTime).

2019) ("*VirnetX III*"). As a first step in fulfilling that mandate, the Court sets forth the relevant background: (a) the damages experts' testimony, (b) the jury verdict form, (c) Apple's representations in post-trial briefing, (d) the Court's order regarding ongoing royalties, (e) Apple's representation on appeal and (f) Apple's representations during a related appeal.

### a. Expert Testimony

Each party presented a damages expert at trial: Roy Weinstein for VirnetX and W. Christopher Bakewell for Apple. On VirnetX's behalf, Mr. Weinstein opined "that reasonable royalties to be paid by Apple to VirnetX for use of the VirnetX patents in this case range from $1.20 per accused unit sold, to $1.67 per accused unit sold with respect to FaceTime and VPN On Demand." Docket No. 753 at 26:13–16. He offered three specific royalty rates—$1.20, $1.41 or $1.67 per accused unit—that averaged the per-unit royalty rate from six, five and four comparable licenses, respectively. *Id.* at 48:23–55:4. Mr. Weinstein opined that these rates applied to each infringing device regardless of whether the device contained FaceTime, VPN on Demand or both. *Id.* 91:18–24, 127:5–8. In an example calculation, Mr. Weinstein multiplied the $1.20-per-device rate by the number of accused units to arrive at $502,569,709 in damages. *Id.* at 90:7–91:19. He performed the same calculation for the other rates. Rather than choosing a single rate, Mr. Weinstein suggested all three rates would be appropriate, leaving the ultimate decision to the jury. *Id.* at 55:5–7. But he did opine that $502,569,709 was his "conservative figure . . . for damages." *Id.* at 94:2–7.

On Apple's behalf, Mr. Bakewell opined that "a reasonable royalty in this case [would be] no more than $0.06 per unit." Docket No. 758 at 223:16–17. To reach that figure, he divided the royalty payment from a Microsoft-VirnetX license agreement—$223 million—"by the four billion units that were licensed under that agreement." *Id.* at 224:2–5. Unlike Mr. Weinstein, Mr. Bakewell testified that different royalty rates should apply to devices containing different accused

features: $0.06 for devices with both FaceTime and VPN on Demand, $0.01 for devices with FaceTime alone and something less than $0.06 for devices with VPN on Demand alone. *Id.* at 262:23–64:1. To arrive at the $0.01 rate for devices with FaceTime alone, Mr. Bakewell relied on an income approach based on Apple's sales, rather than a market approach based on prior licenses. *Id.* at 260:1–9. Before Apple included FaceTime as a default feature on its devices, users were able to purchase a FaceTime application for $0.99. *Id.* at 260:10–12. Relying on opinions from Apple's other witnesses, Mr. Bakewell claimed the patented technology accounted for 1% of that $0.99 sale price—approximately $0.01. *Id.* at 260:23–61:19.

### b. Verdict Form

In trial briefing, the parties proposed alternative damages questions, but neither requested a per-patent or per-feature question:

| VIRNETX'S PROPOSAL | APPLE'S PROPOSAL |
|---|---|
| What royalty do you find, by a preponderance of the evidence, would fairly and reasonably compensate VirnetX for any infringement that you have found? Express your answer as a dollar amount per infringing device. | What reasonable royalty did VirnetX prove by a preponderance of the evidence would be adequate to compensate it for Apple's infringement? |

Docket Nos. 704-2 (VirnetX's Proposal), 704-3 (Apple's proposal). Apple did, however, argue that VirnetX's proposal was biased because it assumed a single royalty rate for every accused device regardless of that device's features. Docket No. 704 at 2. VirnetX argued Mr. Bakewell chose not to present a feature-dependent damages theory, so Apple's concerns had been waived. Docket No. 709 at 2.

The Court adopted a compromise position, using VirnetX's basic wording but declining to request damages on a per-unit basis:

>What royalty do you find, by a preponderance of the evidence, would fairly and reasonably compensate VirnetX for any infringement that you have found?

Docket No. 722 at 2 (Final Verdict Form). The jury was never asked to calculate a reasonable royalty specific to FaceTime's infringement or VPN on Demand's infringement.

