*Exhibit B*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **VIRNETX INC., ET AL.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **C.A. No. 6:12-cv-00855-RWS** |
| | § | |
| **APPLE INC.,** | § | |
| | § | |
| **Defendant.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |

## PROPOSED JURY INSTRUCTIONS

1. **Introduction**

MEMBERS OF THE JURY:

You have now heard the evidence in this case, and I will instruct you now on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you, the jury, are the sole judges of the facts. Do not consider any statement that I may have made during the trial or make in these instructions as an indication that I have any opinion about the facts of the case. After I instruct you on the law, as I suggested, the attorneys will have an opportunity to make their closing arguments. Statements and argument of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in understanding the evidence and what the parties' contentions are.

**1-1.        General Instruction**

A verdict form has been prepared for you, and you will take this form with you to the jury room. And when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. At the end of the instructions, I will take you through the verdict form before the parties begin their closing arguments. Answer each question on the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. With respect to each question asked, your answers and your verdict must be unanimous.

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all witnesses regardless of who may have called them and all exhibits received in evidence regardless of who may have produced them. At times during the trial, it was necessary for the Court to talk with the lawyers here at the bench out of your hearing or by calling a recess. We met at the bench or when you were in the jury room because during trial, sometimes things come up that don't involve the jury. You should not speculate on what was discussed during such times. You are the jurors, and you are the sole judges of the credibility of all the witnesses and the weight and effect of all evidence. By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

### 1-2.        Considering Witness Testimony

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

### 1-3.        Impeachment by Witness's Inconsistent Statements

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

**1-4.       How to Examine the Evidence**

Certain testimony in this case has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness testimony may be presented under oath in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration and is to be judged by you as to the credibility and weight and otherwise considered by you insofar as possible the same as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason, and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence, the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from all of the evidence, both direct and circumstantial.

[**VirnetX Proposes**: The parties have stipulated, or agreed, to some facts in this case. When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the fact as proved. The parties previously stipulated that damages for infringement in this case would be calculated as starting on September 18, 2013.]

[**Apple Proposes**: Delete].[1]

---

[1] **Apple's Position:** The instruction is unnecessary.  The date of the hypothetical negotiation is better addressed in the context of the damages instructions.  The instruction is also confusing.  It says that the parties have stipulated to "some facts" but only discusses one fact, and it is not clear what other facts are intended.  To the extent there are any stipulations, this instruction leaves the jury speculating about what those are.

[**VirnetX response**: These instructions have been given at every trial.  Even if the hypothetical negotiation date should be reiterated in the damages instructions, there is no reason not to include it here.  Moreover, these are final instructions; other stipulations will be before the jury and the jury is entitled to know what weight to give those stipulations.]

### 1-5.       Objections to Evidence

Attorneys representing clients in courts such as this one have an obligation in the course of trial to assert objections when they believe testimony or evidence is being offered that is contrary to the rules of evidence. The essence of a fair trial is that it be conducted pursuant to the rules of evidence and that your verdict be based only on legally admissible evidence. So, you should not be influenced by the objection or by the Court's ruling on it. If the objection is sustained, then ignore the question. If the objection is overruled, then you may treat the answer to that question just as you would treat the answer to any other question.

### 1-6.        Expert Witnesses

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field, he or she is called an expert witness, is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether the witness's testimony is believable or not, whether it is supported by the evidence, and whether to rely upon it. In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness.

2.      **Contentions of the Parties**

I will first give you a summary of each side's contentions in this case. I will then tell you

what each side must prove to win on these issues.

[**VirnetX Proposes**: As I have mentioned, it has been determined in a previous proceeding

that the redesigned] [**Apple Proposes**: It has been determined that the][2] VPN on Demand feature

