# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **VIRNETX INC. AND** | § | |
| **LEIDOS, INC.,** | § | **Civil Action No. 6:12-cv-855** |
| | § | |
| **Plaintiffs**, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **APPLE INC.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendant**. | § | |

## APPLE'S MOTION TO CONDUCT THE PRETRIAL CONFERENCE REMOTELY FOR ALL PARTIES

## TABLE OF CONTENTS

I.     **BACKGROUND** ........................................................................................................ **1**

     A.     COVID-19 Is Surging in Texas ............................................................... 1

     B.     COVID-19 Is More Contagious Than Previously Thought ................................... 4

     C.     Domestic Travel Remains Risky ......................................................................... 5

II.     **ARGUMENT** ............................................................................................................ **6**

     A.     An In-Person Conference Would Be a Significant Hardship for Apple ................. 6

     B.     VirnetX Would Not Be Prejudiced, Nor Are Its Proposed Alternatives Feasible ............................................................................................................... 7

III.     **CONCLUSION** ......................................................................................................... **8**

The COVID-19 pandemic is accelerating in Texas with no signs of slowing.  Conducting an in-person pretrial conference on August 3, 2020 (D.I. 849) needlessly places the health and welfare of all participants involved at risk when no party would suffer prejudice from a conference by telephone or video.  Apple therefore respectfully requests that the Court conduct the pretrial conference by telephone or video for all parties.

## I.   BACKGROUND

### A.   COVID-19 Is Surging in Texas

In the past few weeks, there has been a significant upsurge in confirmed COVID-19 cases throughout the country, including in Texas.  On July 12, Texas recorded 8,196 new cases.  Ex. 1, *Texas COVID-19 Data, Cases over Time by County*, TEXAS DEPARTMENT OF STATE HEALTH SERVICES, available at: https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited: July 13, 2020) (generated by subtracting the total number of cases on July 11 from July 12).  That brings the total number of confirmed cases in Texas to more than 250,000.[1]  *Id.*  Texas is now an epicenter for COVID-19.

The Eastern District has not been spared.  On July 12, the counties that make up the Eastern District recorded 485 new cases, bringing the total number of confirmed cases there to about 24,842.[2]  *Id.* (generated by selecting and summing data reported by the counties in the Eastern

---

[1]  While these numbers alone are troubling, experts generally agree that the number of coronavirus infections is more than 10 times higher than the reported rate. Ex. 2, Apoorva Mandavilli, *Actual Coronavirus Infections Vastly Undercounted, C.D.C. Data Shows*, N.Y. TIMES, (June 27, 2020).

[2]  The Eastern District comprises the counties of Anderson, Angelina, Bowie, Camp, Cass, Cherokee, Collin, Cook, Delta, Denton, Fannin, Franklin, Grayson, Gregg, Hardin, Harrison, Henderson, Hopkins, Houston, Jasper, Jefferson, Lamar, Liberty, Marion, Morris, Nacogdoches, Newton, Orange, Panola, Polk, Rains, Red River, Rusk, Sabine, San Augustine, Shelby, Smith, Titus, Trinity, Tyler, Upshur, Van Zandt, and Wood. *Eastern District of Texas - Area of Service,* U.S. MARSHALS SERVICE, available at: https://www.uasmarshals.gov/district/tx-

District).  Unfortunately, Bowie County and Smith County (where the August 17 trial will occur) are experiencing a surge too.  On July 12, Bowie and Smith counties had 504 and 1299 total confirmed cases, respectively.  Ex. 1.  The number of confirmed cases now exceeds the highest levels that were previously reported in April, May, and June.  Cases are also surging in nearby Titus County, where 870 cases have been confirmed as of July 12.  *Id.*

Also troubling is the rate at which cases are accelerating.  Last week, Texas reported record numbers of daily cases *four* times.  Ex. 3 at 2, *Coronavirus Live Updates: Texas and Georgia Weigh New Restrictions*, N.Y. TIMES, (July 11, 2020).  It also reported that the rate of new daily cases had doubled from two weeks earlier.  Ex. 4 at 1, Eline de Bruijn, *COVID-19 updates: Texas Reports 8,076 New Cases, Doubling Single-Day Total In Less Than 2 Weeks*, (July 1, 2020).  It is therefore not surprising that the curve of confirmed cases in Texas has a steep upward trend with no current sign of flattening:



e/general/area.htm#:~:text=The%20Eastern%20District%20comprises%20the,Polk%2C%20R
ains%2C%20Red%20River%2C (last visited: July 14, 2020).

