**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **VIRNETX INC. AND** | § | |
| **LEIDOS, INC.,** | § | **Civil Action No. 6:12-cv-855** |
| | § | |
| **Plaintiffs**, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **APPLE INC.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § | |

## APPLE INC.'S MOTION TO CONTINUE THE TRIAL

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION.................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 3

    A.     Delaying the Trial for Three Months Is Critical to Protecting the Health and
        Safety of Those Involved in This Trial and the Local Community ...................... 4

        1.     Uncontrolled community spread means there is significant risk of
            transmission of COVID-19. ...................................................................... 4

        2.     Gathering in and traveling to Tyler for this trial increases the risks to the
            health and safety of the trial participants. ................................................. 8

        3.     Delaying the trial by three months will provide information on whether the
            *Optis* trial procedures sufficiently protected the participants. .................. 11

    B.     A Continuance Is Necessary to Ensure This Trial Is Conducted Fairly .............. 13

    C.     A Continuance Will Not Prejudice VirnetX ....................................................... 14

III.    CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clinton v. Jones*,
520 U.S. 681 (1997) ................................................................................................ 1, 3

*Currington v. XTO Energy, Inc.*,
No. 1:12-cv-589, 2014 WL 12616683 (E.D. Tex. May 30, 2014) ............................ 3

*Hardy v. Johns-Manville Sales Corp.*,
681 F.2d 334 (5th Cir. 1982) .................................................................................. 12

*Image Processing Technologies, LLC v. Samsung Electronics Co., Ltd. and
Samsung Electronics America, Inc.*,
No. 2:20-cv-00050-JRG, Dkt. No. 200 (E.D. Tex. June 29, 2020) ........................ 13

*MV3 Partners LLC v. Roku, Inc.*,
6:18-cv-00308-ADA, Dkt. Nos. 293, 301 (W.D. Tex. July 7, 2020) ....................... 1

*Nichia Corp. v. Everlight Elecs. Co.*,
No. 2:13-cv-702, 2016 WL 310142 (E.D. Tex. Jan. 25, 2016) .............................. 14

*Optis Wireless Tech., LLC v. Apple Inc.*,
No. 2:19-cv-00066-JRG, Dkt. No. 387 (E.D. Tex. July 14, 2020) ....................... 3, 10, 12, 13

*Parallel Networks Licensing, LLC v. Ramquest Software, Inc.*,
No. 4:19-cv-487, 2020 WL 1236266 (E.D. Tex. Mar. 13, 2020) ........................... 14

*People v. Tucker*,
128 Cal. Rptr. 3d 267 (Ct. App. 2011) ..................................................................... 4

*Smith v. Christus Health Ark-La-Tex*,
No. 5:10-cv-00034, (E.D. Tex. March 31, 2011) ..................................................... 4

*Spa Syspatronic, AG v. Verifone, Inc.*,
No. 2:07-cv-416, 2008 WL 1886020 (E.D. Tex. Apr. 25, 2008) ........................... 14

*Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*,
No. 17-cv-1390, 2020 WL 3605623 (D. Del. July 2, 2020) .............................. 10, 13

*Thompson v. Madison Cty. Bd. of Educ.*,
476 F.2d 676 (5th Cir. 1973) .................................................................................. 12

*United States v. Allen*,
No. 2011-cv-027, 2012 WL 3763910 (D.V.I. Aug. 30, 2012) .................................. 3

*VirnetX Inc. v. Apple Inc.*,
  925 F. Supp. 2d 816 (E.D. Tex. 2013) ......................................................................................14

*VirnetX Inc. v. Apple Inc.*,
  No. 6:12-cv-00855, 2018 WL 10048706 (E.D. Tex. Aug. 30, 2018) ......................................14

*Wade v. Donahoe*,
  No. 13-cv-5442, 2015 WL 151455 (E.D. La. Jan. 9, 2015) ......................................................3

**Rules**

Fed. R. Civ. P. 16(b) ....................................................................................................................3

