# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **VIRNETX INC. AND** | § | |
| **LEIDOS, INC.**, | § | Civil Action No. 6:12-cv-855-RWS |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| **APPLE INC.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| Defendant. | § | |

## VIRNETX'S RESPONSE IN OPPOSITION TO
## APPLE'S MOTION TO CONTINUE THE TRIAL

~~FILED UNDER SEAL~~
PUBLIC VERSION

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1

II. ARGUMENT..................................................................................................................1

    A. Apple Has Not Established Good Cause to Delay Trial. .........................................2

        1. The Court and the Parties Can Implement Effective Safety Measures to Mitigate the Risk of Community Spread.................................2

        2. Apple's Statistics Are Largely Based on the False Premise of No Protective Measures. ...................................................................................3

        3. Apple's Request to Delay Trial Until There Is Zero Risk of COVID-19 Transmission Is Unworkable. .....................................................4

        4. Any Further Delay Will Unfairly Prejudice VirnetX. ................................6

        5. A Continuance Will Not Cure Any Potential Prejudice. ............................7

III. CONCLUSION................................................................................................................9

## **TABLE OF AUTHORITIES**

**Cases**

*Image Processing Technologies, LLC v. Samsung Electronics Co., Ltd., et. al.*
  Case No. 2:20-CV-00050-JRG (E.D. Tex. June 29, 2020) .......................................................... 4

*Optis Wireless Tech., LLC v. Apple Inc.*
  No. 2:19-cv-00066-JRG, (E.D. Tex. July 14, 2020) ....................................................... 3, 6, 7, 8

*Reliance Ins. Co. v. La. Land & Exploration Co.*
  110 F.3d 253 (5th Cir.1997) ...................................................................................................... 2

*S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*
  315 F.3d 533 (5th Cir. 2003) ..................................................................................................... 2

**Rules**

Fed. R. Civ. P. 16(b) ...................................................................................................................... 1
Fed. R. Civ. P. 43(a) ...................................................................................................................... 7

I.      INTRODUCTION

On July 14, 2020 Apple Inc. ("Apple") filed a motion for continuance in a case before Judge Gilstrap set for jury selection this Monday, August 3, 2020. Recognizing the inevitable—that a continuance of any modest duration is unlikely to solve any COVID-19-related issues—Judge Gilstrap denied the motion. That trial is set to proceed on schedule on Monday.

Apple here raises a substantively identical request. It should be denied for essentially the same reasons. No one denies the unique challenge the COVID-19 pandemic presents in circumstances like this one. But the Court can and will take effective precautions against COVID-19 transmission in the courthouse, and the participants can and will take effective precautions against such transmission outside of it. Meanwhile, Apple fails to provide any factual or scientific basis for how the state of the COVID-19 pandemic will be materially different or improved in November than in the present. At the same time, the parties' dispute is a decade old—still pending because of a damages retrial that Apple requested. The parties should be allowed to resolve it.

These are extraordinary times that call for out-of-the-norm responses—for example, allowing video testimony when normally live testimony would be preferred. Waiting three months for Apple to file another motion for continuance, however, is not the appropriate one. Apple's motion should be denied.

II.     ARGUMENT

 Federal Rule of Civil Procedure 16(b) provides that the Court's scheduling order "shall not be modified except upon a showing of good cause." In determining whether good cause exists, courts consider: "(1) the explanation for the [delay]; (2) the importance of the [delay]; (3) potential prejudice in allowing the [delay], and (4) the availability of a continuance to cure such prejudice." *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536

(5th Cir. 2003) (citing *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir.1997)). Here all factors weigh against continuing the trial date, and as such, good cause does not exist.

