## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **VIRNETX INC. AND** | § | |
| **LEIDOS, INC.,** | § | Civil Action No. 6:12-cv-855-RWS |
| | § | |
| | § | |
| **v.** | § | ▮▮▮▮▮▮▮▮▮ |
| | § | |
| | § | **Jury Trial Demanded** |
| **APPLE INC.** | § | |
| | § | |

## APPLE INC.'S RULE 50(a) MOTION FOR
## JUDGMENT AS A MATTER OF LAW ON DAMAGES

**TABLE OF CONTENTS**

Page

I. Introduction ........................................................................................................................ 1

II. Legal Standard ................................................................................................................... 3

III. Argument ............................................................................................................................ 4

    A. Mr. Weinstein's Improper Unapportioned Rates Based on Non-Comparable Licenses Cannot Support a Verdict ......................................................................... 4

    B. Mr. Weinstein's Reliance on VirnetX's "Licensing Policy" Cannot Support a Verdict .................................................................................................................. 8

    C. Mr. Weinstein's Testimony Cannot Support a Verdict Because He Did Not Tie His Analysis to the Claimed Inventions' "Footprint" in the Marketplace ........................................................................................................... 9

    D. Mr. Weinstein's Theory Violates the Entire Market Value Rule ......................... 10

    E. Apple Is Entitled to a Partial Offset of Any Damage Award Due to Exhaustion and the Prohibition on Double Recovery ............................................ 11

    F. No Reasonable Jury Could Find Damages in Excess of $113.7 Million, Based on the Record Evidence ............................................................................. 12

    G. As A Matter Of Law, VirnetX Cannot Be Awarded Damages Because VirnetX's Patents Have Been Adjudged Invalid .................................................. 13

IV. Conclusion ....................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABT Sys., LLC v. Emerson Elec. Co.*,
  797 F.3d 1350 (Fed. Cir. 2015) .................................................................................................4

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
  466 F.3d 1000 (Fed. Cir. 2006) .........................................................................................11, 12

*Bowers v. Baystate Techs., Inc.*,
  320 F.3d 1317 (Fed. Cir. 2003) ...............................................................................................12

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993) ...........................................................................................................2, 3, 9

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015) .............................................................................................4, 8

*CPG Prods. Corp. v. Pegasus Luggage, Inc.*,
  776 F.2d 1007 (Fed. Cir. 1985) ...............................................................................................12

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ...............................................................................4, 9, 10, 13

*Hanson v. Alpine Valley Ski Area, Inc.*,
  718 F.2d 1075 (Fed. Cir. 1983) .................................................................................................4

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ...........................................................................................1, 3, 4

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) .............................................................................................3, 9

*Mirror Worlds, LLC v. Apple Inc.*,
  692 F.3d 1351 (Fed. Cir. 2012) .................................................................................................4

*Mirror Worlds, LLC v. Apple, Inc.*,
  784 F. Supp. 2d 703 (E.D. Tex. 2011), *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012) .........................4

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ...................................................................................................9

*Trell v. Marlee Elecs. Corp.*,
  912 F.2d 1443 (Fed. Cir. 1990) ...............................................................................................12

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)..................................................................................................3

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014)......................................................................................... *passim*

*Whitserve, LLC v. Comput. Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012)......................................................................................................3

**Rules**

FED. R. CIV. P. 50(a).........................................................................................................................4

## I. INTRODUCTION

No reasonable jury could award damages under VirnetX's model. VirnetX's damages evidence fails as a matter of law to support a reasonable royalty because it is not based on sufficiently "sound economic and factual predicates." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (internal quotation marks omitted).

