# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **VIRNETX INC. AND** | § | |
| **LEIDOS, INC.,** | § | |
| | § | **Civil Action No. 6:12-cv-855-RWS** |
| | § | |
| **Plaintiffs,** | § | |
| | § | PUBLIC VERSION |
| **v.** | § | |
| | § | |
| **APPLE INC.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendant**. | § | |

## APPLE'S OMNIBUS MOTION FOR JUDGMENT
## AS A MATTER OF LAW UNDER RULE 50(b) AND FOR A NEW TRIAL

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  **VirnetX Failed to Present Sufficient Evidence to Support the Damages Award** ...................................................................................................................... 1

    A.  The Jury's $502 Million Damages Award Is Not Tied to the Claimed Invention's "Footprint" in the Marketplace ............................................. 2

    B.  The Jury's Damages Award Is Based on Unapportioned, Non-Comparable Licenses................................................................................................ 4

    C.  VirnetX Cannot Be Awarded Double Recovery...................................... 9

    D.  VirnetX Cannot Be Awarded Damages Because VirnetX's Patents Have Been Adjudged Unpatentable ............................................................. 10

    E.  No Reasonable Jury Could Find Damages in Excess of $113.7 Million.............. 12

II.  **Apple Is Entitled to a New Trial on Damages** ............................................... 13

    A.  Mr. Weinstein's Testimony Should Have Been Excluded.................................. 14

    B.  The Exclusion of the PTO Proceedings Warrants a New Trial on Damages ....... 14

    C.  The Jury Instructions on Damages Were Erroneous............................................ 16

        1.  The Jury Should Have Been Instructed on the EMVR ............................ 16

        2.  The Hypothetical Negotiation Instruction Was Incorrect........................ 17

    D.  Introducing Evidence about the Prior Litigation History in This Case, While Excluding the Microsoft Infringement Determination, Warrants a New Trial .................................................................................................. 19

    E.  The Damages Award Is Excessive and against the Weight of the Evidence........ 21

III.  **Conclusion** ..................................................................................................... 23

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
   466 F.3d 1000 (Fed. Cir. 2006)...........................................................................9

*Aqua Shield v. Inter Pool Cover Team*,
   774 F.3d 766 (Fed. Cir. 2014)............................................................................18

*B&B Hardware, Inc. v. Hargis Industries, Inc.*,
   575 U.S. 138 (2015)...........................................................................................11

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
   402 U.S. 313 (1971)...........................................................................................16

*Bowers v. Baystate Techs., Inc.*,
   320 F.3d 1317 (Fed. Cir. 2003)..........................................................................10

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993).............................................................................................4

*Commil USA, LLC v. Cisco Sys., Inc.*,
   575 U.S. 632 (2015).....................................................................................10, 12

*CPG Prods. Corp. v. Pegasus Luggage, Inc.*,
   776 F.2d 1007 (Fed. Cir. 1985)..........................................................................10

*CSIRO v. Cisco Sys, Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015)............................................................................9

*Dell Computer Corp. v. Rodriguez*,
   390 F.3d 377 (5th Cir. 2004) .......................................................................19, 21

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
   888 F.3d 753 (5th Cir. 2018) .......................................................................19, 21

*Ericsson, Inc. v. D-Link Sys, Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014)......................................................................3, 13

*Fellowes, Inc. v. Acco Brands Corp.*,
   2019 WL 1762910 (N.D. Ill. Apr. 22, 2019) ....................................................12

*Folks v. Kirby Forest Indus. Inc.*,
   10 F.3d 1173 (5th Cir. 1994) .........................................................15, 16, 19, 21

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
   721 F.3d 1330 (Fed. Cir. 2013)...................................................................10, 12

*Ga.-Pac. Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970).....................................................................15

*Garretson v. Clark*,
   111 U.S. 120 (1884)................................................................................................2

*Giles v. Gen. Elec. Co.*,
   245 F.3d 474 (5th Cir. 2001) ................................................................................14

*Gilster v. Primebank*,
   747 F.3d 1007 (8th Cir. 2014) ..............................................................................21

*Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*,
   370 F. Supp. 3d 251 (D. Mass. 2019) ..............................................................11, 12

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)....................................................................2, 6, 17, 23

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009).........................................................................3, 4

*Mangrove Partners Master Fund, Ltd. v. VirnetX Inc.*,
   IPR2015-01046, Paper 112 (PTAB July 14, 2020) ..............................................10

*Mangrove Partners Master Fund, Ltd. v. VirnetX Inc.*,
   IPR2015-01047, Paper 122 (PTAB July 14, 2020) ..............................................10

*MaxLinear, Inc. v. CF Crespe LLC*,
   880 F.3d 1373 (Fed. Cir. 2018).............................................................................10

*Mirror Worlds, LLC v. Apple, Inc.*,
   784 F. Supp. 2d 703 (E.D. Tex. 2011), *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012) .......................1

*Montgomery Ward & Co. v. Duncan*,
   311 U.S. 243 (1940)..............................................................................................19

*In re Papst Licensing GmbH & Co. KG Patent Litig.*,
   320 F. Supp. 3d 132 (D.D.C. 2018) ......................................................................12

*Papst Licensing GmbH & Co v. Samsung Electronics Co.*,
   403 F. Supp. 3d 571 (E.D. Tex. 2019) ..................................................................12

*Perricone v. Kansas City S. Ry. Co.*,
   630 F.2d 317 (5th Cir. 1980) ...........................................................................14, 22

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,
  170 F.3d 1373 (Fed. Cir. 1999)........................................................................11

*Powell v. Home Depot U.S.A., Inc.*,
  663 F.3d 1221 (Fed. Cir. 2011).......................................................................18

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  2014 WL 6859521 (N.D. Cal. Nov. 25, 2014) .................................................14

*Prism Techs LLC v. Sprint Spectrum L.P.*,
  849 F.3d 1360 (Fed. Cir. 2017).........................................................................6

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010)...........................................................................2

*Rude v. Westcott*,
  130 U.S. 152 (1889)...........................................................................................6

*Smartflash LLC v. Apple Inc.*,
  2015 WL 5840237 (E.D. Tex. 2015) ................................................................14

*Smith v. Transworld Drilling Co.*,
  773 F.2d 610 (5th Cir. 1985) ...........................................................................19

*SSIH Equip. S.A. v. U.S. ITC*,
  718 F.2d 365 (Fed. Cir. 1983)..........................................................................11

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
  883 F.2d 1573 (Fed. Cir. 1989)........................................................................18

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
  750 F.2d 1552 (Fed. Cir. 1984)........................................................................18