### c. Apple's Post-Trial Representations

During post-trial briefing, Apple sought judgment as a matter of law on damages "[b]ecause the jury's damages award [had been] predicated on legally insufficient grounds." Docket No. 775 at 26. It argued Mr. Weinstein had failed to apportion damages, failed to account for various licenses' circumstances, advocated a royalty beyond the footprint of the invention and violated the entire-market-value rule (EMVR). *Id.* at 26–33. Apple also argued the jury's award was duplicative and excessive. *Id.* at 33–35. In its reply brief, Apple asserted that "the jury [had] adopted Mr. Weinstein's theory," so its arguments against Mr. Weinstein's opinions applied with equal force to the jury's verdict. Docket No. 783 at 8. Apple made similar arguments in a related case. *See, e.g.*, Apple's Omnibus Motion at 16–18, 20, 22, *VirnetX v. Apple*, Case No. 6:10-cv-417 (E.D. Tex. 2016) (Docket No. 1062) ("-417 case").

In the alternative, Apple moved for a new trial on damages for five reasons, four of which related to damages. First, Apple argued a new damages trial would be necessary if the Court granted JMOL of noninfringement for FaceTime or VPN on Demand. Docket No. 775 at 46. Second, Apple argued Mr. Weinstein's unreliable testimony should have been excluded. *Id.* Third, Apple claimed the Court should have instructed the jury on the EMVR and had incorrectly instructed the jury regarding the hypothetical negotiation. *Id.* Finally, Apple argued the jury's verdict was excessive. *Id.*

### d. VirnetX's Sunset Royalty

To remedy ongoing harm, VirnetX requested a permanent injunction or a sunset royalty. *See* Docket No. 774. In response to VirnetX's sunset-royalty request, Apple argued that any ongoing royalty should be capped at $0.08 per device. Docket No. 778 at 50–52. In doing so, it repeatedly stated that the "jury's $1.20 per-unit rate" should not be adopted or enhanced for any sunset royalty. *Id.*

The Court denied VirnetX's request for a permanent injunction but granted its request for an on-going royalty. Docket No. 798 at 51. The Court found that "[t]he jury's implied royalty rate [wa]s $1.20," which neither party disputed, and rejected VirnetX's request to enhance that rate. Docket No. 798 at 51.

### e. Apple's Representations on Appeal

On appeal, Apple continued to assert that the jury had adopted Mr. Weinstein's damages model. It claimed that—assuming Mr. Weinstein's opinions were admissible—he had failed to explain his apportionment to the jury. To Apple, because "the verdict . . . [had] awarded [Mr. Weinstein's] full damages demand," the jury could not have apportioned, and its verdict could not stand. Corrected Non-Confidential Brief for Defendant-Appellant Apple Inc. at 78–79, *VirnetX v. Apple*, Case No. 19-1050 (Fed. Cir. 2019) (Docket No. 27).

In the same breath, Apple argued that "if the Court affirm[ed] the PTO's unpatentability determinations and/or reverse[d] the infringement findings for the '135 and '151 patents (asserted against redesigned VPN On Demand) or the '504 and '211 patents (asserted against redesigned FaceTime), the district court's judgment should be vacated and remanded to determine the applicable damages, prejudgment interest, and ongoing royalties for the patents and infringement findings that remain." *Id.* at 74. It argued that the jury's verdict had been predicated on four patents' infringement and had not apportioned damages on a patent-by-patent basis. *Id.* Apple

did not specify whether "determine" meant "determine by the Court" or "determine by a new trial." *Id.* In reply, however, Apple asserted a new trial could remedy the Court's allegedly erroneous instructions. Non-Confidential Reply Brief for Defendant-Appellant Apple Inc. at 22, *VirnetX v. Apple*, Case No. 19-1050 (Fed. Cir. 2019) (Docket No. 45).

At argument and in a series of FED. R. APP. P. 28(j)[2] letters, the parties disputed whether a new trial on damages would be necessary if only VPN on Demand infringed. *See* VirnetX's 28(j) Supplemental Authority & Apple's Response, *VirnetX v. Apple*, Case No. 19-1050 (Fed. Cir. 2019) (Docket Nos. 80, 81). But the parties did not fully brief that issue. *See VirnetX III*, 792 F. App'x at 813.