_____

[2] **Apple's Position:** Apple's proposal is from the Final Jury instructions from the -417 case.
*VirnetX v. Apple Inc.*, Case No. 6:10-cv-417, Dkt. 1021 at 5 (E.D. Tex. Sept. 30, 2016) ("it has
been determined that VPN on Demand infringes claims 1, 3, 7 and 8 of the '135 patent and claim 13
of the '151 patent."). VirnetX's reference to a "previous proceeding" is suggestive that a prior
jury found infringement, which is irrelevant and unfairly prejudicial. Apple also objects to
referring to the features in this case as the "redesigned" VPN on Demand feature. That label is
unfairly prejudicial, and constitute an impermissible use of character reasoning to portray Apple
as a bad actor. *See* D.I. 609 at 4-5. VirnetX's proposal is also confusing. This is the first time in
these instructions the Court will reference the prior determination. Notwithstanding the
foregoing, Apple maintains its objection that evidence of the prior adjudications should be
excluded and preserves that objection here. 3/26/2018 Hr'g Tr. at 48:11-16. This proposal is
only for the purposes of furthering this case and is not to be used against Apple in any other
proceedings as if it was stipulated to or agreed to for any other purpose because it is solely to
deal with an evidentiary issue in this case. *Id.* at 48:19-49:12. Apple does not agree that a patent
found to be un-patentable can be infringed. *Id.* Moreover, Apple previously moved *in limine* to
preclude reference to the previously adjudicated versions of VPN On Demand, and the Court
granted that motion insofar as VirnetX must approach before discussing whether design changes
were the result of a prior verdict. D.I. 644. Apple maintains that evidence of the previously
adjudicated versions of VPN On Demand is confusing and prejudicial, and has no relevance to
the issues the jury must decide in this case. *See, e.g.*, D.I. 500.

[VirnetX response: There is nothing prejudicial about discussing VPN on Demand was the
redesigned VPNoD feature, and there is no reason that the Court's prior MIL ruling should apply
in this case. Apple contended that such a ruling was appropriate because allowing reference to
prior versions of VPNoD would "confuse the infringement analysis required for this case with
evidence concerning already-adjudicated conduct." Here, in contrast, it has already been
determined that *all* of Apple's VPNoD conduct was in fact willful infringement and reference to
prior adjudications poses no risk of improper deference. Instead, the context of the two versions
of VPNoD highlights the value of the infringing functionality, which will be hotly disputed at the
trial. As such, there is no issue in describing accurately that the feature at issue in this case is a
redesigned version of VPNoD.

Further, Apple's contention that the Court previously ruled that information about a prior
infringing version of VPNoD could not come in is simply inaccurate. To the contrary, the Court
ruled prior to the 2018 trial that prior infringing versions "come[] in" because "the plaintiffs are
entitled to put this on in their case." 3/26/18 Hr. Tr. at 49:6-9.]

infringes claims 1 and 7 of the '135 patent and claim 13 of the '151 patent. The parties agree that VirnetX is entitled to damages for this infringement but disagree on the amount of those damages. The amount of damages for the infringement by [**VirnetX Proposes**: the redesigned] [**Apple Proposes**: Delete][3] VPN on Demand is the issue which you must decide.

---

[3] *See* footnote 2 regarding the reference to "the redesigned" VPN on Demand feature.

3.      **Burdens of Proof**

As I told you at the beginning of this trial, in any legal action, facts must be proved by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on VirnetX. VirnetX has the burden of proving its damages by a preponderance of the evidence. Preponderance of the evidence means the evidence that persuades you that a claim is more likely true than not true. If the proof establishes that VirnetX's damages claim is more likely true than not true, then you should find for VirnetX as to that claim.  In determining whether any fact has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

4.      **The Patent Claims**

Before you can decide   the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims. But it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent. And each claim may cover more or less than another claim. Therefore, what a patent covers depends in turn on what each of its claims covers.

### 4-1.        How a Patent Claim Defines What It Covers

I will now explain how a patent claim defines what it covers. A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or system satisfies each of these requirements, then it is covered by the claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing, such as a feature, product, process, or system meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a feature, product, process, or system where each of the claim elements or limitations is present in that feature, product, process, or system. Conversely, if the feature, product, process, or system meets only some, but not all, of the claim elements or limitations, then that feature, product, process, or system is not covered by the claim.

**4-2.        Independent and Dependent Claims**

This case involves two types of patent claims: Independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, for example, claim 1 of the '135 patent is an independent claim.

Other claims in the case are "dependent claims." A dependent claim refers to another claim and includes all the requirements or parts of the claim to which it refers. In this case, for example, claim 7 of the '135 patent depends from claim 1. The dependent claim then adds its own additional requirements. In this way, the claim "depends" on another claim. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers. A product, feature, method, or system that meets all of the requirements of both the dependent claim and the claims to which it refers is covered by that dependent claim.