Ex. 1 (graph generated from data).  The Eastern District reports a similar trajectory:



Ex. 1 (graph generated by selecting and summing data reported by the counties in the Eastern District).  If these trends hold, the number of infections could be many times higher on August 3 than it is today.  Indeed, last week Governor Greg Abbot bluntly predicted, "things will get worse" and "[t]he worst is yet to come."  Ex. 5 at 1, *Virus Surge Visible Across Texas: The Tsunami Is Here*, N.Y. TIMES, (July 10, 2020).

Texas is also reporting record levels of positive COVID-19 test results.  On July 12, Texas reported that 16.85% of the test conducted were positive—the highest rate reported to date.  *Texas COVID-19 Data – DSHS COVID-19 Dashboard*, *Testing Positivity Rate*, TEXAS DEPARTMENT OF STATE HEALTH SERVICES, available at: https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited: July 14, 2020).  The percentage of positive tests has exceeded 10% every day since June 23.  *Id.*

State and federal officials continue to warn about the rapid spread of COVID-19.  Governor Abbott said in July "[i]f we do not slow the spread of COVID-19 … the next step would have to be a lockdown."  Ex. 6 at 2, Alex Samuels, *Gov. Greg Abbott warns if spread of COVID-19 doesn't slow, "the next step would have to be a lockdown"*, THE TEXAS TRIBUNE, (July 10, 2020).  This warning came on the heels of Governor Abbott's Executive Order requiring, with limited exceptions, every person in Texas to wear a mask covering the nose and mouth in most public venues.  Ex. 7, Exec. Order No. GA-29, *Relating to the use of face coverings during the COVID-19 disaster*, (July 2, 2020).  It also came after a prior Executive Order that "people shall not be in groups larger than ten and shall maintain six feet of social distancing from those not in their group."  Ex. 8 at 2, *Proclamation Amending Exec. Order GA-28 relating to mass gatherings in Texas during the disaster posed by the novel coronavirus (COVID-19)*, (July 2, 2020).  Governor Abbott's Executive Orders are consistent with the guidance on group gatherings issued by the U.S. Centers for Disease Control and Prevention ("the C.D.C.").  Ex. 9, *Considerations for Events and Gatherings*, available at: https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/considerations-for-events-gatherings.html (last visited: July 14, 2020).  One of the "guiding principles" that the C.D.C. provides is the following: "[t]he more people an individual interacts with at a gathering and the longer that interaction lasts, the higher the potential risk of becoming infected with COVID-19 and COVID-19 spreading."  *Id* at 1.  The C.D.C. describes a "highest risk" category for group gatherings: "[l]arge in-person gatherings where it is difficult for individuals to remain spaced at least 6 feet apart and attendees travel from outside the local area."  *Id* at 1-2.  This is the scenario that an in-person pretrial conference would create.

**B.      COVID-19 Is More Contagious Than Previously Thought**

Studies released within the last few weeks provide new evidence that COVID-19 is even more contagious than previously thought.  These recent studies show that COVID-19 is spread not

only by contact with airborne respiratory droplets (e.g., coughing, sneezing, or talking), but also

by droplets that have aerosolized—become fine particles suspended in the air.  Aerosolized

droplets linger in the air for longer periods and travel farther distances than droplets.  *See, e.g.*, Ex.

10, Dyani Lewis, *Mounting Evidence Suggests Coronavirus is Airborne — But Health Advice Has

Not Caught Up*, NATURE.COM, (July 8, 2020).  For example, a new study showed that lab-created

aerosols of COVID-19 can remain viable for several minutes in indoor environments.  *Id* at 4.