## I.      INTRODUCTION

While VirnetX wants to proceed with the trial on August 17, "in cases of extraordinary public moment, [a plaintiff] may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *See Clinton v. Jones*, 520 U.S. 681, 707 (1997) (citation omitted).  The COVID-19 pandemic presents just such an extraordinary public moment.  The pandemic is one of the most serious threats to public health that the United States has ever faced.[1]  More than four million Americans have reportedly contracted the virus and more than 143,800 have died.[2]  Indeed, given the recent Texas-wide COVID-19 resurgence, it is unsurprising that the State of Texas,[3] the entire Western District of Texas,[4] and Smith County, Texas[5] have all suspended jury trials through the end of August. The incidence of COVID-19 is also currently higher in the Tyler Division than it was when Houston Division in the Southern District continued jury trials through September 8.[6]

Conducting this particular jury trial on August 17 in Smith County, Texas will create a health hazard for the participants and the Tyler community.  Trial lawyers, witnesses, and clients

---

[1] Ex. 1, Declaration of Catherine L. Troisi ("Troisi Decl.") ¶¶ 16–25.

[2] Ex. 8, *Coronavirus Disease 2019 (COVID-19): Cases in the U.S.*, The Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited: July 24, 2020).

[3] Ex. 9, Supreme Court of Texas, Eighteenth Emergency Order Regarding The COVID-19 State Of Disaster, Misc. Docket No. 20-9080 (June 29, 2020).

[4] Ex. 10, The Western District of Texas, Supplement Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 Pandemic (July 2, 2020); *see also MV3 Partners LLC v. Roku, Inc.*, 6:18-cv-00308-ADA, Dkt. Nos. 293, 301 (W.D. Tex. July 7, 2020) (patent trial repeatedly continued due to pandemic).

[5] Ex. 11, Smith County Texas, Coronavirus Information, available at: https://www.smith-county.com/government/departments/corona-virus-information (last visited: July 27, 2020) ("Jury trials have been postponed until September 1.").

[6] Troisi Decl. ¶ 44 (citing Ex. 12, Southern District of Texas, Houston and Galveston Divisions, Special Order H-2020-20 (July 8, 2020)).

will travel from around the country, interacting with countless individuals along the way, and then be put together in close quarters for at least two weeks.[7]  Many potential jurors will leave the safety of their home communities, and be concentrated in a city that is in the midst of a COVID-19 outbreak.[8]  It will also confine indoors dozens of people in a bustling courtroom for hours, while virus-laden droplets in the air potentially transmit the virus to others.[9]  Once the trial is over, the out-of-state participants will again risk infection on their return home,[10] and likely be forced to quarantine away from their families for an additional 14 days.  A continuance is the only way to ensure the safety of all participants and to avoid an acutely-heightened risk of virus transmission.

Moreover, Apple's ability to try its case will be seriously impaired if trial goes forward in August, whereas a three-month delay would not impose "oppressive consequences" on VirnetX. Money damages, including prejudgment interest, can make VirnetX whole for any delay.  ███

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████  Having these witnesses testify by video does not solve the problem. Rather, it will leave jurors with the misimpression that these witnesses did not believe the case was important enough to merit an in-person appearance.  That is manifestly unfair in a case where Apple faces a damages demand of over $700 million.

---

[7] Troisi Decl. ¶¶ 13, 49–54.

[8] *Id.* ¶¶ 24, 33–34, 52.

[9] *Id.* ¶¶ 22–23, 51.

[10] *Id.* ¶ 50.

[11] ███████████████████████████████████████████  Troisi Decl. ¶ 20.

Finally, Apple is not seeking an "immoderate delay."  Continuing the trial a few months will allow an opportunity for public health interventions to improve the situation.  It will also allow the parties and the Court to assess whether the precautionary measures that will be put in place at the *Optis Wireless v. Apple* trial prevent the spread of COVID-19.  That assessment is particularly important for this trial because COVID-19 has a higher incidence in this division than in the division where the *Optis* trial will occur.[12]  Accordingly, Apple respectfully submits that good cause exists to continue this trial until November 2020.

## II.   ARGUMENT

Motions to continue trials are subject to the broad discretion of the district court, and can only be granted for "good cause shown."  *See Clinton*, 520 U.S. at 706; Dkt. No. 849 at 1; *see also* Fed. R. Civ. P. 16(b).  In assessing good cause, courts consider (1) the explanation for the requested extension; (2) the importance of the extension; (3) potential prejudice to the non-moving party from the extension; and (4) the availability of a continuance to cure such prejudice.[13]  *See Currington v. XTO Energy, Inc.*, No. 1:12-cv-589, 2014 WL 12616683, at *2 (E.D. Tex. May 30, 2014) (finding good cause to amend a scheduling order).