### A.  Apple Has Not Established Good Cause to Delay Trial.

#### 1.  *The Court and the Parties Can Implement Effective Safety Measures to Mitigate the Risk of Community Spread.*

No one can deny the public health threat presented by COVID-19. But the Court's mitigation efforts cannot be discounted either. *See* United States District Court In And For The Eastern District of Texas, General Order 20-04: Entrance Protocols (3/18/2020). As articulated in *VirnetX's Response in Opposition to Apple's Motion to Conduct the Pretrial Conference Remotely for All Parties* (Dkt. No. 901), Judge Gilstrap implemented various measures to protect the Court, counsel, and jurors including:[1]

- Prior to entering the courthouse, potential jurors will have their temperature taken.

- The jurors will be spaced out in the courtroom and will be provided with masks.

- Rather than each juror using one microphone, multiple microphones will be used during jury selection so that they can be disinfected between uses.

- Certain persons including those who have traveled to certain countries within the last 14 days, "had close contact with someone who has traveled to one of those countries" in the last 14 days, "who a medical doctor, doctor of osteopathy, hospital or public health agency has directed to self-quarantine," "who have been diagnosed with COVID-19 and who have not obtained express medical verification," and persons who "exhibit fever, cough or shortness of breath" shall not enter the courthouse.

- Daily sanitization of Courthouse facilities, including deep cleaning of the jury room, jury box, and juror restrooms.

- Limiting the number of persons seated at counsel table.

---

[1] Daniel Siegal, *Why Gilstrap Is Getting Ready For Trial —And Not on Zoom*, Law360, May 15, 2020, https://www.law360.com/articles/1273188/whygilstrap-is-getting-ready-for-trial-and-not-on-zoom; United States District Court In And For The Eastern District of Texas, General Order 20-04: Entrance Protocols (3/18/2020).


- Directing trial counsel and the jury to wear face shields.

See generally, Dkt. No. 387, *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, (E.D. Tex. July 14, 2020).

Other safety measures are also possible, and VirnetX would not oppose them. For example, the Court may impose a strict limit on the number of persons present in the courtroom at one time to ensure a minimum of six feet distance between each person present. Along those lines, the Court may stagger the number of jurors present during the initial steps of voir dire, order the trial teams to self-isolate from the surrounding community (e.g., by avoiding dining establishments or stores by using delivery services). These mitigation efforts will bring the risk of transmission to an acceptably low level.[2]

      2.    *Apple's Statistics Are Largely Based on the False Premise of No Protective Measures.*

Apple's risk assessment focuses on a trial without precautions in place. Dkt. No. 914 ("[I]t is expected that 60-70 prospective jurors will be brought to the courthouse for this trial. The Court, its staff, as well as the federal marshals will also be present. Client representatives, attorneys, and support staff will also be there . . ."). As discussed above, mitigation efforts can ensure that that these individuals are not all in the same place at the same time. Apple's own

---

[2] *Considerations for Wearing Cloth Face Coverings*, CDC: Coronavirus Disease 2019 (COVID-19) (July 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html; *5 Questions: Stanford Scientists on COVID-19 Mask Guidelines*, Stanford Medicine (June 19, 2020), https://med.stanford.edu/news/all-news/2020/06/stanford-scientists-contribute-to-who-mask-guidelines.html. Renyi Zhang, Yixin Li, Annie L. Zhang, Yuan Wang, Mario J. Molina; *Identifying airborne transmission as the dominant route for the spread of COVID-19*, Proceedings of the National Academy of Sciences, 2020; Texas A&M University, *Face Masks Critical in Preventing Spread of COVID-19*, Science News (June 12, 2020), https://www.sciencedaily.com/releases/2020/06/200612172200.htm. ("Wearing a face mask as well as practicing good hand hygiene and social distancing will greatly reduce the changes of anyone contracting the COVID-19 virus.").

model drops its argued 98% risk that someone with COVID-19 will attend trial to between 15%-25% where no more than 25 people are at the relevant "event" (and lower if kept at 10 or less).[3] Moreover, whatever percentage chance that a COVID-19 positive individual is at the trial is not the same as the risk that COVID-19 would be transmitted to another participant in view of that significant mitigation efforts contemplated.