*First*, VirnetX's expert Mr. Weinstein derived a royalty rate from licenses that differ significantly from the hypothetical VirnetX-Apple license, yet made no adjustment to apportion his rate to reflect the far narrower contribution that VirnetX's patents would make to Apple's products. Five of the licenses Mr. Weinstein relied on (Aastra, Mitel, NEC, Siemens, and Avaya) were (1) for many more patents, including patents that Apple has been held not to infringe, and for longer terms than the hypothetical license, and (2) for products with far fewer features than Apple's accused iPhone, iPad, and iPod touch, which Mr. Weinstein admits have countless complex technologies far beyond the patented invention. Four of those licenses (Aastra, Mitel, NEC, and Siemens) were for royalty amounts that were substantially less than the cost of litigation. One licensee admitted that it paid the royalty amount because it was "significantly less" than the cost of litigation. 10/30/2020 AM Tr. (Tobia). The low amounts of these licenses confirm that they reflect nothing more than the desire to avoid greater litigation expense. 10/30/2020 AM Tr. (Tobia, Bakewell). And these licenses' definitions of licensed products or royalty-bearing products, ▮ ▮, would have excluded Apple's products from being royalty-bearing under these licenses. PX406 § 4; PX407 § 4; PX1085 § 4. Apple would not get such a deal at the hypothetical negotiation.

Despite these undisputed differences, Mr. Weinstein made no adjustment for any of them. Instead, Mr. Weinstein allowed those inflated royalty rates to outweigh the most analogous license—the Microsoft license, which accounted for over 99% of VirnetX's licensed units and

1

97% of licensed revenue. Mr. Weinstein calculated the Microsoft license had less than one-sixth the royalty rate he opined the jury should award. Trial Tr. 10/28/2020 PM Tr. 733:8-16. As a result, Mr. Weinstein's damages opinion was not apportioned to reflect solely the incremental value supposedly contributed by VirnetX's patents to Apple's accused products. Instead, Mr. Weinstein grossly overstated the value of the patents-in-suit by using an unreliable methodology that should have been excluded pursuant to Apple's *Daubert* motion and that cannot support a jury verdict. *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law . . . it cannot support a jury's verdict.").

*Second*, to hide his failure to apportion, Mr. Weinstein sought to rely on Mr. Larsen's unsupported testimony that VirnetX's licensing policy and its royalty rate of 1% to 2% applied ***to end product revenue*** reflected the "incremental contribution of VirnetX technology to the licensed products." 10/28/2020 PM Tr. 699:7-20. But simply calling the rates "apportioned" does not make them so. Mr. Weinstein's sole effort to apportion was simply not to apply the rate to certain products. 10/28/2020 PM Tr. 702:25-703:11. Although that is a start, it is not enough: Mr. Weinstein was required to ensure that his proffered royalty rate reflected only the value that VirnetX's patents-in-suit contributed ***to the accused features***. He offered no analysis to show how VirnetX's self-serving licensing policy was based such an apportionment, nor could he: the rates included the value contributed by many patents beyond the patents-in-suit.

*Third*, Mr. Weinstein also failed to account for the limited—and different—"footprints" of the claimed inventions in the marketplace. VirnetX does not claim to have patented the entirety of VPN on Demand—far from it. 10/27/2020 PM Tr. 421:2-422:1. Yet Mr. Weinstein made no effort to apportion out the unpatented features of those applications.

*Fourth*, Mr. Weinstein's damages model violates the Entire Market Value Rule ("EMVR"). Mr. Weinstein's model is based on VirnetX licenses that apply a percentage-based royalty to end-product revenue. Mr. Weinstein agreed that his per-unit rates were a "function" of the percentage-royalty rates in those licenses, yet VirnetX offered no evidence to show that the patented technology drives consumer demand, *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326–28 (Fed. Cir. 2014). The evidence showed it did not. Nonetheless, VirnetX invited the jury to award a reasonable royalty based on a percentage-based royalty rate applied to end-product revenue. VirnetX cannot sanitize its improper reliance on end-product revenue by turning that percentage of revenue into a per-unit rate.

*Finally*, to the extent the jury awards any damages, the award should be offset by the number of Apple devices that include the licensed Skype application. VirnetX is not entitled to a double recovery.

Because VirnetX failed to present a legally sufficient basis upon which to calculate damages, Apple's motion for judgment as a matter of law (JMOL) of no damages should be granted. Alternatively, VirnetX cannot be awarded damages in excess of $113.7 million. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1335–36 (Fed. Cir. 2009).

## II. LEGAL STANDARD

The plaintiff bears the burden of proving the amount of damages. *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 26 (Fed. Cir. 2012). Damages cannot stand if they are supported only by "speculation or guesswork." *Lucent*, 580 F.3d at 1310, 1335. Nor can damages be based on expert testimony that is economically unsound or unreliable. *LaserDynamics*, 694 F.3d at 67–70; *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315–18 (Fed. Cir. 2011); *see also Brooke Grp.*, 509 U.S. at 242.