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)........................................................................17

*Unisplay, S.A. v. Am. Elec. Sign Co.*,
  69 F.3d 512 (Fed. Cir. 1995)............................................................................22

*US v. John*,
  309 F.3d 298 (5th Cir. 2002) ...........................................................................16

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014)..............................................................5, 6, 7, 17

*Whitserve, LLC v. Computer Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012)............................................................................20

*XY, LLC v. Trans Ova Genetics, L.C.*,
  890 F.3d 1282 (Fed. Cir. 2018)......................................................................................10, 11

**Rules**

Federal Rule of Civil Procedure 50(b).............................................................................1

Federal Rule of Civil Procedure 59 ................................................................................1

Apple respectfully moves for judgment as a matter of law ("JMOL") under Federal Rule of Civil Procedure 50(b) because the jury's verdict is not supported by substantial evidence. *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 710 (E.D. Tex. 2011) (JMOL must be granted where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue.") (citation omitted), *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012). Alternatively, Apple submits it is entitled to a new trial under Federal Rule of Civil Procedure 59.

## I.    VirnetX Failed to Present Sufficient Evidence to Support the Damages Award[1]

No reasonable jury could have awarded $502,848,847.20 in damages for a single, optional configuration of VPN On Demand that only a handful of customers may have implemented. *E.g.*, 10/27/20 PM Tr. 467:20–475:1 (Dr. Jones testifying regarding numerous noninfringing VPN and VOD configurations in Apple's products); 10/28/20 PM Tr. 715:19–716:4 (discussing ███████ use of VOD); 10/29/20 PM Tr. 954:5–955:4 (discussing ██████████ potential use of VOD); PX1234 (discussing ████████ potential use of VOD). The jury arrived at this outsized damages award based on an unapportioned per-unit royalty rate of $0.84, which necessarily relies on VirnetX's VoIP licenses (Aastra, Mitel, NEC, Siemens, and Avaya). Those licenses, however, were for far less complex products that incorporate far fewer technologies beyond the patented technology than Apple's products. 10/28/20 PM Tr. 651:21–652:2, 741:25–742:3. In addition, the Aastra, Mitel, NEC, and Siemens licenses resulted in royalties that were substantially less than the cost of litigation and expressly ***excluded*** products more analogous to Apple's from their definition of royalty-bearing/licensed products. PX406 § 4; PX407 § 4; PX1085 § 4; PX408 at VX00689391–

---

[1] As explained in § I.D., *infra*, because the United States Patent and Trademark Office ("PTO") has concluded that every asserted claim is "unpatentable" over the prior art, *i.e.*, there are no differences between the claims and the prior art, no damages should be awarded.

96; 10/28/20 PM Tr. 638:6–640:4; 10/29/20 PM Tr. 995:11–1004:8; 10/30/20 AM Tr. 1108:6–1118:25.

VirnetX was therefore required to "give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features[.]" *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (quoting *Garretson v. Clark*, 111 U.S. 120, 212 (1884)). VirnetX failed to do so. Although Mr. Weinstein claims VirnetX's licensing policy (upon which the VoIP licenses are supposedly based) somehow apportions for the value of the patented technology in the licensed products, Mr. Weinstein provided no explanation as to *how* the policy "apportioned." PX411; 10/28/20 PM Tr. 695:7–696:13, 698:20–699:20. And even accepting Mr. Weinstein's contention that he excluded certain licensed products in his per-unit royalty rate calculations, that says nothing about whether the royalty rate he derived is apportioned to reflect the value of the patented technology in the licensed products he did include. 10/28/20 PM Tr. 702:25–703:11. Accordingly, VirnetX's damages evidence fails as a matter of law to support the jury's damages award because it was not based on sufficiently "sound economic and factual predicates." *LaserDynamics*, 694 F.3d at 67 (internal quotation marks omitted). At most, the record in this case supports damages of $113.7 million. *See* § I.E., *infra*. Because the jury's damages award is predicated on legally insufficient grounds, Apple's motion for JMOL should be granted.

### A. The Jury's $502 Million Damages Award Is Not Tied to the Claimed Invention's "Footprint" in the Marketplace

The jury's $502 million damages reaches far beyond the "claimed invention's footprint in the market place." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869–71 (Fed. Cir. 2010). VirnetX accuses only a *single* implementation of infringement, the HTTPS probe functionality within the "Evaluate Connection" mode. 10/27/20 PM Tr. 473:23–474:19. But the HTTPS probe

functionality is *optional*. *Id.* 432:21–22. No witness testified that the HTTPS probe is configured or used in *every* accused Apple device, and only a handful of customers were even identified as potentially using the infringing configuration of VPN On Demand. 10/28/20 PM Tr. 715:19–716:4 (discussing ███████ use of VOD); 10/29/20 PM Tr. 954:5–955:4 (discussing ███████████ potential use of VOD); PX1234 (discussing ███████████ potential use of VOD).

Given that redesigned VPN On Demand has numerous configurations that VirnetX does not accuse of infringement, 10/27/20 PM Tr. 432:21–22, 473:23–474:19, "[t]he damages award ought to be correlated, in some respect, to the extent the infringing method is used by consumers. This is so because this is what the parties to the hypothetical negotiation would have considered." *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1334 (Fed. Cir. 2009). The jury was therefore required to apportion down to the incremental value that VirnetX's asserted patents supposedly contributed to the specific accused functions within VPN On Demand. *Ericsson, Inc. v. D-Link Sys, Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). The jury's award of over $502 million does not do so because it relies on licenses for products that, unlike Apple's, ███████████████ ████████████████████████████████████████████ ████████████████. 10/29/20 PM Tr. 938:15–940:12; *see also* 10/28/20 PM Tr. 740:8–741:24 (Mr. Weinstein describing limited features of VoIP desktop phones); 10/28/20 AM Tr. 608:22– 609:2 (Mr. Larsen testifying that the royalty rate will be higher when products have fewer features).

VirnetX's conclusory assertion that its licensing policy, upon which the VoIP licenses are supposedly based, accomplishes "apportionment" does not fill this gap. No analysis of how VirnetX's licensing policy is supposedly apportioned is in the record. *E.g.*, 10/27/20 PM Tr. 457:3– 13; 10/28/20 PM Tr. 739:13–740:7. Even accepting the unsupported claim that VirnetX's licensing

policy and, by implication, its VoIP licenses are "apportioned," it does not follow that either is apportioned for Apple's accused products. Apple's devices "ha[ve] many, many more features" than VoIP phones, 10/28/20 PM Tr. 743:9–15, but VirnetX relied on VoIP licenses without making any adjustment to account for this critical difference. Instead, the per-unit rates adopted by the jury are necessarily a function of the entire market value ("EMV") of the VoIP phones. *Id.* at 701:12– 702:24. That is not apportionment, and Mr. Weinstein's speculation that some "apportionment" was done is not substantial evidence the jury could have relied on. *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).