### f. Apple's Representations During Appeal in the -417 case

On appeal in the -417 case, *VirnetX v. Cisco*, Case No. 18-1197 (Fed. Cir. 2019), Apple addressed the impact on damages of various potential liability holdings. In doing so, counsel for Apple represented that "no one is contesting the royalty rate across the patents." Oral Argument at 1:33–40, *VirnetX v. Cisco*, Case No. 18-1197 (Fed. Cir. Jan. 8, 2019). But shortly thereafter, counsel clarified Apple's position: "what we said is that, if the damages are incorrect, [the case] would have to be remanded for determination." *Id.* at 3:38–44.

## II. Choice of Law

VirnetX argues that Fifth Circuit law governs the Court's analysis of its motion, Docket No. 824 at 16; and Apple disagrees, arguing Federal Circuit law controls. Docket No. 825 at 8–9. Despite the disagreement, neither party argues the choice-of-law issue is dispositive. *See* Docket No. 825 at 9 (arguing, in the alternative, under Fifth Circuit law); Docket No. 828 at 7–8 (addressing Federal Circuit case law).

---

[2] FED. R. APP. P. 28(j) allows parties to present courts with supplemental authority after briefing.

Though often cached in substantive-procedural terms, the crux of the Federal Circuit's horizontal choice-of-law doctrine is the distinction between patent and nonpatent issues. *See Midwest Indus. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc). That distinction "has clarified the choice of law question for most purposes, but in some instances it has not been obvious whether a particular issue should be characterized as a 'patent' issue." *Id.* Issues of substantive patent law are certainly patent issues, including whether substantive patent law preempts or conflicts with other causes of action. *Id.* Procedural issues, on the other hand, are nonpatent unless they (1) "pertain[] to patent law," (2) "bear[] an essential relationship to matters committed to [the Federal Circuit's] exclusive control by statute" or (3) "clearly implicate[] the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction." *Id.* Often, the court's definition of the procedural issue—defining it either narrowly or broadly—is determinative. *Cf. Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1250 (Fed. Cir. 2005) ("Waiver is a procedural issue, but if one views the issue more narrowly as 'waiver of a claim construction argument,' rather than the more general 'waiver of an appellate argument,' it seems indisputably unique to patent law."). Courts deciding "damages in patent cases" employ this framework. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010).

The Court will apply Federal Circuit law for two reasons: first, the Federal Circuit has suggested its own law applies, and second, the issue before this Court "pertains to patent law." *See Midwest Indus.*, 175 F.3d at 1359.

**First,** the Federal Circuit seems to have understood that its own case law would apply on remand. *VirnetX III*, 792 F. App'x at 812–13. Without reference to regional circuit law, the court recited its new trial standard: " 'where the jury rendered a single verdict on damages, without breaking down the damages attributable to each patent, the normal rule would require a new trial

as to damages.' " *Id.* at 812 (quoting *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007)). To be sure, the Federal Circuit's statement is not controlling, but it does provide some insight. *VirnetX III*, 794 F. App'x at 813 (reserving issue for this Court); *see Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1382 (Fed. Cir. 1999) (holding the Mandate Rule applies only to issues actually decided, not those reserved for decision on remand).

Moreover, the *Verizon* court understood that Federal Circuit law governs in the situation before this Court. That court announced its "normal rule" without reference to regional circuit law. *Verizon Servs. Corp.*, 503 F.3d at 1310. It cited the Supreme Court's doctrine on erroneous jury instructions but never mentioned Fourth Circuit law, *i.e.*, the relevant regional circuit. Implicitly, that court understood that its own law controlled.

**Second**, the issue here "pertains to patent law." Like in *Harris Corp.*, defining the issue's scope is key. In remanding, the Federal Circuit described the issue as "whether to hold a limited damages-only retrial given the reduced basis of liability, including what discretion there might be to hold such a retrial without conclusively determining whether one is needed, especially if doubt remains as to the application of the above-quoted standards to this case." *VirnetX III*, 794 F. App'x at 813. While that statement does not reference patent law, the "reduced basis for liability" is a partial vacatur on patent infringement, and the "above-quoted standards" are Federal Circuit standards. *Id.* at 812–13. Then again, the court acknowledged the possibility that "doubt remains as to the application of" its standards, which may express doubt as to the applicable law.