### 4-3.    Open-Ended or "Comprising" Claims

The beginning portion, or preamble, to some of the claims uses the word "comprising." "Comprising" and "comprises" mean "including but not limited to," or "containing but not limited to." Thus, if an accused feature includes all the requirements in that claim, the claim [**VirnetX Proposes**: is infringed] [**Apple Proposes**: covers that feature.][4] This is true even if the accused instrumentality includes components in addition to those requirements. For example, a claim to a table comprising a tabletop, legs, and glue would [**VirnetX Proposes**: be infringed by] [**Apple Proposes**: cover][5] a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

---

[4] **Apple's Position:** Apple proposes this revision to avoid confusions since the jury is not being asked to decide infringement.

[**VirnetX Response**: The jury is going to be informed that it was previously determined that VPNoD infringed the claims of the patent.  The jury is entitled to know what that finding means, and changing the terminology to "covers" does not assist the jury in doing so.]

[5] *See* footnote 4.

5.      **Infringement - Generally**

[**VirnetX Proposes**:  Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.] [**Apple Proposes**: Delete].[6]

[**Apple Proposes**: As I have mentioned, it has been determined that VPN on Demand infringes Claims 1 and 7 of the '135 patent, as well as Claim 13 of the '151 patent.  Infringement is not an issue for you to decide in this case.][7] [**VirnetX proposal**:  However, to help you better understand the present issue, I will explain the way that each type of infringement works.]

---

[6] **Apple's Position:** Apple objects to this instruction as confusing, a waste of time, and irrelevant.  Infringement is not an issue for the upcoming trial and this instruction has no relevance to the issues the jury must decide in this case.  Apple also objects that this instruction is unfairly prejudicial as it seeks to portray Apple as a bad actor.

[VirnetX Response: The jury should be given background on what it means to infringe a patent and context about what the prior determination means.  This instruction was given at all prior trial.]

[7] *See* footnotes 2 & 6.

**5-1.        [VirnetX Proposes: Direct Infringement—Literal Infringement**

If a person makes, uses, offers to sell, or sells in the United States or imports into the United States what is covered by the claims of a patent without the patent owner's permission, that person is said to literally infringe the patent.

A patent claim is literally infringed only if an accused feature, product, system, or method includes each and every element in that patent claim. If the accused feature, product, system, or method does not contain one or more of the elements recited in a claim, then that feature, product, system, or method does not literally infringe that claim. If the accused product or method includes each element of the claim, then that product or method infringes the claim even if such product or method contains additional elements that are not recited in the claims.

A person may literally infringe a patent even though the person believes that what they are doing is not an infringement of any patent, or even if it did not know of the patent. Literal infringement does not require proof that the person copied a product or the patent. Each of the Asserted Claims is considered individually. Each accused feature, product, or system is compared to the limitations recited in the Asserted Claims, not to any preferred or commercial embodiment of the claimed invention.

In an earlier proceeding, VirnetX proved by a preponderance of the evidence that each and every limitation of claims 1 and 7 of the '135 patent and claim 13 of the '151 patent is present in the redesigned VPN on Demand feature; therefore, Apple's redesigned VPN on Demand feature directly infringed those claims.

**5-2.          Indirect Infringement**

Additionally, VirnetX proved that Apple is also liable for indirect infringement by actively inducing others to directly infringe the Asserted Claims. As with direct infringement, the determination of whether there has been indirect infringement by active inducement is made on a claim-by-claim basis.

To show active inducement of infringement, VirnetX was required to prove by a preponderance of the evidence that Apple's customers or end-users directly infringed the asserted claims of the patents-in-suit, and that Apple actively and knowingly aided and abetted that direct infringement. Specifically, VirnetX demonstrated that:

(1)  Apple took action during the time the patent is in force which encouraged acts by someone else;

(2)  The encouraged acts constituted direct infringement of that claim;

(3)  Apple either:

- Was aware of the patent and knew that the encouraged acts constituted infringement of the patent, or;

- Was willfully blind to the infringement of the patent. This means that Apple subjectively believed that there was a high probability that the encouraged acts constituted infringement of the patent and Apple took deliberate actions to avoid learning of the infringement.