Other studies report that COVID-19 aerosols were carried on currents from air-conditioning units

of a restaurant to infect ten diners from separate groups, and that a bus rider was infected even

though the rider entered and exited using a different door than the carrier and sat almost 15 feet

away from the carrier on the bus.  *Id*. at 4-5.  These studies suggest that the risk for spread and

infection is greater than previously thought.

  **C.**  **Domestic Travel Remains Risky**

  The C.D.C. continues to advise that travel, and in particular air travel, increases the risks

of contracting and spreading COVID-19.  Ex. 11, *Considerations for Travelers—Coronavirus in

the US*, available at: https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-in-the-us.html

(last visited: July 14, 2020).  The C.D.C. warns that "social distancing is difficult on crowded

flights, and you may have to sit near others (within 6 feet), sometimes for hours."  *Id* at 2.

  Aside from the risk of flying itself, recent reports show that over 1,000 Transportation

Security Administration ("T.S.A.") agents tested positive for the virus, evidencing the significant

risk of contracting and spreading the virus while traveling through busy airports.  Ex. 12, Ian

Duncan, *More Than 1,000 TSA Employees Have Tested Positive For Coronavirus*, WASH. POST,

(July 9, 2020).  The majority of Apple's trial team is based in New York or California, and would

travel through airports in Dallas or Shreveport (by way of Atlanta) to arrive in Texarkana.  Each

of those cities has experienced significant increases in COVID-19, too.  Exs. 13–15, *Texas, Louisiana, and Georgia Coronavirus Map and Case Counts*, N.Y. TIMES, (July 12, 2020).

Moreover, to help combat the spread from interstate travel, New York recently enacted a travel advisory that mandates anyone returning from a state with "a positive test rate higher than 10 per 100,000 residents, or higher than a 10 percent test positivity rate over a seven-day rolling average" must self-quarantine for fourteen (14) days.  Ex. 16, New York State, *COVID-19 Travel Advisory*, available at: https://coronavirus.health.ny.gov/covid-19-travel-advisory (last visited: July 14 2020).  Texas meets those criteria.  *Id*.; *see also Texas COVID-19 Data – DSHS COVID-19 Dashboard*, *Testing Positivity Rate*, TEXAS DEPARTMENT OF STATE HEALTH SERVICES, available at: https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited: July 14, 2020).

## II.   ARGUMENT

### A.   An In-Person Conference Would Be a Significant Hardship for Apple

COVID-19 infections are surging in Texas.  Traveling to Texas from New York or California risks infection for Apple's team members, who will be exposed to many people in airports while traveling.  Apple's team members will also necessarily interact with the local and surrounding communities.  If a member of Apple's team were to contract the virus while traveling to Texarkana, he or she could spread the disease throughout the Texarkana community.  Such a spread could strain local hospitals and harm the local economy, and stretch the resources of Texarkana and surrounding East Texas metropolitan areas.

While Apple appreciates that the Court may take steps to help minimize potential exposure during an in-person conference, proceeding with an in-person conference would draw a group of people together into an enclosed space, some of whom would have recently traveled from outside the local area.  A conference, by its very nature, involves a large amount of speaking.  Speaking is one of the main ways that COVID-19 is transmitted from person to person because COVID-19

spreads by aerosols or airborne droplets.  *See* Ex. 10.  Indeed, COVID-19 can be transmitted through the air long after a person speaks, and the risk of transmission by such particles is significantly higher in an enclosed space.  *Id.*  An in-person conference thus creates a risk of COVID-19 spread and infection for the Court, the Court's staff, the federal marshals, client representatives, and the parties' litigation teams.

After attending the in-person pretrial conference, Apple's team members would again risk exposure by traveling home, and then would likely be subject to a fourteen-day mandatory self-quarantine.  Ex. 16.  With trial beginning fourteen days after the pretrial conference, having to self-quarantine during that time creates challenges for Apple's trial preparations and its ability to conduct an effective jury trial.  Moreover, an in-person pretrial conference would mean that Apple's team members would be separated from their families for more than a month because, if current regulations hold, they would be subject to two periods of fourteen-day self-quarantine (one following the pretrial conference and a second following trial).