Good cause exists here.  The COVID-19 pandemic has resulted in an unprecedented risk to public health in this country.  Holding a trial now would require the trial participants and the Tyler community to undertake those risks unnecessarily.  This is not a case where personal liberty is at risk.  This is a case where any harm can be compensated with monetary damages, including

---

[12] Troisi Decl. ¶¶ 15, 43, 63.

[13] In assessing motions for trial continuance, courts also assess "the totality of the circumstances, including such factors as the amount of time available, the moving party's role in shortening the time needed, the likelihood of prejudice from denial of the motion, the facts of the particular case, the complexity of the case, and all of the demands on counsel's time and the court's."  *Wade v. Donahoe*, No. 13-cv-5442, 2015 WL 151455, at *1 (E.D. La. Jan. 9, 2015).  These considerations overlap significantly with the good-cause factors, so Apple will discuss them together.

prejudgment interest.  While the pandemic itself is unprecedented, continuing a trial due to the risk

of contracting a highly infectious, potentially life-threatening disease is not.  *See*, *e.g.*, *United*

*States v. Allen*, No. 2011-cv-027, 2012 WL 3763910, at *4–5 (D.V.I. Aug. 30, 2012) (continuing

criminal trial during chickenpox outbreak where travel could cause infectious public spread);

*People v. Tucker*, 128 Cal. Rptr. 3d 267, 267 (Ct. App. 2011) (continuing trial where defendant,

trial court personnel, jurors, and witnesses were at risk of contracting to H1N1, a "debilitating and

perhaps life-threatening illness").  This District has found good cause to continue a trial on far less

extraordinary grounds, such as when a party offers a new witness and theories.  *Smith v. Christus*

*Health Ark-La-Tex*, No. 5:10-cv-00034, Dkt. No. 131, *granted* Dkt. No. 134 (E.D. Tex. March 31,

2011).  The trial in this case should therefore be continued to November 2020.

> ### A.  Delaying the Trial for Three Months Is Critical to Protecting the Health and Safety of Those Involved in This Trial and the Local Community
>
> > #### 1.  Uncontrolled community spread means there is significant risk of transmission of COVID-19.

On April 23, when the Court set this case for an August 2020 trial date, Texas had largely

avoided the worst of the COVID-19 pandemic.  That day there were 875 new cases and 18 new

deaths reported in Texas, bringing the total number of reported cases to 21,944 and the total

number of reported deaths to 561.[14]

The circumstances now are vastly different.  On July 24, Texas reported 8,701 new cases

and 193 new deaths, which accounted for about 12% of all cases and 17% of all deaths reported in

the entire country that day.[15, 16]  That brings the total case count in Texas to 369,826 and the total

---

[14] Troisi Decl. ¶ 28 (citing Ex. 4).

[15] *Id*. ¶ 27 (citing Ex. 4).

[16] Ex. 8.

death count to 4,717.[17]  To be sure, certain areas of Texas have been hit harder than others.  But Smith and surrounding counties have not been spared.  Smith County has reported 2,058 total cases—1,621 of which are from Tyler.[18]  The month of July has seen an acceleration with Smith County reporting 1,492 new cases.[19]  The curve of cases in Smith County has a steep upward trend with no sign of flattening:[20]



In addition, the counties that make up the Tyler Division have confirmed 7,525 cases to date, with 4,640 of those COVID-19 cases being reported since the start of July.[21]  In adjoining Gregg County, 416 new COVID-19 cases were reported in the first 11 days of July,[22] prompting

---

[17] Troisi Decl. ¶ 27 (citing Ex. 4).

[18] *Id*. ¶¶ 32–33 (citing Exs. 3, 45).

[19] *Id*. ¶ 32 (citing Ex. 3).

[20] Ex. 4, (graph generated from data).  While recent reports are showing that the rate of new daily cases may be beginning to stabilize in Texas, the rate remains in the thousands and more time is needed to see if the trend continues.  Troisi Decl. ¶ 48 (citing Ex. 54).

[21] *Id*. ¶ 31 (citing Ex. 3).