Meanwhile, Apple points out the risks in air travel, to the Smith County community, and to other trial participants upon return home. These risks can be managed. For example, participants could fly into Little Rock, Arkansas to avoid any risks from Dallas or Houston airports.[4] *See, e.g.*, Dkt. 200 at 1 n.1, in *Image Processing Technologies, LLC v. Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.,* Case No. 2:20-CV-00050-JRG (E.D. Tex. June 29, 2020). The trial participants can be ordered to self-isolate from the community at large. And such participants will obviously take necessary precautions when returning home after travel.

       3.     *Apple's Request to Delay Trial Until There Is Zero Risk of COVID-19 Transmission Is Unworkable.*

Apple's Motion for Continuance focuses largely on the growing numbers of cases in Smith County and Dr. Troisi's opinion that that it is largely impossible to conduct a jury trial free of COVID-19 risk. But even if the implemented precautions do not bring the risk of transmission to zero, life without trial is not risk-free for Apple's counsel and witnesses, either. Indeed, New York City—where much of Apple's counsel is located—has reported case per

---

[3] The range depends on the selected "ascertainment bias." The ascertainment bias is a metric that assumes that the total positive cases is between 5 and 10 times the reported number. reported). *See* https://covid19risk.biosci.gatech.edu/

[4] It is also not impossible for participants with different COVID-19 risk considerations to drive from their homes to Tyler.

capita rate 3x the current rates in Smith County.[5] The appropriate guidepost is not whether a scenario is risk-free—people still drive cars despite the fact of fatal car wrecks—but whether the risks are appropriate given the need for the activity in question. Thus, New York City's public transit remains open, restaurants and food services across the country are open with limited seating, and grocery stores, hair salons, retail stores, and other professional offices are open to the public (with appropriate CDC guidelines observed).[6,7] Indeed, highlighting the need for balance (rather than total risk elimination), things like grocery stores, convenience stores, medical and veterinary centers, and public transportation have largely remained open throughout the pandemic.

Apple's proposal, however, suggests that any risk of transmission is an unacceptable to conduct a trial. While Apple seeks to obtain its requested relief by requesting a three-month continuance (for now), the projected course of the virus is unknown, uncertain, and indefinite. There is no indication that there will be any meaningful progress with COVID-19 come November 2020, and Apple does not explain how a three-month extension would alleviate its

---

[5] Apple states "Smith County has reported 2,058 total cases—1,621 of which are from Tyler," which equates to approximately 8.7 positive cases per every 1,000 people in the county. Smith County has a total population of approximately 232,751 people as of July 1, 2019. *Quick Facts: Smith County, Texas*, United States Census Bureau, https://www.census.gov/quickfacts/smithcountytexas.

In contrast, New York City for example, where most of Apple's counsel is located, has reported approximately 220,302 positive COVID-19 cases, which equates to approximately 27.3 positive cases per every 1,000 people in the county. *New York City Coronavirus Map and Case County*, The New York Times (July 29, 2020), https://www.nytimes.com/interactive/2020/nyregion/new-york-city-coronavirus-cases.html. New York City has a total population of approximately 8.399 million people as of July 1, 2019. *Quick Facts: New York City, New York*, United States Census Bureau, https://www.census.gov/quickfacts/newyorkcitynewyork.

[6] *Coronavirus News: What's Open, Closed in Tri-State Area as COVID-19 Pandemic Wanes*, ABC7 Eyewitness News (July 20, 2020), https://abc7ny.com/whats-open-in-new-york-connecticut-jersey-reopening/6123699/.

[7] *What's Open, Reopening, Closed and Cancelled in Washington, DC*, WASHINGTON DC (July 27, 2020), https://washington.org/dc-information/coronavirus-event-attraction-information.

concerns. Apple advocates a "wait and see" approach concerning the *Optis* trial, but it identifies no criteria or indication as to how to "objectively assess" the results—much less does Apple identify a reason why the parties need three months for such an assessment.