JMOL is appropriate when "a reasonable jury would not have a legally sufficient

evidentiary basis to find for the party on that issue." *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 710 (E.D. Tex. 2011), *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012) (quoting FED. R. CIV. P. 50(a)). Regional circuit law applies to the grant or denial of JMOL. *ABT Sys., LLC v. Emerson Elec. Co.*, 797 F.3d 1350, 1354 (Fed. Cir. 2015). Under the "Fifth Circuit's standard … the jury's determination must be supported by substantial evidence." *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1357 (Fed. Cir. 2012).

### III. ARGUMENT

#### A. Mr. Weinstein's Improper Unapportioned Rates Based on Non-Comparable Licenses Cannot Support a Verdict

"No matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features." *VirnetX*, 767 F.3d at 1326. "'[T]he ultimate reasonable royalty award must be based on the *incremental value* that the patented invention adds to the end product.' In short, apportionment." *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)) (emphasis added).

This is a particular concern when the patentee seeks to analogize to other licenses, because they may differ significantly from the circumstances of the case. Accordingly, "[t]estimony relying on licenses *must account* for such distinguishing facts when invoking them to value the patented invention." *Ericsson*, 773 F.3d at 1227 (emphasis added). Additionally, licenses negotiated to settle ongoing litigation typically reflect not the value of the patented technology, but the value of avoiding costly litigation. *See, e.g.*, *LaserDynamics*, 694 F.3d at 77 ("The propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable."); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078–79 (Fed. Cir. 1983) ("[S]ince the offers were made after the infringement had begun and litigation was threatened or probable, their terms should

not be considered evidence of an established royalty, since license fees negotiated in the face of a threat of high litigation costs may be strongly influenced by a desire to avoid full litigation." (citations omitted)).

Here, Mr. Weinstein admitted numerous differences exist between the five Voice-over-IP ("VoIP") licenses—all of which were entered into as litigation settlements—and the hypothetical license Apple would take to the four patents-in-suit:

- **Aastra Settlement Agreement (PX406)**. The Aastra settlement resolved VirnetX's infringement claims against Aastra. *See* PX406 at 1. To date, Aastra has paid ▮ in royalties on VoIP phones, which is less than the cost to litigate VirnetX's infringement claims. PX1088.3. The license agreement covers 16 U.S. patents, and is in force until 2022. PX406, Ex. A. Mr. Weinstein testified that Aastra's licensed products include desktop VoIP phones and that Aastra does not compete with Apple. 10/28/2020 PM Tr. 740:3-743:18.

- **Mitel Settlement Agreement (PX407)**. The Mitel settlement resolved VirnetX's infringement claims against Mitel. PX407 at 1. To date, Mitel has paid ▮ in royalties on VoIP phones under its settlement agreement, which is less than the cost to litigate VirnetX's infringement claims. PX1088.3. The agreement covers 17 U.S. patents, and is in force until 2022. PX407, Ex. A. Mr. Weinstein testified that Mitel's licensed products include desktop VoIP phones and that Mitel does not compete with Apple. 10/28/2020 PM Tr. 743:9-18.

- **NEC Settlement Agreement (PX408)**. The NEC settlement resolved VirnetX's infringement claims against NEC. PX408 at 1. To date, NEC has paid ▮ in royalties on VoIP phones under its settlement agreement, which is less than the cost to litigate VirnetX's infringement claims. PX1088.3. The agreement covers 17 U.S. patents, and is in force until 2022. PX408, Ex. A. Mr. Weinstein testified that NEC's licensed products include desktop VoIP phones and that NEC does not compete with Apple. 10/28/2020 PM Tr. 743:9-18.

- **Siemens Settlement Agreement (PX1085)**. The Siemens settlement resolved VirnetX's infringement claims against Siemens. PX1085 at 1. To date, Siemens has paid ▮ in royalties on VoIP phones under its settlement agreement, which is less than the cost to litigate VirnetX's infringement claims. PX1088.3. The agreement covers 17 U.S. patents, and is in force until 2022. PX1085, Ex. A. Mr. Weinstein testified that Siemens licensed products include desktop VoIP phones and that Siemens does not compete with Apple. 10/28/2020 PM Tr. 743:9-18.