VirnetX presented no evidence that Apple's "use" of VirnetX's patented technology in an optional feature was worth only 1.4X to 2.7X less than four of VirnetX's VoIP licensees (who paid between ███████████████ according to Mr. Weinstein). Nor is there any evidence that Apple's use of that optional feature was worth four times more than Microsoft's (who paid at most $0.19/unit). The jury's adopted license rates are thus arbitrary and not supported by substantial evidence. Therefore, JMOL should be granted. *Lucent*, 580 F.3d at 1335–36.

**B.      The Jury's Damages Award Is Based on Unapportioned, Non-Comparable Licenses**

The jury's award of over $502 million in damages, based on a per-unit rate of $0.84, grossly overstates the value of the patents-in-suit by using an unreliable and unapportioned methodology that cannot support the verdict. *Brooke Grp.*, 509 U.S. at 242 ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law . . . it cannot support a jury's verdict."). As explained in § I.E, *infra*, only the Microsoft license included products comparable to Apple's, yet the jury awarded damages at a per-unit rate four times greater than the per-unit rate from Microsoft license. Although the VoIP licenses have per-unit rates above $0.84, substantial evidence does not support relying on those licenses to arrive at a reasonable royalty in this case

because of significant differences between those licenses and the hypothetical license in this case. "No matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features." *VirnetX*, *Inc. v. Cisco Sys.*, *Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). The jury's $0.84 per unit rate does not do so, and thus JMOL must be granted.

  ***The licensees received greater IP rights for a longer term***. At the hypothetical negotiation, Apple and VirnetX are bargaining over a license for a seven-year period to two U.S. patents.[2] Every VirnetX license, however, is for a far longer term and for far more patents. Each agreement grants a license through the life of the patents, giving each licensee rights for over 15 years, and the VoIP Licenses include 14 to 17 patents in addition to the two at issue in the Apple and VirnetX negotiation. PX406–408 at Ex. A; PX1085–1086 at Ex. A. Moreover, Apple was held not to infringe the '504 and '211 patents and therefore does not need a license to those patents. 10/27/20 PM Tr. 411:1–19. The '504 and '211 patents relate to different claimed inventions than those in the '135 and '151 patents, *id.*, and the VoIP licensees "got something of value" in licensing the '504 and '211 patents, which were asserted against each of the VoIP licensees in litigation. *Id.* at 412:14–418:23; *see also* 10/30/20 AM Tr. 1084:8–21 (VirnetX's 30(b)(6) witness on licensing testifying each of VirnetX's patents is "equally important" and VirnetX's "life and blood"); 10/29/20 PM Tr. 1002:14–1003:7 (Mr. Binns confirming that Avaya received "independent value" by licensing the '504 and '211 patents).

  Each VirnetX license therefore includes rights for a greater duration and number of patents than Apple would get at the hypothetical negotiation, yet the jury awarded nearly 250% of the total royalties for only 50% of the total licensed units (and for less than seven years and only two patents). *See supra* § I.A; 10/27/20 PM Tr. 411:5–19, 412:14–418:23; 10/30/20 AM Tr. 1084:8–

---

[2] The '135 patent expired on October 29, 2019.

21; PX406–408 at Ex. A; PX1085–1086 at Ex. A.

*The VoIP Licenses cover products that are far less complex, and to which VirnetX's patents make a greater contribution, than Apple's feature-rich devices*. Apple's devices contain many more features and are much more complex than those subject to the VoIP Licenses. 10/28/20 PM Tr. 741:25–743:15 (Mr. Weinstein admitting that the desktop phones do not include features such as cameras, video streaming, and internet browsing); *see also* 10/29/20 PM Tr. 992:20–994:6. Mr. Weinstein did not adjust his per-unit rates to account for these differences. PX-1088.3; 10/29/20 AM Tr. 861:3–13. The jury's $0.84 per-unit rate still fails to account for these critical differences because it was undisputed that only Apple and Microsoft had comparable products, *see* § I.E, *infra*, and there is no evidence to support a four-fold increase to Microsoft's per-unit rate when applied to Apple. Thus, the damages award "fail[s] to apportion value between the patented features and the vast number of non-patented features contained in the accused products." *VirnetX*, 767 F.3d at 1329.

*The VoIP Licenses were entered into to avoid costly litigation*. Using prior settlement agreements to prove the amount of a reasonable royalty is questionable because "litigation costs still to come at the time of settlement may loom large in parties' decisions to settle." *Prism Techs LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1369–70 (Fed. Cir. 2017) (citing *Rude v. Westcott*, 130 U.S. 152, 164 (1889) (settlements "cannot be taken as a standard to measure the value of the improvements patented" because "[m]any considerations other than the value of the improvements patented may induce the payment in such cases")); *see also LaserDynamics*, 694 F.3d at 77–78. The Aastra, NEC, Siemens, and Mitel licenses involve low royalties far below the cost of litigation. PX-1088.3; 10/30/20 AM Tr. 1081:22–1082:5. As such, these licenses do not reflect the value of the patented technology; instead, they reflect the value of avoiding costly litigation with VirnetX.

10/30/20 AM Tr. 1081:22–1082:5, 1107:4–20. Mr. Binns confirmed this was also the case for Avaya. 10/29/20 PM Tr. 1003:25–1004:8.

    ***The VoIP licenses are based on the EMVR***. In the original -417 Action, Mr. Weinstein applied a 1% royalty rate to the EMV of Apple's accused products. *VirnetX*, 767 F.3d at 1330. That royalty rate was based on six EMV-based licenses and VirnetX's "'policy' of licensing its patents for 1–2%." *Id.* The Federal Circuit held that Mr. Weinstein's model violated the EMVR because he failed "to apportion the royalty down to a reasonable estimate of the value of [VirnetX's] claimed technology, or else establish that its patented technology drove demand for the entire product." *Id.* at 1329. Yet Mr. Weinstein derived his per-unit rates from these same percentage-based licenses. 10/28/20 PM Tr. 701:12–702:24; PX1088.3. Mr. Larsen and Mr. Weinstein testified about VirnetX's licensing policy, which includes a 1% to 5% royalty rate on the revenues of licensed products. 10/28/20 PM Tr. 695:16–696:1. In the appeal of the November 2012 -417 Action verdict, the Federal Circuit found this testimony improperly invited the jury to apply a percentage-based royalty to the value of Apple's accused products. *VirnetX*, 767 F.3d at 1329. The same is true here: VirnetX presented no evidence that its technology drives consumer demand and the uncontroverted evidence presented by Apple shows that it does not. 10/28/20 AM Tr. 613:10–13; 10/28/20 PM Tr. 741:16–743:8. The jury's reliance on EMV-based licenses in its damages award cannot stand and JMOL should be granted.