Despite that ambiguity, this Court must wade into two areas of patent law—patent damages and waiver regarding patent enforcement—to resolve the parties' disputes. First, the parties disagree over the proper interpretation of the jury's verdict. To resolve that dispute, the Court must compare Mr. Weinstein's testimony, Mr. Bakewell's testimony and the jury's verdict to

divine how the jury reached its damages figure. In doing so, the Court must consider the nature and implication of expert testimony on patent damages—certainly an issue that "pertains to patent law." *See Midwest Indus.*, 175 F.3d at 1359. Second, VirnetX and Apple dispute the implications of Apple's post-trial representations—*i.e.*, whether Apple's purported framing of the jury verdict prevents its arguments here. By resolving that dispute, the Court will determine whether VirnetX may enforce a patent judgment—a question intimately bound with patent law. *See Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1250–51 (Fed. Cir. 2005) ("Because the ability to make claim construction arguments on appeal is intimately bound up with patent enforcement, we hold that Federal Circuit law controls waiver in the context of claim construction arguments.").

In sum, the Federal Circuit has suggested that its own law applies to the issue before the Court, and in resolving that issue, the Court must address two questions that "pertain[] to patent law." *See Midwest Indus.*, 175 F.3d at 1359. Thus, this Court will apply Federal Circuit law. Still, as the parties agree, the distinction between Fifth and Federal Circuit law is not outcome determinative: the Fifth and Federal Circuit's standards dovetail. *See infra*, § III at n.3.

### III. <u>Legal Standards</u>

As noted above, "where the jury rendered a single verdict on damages, without breaking down the damages attributable to each patent, the normal rule would require a new trial as to damages." *Verizon Servs. Corp.*, 503 F.3d at 1310 (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 312 (1986)).

Though "reason to depart from this general rule" may exist, *Verizon Servs. Corp.*, 503 F.3d at 1310, little precedent explains what circumstances justify such a departure. In *WesternGeco L.L.C. v. ION Geophysical Corp.*, 913 F.3d 1067, 1074 (Fed. Cir. 2019), the Federal Circuit posited circumstances under which departure might be appropriate but remanded for the district court to

take up that question. Before remanding, however, the court clarified that it applies "a harmlessness analysis similar to [its] approach in the case of erroneous jury instructions." *Id.*; *see also Verizon Servs. Corp.*, 503 F.3d at 1310 (citing *Memphis*, which addresses erroneous jury instructions). In the jury instruction context, harmlessness is an exceedingly high bar: an error "can only be harmless error if it '***could not*** have changed the result.' " *Eko Brands, LLC v. Adrian Rivera Maynez Enters.*, 946 F.3d 1367, 1379 n.6 (Fed. Cir. 2020) (quoting *Verizon*, 503 F.3d at 1307 n.7) (emphasis added); *see Memphis Cmty.*, 477 U.S. at 312 ("When damages instructions are faulty and the verdict does not reveal the means by which the jury calculated damages, the error in the charge is difficult, if not impossible, to correct without retrial, in light of the jury's general verdict.") Likewise, the standard for departing from the normal rule must be exceedingly high: the liability error must not have affected the damages verdict. *See WesternGeco L.L.C.*, 913 F.3d at 1074 ("In other words, the award can be sustained if there was ***undisputed evidence*** that the technology covered by [the affirmed] patent . . . was necessary to perform" the accused infringement.) (emphasis added).[3] "Review of the denial or grant of a motion for new trial is evaluated under an abuse of discretion standard." *Medtronic, Inc. v. Intermedics, Inc.*, 799 F.2d 734, 740–41 (Fed. Cir. 1986).

---

[3] Notably, this standard dovetails with the Fifth Circuit's standard for similar cases. In *Albright v. Longview Police Dep't*, 884 F.2d 835, 842–43 (5th Cir. 1989), the Fifth Circuit set aside a portion of a jury's liability finding. After doing so, the Court remanded for the district court to address an issue of state law and then, depending on the court's resolution of that issue, for a new trial. *Id.* Because the court was "unable to separate the mental anguish and other damages claimed for [the potentially viable claim] from the lost wages and damages solely attributable to [the inviable claim], . . . a new trial on damages [wa]s required." *Id.* (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 312 (1986)). Like the Federal Circuit, the Fifth Circuit requires harmlessness. *See id.*; *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 603 (5th Cir. 1988) (holding, because the jury "might have" awarded damages in an impermissible way, a new trial was necessary.); *cf. Alaniz v. Zamora-Quezada*, 591 F.3d 761, 773 (5th Cir. 2009) (affirming an ***entire*** damages award based on an ***independent grounds*** for liability). Tellingly, both the Fifth and Federal Circuits relied on *Memphis* to craft their standards, which provides the relevant harmlessness standard.