(4)  Apple had the intent to encourage infringement by someone else; and

(5)  The encouraged acts were actually carried out by someone else.]

[**Apple Proposes**: Delete][8]

---

[8] *See* footnotes 2 & 6.  **Apple's Position:** Apple also objects to VirnetX's repeated reference to the prior determinations as unfairly prejudicial and an impermissible use of character reasoning to portray Apple as a bad actor.

[**VirnetX Response**:  The jury should be given context on the prior findings and what they mean as that bears directly on what a reasonable royalty is for the previously adjudicated infringement.]

6.      **Damages - Generally**

I will now instruct you on damages. You must determine the amount of damages to which VirnetX is entitled for Apple's previously determined **[VirnetX Proposes: direct and indirect]**[9] **[Apple Proposes**: Delete**]** infringement, via Apple's **[VirnetX Proposes: redesigned] [Apple Proposes**: Delete**]**[10]   VPN on Demand, of claims 1 and 7 of the '135 patent and claim 13 of the '151 patent.

The amount of damages must be adequate to compensate VirnetX for the infringement. At the same time, your damages determination must not include additional sums to punish Apple or to set an example. You may award compensatory damages only for the loss that VirnetX proves was more likely than not caused by Apple's infringement.

VirnetX seeks damages in the form of a reasonable royalty. **[VirnetX Proposes: Generally, a reasonable royalty is the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the patent owner should expect to receive.] [Apple Proposes**: Generally, a reasonable royalty is the reasonable amount that someone wanting to use the patented invention would be willing to pay to the patent owner and the patent owner would be willing to receive.]**[11]

---

[9] *See* footnote 6. **Apple's Position:**  Instructing the jury about direct and indirect infringement is confusing, a waste of time, irrelevant, and only serves to portray Apple as a bad actor.  In particular, referencing indirect infringement, including the intent requirements, suggests that the amount of damages should be used to punish Apple for its infringement, which is improper.

[**VirnetX response**: There is nothing misleading, confusing, or a waste of time about instructing the jury about the determinations previously made concerning Apple's infringement.  The jury is tasked with awarding damages for previously found infringement.  The jury is entitled to know what those infringement contentions were.  This includes Apple's indirect infringement, for which the jury will be awarding damages.]

[10] *See* footnote 2 regarding the reference to "the redesigned" VPN on Demand feature.

[11] **Apple's Position:** VirnetX's instruction is contrary to the law.  "The Federal Circuit has made clear that a reasonable royalty is the amount that 'a person, desiring to manufacture [, use, or]

sell a patented article, as a business proposition, ***would be willing to pay*** as a royalty and yet be able to make[, use, or] sell the patented article, in the market, at a reasonable profit." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (quoting *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984)) (emphasis added); *see also Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011) (discussing evidence "regarding a reasonable royalty that Home Depot would have been ***willing to pay*** for the ongoing use of his invention") (emphasis added). VirnetX has no support for its contention that this long-standing precedent should be changed to suit its proposed instruction.  VirnetX contends that this instruction cannot be given because Apple's profits are not relevant to damages.  True, but irrelevant.  The willing licensor/willing licensee construct cannot be separated from the hypothetical negotiation.  VirnetX's desire to do so invites legal error.

[**VirnetX response**:  The Court read VirnetX's instruction in both the consolidated and -417 trial.  This decision was fully supported by the case law.  And the Court has already determined that the instructions as a whole adequately instructed the jury about damages and the hypothetical negotiation.  There is no reason to change the instruction now.  This is particularly true for the reasons VirnetX has previously objected to Apple's instruction:

VirnetX's proposal more accurately captures the relevant framework of the hypothetical negotiation.  The jury is later instructed about willing licensor and willing licensee and Apple's proposed sentence, as written, places undue emphasis on willingness, which is something that is assumed away in the hypothetical negotiation.  Further, the authority cited by Apple does not fit the facts of the case.  First, Apple has not cited a single cased which indicates that the reasonable royalty is anything about what the patentee is "willing to receive."  That is not the appropriate test.  In fact, this is expressly *not* the test.  *See, e.g., TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 900 (Fed.Cir.1986)* ('That [the patentee] might have agreed to a lesser royalty is of little relevance, for to look only at that question would be to pretend that the infringement never happened.").  Further, the authority relied on by Apple is a line of statements concerning an infringer's willingness to pay "and yet be able to make[, use, or sell] the patented article, in the market, at a reasonable profit." *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766 (Fed. Cir. 2014).  Because the parties have offered no evidence concerning Apple's profits, profit margins, or the like, this concept has no place in the jury's consideration of the reasonable royalty.  For this additional reason, Apple's "willing to pay" and "willing to receive" proposal should be rejected.