Conducting the pretrial conference remotely would obviate the need for travel and in-person interactions in an enclosed space, thereby minimizing the accompanying increased risk of contracting and spreading COVID-19.[3]

### B.      VirnetX Would Not Be Prejudiced, Nor Are Its Proposed Alternatives Feasible

VirnetX opposes this motion.  But VirnetX identified no unique prejudice from a remote conference that would not also be shared by Apple.  To the extent there is any prejudice, VirnetX also did not (and cannot) explain why that outweighs the risk to health and welfare, and the interference with Apple's pretrial preparations.

---

[3]  With respect to the trial itself, Apple is continuing to evaluate the situation, and may seek a continuance depending on the trajectory of COVID-19 cases in Texas as trial approaches.

Instead, VirnetX proposes to move the pretrial conference to August 10—a week before trial.  But compressing the time between the pretrial conference and trial would hinder Apple's ability to adjust its approach for trial to account for the Court's pretrial rulings, such as on forthcoming motions *in limine* and other evidentiary issues.  Indeed, before the two previous trials between the parties, the Court conducted a pretrial conference more than a week before jury selection.  D.I. 604; 6:10-cv-417, D.I. 932.[4]

Alternatively, VirnetX proposes that Apple's Texas counsel—comprised of a single team member—attend in person, while Apple's other team members attend remotely.  But affording the option of attending in person puts the parties on unequal footing, since the majority of Apple's trial team is located outside of Texas (and thus has to undertake air travel and potentially be subject to quarantine upon returning home), whereas VirnetX's trial team is located in Texas.  Conducting the pretrial conference remotely for all parties obviates the need for anyone to have to make that choice.

The conference is three weeks away and the parties can adjust their travel and preparation plans.  A remote conference will also promote public safety during these unprecedented times, and would not meaningfully upset this Court's ability to resolve pretrial disputes.

## III.    CONCLUSION

Apple respectfully requests that the Court grant this motion, and conduct the pretrial conference by telephone or video for all parties.

---

[4] Following the initial pretrial conference before the prior -855 trial, the Court held a second pretrial conference a week before jury selection.  D.I. 640.  Nevertheless, the Court provided many rulings after the initial pretrial conference that helped inform trial presentations.  D.I. 644.

Dated: July 14, 2020

Respectfully submitted,

*/s/ Leslie Schmid*t
Gregory S. Arovas
greg.arovas@kirkland.com
Robert A. Appleby
robert.appleby@kirkland.com
Jeanne M. Heffernan
jeanne.heffernan@kirkland.com
Joseph A. Loy
joseph.loy@kirkland.com
Leslie Schmidt
leslie.schmidt@kirkland.com
Aaron Resetarits
aaron.resetarits@kirkland.com
Nathaniel L. DeLucia
nathaniel.delucia@kirkland.com
Ryan Jin
ryan.jin@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Akshay S. Deoras
akshay.deoras@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael E. Jones, Lead Attorney
Texas Bar No. 10969400
mikejones@potterminton.com
**POTTER MINTON**
A Professional Corporation
110 N. College Avenue, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

**ATTORNEYS FOR APPLE INC.**

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on this the 14th day of July 2020.

*/s/  Robert P. Leonard*
Robert P. Leonard

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that the parties have complied with Local Rule CV-7(h)'s meet and confer requirement.  Counsel for VirnetX, Leidos, and Apple have conferred via email and also via telephone conference on July 9, 2020 with the following participants: Leslie Schmidt, Aaron Resetarits, and Mike Jones on behalf of Apple; Jason Cassady and Daniel Pearson on behalf of VirnetX; and Andy Tindel on behalf of Leidos.  The parties met and conferred, in good faith, and concluded, in good faith, that the discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.  Plaintiffs oppose the relief sought in this motion.

*/s/ Leslie M. Schmidt*
Leslie M. Schmidt