[22] Ex. 13, Kristen Barton, *Gregg County COVID-19 numbers spiked 105% in first 11 days of July*, Kilgore News Herald, (July 12, 2020), available at: https://www.kilgorenewsherald.com/covid-19/gregg-county-covid-19-numbers-spiked-105-in-first-11-days-of-july/article_51df6a1e-2426-5e6b-8dee-f49ba415177e.html (last visited: July 25, 2020).

state courts there to cancel plans to resume jury trials.[23]  Other counties in the Tyler Division have also seen spikes in new cases in July, including Anderson (1084 cases), Cherokee (462 cases), Gregg (807 cases), Henderson (362 cases), and Van Zandt (201 cases).[24]  The number and rate of new cases now far exceed the numbers when the Eastern District continued all jury trials on March 16, and when it further extended the continuance on April 22.[25]

Although the absolute number case counts in these counties is low compared to more populous counties like Dallas and Harris, the positivity rate and increased rate of hospitalizations demonstrate that mitigation measures (e.g., the Governor's ban on large gatherings and his mask order) have yet to bring COVID-19 cases under control.[26]

Positivity rate measures the percentage of patients who test positive for a virus.[27]  When a positivity rate is high, generally above 5%, it indicates that the region is not conducting enough testing to understand the true impact of a virus or the rate at which it is spreading.[28]  It also indicates that confirmed cases are undercounted.[29]  Texas reported a positivity rate of 13.73% on July 24,[30] and the positivity rate has exceeded 10% every day since June 23.[31]  Smith County reported a positivity rate of 13–15% in July (including 30% in clinical settings and 10–15% in walk-up

---

[23] Ex. 14, *Gregg County reverses course after Covid-19 surge, cancels jury duty,* KLTV, (July 10, 2020), available at:  https://www.kltv.com/2020/07/10/gregg-county-reverses-course-after-covid-surge-cancels-jury-duty (last visited: July 25, 2020).

[24] Troisi Decl. ¶ 32 (citing Ex. 3).

[25] *See* The Eastern District of Texas, General Order 20-03, (Mar. 16, 2020); Eastern District of Texas, General Order 20-09, (Apr. 22, 2020); Troisi Decl. ¶ 28 (citing Ex. 4).

[26] Troisi Decl. ¶¶ 45–47.

[27] *Id*. ¶ 46.

[28] *Id*.

[29] *Id*.

[30] *Id*. ¶ 47.

[31] *Id*. (citing Ex. 51).

clinics), increased from 5% during June.[32]   Statistically speaking, this demonstrates an uncontrolled community spread of COVID-19.[33]

In addition, hospitalization rates for patients infected with COVID-19 have increased exponentially throughout Texas in recent weeks.  On April 12, 1,338 patients statewide were hospitalized due to COVID-19, but now 10,036 patients are hospitalized.[34]  The trend is similar in the region that covers Tyler.  On April 12, 32 patients were hospitalized due to COVID-19, but now 244 patients are hospitalized.[35]

The risk that an infected person will be at the August trial is not speculative.  On the first day of trial, for example, it is expected that 60–70 prospective jurors will be brought to the courthouse for this trial.  The Court, its staff, as well as the federal marshals will also be present. Client representatives, attorneys, and support staff will also be there, many of whom will have recently traveled to get to Tyler.  Taken together, it is likely that at least 100 people will be gathered indoors for the first day of trial.  A risk assessment tool created by Georgia Tech shows that, in Smith County, there is a 98% likelihood of at least one person having the virus in a gathering of this size.[36]  Because conditions show little signs of improving, it is thus a virtual certainty that someone with COVID-19 will be at the trial.

---

[32] *Id*. (citing Exs. 52–53).

[33] *Id*.

[34] *Id*. ¶ 45 (citing Ex. 6).

[35] *Id*.

[36] Ex. 15, *COVID-19 Event Risk Assessment Planning Tool*, Georgia Institute of Technology, https://covid19risk.biosci.gatech.edu, (last visited: July 26, 2020).