Apple essentially advocates that this Court halt proceedings, both in this case and others, for the months or years it will take for the COVID-19 threat to subside. But as Judge Gilstrap found in the *Optis* case, smart "precautions will help assure that the trial can go forward to produce a just, speedy resolution to the parties' disputes while reasonably safeguarding the public health." Dkt. No. 387 at 5, *Optis Wireless*.

    4.    *Any Further Delay Will Unfairly Prejudice VirnetX.*

Apple also argues that VirnetX will suffer no prejudice from further delay in this case. Yet Apple has dragged out this litigation for a decade; while COVID-19 is unprecedented, Apple requesting that the Court delay resolution of this dispute is not. Indeed, Apple's repeated efforts to do so partially underpinned the Court's damages enhancement, and award of attorneys' fees, in the -417 case. -417 Dkt. 1079 at 48, 58. Here, as the Court has previously recognized, VirnetX has a significant interest in timely enforcing its patents—particularly here, where there is a final determination that Apple has again trespassed on VirnetX's rights and the only remaining question is damages. *See, e.g.*, Dkt. No. 32; Dkt. No. 533. Moreover, the length of time these proceedings have remained pending gives rise to unique issues of prejudice; Mr. Gif Munger, one of VirnetX's main inventors, retired years ago. Dr. Bob Short, fifty-eight when the *VirnetX/Apple* litigation began, is now sixty-eight.

Meanwhile, as Apple has sought in all of its repeated delay requests, a continuance would provide Apple with a tactical advantage vis-à-vis the IPR proceedings. COVID-19 has not slowed down Apple's attempted to invalidate the '135 and '151 patents at the Patent Office, nor has Apple offered to stay those proceedings for the same length of time as Apple's requested

continuance. *See* Dkt. 553, Order Denying Apple's Motion to Stay, at 6 ("Staying the case now would allow Apple to essentially reverse its requested for two new trials after the fact, providing Apple with an undue tactical advantage over VirnetX").

     5.    *A Continuance Will Not Cure Any Potential Prejudice.*

A continuance will also not cure any prejudice in this situation. Apple's only allusion to any potential prejudice absent a continuance is ▮▮▮ alleged inability to attend trial in person. But as Judge Gilstrap recognized in *Optis*, "these are unprecedented times, which call for unprecedented measures." Dkt. 387 at 6, *Optis Wireless*. If ▮▮▮ choose not to attend trial, presenting their testimony live by video would not deprive Apple of a fair trial.

VirnetX is sympathetic to ▮▮▮. But Apple's concerns about juror's perception of video testimony miss the mark. If anything, the pandemic will make the jury more likely to understand any witness's physical absence; the panel has likely seen scores of Zoom interviews on television throughout the pandemic, and they may have used Zoom themselves for work. VirnetX could also agree to a motion *in limine* prohibiting any arguments or implication that ▮▮▮ should have testified live in person if the case was sufficiently important to them.

Federal Rule of Civil Procedure 43(a) allows videoconferencing for "good cause in compelling circumstances with appropriate safeguards." This unprecedented open-ended COVID-19 pandemic is precisely the situation where good cause exists to allow live video testimony for witnesses who cannot attend trial in person due to ▮▮▮ ▮▮▮ Dkt. No. 387 at 6, *Optis Wireless* (Though "[t]he Court believes that it is always preferable to have witnesses present testimony in-person . . . these are unprecedented times, which call for unprecedented measures."). In fact, many courts across the

7

nation have begun successfully conducting full trials over Zoom or another virtual platform.[8] Real time video testimony from ███████████████ "presented via monitors in the courtroom will enable the jury to make instantaneous deductions about each such witness and his testimony." *Id.* Just as with in-person testimony, counsel will have the opportunity to "direct and cross examine the witnesses in real time so that the jury can hear their answers, as well as observe the non-verbal responses and body language that informs any jury in making its critical judgments as to credibility and believability." *Id.*[9]

Meanwhile, there is no reason to believe that Apple's requested relief would resolve Apple's concerns.  As discussed, there is no data to indicate that the nation's COVID-19 situation will be any better in November 2020.