- **Avaya Settlement Agreement (PX1086)**. The Avaya settlement resolved VirnetX's infringement claims against Avaya. PX1086 at 1. The agreement covers 19 U.S. patents, and is in force until the expiration of all licensed patents in at least 2022. PX1086 at Ex. A.

>Mr. Weinstein testified that Avaya's licensed products include desktop VoIP phones and that Avaya does not compete with Apple. 10/28/2020 PM Tr. 743:9-18. Although the Avaya license includes a percentage-based royalty, Avaya has never paid any royalty under that provision. 10/29/2020 PM Tr. 1000:16-19. Indeed, that provision was specifically crafted to never require any payment. *Id.* 1006:15-22.

Mr. Weinstein, however, admitted that he made no adjustment in his royalty demand to account for the following major differences between these settlement agreements' royalty rates and the hypothetical VirnetX-Apple license:

***The VoIP licensees received greater IP rights for a longer term***. The VoIP Licenses on which Mr. Weinstein relies cover 16 to 19 U.S. patents. PX406–408 at Ex. A; PX1085–86 at Ex. A. They also cover a time period of approximately 15 years. *Id.* Apple, however, is hypothetically negotiating a license to, at most, only the two patents-in-suit for half that time. Moreover, Apple does not need a license to the '504 and '211 patents because it was held not to infringe those two patents. 10/27/2020 PM Tr. 411:5-19. Those two patents, however, were asserted against each of the VoIP licensees and therefore provided significant value to those licensees. *Id.* at 412:14-418:23. Each license that Mr. Weinstein relied on therefore included far greater rights, including rights that Apple would not need, than would be on the table at the hypothetical negotiation. *Id.* It is undisputed that the patents subject to VirnetX's settlement licenses (but not at issue here) have value as well. 10/30/2020 (Mathur). Mr. Weinstein, however, made no adjustment to apportion out the value of VirnetX's other licensed patents.

***The VoIP licenses cover products that have far fewer features, and to which VirnetX's patents make a greater contribution, than Apple's devices, which have countless complex technologies far beyond the patented invention.*** Apple's devices contain many more features and are much more complex than those subject to the VoIP licenses, as Mr. Weinstein admitted. 10/28/2020 PM Trial Tr. 744:9-15. Mr. Weinstein's per-unit rate, however, is the same regardless of what product is at issue and how many features it possesses. PX-1088.3 Thus, just as he did in

6

the November 2012 -417 Action, Mr. Weinstein "failed to apportion value between the patented features and the vast number of non-patented features contained in the accused products." *VirnetX*, 767 F.3d at 1329. He also failed to subtract out other unpatented elements needed to run FaceTime, such as video encoding, audio encoding, a video display, microphone, speaker, and battery. 10/28/2020 PM Trial Tr. 740:10-743:15.

*The VoIP licenses were entered into to avoid costly litigation.* The Aastra, NEC, Siemens, and Mitel licenses involve low royalties far below the cost of litigation. As such, these licenses do not reflect the value of the patented technology; instead they reflect a desire to avoid costly litigation against VirnetX. Mr. Binns confirmed that this was also the case for Avaya. 10/29/2020 PM Tr. 1003:25-1004:8.

*The VoIP licenses contained terms that would exclude the Apple accused products*. The Mitel, Siemens, and Aastra licenses contain definitions of "licensed products" which ███████████ ███████████████████████████████████████████████████. PX406 §4; PX407 § 4; PX1085 § 4. The NEC license's royalty calculation formula has the same effect. PX408 at VX00689391–96. In other words, ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████ And the Avaya license ███████████████████████████████████ █████████████████████████, which would exclude the accused Apple products. PX1086 at 3; 10/29/2020 PM Tr. 966:13-18. Mr. Weinstein did not address this fact or account for it in his analysis.