    ***The VoIP licenses contained terms that would exclude the Apple accused products.*** The Mitel, Siemens, and Aastra licenses contain definitions of licensed products that require no royalties for VoIP phones that are not sold with IP PBX servers. PX406 §4; PX407 § 4; PX1085 § 4. The NEC license's royalty calculation formula has the same effect. PX408 at VX00689391–96. In other words, as long as the VoIP phones are sold by themselves, these licensees are free to

sell as many of the licensed phones as they want without ever having to pay a single cent in royalties. 10/30/20 AM Tr. 1108:6–1111:18. Because Apple does not sell any phones in combination with IP PBX servers, every phone it sells would be royalty-free under the terms of these licenses; Mr. Weinstein did not address or account for this in his analysis. *Id.*

***The jury devalued the Microsoft license***. The 2010 Microsoft license covers more feature-rich products that are comparable to Apple's accused products, 10/28/20 PM Tr. 744:2–4, and Mr. Larsen testified that only two patents drove the $200 million 2010 Microsoft license—similar to the hypothetical negotiation in this case. *Id.* at 673:3–16, 674:1-10. In addition, the 2014 Microsoft license was negotiated specifically to cover the Skype app, including the Skype app installed on Apple's accused products. 10/27/20 PM Tr. 408:22–409:23; 10/28/20 PM Tr. 656:5–657:21; 10/29/20 AM Tr. 817:4–18.

Mr. Weinstein, however, disregarded the 2014 Microsoft license entirely, at VirnetX's counsel's request. 10/29/20 AM Tr. 809:14–17, 815:10–816:5; 10/30/20 AM Tr. 1130:17–1133:22. For the 2010 Microsoft license, Mr. Weinstein calculated a royalty rate of 19 cents per unit, although he admitted the rate is 10 cents per unit. PX1088.03-2; 10/29/20 AM Tr. 794:16–24. Whether it includes 1 billion units (as Mr. Weinstein calculated) or 2 billion units (as Mr. Weinstein admitted), the 2010 Microsoft agreement is responsible for almost 99% of VirnetX's licensed units and 97% of VirnetX's license revenue. *Id.*; PX1088.3. And Mr. Weinstein admitted that—unlike Microsoft—Aastra, Avaya, NEC, Siemens, and Mitel do not compete with Apple. 10/28/20 PM Tr. 743:9–18.[3]

---

[3] Even Microsoft obtained greater rights than Apple would and Mr. Weinstein failed to apportion the rate. The 2010 Microsoft Agreement includes rights to 68 enumerated U.S. and foreign patents and patent applications, as well as after-issued patents and patent applications. PX409 at Ex. A. Mr. Larsen admitted that VirnetX's foreign patents have value. 10/28/20 PM Tr. 653:4–6. By excluding foreign sales altogether, Mr. Weinstein reduced the number of base units, thereby

Despite the comparability of the Microsoft license to a hypothetical VirnetX-Apple license based on products and units licensed, the jury awarded a royalty of $0.84/unit—over four times the royalty Microsoft paid for billions of units sold. PX1088.3; 10/29/20 AM Tr. 794:16–24; 10/30/20 AM Tr. 1130:17–1133:22. The jury's award therefore fails to "account[] for differences in the technologies and economic circumstances of the contracting parties." *CSIRO v. Cisco Sys, Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015).

### C.    VirnetX Cannot Be Awarded Double Recovery

VirnetX's damages model applied ***a single royalty per accused device***, 10/28/20 PM Tr. 682:24–683:3, and VirnetX's licensing policy applies a "[r]oyalty fee . . . for every unit shipped with the VirnetX techniques independent of the usage by the customer." PX1092-1. The jury's damages award impermissibly awards VirnetX double recovery because VirnetX already obtained a royalty on certain accused units from Microsoft. *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017–20 (Fed. Cir. 2006). The 2014 Amendment to the Microsoft license was entered to permit the use of Microsoft's technology across platforms, such as to cover Skype on iOS. *See, e.g.* 10/27/20 PM Tr. 409:10–17. Skype is available for download on Apple's accused devices, and has been downloaded at least █████████ times. 10/29/20 AM Tr. 817:4–18. And Mr. Weinstein agreed these downloads would be covered by the 2014 Microsoft Amendment. *Id.* at 817:16–18. Therefore, Apple devices that include Skype and other Microsoft features are ***already licensed*** to VirnetX's patents through the Microsoft Agreements. It is well-settled that VirnetX is not entitled to an additional royalty from Apple for those devices. *Aero Prods.*, 466 F.3d at 1017–20. Apple is entitled to an offset for the devices that are already licensed to avoid double recovery.

---

improperly driving up the effective royalty rate of the Microsoft agreement. 10/29/20 AM Tr. 794:16–24. Counting the correct number of units, the Microsoft Agreement's per-unit rate was no more than 10 cents (although additional apportionment would need to be done). *Id*.

*Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1327–28 (Fed. Cir. 2003); *CPG Prods. Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1014 n.4 (Fed. Cir. 1985).

### D.   VirnetX Cannot Be Awarded Damages Because VirnetX's Patents Have Been Adjudged Unpatentable

VirnetX is not entitled to any damages because the PTO has determined that the asserted claims of the '135 and '151 patents are unpatentable. "[I]nvalidity . . . is a defense to liability," and "if the patent is indeed invalid, and shown to be so under proper procedures, there is no liability." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015). "[W]hen a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013).

On July 14, 2020, the PTO issued Final Written Decisions holding that the asserted claims of the '135 and '151 patents are unpatentable.[4] Dkt. 964, Ex. 1 (*Mangrove Partners Master Fund, Ltd. v. VirnetX Inc.*, IPR2015-01046, Paper 112 (PTAB July 14, 2020), Ex. 4 (*Mangrove Partners Master Fund, Ltd. v. VirnetX Inc.*, IPR2015-01047, Paper 122 (PTAB July 14, 2020)) (the "*Mangrove* Decisions"). Those decisions have an immediate collateral estoppel effect in this action. *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) (Federal Circuit's "affirmance of [a PTO] invalidity finding" has "an immediate issue-preclusive effect on any pending or co-pending actions involving the patent"); *MaxLinear, Inc. v. CF Crespe LLC*, 880

---

[4] On March 20, 2018, the Court granted VirnetX's Motion in Limine 4 (renewed from the 2020 trial), precluding Apple from proffering evidence of the reexamination and *inter partes* review proceedings concerning the patents-in-suit. *See* Dkt. 894 at 7. Absent that ruling, Apple would have introduced testimony and evidence concerning the reexamination and *inter partes* review proceedings of the patents-in-suit. *See generally* Dkt. 964.