Applying Federal Circuit precedent, this Court has previously departed from the normal rule. In one such case, the Court upheld a damages verdict despite invaliding certain claims when the defendant failed to object to the verdict form and presented a claim-independent damages theory:

> Even in its responsive briefing [a defendant] admits that it 'does not object to the form of the verdict or apportionment of damages . . . .' (Doc. No. 651 at 12). . . .
>
> [That defendant] fails to explain why its damages expert, [Mr. Bakewell,] offered single lump sum damages amount that remained the same regardless of the number of claims or patents found to be infringed.

*Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, No. 6:11-CV-317-JDL, 2014 U.S. Dist. LEXIS 160635, at *37–38 (E.D. Tex. Oct. 21, 2014), *rev'd on other grounds sub nom.*, *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1316 (Fed. Cir. 2016); *see also SK Hynix Inc. v. Rambus Inc.*, No. C-00-20905 RMW, 2013 U.S. Dist. LEXIS 66554, at *55 (N.D. Cal. May 8, 2013) (upholding verdict under similar circumstances). Both *Eon* and *SK Hynix* fit the exceedingly high bar for departing from the normal rule: no party presented a claim-dependent damages theory, so the undisputed evidence compelled an identical damages verdict. *Eon Corp. IP Holdings, LLC*, 2014 U.S. Dist. LEXIS 160635, at *37–38; *SK Hynix Inc.*, No. C-00-20905 RMW, 2013 U.S. Dist. LEXIS 66554, at *55.

### IV. Discussion

The jury rendered a general damages verdict, and the Federal Circuit vacated only part of the jury's liability findings, so the normal rule would require a new trial. *Verizon Servs. Corp.*, 503 F.3d at 1310. Neither party asserts that the jury explicitly calculated a royalty rate for devices with VPN on Demand only. Instead, VirnetX argues the Court must depart from the normal rule and remit damages to $1.20 per device that contains VPN on Demand (*i.e.*, 384,528,255 devices

or $461,433,906 total) based on (a) the jury's implicit findings and (b) Apple's conduct. Docket No. 824 at 15–16. Neither reason is persuasive.

### a. The Jury's Verdict Does Not Necessitate a Feature-Independent Royalty Rate

Because the jury awarded "the exact amount Mr. Weinstein had testified would be appropriate,"[4] Docket No. 824 at 11, VirnetX contends the jury must have adopted Mr. Weinstein's feature-independent royalty rate: "it would make no sense" for the jury to have found otherwise, Docket No. 828 at 5–6; *see* Docket No. 824 at 16. Indeed, VirnetX claims that Apple conceded as much in post-trial briefing and that the Court found as much when implementing a $1.20 ongoing royalty rate. Docket No. 824 at 16, 19–20. VirnetX notes the VPN on Demand patents expire after the FaceTime patents, so VirnetX argues a portion of those ongoing royalties would compensate VirnetX for VPN on Demand's infringement alone. *Id.* Finally, VirnetX leverages Fifth and Federal Circuit precedent to argue that any alternative interpretation of the verdict is impermissible. *Id.* at 20–22. VirnetX claims that, in view of the parties' agreement on the number of accused units and the already-established royalty rate, nothing remains to be determined, so a new trial is unwarranted.

This case does not justify departure from the normal rule. **First**, assuming the jury adopted a feature-independent royalty rate, VirnetX improperly focuses on that rate's implications. To depart from the normal rule, the liability error must not have affected the damages verdict. Rephrased in context, FaceTime's infringement must not have affected the jury's royalty rate methodology. VirnetX argues that FaceTime's infringement is irrelevant because the jury adopted a feature-independent royalty rate. But that argument puts the cart before the horse, using a

---

[4] Though neither the parties nor the Court has acknowledged it, the jury actually awarded $2000 less than Mr. Weinstein's proposed royalty. *Compare* Docket No. 722 at 2 (awarding $502,567,709 to VirnetX) *with* Docket No. 753 at 90:7–91:19 (testifying that royalty should be $502,569,709).

potentially compromised damages verdict to argue FaceTime's infringement had no effect on that same verdict. Properly ordered, VirnetX must show the jury would have adopted a feature-independent royalty rate regardless of FaceTime's infringement. It has not done so.