For the avoidance of doubt, this instruction is routinely given in this district, by this Court and others, to introduce this concept to the jury.  *See, e.g., Adaptix. Inc. v. Alcatel-Lucent USA, Inc.*, 12:cv-22-RWS (Dec. 21, 2015), Dkt. 594 at 27 ("Generally, a reasonable royalty is defined by the patent laws as the reasonable amount the someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive."); *NobelBiz, Inc. v. Global Connect, LLC*, 12-cv-00244-RWS, Dkt. at 327 at 33 (E.D. Tex. Sept. 16, 2015) (same); *EVEM Sys. LLC v. Rex Med., LP*, 13-cv-184-RWS (E.D. Tex. Aug. 24, 2015), Dkt. 210 at 25 (same); Court's Final Jury Instruction, *VirnetX v. Apple Inc.*, Case No. 6:10-cv-417, Dkt. 597 (E.D. Tex. Nov. 6, 2012) (same).

**6-1.       Damages——Burden of Proof**

Where the parties dispute a matter concerning damages, it is VirnetX's burden to prove the amount of damages by a preponderance of the evidence. VirnetX must prove the amount of damages with reasonable certainty but need not prove the amount of damages with mathematical precision. However, VirnetX is not entitled to damages that are remote or speculative. In other words, you should award only those damages that VirnetX establishes that it more likely than not suffered.

6-2.        **Damages-—Reasonable Royalty**

A reasonable royalty is the amount of money a willing patent owner and a willing prospective licensee would have agreed upon at the time the infringement began for a license to make, use, or sell the invention. It is the royalty that would have resulted from an arm's length negotiation between a willing licensor and a willing licensee. This is known as the hypothetical negotiation. [**VirnetX Proposes**: Unlike in a real-world negotiation, all parties to the hypothetical negotiation are presumed to believe that the patent is infringed and valid.] [**Apple Proposes**: Delete][12] In considering this hypothetical negotiation, you should focus on what the expectations

---

[12] **Apple's Position:** Apple objects to VirnetX's proposal as an incorrect statement of the law.  It is VirnetX's burden to prove infringement and cannot ask the Jury to assume that it has done so.  Further, validity is not an issue in this case.  Injecting validity into this instruction is confusing, misleading, and unnecessary.

[**VirnetX response**: Apple made the same objection at the 2018 trial and its objecting was overruled.  VirnetX's response to Apple's prior objection was as follows:

The Court read VirnetX's instruction in both the consolidated and -417 trial.  This decision was fully supported by the case law.  This is an axiomatic principle of reasonable royalties and the hypothetical negotiation that, although sometimes phrased differently, is instructed upon in literally every case.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) ("The hypothetical negotiation also assumes that the asserted patent claims are valid and infringed.")  *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1369 (Fed. Cir. 2017) ("The hypothetical-negotiation rubric for the assessment of royalty damages assumes that the asserted patents are valid and infringed.").  Further, both Mr. Weinstein and Mr. Bakewell rely on this assumption in their damages models.  Finally, the infringement and invalidity assumption, as distinguished from real world negotiations, is extremely important to the comparability analysis which the jury will be required to conduct.

Apple is wrong that validity is "not an issue" in this case.  While Apple's invalidity defense is no longer a live issue, assumptions and evaluations about validity by others is a relevant consideration concerning the comparability of licenses, and it is important to define the hypothetical negotiation in contract to those real world licenses.

Further, Apple's objection is even more baseless since that infringement has already been determined.

of patent owner and the infringer would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred. The date of the hypothetical negotiation in this case is September 2013, when [**VirnetX Proposes**: the infringing redesigned version of] [**Apple Proposes**: Delete][13] VPN on Demand was released. The parties have also agreed that damages would begin on September 18, 2013.