2.    **Gathering in and traveling to Tyler for this trial increases the risks to the health and safety of the trial participants.**

Proceeding with the August trial creates a high risk of COVID-19 spread and infection for all involved.  This trial will gather together a large group of people in an enclosed space.  The CDC warns that "[t]he more people an individual interacts with at a gathering and the longer that interaction lasts, the higher the potential risk of becoming infected with COVID-19 and COVID-19 spreading."[37]  And, in contrast with the criminal trial the Court held in Texarkana in June, the situation has materially worsened[38] and most of the client representatives, witnesses, staff, and attorneys in this trial will be traveling to Texas by air.  That puts this trial in the CDC's "highest risk" category, i.e., "[l]arge in-person gatherings where it is difficult for individuals to remain spaced at least 6 feet apart and attendees travel from outside the local area."[39] Compounding the risk, Smith County, and Tyler in particular, have experienced significant spread of COVID-19. *Supra* Section II.A.1.  A trial setting, like the one scheduled in this case, is precisely the kind of environment that officials warn should be avoided.[40]

Travel associated with trial will subject participants to a high risk of infection too.  Apple's client representatives, witnesses, and attorneys will travel from California, New York, New Jersey, Washington, D.C., and Florida to Dallas or Houston, all of which are among the busiest airports in the country.  The CDC advises that "social distancing is difficult on crowded flights, and you

---

[37] Ex. 16, *Coronavirus Disease 2019 (COVID-19): Considerations for Events and Gatherings*, Centers for Disease Control and Prevention, available at: https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/considerations-for-events-gatherings.html  (last visited: July 24, 2020).

[38] Troisi Decl. ¶¶ 39–41 (citing Exs. 3–5, 47–48).

[39] *Id*. ¶ 51 (citing Ex. 16 at 1–2).

[40] *Id*.

may have to sit near others (within 6 feet), sometimes for hours."[41]  Confirming that there is a real risk of contracting the virus while traveling through airports, over 1,000 TSA agents recently tested positive for the virus.[42]  Traveling by air through these busy travel hubs—to and from Texas—increases the risk that one of the trial participants contracts COVID-19 on the way to Texas or back home, even though each will exercise caution while traveling.[43]  Many of the trial participants live in states that mandate a 14-day quarantine upon their return from Texas and other participants returning to states without that mandate may quarantine out of concern for their families, meaning they will be away from their families for nearly a month in the midst of a pandemic.

A trial will also increase the risk of infection by concentrating participants in the City of Tyler, which has a high concentration of cases relative to other parts of the region.[44]  In fact, the zip code in which the Federal courthouse in Tyler is located, as well as three of the surrounding zip codes, are all reporting the highest concentration of cases relative to surrounding areas.[45]  That means for potential jurors who will travel to Tyler from more rural surrounding communities, trial exposes them to an increased probability of a COVID-19 infection.[46]  Potential jurors then risk spreading the virus to their home communities when they return.[47]  Such an increase could further strain local hospitals, which are more vulnerable to hospital overloads, and stretch the resources

---

[41] *Id*. ¶ 50 (citing Exs. 55–56).

[42] Ex. 17, Ian Duncan, *More than 1,000 TSA employees have tested positive for coronavirus*, WASH. POST., (July 9, 2020), available at: https://www.washingtonpost.com/transportation/2020/07/09/more-than-1000-tsa-employees-have-tested-positive-coronavirus (last visited: July 24, 2020).

[43] Troisi Decl. ¶¶ 50, 53.

[44] *Id*. ¶¶ 33–34, 52 (citing Exs. 45–46).

[45] *Id*. ¶ 34 (citing Ex. 46).

[46] *Id*. ¶¶ 33–34, 52 (citing Exs. 45–46).

[47] *Id*.  ¶ 53.

of East Texas to deal with a renewed surge.[48]   Apple's and VirnetX's client representatives, witnesses, and attorneys likewise risk spreading the virus within their local communities when they return home.[49]

COVID-19 is a new disease and its long-term ramifications on human health are still largely unknown.[50] ████████████████████████████████████████████

████████████████████████████████████████  ███████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████.[51]  █████████████████████████

███████████████████████  ██████████████████████████████████

███████████████  but "feel pressure to conceal … coronavirus-related concerns and come to Court when it would be best if they did not." *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, No. 17-cv-1390, 2020 WL 3605623, at *2 (D. Del. July 2, 2020).  Moreover, there is growing consensus, along with anecdotal evidence, that even those without underlying health conditions can suffer severe or even fatal outcomes from COVID-19.[52]   The CDC recently

---

[48] Ex. 18, Paul J. Weber, *Texas Hits New Record for Virus Deaths as Hospitals Scramble*, NBCDFW, (July 9, 2020), available at: https://www.nbcdfw.com/news/local/texas-news/texas-hits-new-record-for-virus-deaths-as-hospitals-scramble/2403956/ (last visited: July 25, 2020).; Ex. 19, Christopher Curley, *Rural America Could Be the Region Hardest Hit by the COVID-19 Outbreak*, Healthline, (May 13, 2020), available at: https://www.healthline.com/health-newsss/rural-america-hardest-hit-by-covid-19-outbreak (last visited: July 25, 2020).