The scheduled trial is occurring on Apple's insistence that it is entitled to a new trial for VPN on Demand-only damages.  While the decision to grant Apple's request new trial was determined to have been within the Court's discretion, permitting this case to go forward on schedule by permitting ███████████████ to testify by video certainly is as well.[10]  The Court should deny Apple's motion.

---

[8] Alaina Lancaster, *I Kind of Prefer it Now: Lawyers Say Virtual Civil Trial Might Be More Efficient*, Law.com: The Recorder (July 17, 2020), https://www.law.com/therecorder/2020/07/17/i-kind-of-prefer-it-now-lawyers-say-virtual-civil-trial-might-be-more-efficient/; David A. Lowe, *Trial by Zoom: A strange but true story of how one lawyer prepared for court*, ABA Journal (June 24, 2020), https://www.abajournal.com/voice/article/the-strange-but-true-story-preparing-for-a-trial-by-zoom.

[9] Though the issues to be decided in this case are far too complex and cannot be effectively adjudicated entirely over videoconference, as discussed in *VirnetX's Response in Opposition to Apple's Motion to Conduct the Pretrial Conference Remotely for All Parties* (Dkt. 901), VirnetX never suggested that certain witnesses could not be presented virtually.

[10] During the meet and confer process Apple's counsel made it clear that its witnesses *may* not be able to come to trial, should the Court choose to proceed in August.  Apple's counsel is not telling the Court or VirnetX that, should the Court proceed in August, that these witnesses *definitely will not* come to trial for live testimony.

### III.    CONCLUSION

For these reasons, VirnetX respectfully requests that the Court deny Apple's Motion for a Continuance.

DATED:  July 31, 2020  Respectfully submitted,

**CALDWELL CASSADY & CURRY**

/s/ *Jason D. Cassady*
Bradley W. Caldwell
Texas State Bar No. 24040630
Email:  bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email:  jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
Email:  acurry@caldwellcc.com
Daniel R. Pearson
Texas State Bar No. 24070398
Email:  dpearson@caldwellcc.com
Hamad M. Hamad
Texas State Bar No. 24061268
Email:  hhamad@caldwellcc.com
Justin T. Nemunaitis
Texas State Bar No. 24065815
Email: jnemunaitis@caldwellcc.com
Christopher S. Stewart
Texas State Bar No. 24079399
Email:  cstewart@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Robert M. Parker
Texas State Bar No. 15498000
Email: rmparker@pbatyler.com
R. Christopher Bunt
Texas State Bar No. 00787165
Email: rcbunt@pbatyler.com
**PARKER, BUNT & AINSWORTH, P.C.**
100 East Ferguson, Suite 1114
Tyler, Texas 75702

        Telephone: (903) 531-3535
        Telecopier: (903) 533-9687

        T. John Ward, Jr.
        Texas State Bar No. 00794818
        Email: jw@wsfirm.com
        Claire Abernathy Henry
        Texas State Bar No. 24053063
        Email: claire@wsfirm.com
        **WARD, SMITH & HILL, PLLC**
        1507 Bill Owens Parkway
        Longview, Texas 75604
        Telephone: (903) 757-6400
        Facsimile: (903) 757-2323

        **ATTORNEYS FOR PLAINTIFF**
        **VIRNETX INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served on counsel of record via email on July 31, 2020, to the extent allowed by the Revised Agreed Protective Order.

        */s/ Jason D. Cassady*
        Jason D. Cassady

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that the foregoing document is authorized to be filed under seal pursuant to the Revised Agreed Protective Order submitted in this case.

        */s/ Jason D. Cassady*
        Jason D. Cassady