Mr. Weinstein compounded his errors by using the rates from these non-analogous licenses to outweigh the Microsoft license, which is the most analogous license. The 2010 Microsoft license covers more feature-rich products that are comparable to Apple's accused products, 10/28/2020

7

PM Tr. 744:2-4, and Mr. Weinstein calculated it to have a royalty rate of ▌ per unit, although he admitted the rate is ▌ per unit. PX1088.03-2; 10/29/2020 AM Tr. 794:16-24. The 2010 Microsoft agreement covered ▌, involved comparable licensed products, and is responsible for 99% of VirnetX's licensed units and 97% of VirnetX's license revenue. *Id.*; PX-1088.3 The 2014 amendment covered ▌. And Mr. Weinstein admitted that, unlike Microsoft, Aastra, Avaya, NEC, Siemens, and Mitel do not compete with Apple. 10/28/2020 PM Tr. 743:9-18.[1]

Despite the comparability of the Microsoft license to a hypothetical VirnetX-Apple license based on products and units licensed, Mr. Weinstein gave it effectively no weight in his royalty analysis. His simple average of the six license agreements resulted in a per-unit royalty range of $1.20 to $1.67—over six times the royalty Microsoft paid for ▌ of units sold. PX1088.3;. Moreover, in two of his effective royalty-rate calculations, he removes the Microsoft license altogether. 1PX1088.3.

Mr. Weinstein's analysis of VirnetX's licenses utterly failed to "account[] for differences in the technologies and economic circumstances of the contracting parties." *CSIRO*, 809 F.3d at 1303. It accordingly cannot support a verdict.

### B. Mr. Weinstein's Reliance on VirnetX's "Licensing Policy" Cannot Support a Verdict

Mr. Weinstein's reliance on VirnetX's licensing policy compounds his flawed analysis.

---

[1] Even Microsoft obtained greater rights than Apple would and Mr. Weinstein failed to apportion the rate. The 2010 Microsoft Agreement includes rights to 68 enumerated U.S. and foreign patents and patent applications, as well as after-issued patents and patent applications. PX409 at Ex. A;. Mr. Larsen admitted that VirnetX's foreign patents had value. 10/28/2020 PM Tr. 653:4-6. By excluding foreign sales altogether, Mr. Weinstein reduced the number of base units, thereby improperly driving up the effective royalty rate of the Microsoft agreement. 10/29/2020 AM Tr. 794:16-24. Counting the correct number of units, the Microsoft Agreement's per-unit rate was no more than ▌ (although additional apportionment would need to be done). *Id.*

8

Mr. Weinstein claimed that he did not need to apportion because he relied on Mr. Larsen's testimony concerning VirnetX's licensing policy. But VirnetX's "policy" applies a 1% to 2% royalty rate to ***the price of the end product***—in other words, it improperly applies the entire market value rule. PX411 at 27. Because the price of the end-product is used, VirnetX's licensing policy necessarily does not apportion for unpatented features. *See VirnetX*, 767 F.3d at 1325–29; *see also Ericsson*, 773 F.3d at 1226 ("[W]here a multi-component product is at issue and the patented feature is not the item which imbues the combination of the other features with value, care must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product."). Although Mr. Weinstein testified that a 1% to 2% royalty rate is low enough because it has been fully apportioned, 10/28/2020 PM Tr. 698:20-699:20, he could not explain what analysis was done to ensure that those rates are apportioned to reflect the actual contribution of VirnetX's patents. *Id.* at 10/28/2020 PM Tr. 696:2-10. No such analysis is in the record. Mr. Weinstein's speculation does not constitute substantial evidence the jury can rely on. 10/27/2020 PM Tr. 457:313; *Brooke Grp.,* 509 U.S. at 242; *Lucent*, 580 F.3d at 1335–36.

## C. Mr. Weinstein's Testimony Cannot Support a Verdict Because He Did Not Tie His Analysis to the Claimed Inventions' "Footprint" in the Marketplace

Mr. Weinstein's analysis further sought damages far beyond the "claimed invention's footprint in the market place," *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869–71 (Fed. Cir. 2010). This flaw manifested itself in several ways.