F.3d 1373, 1376-77 (Fed. Cir. 2018) ("It is well established that collateral estoppel, also known as issue preclusion, applies in the administrative context.").

Although the *Mangrove* Decisions have not yet been affirmed, agency decisions have collateral-estoppel effect even pending appeal. *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1381 (Fed. Cir. 1999) ("[T]he court below properly applied collateral estoppel despite the then ***possibility*** of an appeal[.]"); *SSIH Equip. S.A. v. U.S. ITC*, 718 F.2d 365, 370 (Fed. Cir. 1983) ("[T]he pendency of an appeal has no [e]ffect on the finality or binding effect of a trial court's holding. That rule is applicable to holdings of patent invalidity as well." (citations omitted)). In *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138 (2015), for example, the Supreme Court reaffirmed the presumption that agency decisions have preclusive effect, explaining that "courts may take it as a given that Congress has legislated with the expectation that the principle [of issue preclusion] will apply except when a statutory purpose to the contrary is evident." *Id.* at 148. The requested relief is there appropriate to ensure that VirnetX cannot recover over half-a-billion dollars for patent claims that are unpatentable.

VirnetX cannot escape the application of collateral estoppel by pointing to the different burdens of proof for unpatentability before the Board and this Court. Indeed, the Federal Circuit expressly rejected that argument in *XY*, holding that "affirmance of [a PTO] invalidity finding" has "an immediate issue-preclusive effect on any pending or co-pending actions involving the patent," notwithstanding a dissenting judge's view that different burdens of proof made collateral estoppel inapplicable. *XY*, 890 F.3d at 1294. As another district court explained in *Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, 370 F. Supp. 3d 251 (D. Mass. 2019), the Federal Circuit in *XY* "rejected the argument, articulated in the dissent, that PTAB opinions should not have preclusive effect in district courts because of the tribunals' different standards of validity, different

11

burdens of proof, and different standards of appellate review." *Id.* at 256; *Fellowes, Inc. v. Acco Brands Corp.*, 2019 WL 1762910, at *6 (N.D. Ill. Apr. 22, 2019) (explaining that the Federal Circuit in *XY* "rejected the argument articulated in the dissent, that PTAB opinions should not have preclusive effect in district courts because of the different standards of validity, burdens of proof, and standards of appellate review"). The district court in *Intellectual Ventures* explained that "[t]he holding in *XY* is necessitated by the IPR statutory scheme because if the PTAB finds that a claim is unpatentable during an IPR proceeding, 'the PTO is required to issue a certificate cancelling the claim.'" 370 F. Supp. 3d at 256 (quoting *In re Papst Licensing GmbH & Co. KG Patent Litig.*, 320 F. Supp. 3d 132, 134 (D.D.C. 2018)). Although this Court previously reached a different conclusion in *Papst Licensing GmbH & Co v. Samsung Electronics Co.*, 403 F. Supp. 3d 571, 602 (E.D. Tex. 2019), Apple respectfully submits that that decision cannot be reconciled with *XY*, where the Federal Circuit rejected the burden-of-proof argument relied on in the *XY* dissent and in *Papst*.

Therefore, because the asserted claims of the '135 and '151 patents are unpatentable, Apple cannot be liable for infringing them and damages cannot be awarded. *Commil*, 135 S. Ct. at 1929; *Fresenius*, 721 F.3d at 1340.

### E.     No Reasonable Jury Could Find Damages in Excess of $113.7 Million

The jury awarded damages based on a per-unit royalty rate ($0.84) that is more than four times the U.S.-only per-unit rate from the 2010 Microsoft license ($0.19). Thus, the jury necessarily relied on the unapportioned royalty rates from the non-comparable VoIP licenses. *See supra* § I.B. Apple's damages expert, Mr. Bakewell, explained why VirnetX's VoIP Licenses are not comparable to the hypothetical license. He testified that the low settlement amounts indicate a desire to avoid litigation expenses, and relied on the testimony of Aastra's and Avaya's representatives confirming the same. 10/30/20 AM Tr. 1081:22–1082:5, 1107:4–20; 10/29/20 PM

Tr. 1003:25–1004:8. He further testified that the scope of the licensed rights in those agreements is different from the hypothetical agreement because all of the settlements cover products that are not comparable to Apple's accused products. *See supra* § I.B.; 10/30/20 AM Tr. 1100:23–1102:2. Moreover, three of the five VoIP licenses exclude phones sold separately from IP PBX Servers from the definition of licensed products, making them further inapplicable to the Accused Products, which are ***only*** sold separately. *See supra* § I.B.; 10/30/20 AM Tr. 1110:6–1111:11.

By contrast, both Mr. Weinstein and Mr. Bakewell agreed that Microsoft's products and agreement were the most comparable to Apple's. 10/28/20 PM Tr. 752:12–16, 755:17–756:9; 10/30/20 AM Tr. 1137:15–1138:3. Although the per-unit rate from the Microsoft license should be calculated using worldwide units, Mr. Bakewell explained the Microsoft per-unit rate would be, at most, $0.19. 10/30/20 AM Tr. 1123:22-1124:25; *Ericsson*, 773 F.3d at 1226–28. Moreover, Mr. Larsen testified that the Microsoft license was negotiated over only two patents, the same number of patents at issue here. 10/28/20 PM Tr. at 673:3–16, 674:1–10. Accordingly, the only reasonable royalty award supported by the record and reliable economic analysis cannot be in excess of $113.7 million for VPN on Demand. 10/30/20 AM Tr. 1138:4–1139:10.

\*        \*        \*

For these reasons, judgement as a matter of law of no damages should be granted because the jury's verdict is not supported by substantial evidence.