FaceTime's infringement may have affected the jury's decision to apply a feature-independent royalty rate. Mr. Weinstein argued for a feature-independent royalty rate, and Mr. Bakewell advocated for a feature-dependent royalty rate. Each provided substantial evidence in support of their conclusion. In resolving that dispute, the jury may have relied on its FaceTime infringement findings. Because every accused device contained FaceTime, it is impossible to know whether the jury would have decided differently if FaceTime did not infringe. As the Federal Circuit acknowledged, "the jury did not have to decide whether the $1.20-per-unit figure would be correct if only VPN on Demand infringed." *VirnetX III,* 792 F. App'x at 813. On that basis alone, the normal rule applies, and a new trial is required. That is not to say the jury's liability finding necessarily affected its damages methodology. In actuality, as VirnetX argues, the jury may have reached the same conclusion regardless of FaceTime's infringement. Such an interpretation of the jury's general verdict would be reasonable and logically sound, but in the absence of more specific jury questions, the impact of FaceTime's infringement on the jury's damages methodology is unknowable.

For similar reasons, VirnetX's reliance on *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1291 (Fed. Cir. 2011), and *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996), is misplaced. Both involve error at the damages stage (*i.e.*, not affording the plaintiff a minimum recovery and excessive damages, respectively) rather than the liability stage. Though both cases suggest that courts may alter damages in some circumstances

without a trial, neither relates to affirming a damages verdict despite a reduced foundation of liability.[5]

**Second,** VirnetX's argument is based on a lone premise: the jury awarded a uniform $1.20 royalty rate for each accused device. Docket No. 828 at 5–6; *see id.* at 16. From that premise, VirnetX argues the jury must have adopted a feature-independent royalty rate that would apply equally to devices containing only VPN on Demand. *Id.* Though in actuality the jury may have adopted a uniform $1.20 royalty rate, that conclusion does not necessarily follow from the jury's verdict. The jury rendered a general damages verdict—$502,567,709—susceptible to multiple interpretations. Docket No. 722. One interpretation—the one VirnetX supports—is that the jury multiplied the number of accused devices (418,808,091) by a singular royalty rate (approximately $1.199995 per device) without regard for the accused features. Again, such an interpretation would be sound, but other mathematically equivalent interpretations exist. Nothing in the four corners of the jury's verdict requires a singular royalty rate.

Conceding this point, VirnetX argues a feature-independent royalty rate is the only reasonable interpretation of the jury's verdict given the evidence presented at trial. Docket No. 838 at 19:4–24. But the evidence supports alternative interpretations. Mr. Bakewell's testimony supports a $0.01 royalty rate for devices with only FaceTime—*i.e.*, his income approach. Assuming a $0.01 royalty rate for devices with only FaceTime, Mr. Weinstein's testimony supports a royalty rate of approximately $1.30608 per device for devices with both FaceTime and VPN on Demand—which, combined with the $0.01 royalty rate for devices with only FaceTime, yields the jury's damages verdict. Mr. Weinstein opined that a royalty rate between $1.20 and $1.67 applied for devices with both features, and if the jury found only the Avaya, NEC, Siemens

---

[5] *McDonald v. Bennett*, 674 F.2d 1080, 1092 (5th Cir. 1982), is inapposite for the same reasons.

and Mitel licenses comparable, then the average royalty rate per accused device would equal $1.31.[6] Thus, the evidence supports a feature-dependent royalty rate: $0.01 for devices with FaceTime only and approximately $1.30608 for devices with FaceTime and VPN on Demand. A feature-independent royalty rate may be the most reasonable inference from the facts, but it is not the only inference.

Neither Fifth nor Federal Circuit doctrine precludes a feature-dependent interpretation of the verdict. That interpretation "of the jury verdict [would] render [the verdict] consistent and reasonable." *Isbell v. Wal-Mart Stores, Inc.*, 997 F.2d 881, 1993 WL 261053, at *2 (5th Cir. 1993). Nothing about it is internally inconsistent or unsupported by evidence. It "presume[s]" the jury "follow[ed] [the Court's] instructions," *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 876 (5th Cir. 2013), awarding damages sufficient to compensate VirnetX for both FaceTime's infringement ($0.01 per device) and VPN on Demand's infringement (approximately $1.29608 per device). The jury would not be required to "award no damages" for VPN on Demand, in contravention of Federal Circuit law. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 (Fed. Cir. 2014), *overruled in part on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc).