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when Apple first infringed that patent and the facts that existed at that time. However, evidence of things that happened after the infringement first began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. [**Apple Proposes**: With respect to the '135 patent, VirnetX can only be awarded damages on the devices that actually performed the patented method during the relevant infringement period, which is September 18, 2013 through October 29, 2019.][14]

---

[13] *See* footnote 2 regarding the reference to "the redesigned" VPN on Demand feature. **Apple's Position:**  Apple objects to VirnetX's repeated reference to the prior determinations as unfairly prejudicial and an impermissible use of character reasoning to portray Apple as a bad actor.

[14] **Apple's Position:** Apple proposes that the jury should be informed that claims 1 and 7 of the '135 patent are method claims, that the '135 patent expired in 2019, and that the jury cannot award damages on the '135 patent after it expired.  [**VirnetX response**: VirnetX objects to Apple's proposal as unsupported by the parties' damages reports, which do not break out damages based on evidence of use.  Further, no such instruction about method use was proposed at the 2018 trial, which also involved the '135 patent.  Moreover, this instruction is particularly confusing since the '151 Patent is *not* a method claim, *is* infringed, and *has not* expired.  No party has proposed any damages model or theory that divides value or infringement between the '135 and '151 patents, making this proposal inappropriate, misleading, and confusing.  This is particularly true where Apple has continually fought against producing evidence of use for VPNoD.]

Your determination does not depend on the actual willingness of the parties to the lawsuit to engage in such negotiations in the real world. Your focus should be on what the parties' expectations would have been had they entered into negotiations for royalties [**Apple Proposes**: and both sides were willing participants][15] at the time of the hypothetical negotiation.

---

[15] **Apple's Position:** Apple proposes reminding the jury that it must assume that the parties are willing participants in the negotiation, to further clarify differences between a hypothetical negotiation and a real world negotiation.

[**VirnetX response**:  Apple requested this instruction at the 2018 trial and the proposal was rejected.  VirnetX's response at that time was as follows:

Yet again, this is an objection that was waived from the consolidated trial and rejected on that basis in the September 2016 -417 trial.  Thus, the Court has read instructions without this language in both prior trials.

VirnetX has also agreed to numerous untimely additions in these instructions in the interest of compromise, including addressing the issue of willingness to negotiate.  At a certain point, the repetition becomes a comment on the evidence, redundant, and unnecessary.

###### 6-3.        Reasonable Royalty Factors

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that the patent owner and the alleged infringer would consider in setting the amount the alleged infringer should pay. I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty. [**VirnetX Proposes**: As used in this list, the term "patented invention" refers to the patent claims that redesigned VPN on Demand infringes.] [**Apple Proposes**: Delete][16] The factors are as follows:

- The royalties received by the patentee for licensing of the patents-in-suit, proving or tending to prove an established royalty.

- Royalties paid for other patents comparable to the patents-in-suit.

- The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory, or with respect to the parties to whom products may be sold.

- Whether or not the licensor had an established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

- The commercial relationship between the licensor and the licensee, such as whether they are competitors in the same territory, in the same line of business, or whether they are inventor and promoter.

- Whether being able to use the patented invention helps in making sales of other products or services.

- The duration of the patent and the term of the license.

- The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

---

[16] *See* footnote 2 regarding the reference to "the redesigned" VPN on Demand feature.  **Apple's Position:** Apple objects to VirnetX's repeated reference to the prior determinations as unfairly prejudicial and an impermissible use of character reasoning to portray Apple as a bad actor.

- The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

- The extent of the licensee's use of the patented invention and any evidence probative of that use.

- The portion of the profits that is due to the patented invention as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by the licensee.

- Expert opinions as to what would be a reasonable royalty.

- The amount that a licensor and a licensee would have agreed upon if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which an accused infringer would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to the patent owner if it had been willing to create a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. [**VirnetX Proposes**: In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of non-infringing alternatives to the patented invention. A non-infringing alternative must be an acceptable product that is licensed under the patent or that does not infringe the patent.] [**Apple Proposes**: Delete][17] The framework which you should use in determining a reasonable royalty is

---

[17] **Apple's Position:** Apple objects to this instruction as prejudicial, duplicative, and likely to lead to confusion.  The jury will be instructed on the *Georgia-Pacific* factors, which already address the relevance of non-infringing alternatives.  Therefore, this instruction prejudicially raises the importance of this factor above the other *Georgia-Pacific* factors and is also an improper commentary on the evidence to be presented.

[**VirnetX response**: Apple previously made this objection and it was overruled.  VirnetX's response at the time was as follows:

[17] The Court read this instruction verbatim at the September 2016 -417 retrial.  The Court ruled that the existence or non-existence of non-infringing alternatives was relevant to damages and the parties presented evidence on that point.  The Court then overruled Apple's objection and read this proposed instruction.

a hypothetical negotiation between normally prudent businesspeople. In considering the evidence of a reasonable royalty, you're not required to accept one specific figure or another for the reasonable royalty. You are entitled to determine what you consider to be a reasonable royalty based upon your consideration of all of the evidence presented by the parties, whether that evidence is of a specific figure or a range of figures.

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question or for rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would have been negotiated between VirnetX and Apple in order for you to consider it. However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between VirnetX and Apple when you make your reasonable royalty determination, including the type of technology

---

The instruction is appropriate.  The Federal Circuit has indicated that "non-infringing alternatives" are not simply a defense to damages; they are the "core economic question" in hypothetical negotiation.  *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) ("In hypothetical negotiation terms, the *core economic question* is what the infringer, in a hypothetical pre-infringement negotiation under hypothetical conditions, would have *anticipated* the profit-making potential of use of the patented technology to be, *compared to using non-infringing alternatives*."); *See* 10/18/12 Pre-Trial Conference Tr. at 204:21-23 (APPLE'S COUNSEL: "The cost to design around and remove infringement basically tells you what the value of patented feature is.").  More recently, the Federal Circuit has affirmed an affirmative damages model based solely on avoidance of a non-infringing alternative.  In *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017), the Federal Circuit reasoned that the "requirement for valuing the patented technology can be met if the patentee adequately shows that the defendant's infringement allowed it to avoid taking a different, more costly course of action" and that "a price for a hypothetical license may appropriately be based on consideration of the 'costs and availability of non-infringing alternatives' and the potential infringer's 'cost savings.'"  *Id.*

licensed, whether the license contained a cross-license and/or similar patent protections, whether the license contained any value related to a release of liability, the date when the license was entered, the financial or economic conditions of the parties at the time the parties entered into the license, the extent of use, if any, of any particular licensed patents, the number of patents involved in the license, whether or not the license covered foreign intellectual property rights, the extent to which litigation may have affected the license, and whether contrary to the hypothetical negotiation the licensee in the real world license, at the time of entering the license, believed that the patents were either not infringed or were invalid.

VirnetX has relied on license agreements in which royalties were based on a percentage of the entire price of the licensed end-products. But in determining a reasonable royalty, you must not rely on the overall price of Apple's accused products at issue in this case. Damages for patent infringement must be apportioned to reflect the value the invention contributes to the accused products or features and must not include value from the accused products or features that is not attributable to the patent.

**6-4.** **[Apple Proposes**: Reasonable Royalty: Entire Market Value Rule**

There is one exception to the general rule that damages must be apportioned to reflect only the value the invention contributes to the accused products or features.  Only if you find by a preponderance of the evidence that VirnetX has proven that the patented functionality in the accused products or features alone creates the basis for customers' demand for the entire product or feature, may you calculate damages based on the value of the entire product or feature.  However, merely showing that the patented functionality is viewed as valuable, important, or even essential to the use of the product or feature is not enough to show that the patented functionality is the basis for customers' demand for the product or feature.][18]

.

---

[18] **Apple's Position:** Because VirnetX's damages models invoke the entire-market value rule, the jury should be instructed on this issue.  [**VirnetX Response**: Apple previously requested this instruction, and the Court refused to grant it.  At the 2018 trial, VirnetX's response was as follows:

The Court should reject this instruction for the same reasons it has done so in the prior two trials. VirnetX is not relying on an EMVR analysis, as the Court has already held.

7.     **Instructions for Deliberations**

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences. You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons, including corporations, and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you, as well as the exhibits which the Court has admitted into evidence. You will select your foreperson and conduct your deliberations. If you recess during your deliberations, please follow all of the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

Any notes that you may have taken during the trial, of course as we discuss at the beginning, are only aids to your memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. Your notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, please give a written message or a question to the Court Security Officer, and we will provide you with sheets

on which to do that, and she will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

And then finally, after you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.