[49] Troisi Decl. ¶ 53.

[50] *Id.* ¶¶ 17–21 (citing Exs. 31–36); Ex. 20, *What are the potential long-term effects of having COVID-19?*, THE ASSOCIATED PRESS, (June 16, 2020).

[51] ███████████████; Troisi Decl. ¶¶ 19–21 (citing Ex. 34).

[52] Troisi Decl. ¶ 21; Ex. 21, Katherine J. Wu, *In Nick Cordero's Death, a Reminder of Covid-19's Unknowns,* N.Y. TIMES, (July 6, 2020); Ex. 21, *Woman In 20s, Man In 40s With No Underlying Health Conditions Among 16 New Coronavirus Deaths In Dallas County*, CBSDFW (July 8, 2020), available at: https://dfw.cbslocal.com/2020/07/08/woman-20s-man-40s-no-underlying-health-conditions-new-coronavirus-deaths-dallas-county/.

published a study finding that about 33% of symptomatic adults had not returned to their usual state of health 2–3 weeks after testing positive for COVID-19, which is in contrast with "over 90% of outpatients with influenza [who] recover within approximately 2 weeks of having a positive test result."[53] "Even among young adults aged 18–34 years with no chronic medical conditions, nearly one in five reported that they had not returned to their usual state of health 14–21 days after testing."[54]  Simply put, trial participants' hope that they will be among the asymptomatic or mild cases should they contract COVID-19 is nothing more than that—hope.

3.      **Delaying the trial by three months will provide information on whether the *Optis* trial procedures sufficiently protected the participants.**

Apple understands that the Court in *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 387 (E.D. Tex. July 14, 2020), set forth several procedures for conducting an in-person jury trial in which counsel will be traveling from outside the state.  Those procedures include temperature and symptom screenings, face shields instead of masks, frequent disinfecting, and limiting the numbers of persons in the courtroom.  *Id.* at *4–*5.  Unfortunately, diligent screening to detect infected individuals, wearing a face shield, regularly disinfecting, and social distancing may not be sufficient to defend against infection at a trial.[55]  Temperature and symptom screenings, for example, would not identify most infected individuals because it is estimated that *close to half* of all COVID-19 infections are asymptomatic.[56]  Although the CDC recommends

---

[53] Troisi Decl. ¶ 18 (citing Ex. 32).

[54] *Id.*

[55] Troisi Decl. ¶¶ 55–63.  It was recently reported that 85 people were infected despite taking precautionary measures.  Ex. 23, Mitchell Willetts, *85 kids, counselors infected with coronavirus in YMCA camp outbreak, GA officials say*, THE TELEGRAPH, (July 10, 2020), https://www.macon.com/news/coronavirus/article244158667.html.

[56] Troisi Decl. ¶¶ 22, 59; Ex. 24, Daniel P. Oran and Eric J. Topol, *Prevalence of Asymptomatic SARS-CoV-2 Infection*, Annals of Internal Medicine, (June 3, 2020),

disinfecting surfaces, surfaces can be recontaminated immediately after disinfection.[57]  Regular disinfecting, moreover, does little to protect infection from respiratory droplets caused by coughing, sneezing, or—critically for a trial—talking, or by droplets that become fine particles suspended in the air, called aerosolized droplets.[58]  Having participants wear face shields is not a safe solution either; the CDC reports that "[i]t is not known if face shields provide any benefit as source control to protect others from the spray of respiratory particles."[59]  While limiting the number of individuals in the courtroom would help with social distancing, it is not clear whether that alone will suffice to protect the participants without additional protections, like face masks.[60]  Notwithstanding the best intentioned social distancing protocols, direct contact transmission would still be an issue during a trial, as are accidental or innocent noncompliance.[61]  Finally, having multiple people in an enclosed area for an extended period of time is commonly associated with events where multiple individuals become infected.[62]

---

https://www.acpjournals.org/doi/10.7326/M20-3012; Ex. 57, *'Silent transmission': COVID-19 largely spread by asymptomatic, presymptomatic carriers, study says*, Fox Television, (July 11, 2020), https://fox6now.com/2020/07/11/silent-transmission-covid-19-largely-spread-by-asymptomatic-presymptomatic-carriers-study-says/.

[57] Troisi Decl. ¶¶ 23, 61.

[58] *Id.*

[59] *Id.* ¶ 62; Ex. 25, *Coronavirus Disease 2019 (COVID-19): Considerations for Wearing Cloth Face Coverings*, The Centers for Disease Control and Prevention, available at: https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html (last visited: July 23, 2020).

[60] *Id.* ¶¶ 51, 60.

[61] *Id.*

[62] *Id.* ¶¶ 23, 51; Ex. 26, *Hundreds of Kids Exposed to COVID-19 at Dallas-Fort Worth Church Camp*, Fort Worth Star-Telegram (July 23, 2020), available at: https://www.star-telegram.com/news/coronavirus/article244427927.html; Ex. 27, Kelly Taylor Hayes, *COVID-19 'superspreaders': Experts say 1 person can transmit virus at gatherings, with tragic consequences*, (July 9, 2020) Fox 29 Philadelphia (July 9, 2020), available at:,

Because the precautionary measures in the *Optis* case are an issue of first impression with regard to public health, Apple proposes that this trial be continued so the Court and the parties can objectively assess whether the measures sufficiently protected the health and safety of trial participants.  Demonstrating the efficacy of these measures is particularly important for this trial because the incidence of COVID-19 in the Tyler Division is currently ***higher*** than it was in the Marshall Division when the *Optis* opinion issued, meaning a trial in Tyler is riskier.[63]

### B.    A Continuance Is Necessary to Ensure This Trial Is Conducted Fairly

Proceeding with the trial in August will undermine Apple's due process rights and deny it a fair trial.  Due process safeguards a defendant's "right to a full and fair opportunity to litigate an issue," *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982), and "to present evidence and argument on the contested facts and legal issues framed by the answer to the complaint."  *Thompson v. Madison Cty. Bd. of Educ.*, 476 F.2d 676, 678 (5th Cir. 1973).  Absent the pandemic, Apple would call four live witnesses at trial.  Dkt. No. 882, Ex. B.  But if trial goes forward in August, Apple will likely have only ███████████████████████████████

_____

https://www.fox29.com/news/covid-19-superspreaders-experts-say-1-person-can-transmit-virus-at-gatherings-with-tragic-consequences.

[63] Troisi Decl. ¶ 43.

[64] ████████████████   Troisi Decl. ¶¶ 18–20 (citing Ex. 34). █████████████████ , others may be uncomfortable sharing related issues and concerns.  *Sunoco*, 2020 WL 3605623, at *2.

[65] Ex. 28, *Which states are on the travel advisory list? Are there travel restrictions to or from New Jersey?*, New Jersey COVID-19 Information Hub, (Jul, 22, 2020), available at: https://covid19.nj.gov/faqs/nj-information/travel-information/which-states-are-on-the-travel-advisory-list-are-there-travel-restrictions-to-or-from-new-jersey (last visited: July 25, 2020).

███████████████████████████████████████████████████ Thus, if

trial proceeds, Apple will likely be without live testimony from ███████████████.[66]

Presenting testimony from ████████████████ live video does not resolve this issue;

it makes the prejudice to Apple worse. Even VirnetX has already complained that "complex

presentations from both sides cannot be effectively made over videoconference." Dkt. No. 901 at

4. And, unlike in *Optis* where there were foreign witnesses who could not travel to Texas due to

their government's restrictions on travel to the U.S., ██████████████████████████



██████████████████████████████████████████████████. Accordingly, a

continuance is necessary to safeguard Apple's right to a fair trial.

### C.     A Continuance Will Not Prejudice VirnetX

VirnetX would not suffer prejudice from a continuance. An award of monetary damages,

along with prejudgment interest, would be adequate to compensate VirnetX for any delay. Indeed,

that is the very purpose of prejudgment interest. *Spa Syspatronic, AG v. Verifone, Inc.*, No. 2:07-

---

[66] This is in contrast with *Image Processing*, where, despite the defendant taking no position on the continuance, its witnesses would have been prejudiced by ***not*** continuing the trial. *Image Processing Technologies, LLC v. Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*, No. 2:20-cv-00050-JRG, Dkt. No. 200 at *2 (E.D. Tex. June 29, 2020).

cv-416, 2008 WL 1886020, at *2 (E.D. Tex. Apr. 25, 2008) (granting stay because "damages and pre-judgment interest provide an adequate measure of relief to [plaintiff] for any infringement finding."). Mere delay in litigating patent rights or collecting damages does not constitute undue prejudice either. *See Parallel Networks Licensing, LLC v. Ramquest Software, Inc.*, No. 4:19-cv-487, 2020 WL 1236266, at *2–3 (E.D. Tex. Mar. 13, 2020) (collecting cases). Although VirnetX indicated that it intends, yet again, to seek an injunction (Dkt. No. 882 at 5, 10, 17–18), VirnetX has never obtained an injunction in this case. *VirnetX Inc. v. Apple Inc.*, No. 6:12-cv-00855, 2018 WL 10048706, at *24 (E.D. Tex. Aug. 30, 2018); *VirnetX Inc. v. Apple Inc.*, 925 F. Supp. 2d 816, 847 (E.D. Tex. 2013). VirnetX still lacks any evidence that the "extraordinary remedy" of an injunction is appropriate. To the contrary, VirnetX's continued desire to license[67] "indicates that the harm for any infringement of the patents-in-suit is not irreparable, but rather can be addressed through other compensatory means." *Nichia Corp. v. Everlight Elecs. Co.*, No. 2:13-cv-702, 2016 WL 310142, at *66 (E.D. Tex. Jan. 25, 2016).[68]

A three-month delay is reasonable in view of the long history of this case and the extraordinary nature of the pandemic.

## III.    CONCLUSION

For the foregoing reasons, Apple respectfully requests a continuance of the August 17 trial until November 2020.

---

[67] Ex. 29, VirnetX 10-Q (May 11, 2020) at 1 and 21 ("We seek to license our technology...." and "[w]e intend to continue to license our patent portfolio....").

[68] VirnetX may claim that the PTAB's recent decisions holding each asserted claim unpatentable means that it will be prejudiced by a delay. But VirnetX's desire to collect on a verdict premised on invalid patents is not the type of prejudice that outweighs the health and safety of the participants in this trial, particularly when Apple has already paid VirnetX nearly half-a-billion dollars on these same patents.

Dated: July 27, 2020

Respectfully submitted,

*/s/ Leslie Schmidt*

Gregory S. Arovas
greg.arovas@kirkland.com
Robert A. Appleby
robert.appleby@kirkland.com
Jeanne M. Heffernan
jeanne.heffernan@kirkland.com
Joseph A. Loy
joseph.loy@kirkland.com
Leslie Schmidt
leslie.schmidt@kirkland.com
Aaron Resetarits
aaron.resetarits@kirkland.com
Nathaniel L. DeLucia
nathaniel.delucia@kirkland.com
Ryan Jin
ryan.jin@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Akshay S. Deoras
akshay.deoras@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael E. Jones, Lead Attorney
Texas Bar No. 10969400
mikejones@potterminton.com
**POTTER MINTON**
A Professional Corporation
110 N. College Avenue, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

**ATTORNEYS FOR APPLE INC.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on July 27, 2020.  I also hereby to certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on July 27, 2020.

*/s/ Leslie Schmidt*
Leslie Schmidt

## CERTIFICATE OF CONFERENCE

The undersigned certifies that the parties have complied with Local Rule CV-7(h)'s meet and confer requirement.  Counsel for VirnetX and Apple have conferred via email and also via telephone conference on July 27, 2020 with the following participants: Aaron Resetarits, Nathaniel DeLucia and Glenn Thames on behalf of Apple; Jason Cassady, Daniel Pearson, Robert Christopher Bunt on behalf of Plaintiffs.  The parties met and conferred, in good faith, and concluded, in good faith, that the discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.  Plaintiffs oppose the relief sought in this motion.

*/s/ Leslie Schmidt*
Leslie Schmidt

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

This is to certify that this court document should be filed under seal because it contains material designated under the Protective Order approved and entered in this case.

*/s/ Leslie Schmidt*
Leslie Schmidt