*First*, Mr. Weinstein maintained his prior opinion that Apple should pay the same royalty for a given device regardless of which feature is found to infringe. In the prior trial, Mr. Weinstein opined that $1.20/unit should be awarded for units that include VPN On Demand and FaceTime. Mr. Weinstein cannot credibly dispute that the '504 and '211 patents have some value independent of the '151 and '135 patents. *E.g.*, 4/5/18 (AM) Tr. 92:15-24 (Weinstein testifying that "[i]f the

9

jury believes that FaceTime infringes, then you use this $502 million number. If you believe that only [VOD] infringes, you would use the other number."). Indeed, VirnetX admits each of its patents have equal value. 4/5/18 (AM) Tr. 113:2-24. And in its Motion for Judgment, VirnetX complained that Apple's position equated to "afford[ing] VirnetX *no* compensation for [VOD]'s infringement." Dkt. No. 824 at 17 (emphasis in original). While incorrect, VirnetX's argument reinforces that VirnetX believes each of the technologies in its asserted patents have independent value. Mr. Weinstein's $1.20/unit is therefore not apportioned.

*Second*, VirnetX does not assert (and did not attempt to prove) that its patents cover all of the VPN on Demand. VirnetX does not accuse *all* uses of redesigned VPN on Demand, but only a particular implementation, namely the HTTPS probe functionality within the "Evaluate Connection" mode. 10/27/2020 PM Tr. 473:25-474:19. But the HTTPS probe functionality is *optional*. *Id.* 432:21-22 No witness testified that the HTTPS probe is configured or used in *every* accused Apple device, and no witness sought to quantify the number of Apple products in which it is configured or used. Mr. Weinstein was therefore required to apportion down to the incremental value that VirnetX's asserted patents supposedly contributed to the specific accused functions within VPN on Demand and FaceTime. *Ericsson*, 773 F.3d at 1226. He did not do that. VirnetX and Mr. Weinstein performed no analysis of the differences in the per-unit rates in the original 2010 Microsoft Agreement and the 2014 Microsoft Amendment. Indeed, Mr. Weinstein performed no analysis of the 2014 Microsoft Amendment because VirnetX's lawyers told him not to. 10/29/2020 PM Tr. 822:9-823:4. Nor did he or VirnetX analyze the differences in the per-unit rates in any of the settlement agreements, or the relationship of the per-unit rate to the relative value of the invention within the licensed product.

      **D.**     **Mr. Weinstein's Theory Violates the Entire Market Value Rule**

In the original 417 Action, Mr. Weinstein applied a 1% royalty rate, based on six allegedly

comparable licenses. He also testified to "his understanding that VirnetX had a 'policy' of licensing its patents for 1–2%." *VirnetX*, 767 F.3d at 1330. Mr. Weinstein applied his 1% royalty rate to the entire value of Apple's accused end products. *Id.* at 1325. The Federal Circuit rejected Mr. Weinstein's model: "The law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product. VirnetX did neither." *Id.* at 1329. In this case, Mr. Weinstein recasts this rejected theory by converting these same percentage-based rates into "per-unit rates." PX-1088.3.

The per-unit rates Mr. Weinstein derived from VirnetX's percentage-based licenses do not cure his legally unsound analysis. At trial, Mr. Larsen and Mr. Weinstein testified about VirnetX's licensing policy, which includes a 1% to 2% royalty rate on the revenues of licensed products. 10/28/2020 PM Tr. 695:16-696:1. In the appeal of the November 2012 -417 Action verdict, the Federal Circuit found this testimony improperly invited the jury to apply a percentage-based royalty to the value of Apple's accused products. *VirnetX*, 767 F.3d at 1329. The same is true here: VirnetX presented no evidence that its technology drives consumer demand and the uncontroverted evidence presented by Apple shows that it does not. 10/28/2020 Tr. 613:10-147, 741:16-743:8. VirnetX cannot meet the strict requirements of the EMVR.

### E.     Apple Is Entitled to a Partial Offset of Any Damage Award Due to Exhaustion and the Prohibition on Double Recovery

VirnetX's damages theory seeks ***a single royalty per accused device***. 4/5/18 AM Tr. 92:15–24. VirnetX's theory would lead the jury to award a legally impermissible double recovery because VirnetX already obtained a royalty on certain accused units from Microsoft. *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017–20 (Fed. Cir. 2006). The 2014 Amendment to the Microsoft license was entered to permit the use of Microsoft's technology across platforms, such

11

as to cover Skype on iOS. *See, e.g.* 10/27/2020 PM Tr. 409:10-17. Skype is available for download on Apple's accused devices. 10/29/2020 AM Tr. 817:4-10. Therefore, Apple devices that include Skype and other Microsoft features are ***already licensed*** to VirnetX's patents through the Microsoft Agreements. It is well-settled that VirnetX is not entitled to an additional royalty from Apple for those devices. *Aero Prods.*, 466 F.3d at 1017–20. It is VirnetX's policy to license a "[r]oyalty fee [that] appl[ies] for every unit shipped with the VirnetX techniques independent of the usage by the customer." PX1092-1. If the jury adopts VirnetX's approach, Apple is entitled to an offset for any devices that are already licensed to avoid double recovery. *See Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1327–28 (Fed. Cir. 2003); *CPG Prods. Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1014 n.4 (Fed. Cir. 1985).

### F. No Reasonable Jury Could Find Damages in Excess of $113.7 Million, Based on the Record Evidence

Christopher Bakewell, Apple's damages expert, corrected for some of Mr. Weinstein's errors.[2] ***First***, Mr. Bakewell explained why VirnetX's VoIP Licenses are not comparable to the hypothetical license. 10/30/2020 Tr. (Bakewell). He testified that the low settlement amounts indicate a desire to avoid litigation expenses, and relied on the testimony of Aastra's and Avaya's representatives confirming the same. 10/30/2020 AM Tr. (Tobia); 10/29/2020 PM Tr. 1003:25-1004:8. The scope of the licensed rights in those agreements is different from the hypothetical agreement because all of the settlements cover products that are not comparable to Apple's accused products. *See* § II.A., *supra*. Moreover, three of the five VoIP licenses ███████ ████████████████████████████████████████████████ making them further inapplicable to the Accused Products, ████████████████████. *See id.*

---

[2] It is not Apple's burden to fix Mr. Weinstein's errors. *See Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1447 (Fed. Cir. 1990).

By contrast, the Microsoft agreements cover products similar to Apple's feature-rich products and in a similar volume to Apple's accused products. Although the per-unit rate from the Microsoft license should be calculated using worldwide units, Mr. Bakewell explained the Microsoft per-unit rate would be, at most, ███. 10/30/2020 AM Tr. (Bakewell) (testifying that further apportionment is needed); *Ericsson*, 773 F.3d at 1226–28. Accordingly, the only reasonable royalty award supported by the record and reliable economic analysis cannot be in excess of $113.7 million for VPN on Demand. 10/30/2020 AM Tr. (Bakewell).

### G. As A Matter Of Law, VirnetX Cannot Be Awarded Damages Because VirnetX's Patents Have Been Adjudged Invalid

As a matter of law, VirnetX is not entitled to any damages for infringement because the United States Patent and Trademark Office has determined that the '135 patent and '151 patent are invalid. "[I]nvalidity . . . is a defense to liability" and "if the patent is indeed invalid, and shown to be so under proper procedures, there is no liability." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013). Because the '135 patent and '151 patent have been shown to be invalid, Apple cannot be liable for infringing them and damages cannot be awarded.

## IV. CONCLUSION

For the foregoing reasons, Apple is entitled to JMOL that VirnetX has not met its burden of proving damages.

Dated: October 30, 2020            Respectfully submitted,

*/s/ Michael E. Jones*
Gregory S. Arovas
greg.arovas@kirkland.com
Robert A. Appleby
robert.appleby@kirkland.com
Jeanne M. Heffernan
jeanne.heffernan@kirkland.com
Joseph A. Loy
joseph.loy@kirkland.com

13

Leslie Schmidt
leslie.schmidt@kirkland.com
Aaron Resetarits
aaron.resetarits@kirkland.com
Nathaniel L. DeLucia
nathaniel.delucia@kirkland.com
Ryan Jin
ryan.jin@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900


Akshay S. Deoras
akshay.deoras@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael E. Jones, Lead Attorney
Texas Bar No. 10969400
mikejones@potterminton.com
**POTTER MINTON**
A Professional Corporation
110 N. College Avenue, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846
**ATTORNEYS FOR APPLE INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on October 30, 2020.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on October 30, 2020.

*/s/ Michael E. Jones*

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Michael E. Jones*