## II.    Apple Is Entitled to a New Trial on Damages

The Court should grant Apple a new trial on damages for the following four reasons, which are discussed in more detail below. ***First***, Mr. Weinstein's unreliable testimony, on which the jury seems to have relied at least in part to award over $502 million, should have been excluded under *Daubert*. ***Second***, the exclusion of the PTO findings of unpatentability gave the jury the false impression that VirnetX's claimed inventions provided an improvement over the prior art. ***Third***,

the jury instructions improperly omitted instructions on the EMVR and incorrectly framed the hypothetical negotiation, which left the jury without the proper guidance to award damages. **Fourth**, the admission of evidence about the prior litigation history in this case, while excluding a key part of the prior litigation history between VirnetX and Microsoft, was unfairly prejudicial and requires a new trial. **Finally**, where a "court is left with the perception that the verdict is clearly excessive, deference [to the verdict] must be abandoned" and a new trial granted. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001) (citation omitted); *Perricone v. Kansas City S. Ry. Co.*, 630 F.2d 317, 319–20 (5th Cir. 1980); *see also Smartflash LLC v. Apple Inc.*, 2015 WL 5840237, at *8 (E.D. Tex. Sept. 2, 2015) (Gilstrap, J.) (granting defendants' new trial motion). For each of these reasons, the Court should grant Apple's motion for a new trial.

### A.  Mr. Weinstein's  Testimony Should Have Been Excluded

Mr. Weinstein's testimony should have been excluded under *Daubert*. Dkts. 217, 243, 323, 354, 546; 893; 10/28/20 AM Tr. 538:2–12. His unreliable testimony was directly responsible for the jury's excessive $502 million damages award, which was based on unapportioned licenses with EMV-based royalty rates that compensated VirnetX well beyond the footprint of its inventions. *See supra* §§ I.A–D.; *infra* § II.C.1. "Without the requisite apportionment, the jury lacked sufficient evidence on which to base its damages award, and, consequently, a new trial on the issue of damages is appropriate." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2014 WL 6859521, at *2 (N.D. Cal. Nov. 25, 2014). Due to the improper admission of Mr. Weinstein's testimony, Apple's motion for a new trial should be granted.

### B.  The Exclusion of the PTO Proceedings Warrants a New Trial on Damages

The exclusion of the PTO's decisions, including the *Mangrove* Decisions, holding every asserted claim unpatentable impermissibly allowed VirnetX to expand the footprint of its claimed invention. For example, Mr. Weinstein relied on *Georgia-Pacific* factors 9 and 10, which relate to

the "utility and advantages of the patent property over the old modes or devices" and "[t]he nature of the patented invention[.]" *Ga.-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); 10/28/20 PM Tr. at 692:23–694:19, 709:7–728:8 (Weinstein). Specifically, Mr. Weinstein testified that "the benefits relate to the … automatic nature of being able to connect and establish a VPN, and that's a tremendous benefit," opining that the operation of VOD was an advantage over prior methods. *See* 10/28/20 PM Tr. at 709:7–728:8 (Weinstein). Moreover, in the first moments of the trial, Dr. Short testified that he invented "a very easy way of getting automatic virtual private network connections" while "the average user basically [uses] their computer in the normal way they use it." 10/27/20 AM Tr. at 340:19–24. Dr. Short then purported to differentiate his invention from the prior art. *Id.* at 341:15–342:7. This testimony is contrary to the PTO proceedings, including the *Mangrove* Decisions, which have determined that the '135 and '151 patent are unpatentable, subject only to Federal Circuit appeal. *See generally* Dkt. 964; *See Folks v. Kirby Forest Indus. Inc.*, 10 F.3d 1173, 1181 (5th Cir. 1994) ("[t]he erroneous exclusion of evidence of the sale terms therefore also requires reversal and a new trial."). Apple, however, was precluded from introducing evidence that the claimed invention has *no* utility and advantages over old modes or devices or that the patented invention was limited in nature because Apple could not present the PTO's final written decisions declaring each claim unpatentable over the prior art. Dkt. 606 at 5.

To inflate damages, VirnetX also advanced an incomplete narrative that Apple did not remove the infringing VPN On Demand technology because Apple "had no non-infringing alternative." 10/27/20 AM Tr. 310:12–312:1 (VirnetX opening); *see also* 10/27/20 AM Tr. 300:4–17 (VirnetX opening); 10/27/20 PM Tr. 450:20–452:19 (Jones); 10/28/20 PM Tr. 713:19–719:16 (Weinstein) ("it's important to think about non-infringing alternatives in the context of a Georgia-

Pacific analysis, because if they don't exist, it means that the technology in question is worth more."); 10/30/20 PM Tr. 1244:6–1245:17 (VirnetX closing).[5]  The PTO, however, has determined that the '135 and '151 patents are unpatentable.  *See generally* Dkt. 964.  Indeed, the asserted claims of the '135 and '151 patents have been held unpatentable for a substantial portion of the seven years that the infringing VPN On Demand feature has been on the market.  *Id*. at 3–9; *see also* Dkts. 518, 499. Because invalid patents cannot be infringed (§ I.D., *supra*), introducing the PTO's determinations would have allowed Apple to explain why the fact that it had not implemented a non-infringing alternative does not translate to increased value for the '135 and '151 patents. The exclusion of the PTO's unpatentability decisions thus left the jury with an inaccurate impression of the nature and value of the patents and, consequently, the amount of damages. *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 343 (1971) ("A patent yielding returns for a device that fails to meet the congressionally imposed criteria of patentability is anomalous."). Because of the exclusion of this critical evidence, a new trial on damages should be granted. *See Folks*, 10 F.3d  at 1181.

### C.     The Jury Instructions on Damages Were Erroneous

The Court declined to give Apple's proposed EMVR and hypothetical negotiation instructions. 10/30/20 AM Tr. 1069:1–1071:14. Apple's proposed instructions were correct and not "substantially covered in the charge." *US v. John*, 309 F.3d 298, 304 (5th Cir. 2002). The jury's excessive damages award confirms that the failure to give these instructions "seriously impaired" Apple's ability to defend itself, and a new trial should be granted. *Id.*

### 1.     The Jury Should Have Been Instructed on the EMVR

---

[5]  VirnetX secured, over Apple's objection, an instruction that stressed the importance of non-infringing alternatives.  Dkt. 976 at 20; Dkt. 950, Ex. B at 26–27.

VirnetX did not meet the strict requirements of the EMVR. As explained in § I.B., *supra*, VirnetX relied upon per-unit rates that were merely conversions of percentage-based royalties that the Federal Circuit held violated the EMVR. *VirnetX*, 767 F.3d at 1329. VirnetX also used the EMV of Apple's products to suggest that its damages model was reasonable, introducing the information necessary for the jury to calculate damages based on Apple's products' full value. *See supra* § I.B.; *see also* 10/28/20 PM Tr. 695:16–696:1, 699:4–20, 708:22–709:6. VirnetX, however, introduced no evidence that VOD was the "sole reason" consumers purchase Apple devices, much less that the patented technology (which appears in VOD only through an optional feature that VirnetX did not prove was always implemented) motivated consumers to purchase Apple devices. *LaserDynamics*, 694 F.3d at 68. Indeed, Mr. Larsen testified that VOD alone does ***not*** drive the sale of Apple's products. 10/28/20 AM Tr. 613:10–13. And Mr. Weinstein testified that he did not apportion beyond relying on VirnetX's licensing policy. 10/28/20 PM Tr. 696:2–10, 701:12–702:24; PX1088.3. As described above, this improperly invited the jury to apply a percentage-based royalty to the value of Apple's accused products. *VirnetX*, 767 F.3d at 1329. Because VirnetX used EMV-based rates and encouraged the jury to apply a percentage-based royalty rate to the EMV of Apple's products, the jury should have been given an EMVR instruction. The jury was not so instructed, and its award of over $502 million confirms that the award violated the EMVR or, at minimum, that EMV-based evidence served as an improper reasonableness check on the jury's award. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1321 (Fed. Cir. 2011). A new trial should therefore be granted.

### 2.    The Hypothetical Negotiation Instruction Was Incorrect

Apple proposed that the jury be instructed that a reasonable royalty is "the reasonable amount that someone wanting to use the patented invention would be willing to pay to the patent owner and the patent owner would be willing to receive." Dkt. 950, Ex. B at 19–20, n.6; 10/30/20 AM

Tr. 1069:19–1070:8. The jury, however, was instructed that a reasonable royalty is "the reasonable amount that someone wanting to use the patented invention should ***expect to pay*** to the patent owner and the patent owner should ***expect to receive***." 10/30/20 PM Tr. 1230:10–14. This is an incorrect statement of the law. The Federal Circuit has made clear that a "reasonable royalty is the amount that 'a person, desiring to manufacture [, use, or] sell a patented article, as a business proposition, ***would be willing to pay*** as a royalty.'" *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (quoting *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984)); *see also Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011) (discussing evidence "regarding a reasonable royalty that Home Depot would have been ***willing to pay***"); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989) ("The determination of a reasonable royalty … is based … on what a willing licensor and [willing] licensee would bargain for at hypothetical negotiations on the date infringement started.").

VirnetX exploited this incorrect statement with testimony from its CEO, Kendall Larsen. Mr. Larsen testified that VirnetX "would [not] have accepted [$]114 million as Apple's lawyers in opening suggested." 10/28/20 AM Tr. 613:4–7. VirnetX repeated this theme in closing, when it stated that "[b]ecause [Apple] infringed so much, and they say we're a big infringer, we should get a discount, we want the Microsoft rate from 2010 when your company was on the ropes." 10/30/20 PM Tr. 1253:3–7. The jury followed VirnetX's invitation to punish Apple and awarded VirnetX an excessive $502 million in damages based at least in part on unapportioned and non-comparable licenses. As explained in § I., *supra*, this is not a "reasonable" royalty. Even if VirnetX "expected" such an excessive royalty, a willing licensee would not have agreed to pay it—particularly when Microsoft, Apple's competitor, paid at most $0.19 per unit on licensed products similar to Apple's. 10/30/20 AM Tr. 1124:10–25. Because of this improper instruction on the

determination of the reasonable royalty, a new trial on damages should be granted.

### D. Introducing Evidence about the Prior Litigation History in This Case, While Excluding the Microsoft Infringement Determination, Warrants a New Trial

Apple was deprived of a fair trial because the jury was informed of the complicated history and prior determinations *in this case* but was shielded from the prior infringement determination in VirnetX's litigation with Microsoft. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940) (a new trial should be ordered where "the trial was not fair to the party moving."); *see also Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985). As a result, VirnetX was able to portray Apple as a bad actor and argue that Apple's circumstances differed from those of VirnetX's other licensees—including Microsoft—despite the fact that Microsoft was likewise faced with an infringement determination before entering the 2010 license. VirnetX thus tainted the verdict by inviting the jury to rely on counter-factual and inadmissible evidence when reaching the damages verdict, which is grounds for a new trial. *See, e.g.*, *Dell Computer Corp. v. Rodriguez*, 390 F.3d 377, 389 (5th Cir. 2004) (reversing and remanding after finding trial court improperly excluded evidence favorable to defendant's interpretation of contract claims); *Folks*, 10 F.3d  at 1181; *see also In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 785–86 (5th Cir. 2018) (plaintiff "tainted the result by inviting the jury to infer guilt based on no more than prior bad acts …. That alone provides grounds for a new trial."). The unfair verdict here is all the more exacerbated because, at the time of Microsoft's settlement, none of the patents had been invalidated by the PTO—here they all have.

At trial, VirnetX advanced a narrative about the extensive, prejudicial history of this case, including that Apple "agree[d]" that it "previously infringed" VirnetX's patent with products that were "not ... at issue for damages here." *See, e.g.*, 10/27/20 AM Tr. 300:4–17, 310:12–312:1 (VirnetX opening); 10/27/20 PM Tr. 442:7–20, 446:9–449:17, 451:22–452:19 (Jones); 10/28/20

19

PM Tr. 713:19–719:16 (Weinstein); PDX-1.25–29, 36; PDX-4.17, 19, 21, 23, 25–32, 34; 10/30/20 PM Tr. 1244:6–1245:17 (VirnetX closing). In doing so, VirnetX invited the jury to speculate about a host of issues relating to those prior determinations, for example, how long Apple had previously infringed, whether Apple paid money for that infringement, whether there are legal proceedings between the parties, and if so, what was the outcome. *See* 10/27/20 AM Tr. 250:20–258:1, 267:24–272:1. And at the same time, the jury was unaware of simultaneous proceedings that have repeatedly invalidated VirnetX's patents. Moreover, VirnetX's repeated use of a timeline to illustrate the various "infringement" periods contravened the Court's *in limine* rulings that excluded references to: (i) the prior -417 verdict; (ii) "[d]escribing Apple's intent[, which] would suggest that Apple is a bad actor, [and] is irrelevant for damages;" and (iii) the pendency of this litigation and purported delay in resolution of this matter.[6] Dkt. 937; Dkt 894 at 1; Dkt. 644 at 2.

VirnetX used its repeated references to Apple's continued infringement to argue that Apple would "come to the [hypothetical] negotiation in a worse position" than VirnetX's other licensees. 10/27/20 AM Tr. 314:6–12; *see also* 10/27/20 AM Tr. 300:4–17 (VirnetX opening); 10/28/20 PM Tr. 713:19–719:16 (Weinstein); 10/30/20 PM Tr. 1244:6–1245:17 (VirnetX closing). Not only did this suggest that Apple should be punished, which is "blatantly improper," *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 34 n.18 (Fed. Cir. 2012) ("It is beyond debate that juries may not award litigation costs or punish infringers"), but it is counter-factual. Microsoft came to the 2010 negotiation with Apple in at least the same position as Apple: after a determination that Microsoft infringed two VirnetX patents. *See* 10/28/20 PM Tr. 530:9–11. Apple, however, was precluded from introducing this fact (10/28/20 PM Tr. 536:1–16), which then allowed VirnetX to

---

[6] Apple attempted to limit the prejudice by moving at trial to prevent VirnetX from telling this prejudicial narrative. Dkt. 971, Exs. A & B.

make misleading distinctions between Apple and Microsoft, further prejudicing Apple and denying it a fair trial. *See, e.g.*, 10/28/20 AM Tr. 578:12–582:2, 668:23–672:21 (Larsen); *Dell Comput.*, 390 F.3d at 389; *Folks*, 10 F.3d at 1181; *In re DePuy*, 888 F.3d at 785–86.

### E.   The Damages Award Is Excessive and against the Weight of the Evidence

VirnetX encouraged the jury to punish Apple for its infringement of claims that have been found to be unpatentable and to award excessive damages, including by suggesting that Apple should be punished for its prior infringement. For example, during closing arguments, VirnetX suggested that Apple should get a worse deal than every other licensee because Apple *previously* infringed. 10/30/20 PM Tr. 1244:13–1245:17, 1253:3–7, 1283:11–1284:8. This encouraged the jury to punish Apple through an exorbitant damages award. *Gilster v. Primebank*, 747 F.3d 1007, 1011 (8th Cir. 2014) (granting new trial where plaintiff "made a deliberate strategic choice to make emotionally-charged comments at the end of rebuttal closing argument, when they would have the greatest emotional impact on the jury, and when opposing counsel would have no opportunity to respond").

VirnetX's licenses confirm that the jury's award of $502 million in damages for a limited time period and limited units is excessive. The 2010 Microsoft Agreement was a $200 million lump-sum payment that covered at least 1 billion units, for at most $0.19 per unit through 2022. 10/30/20 AM Tr. 1124:10-25. According to Mr. Weinstein, the VoIP Licenses would generate only ███████ in "comparable" revenue on only ███████ "comparable" units through 2022. PX1088.03. Thus, for the 2010 Microsoft Agreement and VoIP Licenses *combined*, the total "comparable" revenues are ███████ and the total "comparable" units are ███████ through 2022. And yet, based on those licenses, the jury awarded over $502 million in damages against Apple for 598 million units from September 2013 to October 2020. In other words, the jury awarded VirnetX nearly 250% of the total royalties for only 50% of the total licensed units

21

(and for only two patents and less than seven years).

The jury's award of over $502 million, based at least in part on unapportioned and non-comparable licenses, is against the weight of relevant and reliable economic evidence. *Perricone*, 630 F.2d at 319–20. As explained in § I.B., *supra*, the VoIP per-unit royalty rates are not apportioned for products like Apple's and, in any event, are not comparable to the hypothetical license. The Microsoft Agreement is the only license to products comparable to Apple's. Mr. Weinstein admitted that his $0.19 per-unit rate for the 2010 Microsoft Agreement was not apportioned for Microsoft's worldwide sales, which he also admitted were subject to the license. 10/28/20 PM Tr. 774:4–14; 10/29/20 AM Tr. 792:18–794:24. Mr. Weinstein admitted that taking those licensed worldwide sales into account reduces the per-unit rate to $0.10. *Id.* And taking into account the 2014 Amendment, the per-unit rate was between $0.08 and $0.17 per-unit.[7] 10/30/20 AM Tr. 1132:7–1134:7. A per-unit rate of at most $0.19—from the only comparable license in the record—is the only reliable rate in the record (although it requires further apportionment to account for the worldwide units, patents, and patent applications Microsoft received beyond the two patents at issue in this case). *Id.* at 1137:14–1138:8.

A jury's reasonable royalty award "must be within the range encompassed by the record as a whole. Here, it was not within that range." *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995). The weight of the evidence confirms that the jury's award of over $502 million, based on Mr. Weinstein's unreliable testimony and unapportioned and non-comparable

---

[7] Mr. Weinstein testified that the per-unit rate for the 2014 Amendment was $0.21. 10/29/20 AM Tr. 809:23-810:3. But he admitted that calculation was based on his understanding from VirnetX's counsel that no new products were included in the 2014 Amendment. *Id.* at 811:13-812:3. No reasonable juror could conclude that Microsoft paid an additional $23 million to get cross-platform rights that resulted in no new units. Indeed, Dr. Short admitted that cross-platform use would "explode," and evidence was presented of over a billion Skype downloads on non-Windows platforms. *Id.* at 812:5-822:3.

licenses, is not tied to the footprint of the alleged invention. *LaserDynamics*, 694 F.3d at 67; *supra*

§§ I.A–B. Accordingly, a new trial on damages should be granted.

*        *        *

For these reasons, Apple should be granted a new trial on damages.

## III.   Conclusion

For the foregoing reasons, Apple's motion for judgment as a matter of law and for a new

trial should be granted.

Dated: November 18, 2020

Respectfully submitted,

*/s/ Leslie M. Schmidt*

Gregory S. Arovas
greg.arovas@kirkland.com
Robert A. Appleby
robert.appleby@kirkland.com
Jeanne M. Heffernan
jeanne.heffernan@kirkland.com
Joseph A. Loy
joseph.loy@kirkland.com
Leslie M. Schmidt
leslie.schmidt@kirkland.com
Aaron D. Resetarits
aaron.resetarits@kirkland.com
Nathaniel L. DeLucia
nathaniel.delucia@kirkland.com
Ryan Jin
ryan.jin@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Akshay S. Deoras
akshay.deoas@kirkland.com
**KIRKLAND & ELLIS LP**
555 California Street
San Francisco, California 94104

Michael E. Jones
Texas Bar No. 10969400
mikejones@potterminton.com
**POTTER MINTON**
A Professional Corporation
110 N. College Avenue, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

**ATTORNEYS FOR APPLE INC.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail on November 18, 2020. I also hereby certify that all counsel of record who have consented to electronic service are being service with a notice of this document, under seal, pursuant to Local Rule CV-5(a)(7) on November 18, 2020.

*/s/ Leslie M. Schmidt*

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Leslie M. Schmidt*