Likewise, the Court's ongoing royalty award does not resolve the issue. In adopting "[t]he jury's implied royalty rate," the Court was not addressing whether evidence supported alternative conclusions (*i.e.*, whether the jury's liability error might have infected its damages). It was addressing what damages the jury awarded based on its now-erroneous liability verdict. Moreover, the Court was sitting in equity and determining an implied royalty rate, not a required royalty rate.

---

[6] Adjusting the average royalty rate down by half-of-one-cent is consistent with Mr. Weinstein's opinions. The average of the per-unit royalty rate for all six licenses is $1.205, but Mr. Weinstein rounded down to $1.20 per device.

Considered together, the jury verdict, evidence, case law and Court's findings do not conclusively establish VirnetX's key premise. Without that premise, a new trial is required.

### b. Apple Has Not Lost Its Ability to Challenge the Verdict

Though not argued separately in briefing, VirnetX alleges that Apple has lost its right to seek a new trial. It argues that, at best, Apple argued inconsistently, seeking a new trial while simultaneously arguing the jury adopted Mr. Weinstein's theories. VirnetX posits that, because Apple conceded the jury adopted Mr. Weinstein's theories, it has waived any right to a new trial.

A proper framing of the issues resolves any inconsistencies in Apple's post-trial representations. Apple simultaneously argued that any reversal on liability affected the jury's damages verdict and that the jury adopted Mr. Weinstein's damages theory. The former asserts that, based on the evidence presented at trial, the jury's damages verdict may have relied on its FaceTime infringement finding. The latter asserts the jury actually accepted a feature-independent royalty rate. There is no clear inconsistency between those positions. *Cf. Sandisk Corp. v. Memorex Prods.*, 415 F.3d 1278, 1290 (Fed. Cir. 2005) (holding a "party's later position must be 'clearly inconsistent' with [its] earlier position" to invoke judicial estoppel.). To be sure, there is tension between Apple's positions. But Apple walks a fine line distinguishing between what theory the jury likely adopted—*i.e.*, Mr. Weinstein's feature-independent theory—and what theory the jury might have adopted—a feature-dependent theory. Nowhere does Apple credibly dispute VirnetX's understanding of what the jury likely did; indeed, Apple conceded as much. But Apple correctly argues what the jury necessarily did is unknowable. Those positions are not clearly inconsistent, and as discussed above, the latter is outcome determinative.

Apple has not waived its right to assert the jury's erroneous liability verdict affected its damages verdict. Apple raised the issue in post-trial briefing, arguing that, "should the Court set aside the jury's infringement verdict as to either VOD or FaceTime, a new trial on damages should

be granted because the damages verdict for one feature is not separable from the damages verdict for the other." Docket No. 775 at 46.  And Apple raised the same issue before the Federal Circuit. *See* Corrected Non-Confidential Brief for Defendant-Appellant Apple Inc. at 78–79, *VirnetX v. Apple*, Case No. 19-1050 (Fed. Cir. 2019) (Docket No. 27); VirnetX's 28(j) Supplemental Authority & Apple's Response, *VirnetX v. Apple*, Case No. 19-1050 (Fed. Cir. 2019) (Docket Nos. 80, 81).  At no stage has Apple declined to argue a new trial would be necessary if a portion of the jury's infringement verdict was set aside.

## V. Conclusion

For the foregoing reasons, VirnetX's motion is **DENIED**.  The Court finds that a new trial on damages is necessary.  Because a new trial is necessary, VirnetX's requests for pre-judgment interest, post-judgment interest and a sunset royalty are moot.  It is

**ORDERED** that the above-titled matter is **SET** for jury selection and trial at **9 a.m. on August 17, 2020**.  The parties shall meet and confer and file (1) a joint proposed discovery order and (2) a joint proposed docket control order incorporating that trial date within **seven (7) days** of this order.

**So ORDERED and SIGNED this 23rd day of April, 2020.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE