# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| VIRNETX INC., and | § | |
| LEIDOS, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | No. 6:12-cv-00855-RWS |
| v. | § | |
| | § | |
| APPLE INC., | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |

## VIRNETX'S OPPOSITION TO APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(B) AND FOR A NEW TRIAL

FILED UNDER SEAL

PUBLIC VERSION

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................ 1

II.  THE DAMAGES AWARD IS SUPPORTED BY SUFFICIENT EVIDENCE. ................. 4

    A.  The Jury's Award Is Properly Tied to The Claimed Invention. ..................................... 5

    B.  Mr. Weinstein Properly Accounted for Differences Between
        VirnetX's Licenses and the Hypothetical Negotiation. .................................................. 8

    C.  Apple Is Not Entitled to a Partial Damages Offset. .................................................... 11

    D.  The Claims Apple Infringes Have Not Been Cancelled............................................... 12

    E.  The Jury's Damages Award Is Properly Supported. ................................................... 15

III.  APPLE IS NOT ENTITLED TO A NEW TRIAL ON DAMAGES................................. 17

    A.  The Court Properly Allowed Mr. Weinstein's Testimony. .......................................... 17

    B.  The Court Properly Excluded Evidence of Irrelevant PTAB
        Proceedings. .............................................................................................................. 18

    C.  The Jury Instructions on Damages Were Proper.......................................................... 20

        1.  No Additional EMVR Instruction Was Necessary............................................. 21
        2.  The Hypothetical Negotiation Instruction Was Accurate. ................................. 21

    D.  Exclusion of the Microsoft Infringement Determination Does
        Not Warrant A New Trial............................................................................................ 22

    E.  The Damages Award Is Proper. ................................................................................. 24

IV.  CONCLUSION............................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Andrus v. Glover Const. Co.*
446 U.S. 608 (1980) ............................................................................... 14

*B&B Hardware, Inc. v. Hargis Indus., Inc.*
575 U.S. 138 (2015) .......................................................................... 13, 14

*Beacon Oil Co. v. O'Leary*
71 F.3d 391 (Fed. Cir. 1995) .............................................................. 14

*Christianson v. Colt Indus. Operating Corp.*
486 U.S. 800 (1988) ................................................................... 1, 8, 17

*CSIRO v. Cisco Sys., Inc.*
809 F.3d 1295 (Fed. Cir. 2015) ............................................................ 9

*Ericsson Inc. v. D-Link Corp.*
No. 6:10-cv-473, 2013 WL 2242444 (E.D. Tex. May 21, 2013) ............................................. 7

*Fellowes, Inc. v. Acco Brands Corp.*
2019 WL 1762910 (N.D. Ill. Apr. 22, 2019) ........................................... 13

*Francis v. Franklin*
471 U.S. 307 (1985) ............................................................................... 21

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*
721 F.3d 1330 (Fed. Cir. 2013) .............................................. 13, 14, 15

*Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*
62 F.3d 767 (5th Cir. 1995) ................................................................ 17

*Grogan v. Garner*
498 U.S. 279 (1991) .......................................................................... 13, 14

*Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*
370 F. Supp. 3d 251 (D. Mass. 2019) ............................................... 13, 15

*Microsoft Corp. v. i4i L.P.*
564 U.S. 91 (2011) ............................................................................... 13

*Next Level Comm'ns LP v. DSC Comm'ns Corp.*
179 F.3d 244 (5th Cir. 1999) ......................................................... 4, 14

*Papst Licensing GmbH & Co. v. Samsung Elecs. Co.*
    403 F. Supp. 3d 571 (E.D. Tex. 2019) ............................................................... 12, 13

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*
    170 F.3d 1373 (Fed. Cir. 1999) ........................................................................ 15

*Pineda v. United Parcel Serv., Inc.*
    360 F.3d 483 (5th Cir. 2004) ...................................................................... 16, 25

*Reeves v. Sanderson Plumbing Prods., Inc.*
    530 U.S. 133 (2000) .......................................................................................... 5, 7

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd., et al.*
    2016 WL 362540 (E.D. Tex. Jan. 29, 2016) .............................................. passim

*SimpleAir, Inc. v. Google, Inc.*
    77 F. Supp. 3d 569 (E.D. Tex. 2014) ............................................................... 4

*Smartflash LLC v. Apple Inc.*
    No. 6:13–cv–447–JRG, 2015 WL 5840237 (E.D. Tex. Sept. 2, 2015) .................................. 21

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*
    778 F.3d 1311 (Fed. Cir. 2015) ........................................................................ 14

*SSIH Equip. S.A v. ITC*
    718 F.2d 365 (Fed. Cir. 1983) ......................................................................... 15

*United States v. John*
    309 F.3d 298 (5th Cir. 2002). ......................................................................... 21

*VirnetX Inc. v. Cisco Sys., Inc.*
    748 Fed. Appx. 332 (Fed. Cir. 2019) ................................................................. 2

*VirnetX, Inc. v. Cisco Sys., Inc.*
    767 F.3d 1308 (Fed. Cir. 2014) .......................................................... 1, 9, 11, 18

*XY, LLC v. Trans Ova Genetics, L.C.*
    890 F.3d 1282 (Fed. Cir. 2018) .................................................................. 13, 14

**STATUTES**

35 U.S.C. § 271(a) ................................................................................................... 16

**RULES**

Fed. R. Civ. P. 50 ........................................................................................... 23, 24, 30

## I.     **INTRODUCTION**

Following this damages retrial, Apple's Motion largely presents the exact same

arguments that it made following the 2018 -855 trial and the 2016 -417 trial.   *Compare* Dkt.

1012 ("Motion" or "Mot.") at 1–13, *with* Dkt. 775 at 17–27 *and* -417 Dkt. 1062 at 9–21.   The

Court has rejected these arguments time and again.   *See, e.g.*, Dkt. 798 at 26–31 ("The Court

struggles to identify a single basis Apple provides for its JMOL on damages that it has not

already considered at length in the context of *Daubert* motions and the 417 post-trial."); *id.* at 36

("As discussed at length above and in previous orders, Mr. Weinstein's methodology withstands

Apple's *Daubert* challenge, and Apple is not entitled to a new trial on this basis.").[1]   Both

because of the reasons in the Court's prior opinions and the law of the case doctrine, the Court

should reject Apple's complaints once more.   *Christianson v. Colt Indus. Operating Corp.*, 486

U.S. 800, 815–16 (1988) ("[T]he doctrine [of the law of the case] posits that when a court

decides upon a rule of law, that decision should continue to govern the same issues in subsequent

stages in the same case." (internal citation omitted)).

But more importantly, most of Apple's recycled damages arguments, such as those

regarding Mr. Weinstein's methodology and apportionment, are not just disfavored under the law

of the case—they are collaterally estopped by the final, affirmed judgment in the -417 matter.

*See New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001) (holding that issue preclusion

prevents "successive litigation of an issue of fact or law actually litigated and resolved in a valid

---

[1] Moreover, the Federal Circuit, in remanding to this Court to reassess damages, did not express any opinions about Apple's damages challenges, despite the opportunity to do so, and even indicated that this Court may have been able to simply apply the jury's $1.20 per unit rate without a trial.   *See* Dkt. 816 at 30.   If the appellate court thought Apple's broad attacks on VirnetX's damages model had merit, it surely would have expressed those concerns when sending the case back for a new trial, as it had done in previous appeals.   *See generally VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014).

court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim."). Mr. Weinstein's damages model and the evidence supporting it are substantially similar across every single *VirnetX v. Apple* trial since the Federal Circuit remand in 2014.[2] This includes the -417 2016 retrial, and in January 2019 the Federal Circuit affirmed via Rule 36 this Court's rulings rejecting Apple's arguments following that trial. *VirnetX Inc. v. Cisco Sys., Inc.*, 748 Fed. Appx. 332 (Fed. Cir. 2019) (*per curiam*). Accordingly, while VirnetX addresses those arguments below out of an abundance of caution, the Court need not even reiterate its prior rulings on those matters, but may reject them out of hand.

Apple recognized as much in its appeal of the prior damages verdict in this case. In that damages trial, VirnetX presented substantially the same damages model and evidence as in this latest trial and the prior -417 case. By the time Apple filed its opening brief before the Federal Circuit on January 24, 2019 in the appeal of the -855 case, the Federal Circuit had already summarily affirmed, on January 15th, the -417 judgment. *Compare* Ex. A (Apple Op. Br. in *VirnetX, Inc. v. Apple Inc.*, Case No. 2019-1050 (Fed. Cir. Jan. 24, 2019)); *with* 748 Fed. Appx. 332. As Apple itself recognized, that affirmance foreclosed Apple's damages challenge in the -855 case. Apple grouped all of its damages challenges in the -855 appeal under the heading "Apple Preserves Its Argument on the Issues Decided Against It in the 417 Action." Ex. A at 62. In presenting those arguments, Apple merely contended that "*if* further review in [the -417 appeal] leads to a decision vacating the damages and/or prejudgment interest awards, the same

---

[2] *Compare, e.g.*, 10/28/20 PM TT (Weinstein) at 682:12–734:11, 10/28/20 SEALED PM TT (Weinstein) at 3:3–7:19, 10/29/20 AM TT (Weinstein) at 827:21–858:15, *with* 9/28/16 PM TT (Weinstein) at 6:12–120:14, 9/28/16 SEALED TT (Weinstein) at 21:2–40:8, 9/29/16 AM TT (Weinstein) at 14:5–50:17, 9/29/16 SEALED TT Portion No. 6 (Weinstein) at 19:2–23:11, *and* 4/5/18 AM TT (Weinstein) at 25:21–137:7, 4/5/18 PM TT (Weinstein) at 141:7–187:9.

result should apply here." *Id.* at 63 (emphasis added).[3]  As this Court knows, no "further review" of the -417 judgment disturbed the Court's rulings in that matter.  So by Apple's own admission, Apple is estopped from reasserting the same damages challenges here.

The three arguably new arguments Apple makes here fare no better.  First, Apple argues that PTAB rulings that have not been affirmed by the Federal Circuit nevertheless result in immediate collateral estoppel, preventing judgment against Apple.  Mot. at § I.D.  As discussed more fully in § II.D below, this argument is contrary to the very caselaw Apple cites in its own Motion.  This is likely why Apple declined to even make the argument—which stems from unaffirmed PTAB Decisions from July 2020—in a summary judgment or other motion prior to the October trial.

Second, Apple argues that "no reasonable jury could find damages in excess of $113.7 million [that is, 19 cents per unit]."  Mot. at § I.E.  This argument is new only in that Apple has previously argued to this Court that, on nearly identical damages evidence, a reasonable jury could not have awarded more than 6 (or 10, or 37) cents per unit.  *See* Dkt. 775 at 26–27; -417 Dkt. 1062 at 21; -855 Dkt. 461 at 41.  As discussed below, Apple is wrong again, and its ever-shifting standard for what a reasonable jury could or could not award exemplifies the perfunctory nature of its motion as a whole.

Third, Apple argues that the Court's exclusion of VirnetX's verdict against Microsoft—an exclusion Apple itself agreed to *in limine* both in this trial and in prior ones—somehow warrants a new trial.  Mot. at § II.D.  This argument is meritless.

---

[3] VirnetX pointed out in its response brief that Apple had conceded that its damages arguments were foreclosed by the Federal Circuit's summary affirmance in the -417 appeal.  Ex. B at 65–66. And Apple made no rejoinder in its reply brief, conceding the point.  *See generally* Ex. C.

## II.      THE DAMAGES AWARD IS SUPPORTED BY SUFFICIENT EVIDENCE.

As discussed above, Apple already conceded at the Federal Circuit that it was estopped from re-urging its damages arguments in this case.  Despite this tacit admission of estoppel, however, Apple nevertheless opens its Motion with several arguments that are already foreclosed by the -417 judgment.  As it has done repeatedly before, including in the -417 case and appeal, Apple simply re-urges its failed *Daubert* attacks against Mr. Weinstein's damages theory and urges a waived license defense.  *Compare* Mot. at §§ I, I.A, I.B, & I.C; *with* Ex. D (Apple Op. Br. in *VirnetX Inc. v. Cisco Sys., Inc.*, Case No. 2018-1197 (Fed. Cir. Mar. 19, 2018)) at 40–48; *and* -417 Dkt. 1079.  *See also* -855 Dkt. 775 at §§ II, II.A–II.D; Dkt. 323 at § III.A; *see also* Dkt. 362 at 4.  But again, Apple is estopped from pursuing these same arguments again.[4]

Yet even were it not estopped, Apple would once again lose on the merits.  Apple's arguments amount to re-urged *Daubert* attacks, and "[t]he Federal Circuit held that a JMOL is not the appropriate context for renewing attacks on an expert's methodology." *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd., et al.*, No. 2:13-CV-213-JRG, 2016 WL 362540, at *3–4 (E.D. Tex. Jan. 29, 2016).  As other courts in this District have done repeatedly, the Court should decline to consider Sections I, I.A, and I.B of the Motion because they are improper, untimely arguments regarding admissibility.  *See id.*; *SimpleAir, Inc. v. Google, Inc.*, 77 F. Supp. 3d 569, 583 (E.D. Tex. 2014), *vacated on other grounds by SimpleAir, Inc. v. Sony Ericsson Mobile Comm'ns AB*, 820 F.3d 419 (Fed. Cir. 2016).  In the context of a motion for

---

[4] Though unnecessary in light of Apple's concession, VirnetX notes that there is no question that Apple's damages critiques rejected in the -417 judgment and re-urged here meet the standard for collateral estoppel—they are identical issues that were actually litigated between these parties all the way through appeal; the Court's rejection of those arguments was necessary to the judgment awarding VirnetX damages; and the same legal standard applied in that proceeding as here.  *See Next Level Comm'ns LP v. DSC Comm'ns Corp.*, 179 F.3d 244, 250 (5th Cir. 1999).

judgment as a matter of law, "'credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Rembrandt*, 2016 WL 362540, at *2 (*quoting Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).  In denying Apple's *Daubert* motion, the Court has already found these arguments improper for JMOL because Apple's criticisms "go to the weight of the evidence rather than its admissibility."  Dkt. 362 at 4; *see also* Dkt. 798 at 26–30.

Of course, as explained previously at the *Daubert* stage *and* prior JMOL stages, Apple's arguments are factually and legally incorrect.  *See* Dkt. 338; *see also* Dkt. 779 at 20–31; -417 Dkt. 1065 at 7–20.  As explained further below, VirnetX met its burden of proof on damages through Mr. Weinstein's thorough *Georgia-Pacific* analysis that carefully examined the technology's footprint in the marketplace through a proper apportionment analysis,[5] and through the testimony and trial exhibits presented by Mr. Kendall Larsen.[6]  Nonetheless, Apple (again) asks the Court to improperly re-weigh the evidence, *Reeves*, 530 U.S. at 150, and improperly relies on a (still) waived affirmative defense.  Whether by estoppel or on the merits, the Court should deny Apple's request for JMOL on damages.

### A.  The Jury's Award Is Properly Tied to The Claimed Invention.

Apple first argues that the royalty awarded by the jury is not properly apportioned to the value of the claimed invention.  Mot. at 2–4.  The Court previously rejected this argument— which simply asks the Court to re-weigh the evidence after the jury rejected identical arguments at trial—and should do so again.  Dkt. 798 at 27–29; -417 Dkt. 1079 at 17–18.  Apple also made

---

[5] *E.g.*, 10/28/20 PM TT (Weinstein) at 682:12–734:11; 10/28/20 SEALED PM TT (Weinstein) at 3:3–7:19; 10/29/20 AM TT (Weinstein) at 827:21–858:15; PX1088.3; PX1232.
[6] 10/28/20 AM TT (Larsen) at 554:14–614:8; PX404; PX405; PX406; PX407; PX408; PX409; PX411; PX418; PX419; PX1084; PX1085; PX1086.

the same argument following the -417 judgment, and is thus estopped, as explained above.  *See,*
*e.g.*, -417 Dkt. 1062 at 10–16; Ex. D at 40–44 ("[Mr. Weinstein's] methodology was not
appropriately tied to Apple's alleged use of the patented technology . . . .").

In any case, Apple's argument is still wrong on the merits.  The argument ignores the
evidence in the record of the huge importance of the presence of the infringing functionality in
VPN On Demand.[7]  Further, the high value of infringement in VPN On Demand can be seen in
Apple's own arguments.  Mot. at 12–13 (Apple arguing that damages for VPN On Demand
cannot exceed $113.7 million).  To the extent Apple is arguing that it was improper for Mr.
Weinstein to include every Apple product containing infringing VPN On Demand in the royalty
base, that argument is belied by the fact that there was no disagreement between the parties as to
the royalty base.  Mr. Bakewell identically included in his royalty base every infringing unit,
with no limitation on whether "the HTTPS probe is configured or used."  Mot. at 3.  Again,
Apple's arguments go to the evidentiary weight, and they are not grounds for JMOL.  *Reeves*,
530 U.S. at 150.  As before, the Court should reject them.  Dkt. 798 at 29.

Apple's *Daubert* argument that Mr. Weinstein's damages model is not apportioned also
remains false.  *See, e.g.*, Dkt. 323 at 6; Dkt. 798 at 27–29.  Mr. Weinstein properly excluded any
value of unpatented features.  *See* Dkt. 338 at 2–6.  Apple ignores the whole of Mr. Weinstein's
proper *Georgia-Pacific* analysis where he fully describes his properly apportioned damages
analysis.[8]  Furthermore, Apple complains that Mr. Weinstein did not apportion his damages

---

[7] *E.g.*, 10/28/20 PM TT at 708:12–721:2; 10/28/20 SEALED PM TT at 3:5–7:4; PX1007; PX1010;
PX1012.03; PX1121; PX1123; PX1125–27; PX1185; PX1188; PX1234.
[8] *See* 10/28/20 PM TT at 682:13–734:12 (Mr. Weinstein explaining: the apportionment reflected
in the rates of VirnetX licenses and licensing policy; how the per-unit royalty rates he calculated
from VirnetX's licenses were apportioned by accounting only for similar products; that this
constituted apportionment because the dissimilar products were much more expensive; and that he
excluded certain VirnetX royalty rates from his calculations that were less comparable to Apple).

model because he relied on VirnetX's licensing policy, Mot. at 3–4, and that there is no evidence that the *policy* was apportioned.  *Id*.  This argument is illogical and ignores the substance of Mr. Weinstein's testimony.  The rates in the license agreements were apportioned to reflect the value of VirnetX's technology to those companies *because that is what companies actually paid in the real world*.[9]  The real-world market did the apportionment for him.  This is not, as Apple claims, "speculation," but rather, as the Court has already ruled via *Daubert*, substantial evidence carefully tied to the facts of this case.  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).  While Apple seems to argue that it was entitled to a lower rate than VirnetX's licensees because Apple's products differ from the licensees' in some respects, Mot. At 3–4, this is a degree-of-comparability question, a dispute on which the jury was instructed and a dispute that the jury resolved.[10]  (Indeed, the jury could have reduced the rate from $1.20 to $0.84 on this basis.)  There was no obligation for Mr. Weinstein to make a *mechanical* adjustment to the rate every time Apple identified a basis for alleged non-comparability.  Apple's argument is one of evidentiary weight and is not a ground for JMOL.  *Reeves*, 530 U.S. at 150.  As it did before, the Court should reject Apple's arguments.  Dkt. 798 at 27–29 (rejecting the same apportionment arguments); *see also* -417 Dkt. 1079 at 17 ("The licenses upon which Mr. Weinstein's analysis

---

[9] Dkt. 798 at 28 ("[T]he rates in the license agreements were real-world rates, apportioned to reflect the value of VirnetX's technology to those companies who entered into them."); *see also Ericsson Inc. v. D-Link Corp.*, No. 6:10-cv-473, 2013 WL 2242444, at *2–3 (E.D. Tex. May 21, 2013) ("It goes without saying that the licensees would not have paid value for portions of the 802.11 standard unrelated to Ericsson's patents.  Therefore, Mr. Bone's report does not implicate the entire market value rule."); 10/28/20 AM TT at 600:6–601:15 (Larsen).

[10] Further, Apple identifies no case holding that a company's licensing policy that applies to everyone must be specifically apportioned to a single defendant before it can be admissible or relevant to damages.

were based were already apportioned, and Mr. Weinstein explained to the jury the differences between the licenses and the hypothetical negotiation.").[11]

### B.  Mr. Weinstein Properly Accounted for Differences Between VirnetX's Licenses and the Hypothetical Negotiation.

Apple next argues (again) that the royalty for VPN On Demand should be low because VirnetX's licenses factually differ from the hypothetical negotiation and violate the entire market value rule.  Mot. at 4–9; Dkt. 775 at 19–22, 25; -417 Dkt. 1062 at 16–20.  Again, Apple also made this argument when challenging the -417 judgment and is estopped.  *Compare* Mot. at 4 ("The Jury's Damages Award Is Based on Unapportioned, Non-Comparable Licenses."), *with, e.g.*, Ex. D at 44 ("[T]he VirnetX licenses . . . could not be reliably used to value (and were not apportioned to) the claimed technology."), *and* -417 Dkt. 1079 at 17.  At any rate, this Court has also previously rejected these arguments and should do so again.  *See* Dkt. 798 at 26–27 ("The Court can identify no error in the jury relying on these licenses in determining the appropriate royalty rate in this case."); *id.* at 30; *Christianson*, 486 U.S. at 815–16 (1988).

But Apple's argument also remains wrong on the merits.  First, the Federal Circuit in *Ericsson* specifically explained that "the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility."  *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227–28 (Fed. Cir. 2014).  Thus, Apple is specifically foreclosed from urging these *Daubert*-style evidentiary arguments under Rule 50.  *Rembrandt*, 2016 WL 362540, at *3–4

---

[11] Further, because substantial evidence supported an award of at least $1.20 per unit, Apple should not be heard to complain that it is entitled to JMOL because this jury awarded *less than* what was supported by the evidence.  Mot. at 4 (arguing that the "[t]he jury's adopted license rates are thus arbitrary and not supported by substantial evidence" because the jury awarded damages at a rate between Mr. Weinstein's and Mr. Bakewell's per-unit rate opinions).  Apple elsewhere admits that "[t]he jury's award of over $502 million . . . relies on [VirnetX's] licenses."  *Id.* at 3.  Apple cites no authority for its proposition that a jury's award, based on substantial evidence, is *per se* arbitrary just because it does not precisely mimic an expert's opinion.

("The Federal Circuit held that a JMOL is not the appropriate context for renewing attacks on an expert's methodology.").  With Mr. Weinstein's testimony and VirnetX's licenses having been properly admitted into evidence, Apple's renewed complaints about the weight the jury gave to those licenses cannot support a request for JMOL.

Further, Apple continues to ignore Mr. Weinstein's *actual* testimony where he carefully accounted for distinguishing facts related to the comparability of VirnetX's licenses in discussing *Georgia-Pacific* Factor 1.[12]  Even before the most recent -417 summary affirmance, the Federal Circuit had already held that VirnetX's licenses and its licensing policy are sufficiently comparable to form the basis of a royalty rate analysis.  *VirnetX*, 767 F.3d at 1330–31 (2014 Opinion); *see also CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) (citing the Federal Circuit's prior approval of VirnetX relying on its comparable licenses).  And *Ericsson* recognizes that "[p]rior licenses . . . are almost never perfectly analogous to the infringement action."  773 F.3d at 1227.  "For example, allegedly comparable licenses may cover more patents than are at issue in the action, include cross-licensing terms, cover foreign intellectual property rights, or, as here, be calculated as some percentage of the value of a multi-component product." *Id*.  Apple complains of those same differences here.  Mot. at 4–9.  But *Ericsson* does not hold that to rely on these licenses the damages expert must make *mechanical* (mathematical) adjustments to his already-apportioned royalty rate.  Instead, *Ericsson* holds that these differences must be explained to the jury so it can determine "the need to discount reliance on a given license to account only for the value attributed to the licensed technology."  773 F.3d at 1228; *see also VirnetX*, 767 F.3d at 1330 ("Moreover, all of the other differences that Apple complains of were presented to the jury, allowing the jury to fully evaluate the relevance of the

---

[12] *See, e.g.*, 10/28/20 PM TT at 694:20–707:2.

licenses.").  Apple's arguments, such as its preference for getting the Microsoft deal, simply ask the Court to improperly re-weigh the evidence.

Further, Apple is wrong to argue that Mr. Weinstein should not have been able to rely on the Mitel, Siemens, Aastra, NEC, and Avaya licenses because those licenses do not cover Apple products.  Mot. at 7–8.  The definitions in those licenses were written to ensure that the licenses covered infringing combinations of products and no more.  *See, e.g.*, 10/28/20 AM TT at 606:22–607:22.  That Apple sells its products in different combinations is irrelevant.  For example, even though the licensed product definitions of those five licenses do not apply to Microsoft's products either, Apple nonetheless relied on VirnetX's Microsoft license to conduct its damages analysis.  Mot. at 12–13.  In any event, this argument goes only to the weight of the evidence, and the jury had a full opportunity to consider and reject it.  *Id*. at 7–8 (citing to the record to prove Apple presented this argument to the jury).

As explained above, Mr. Weinstein fully met his burden to explain these differences to the jury, and Apple raised its complaints to the jury as well.  *See* 10/28/20 PM TT at 694:20–707:2; Mot. at 4–9 (citing to all the places in the record where Apple argued the differences to the jury).  The jury was fully equipped to evaluate the differences between the hypothetical license to Apple and the VOIP licenses, and Mr. Weinstein's theory was sufficient under both *Ericsson* and the Federal Circuit's prior rulings in this case.

It does not stop there, however.  *Ericsson* also directs district courts to "give a cautionary instruction regarding the limited purposes for which such testimony is proffered if the accused infringer requests the instruction."  773 F.3d at 1228.  As before, Apple requested such an instruction in this case, and the Court gave it.  10/30/20 PM TT at 1235:13–1236:24; 4/10/18 AM TT at 139:20–141:3; *see also* 9/30/16 PM TT at 27:7–28:18.

10

Finally, Apple re-urges its complaints that Mr. Weinstein's damages model violates the entire market value rule.  *Compare* Mot. at 7, *with* Dkt. 775 at 25.  As before, the Court should reject this argument.  Dkt. 798 at 30 ("Mr. Weinstein's reliance on *actual* licenses entered into for the patented technology does not violate the EMVR.").  Apple's argument is limited to the contention that mere use of VirnetX's licenses to calculate per-unit rates violates the EMVR. Mot. at 7.  This argument already stands rejected.  *See* Ex. D at 42 ("VirnetX's so-called licensing practice is concededly based on the entire market value of the licensed products . . . ."); 48 F. App'x 332 (R. 36 summary affirmance); *VirnetX*, 767 F.3d at 1330–31 (2014 Opinion). Just as in the 2016 -417 retrial and the 2018 -855 retrial, there is no information in the record about Apple's total revenues or even the prices of Apple's products.  Just as before, there is no dispute about how the jury *actually calculated* damages, and the calculation had nothing to do with Apple's total revenue.  The jury used certain VirnetX licenses to determine a per-unit rate of $0.84 (the per-unit royalty rate) and applied that rate to the number of accused units sold (the royalty base).  Apple's revenues—and thus the EMVR—have nothing to do with this calculation. As before, "the Court also instructed the jury not to consider any outside knowledge they may have had about the total revenue or total price of the accused products, which it presumes the jury followed."  Dkt. 798 at 30.  *Compare* 4/10/18 AM TT at 140:20–24, *with* 10/30/20 PM TT at 1236:15–19 (identical instructions given).  Accordingly, as before, the Court should reject Apple's arguments.  Dkt. 798 at 26–27, 30.

### C.  Apple Is Not Entitled to a Partial Damages Offset.

Apple next argues again that "it is entitled to an offset for the devices that are already licensed to avoid double recovery."  Mot. at 9–10.  Once again, this argument is estopped, and in any case this Court properly rejected the argument before and should do so again.  *See* -417 Dkt.

1079 at 17 (final, unappealed order rejecting identical argument); -855 Dkt. 798 at 31.  Apple

makes no new arguments; it merely repeats failed ones without any explanation of why they

should be revived or reconsidered.  *Compare* Mot. at 8–9, *with* Dkt. 775 at 25–26 *and* -417 Dkt.

1062 at 20.  This issue does not differ between the -417 and -855 cases.  It is still true that

"Apple never pled a license defense, and Apple presented no evidence that its devices are

shipped with Skype included.  Apple also provides no explanation for why the actions of its end-

users to modify its product post-sale should bring Apple under the protection of third-party

licenses." -417 Dkt. 1079 at 17; -855 Dkt. 798 at 31; *see also* -417 Dkt. 1065 at 18–19.  In fact,

even Apple's own expert disagreed that this would be the case.  10/29/20 PM TT at 964:20–23.

### D.  The Claims Apple Infringes Have Not Been Cancelled.

Next, Apple wrongly asserts that the PTO's July 14, 2020 decisions—currently on appeal

to the Federal Circuit—have collateral estoppel effect in this action.  As Apple admits, this Court

has already rejected, in a thoroughly reasoned decision, the argument that PTO decisions can be

given collateral estoppel effect in district court litigation.  *See* Mot. at 12 (citing *Papst Licensing

GmbH & Co. v. Samsung Elecs. Co.*, 403 F. Supp. 3d 571, 602 (E.D. Tex. 2019) (Schroeder, J.)).

And, in the -417 action, this Court specifically rejected Apple's argument that the PTO's July

2020 decisions can be given effect while they are being challenged on appeal.  *See* -417 Dkt.

1104.  As this Court correctly observed, according to Apple's own authority, PTO decisions

"pending appeal" cannot be given effect in district court litigation.  -417 Dkt. 1007 at 8.  The

Court should reject Apple's latest attempt to relitigate the issue.

An agency decision may be given preclusive effect in another action only if the "ordinary

elements of issue preclusion" are satisfied, including the requirement that both actions involve

the same "'legal standard.'"  *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148, 154

(2015); *see also Next Level Comm'ns*, 179 F.3d at 250.  Apple does not even attempt to explain

how that requirement is met.  As this Court has explained, it is not.  The PTO addresses patent

validity under a *preponderance of the evidence* standard, *see* 35 U.S.C. § 316(e), while a *clear-

and-convincing* standard applies in district court infringement actions, *see Microsoft Corp. v. i4i

L.P.*, 564 U.S. 91, 95 (2011).  And it is hornbook law that "a party who has carried the burden of

establishing an issue by a preponderance of the evidence is not entitled to assert preclusion in a

later action that requires proof of the same issue by a higher standard."  *Papst*, 403 F. Supp. 3d at

602.  As the Supreme Court has explained, a "prior judgment" based on "a preponderance of the

evidence" may "not be given collateral estoppel effect" in a different case where a "clear-and-

convincing standard applies."  *Grogan v. Garner*, 498 U.S. 279, 284–85 (1991).  That forecloses

Apple's effort to give unaffirmed PTO decisions preclusive effect here.

     Federal Circuit precedent supports that conclusion.  That court has explained that "a final,

*affirmed* PTO decision determining invalidity . . . is binding [in infringement suits] *not because

of collateral estoppel*, but because . . . *cancellation*" of the patent following affirmance

"extinguishes the underlying basis for suits based on the patent."  *Fresenius USA, Inc. v. Baxter

Int'l, Inc.*, 721 F.3d 1330, 1344 (Fed. Cir. 2013) (emphasis added).  Here, however, the PTO

decisions have *not* been affirmed and the asserted claims have *not* been cancelled.[13]

     Apple's invocation of *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282 (Fed. Cir.

2018) does not help them.  *XY* at most stands for the proposition that Federal Circuit

---

[13] By contrast, in the cases Apple cites, the conditions for cancellation were satisfied because the PTO's ruling was affirmed (or not appealed).  *Fresenius*, 721 F.3d at 1344 (setting aside damages judgment upon *cancellation* of a patent); *Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, 370 F. Supp. 3d 251, 256–57 (D. Mass. 2019) (finding *unchallenged* PTO decision required setting aside judgment); *Fellowes, Inc. v. Acco Brands Corp.*, 2019 WL 1762910, at *3, *7 (N.D. Ill. Apr. 22, 2019) (PTO decision was *affirmed* by Federal Circuit).

"'*affirmance* of [a PTO] invalidity finding'" can affect pending infringement suits.  890 F.3d at 1294.  By its express terms, *XY* does not allow *unaffirmed* PTO decisions to be given binding effect *pending appeal*—as this Court recognized in the -417 action.  *See* -417 Dkt. 1007 at 8.[14]

Giving unaffirmed PTO decisions preclusive effect in district court litigation also conflicts with the statutory scheme.  Where Congress intended to create special estoppel-like rules, it did so expressly in the Patent Act.  *See, e.g.*, 35 U.S.C. § 315(e)(2).  Courts should not depart from black-letter estoppel principles where Congress could have created special rules itself but did not.  *See Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17 (1980).  The Patent Act, moreover, states that PTO decisions cannot result in cancellation of a patent until "the time for appeal has expired or any appeal has terminated."  35 U.S.C. § 318(b).  Giving unreviewed PTO decisions preclusive effect pending appeal would end-run that express statutory limitation.

Tellingly, Apple cites *no* case giving a PTO decision preclusive effect despite a pending appeal.  Instead, it cites cases where the conditions for cancellation were satisfied because a

---

[14] Moreover, insofar as *XY* suggested that affirmance of a PTO decision has "issue-preclusive effect" in infringement actions, 890 F.3d at 1294, that was dictum.  In *XY*, "both parties *assumed* that an affirmance of the Board's decision would result in estoppel."  890 F.3d at 1295 (emphasis added).  Because the parties *agreed* collateral estoppel would apply, the court did not address— much less resolve—whether estoppel was appropriate under ordinary preclusion principles.  *See Beacon Oil Co. v. O'Leary*, 71 F.3d 391, 395 (Fed. Cir. 1995) (decision lacks precedential force where parties "stipulated" to a particular conclusion).  Contrary to Apple's assertion, *XY* did not "expressly reject[]" the argument that the different burdens of proof made estoppel unavailable, Mot. at 11; the court did not even *address* that argument, because the parties *agreed* estoppel would apply.  Regardless, *XY* could not—and did not—overrule binding precedent prohibiting collateral estoppel where, as here, different legal standards apply in each case.  *See Grogan*, 498 U.S. at 285; *B&B Hardware*, 135 S. Ct. at 1306; *Fresenius*, 721 F.3d at 1344.  Additionally, "regional circuit" law governs "whether issue preclusion applies."  *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015).  And the Fifth Circuit does not apply collateral estoppel where different legal standards apply in each case.  *Next Level Comm'ns*, 179 F.3d at 250.

PTO ruling was *affirmed* (or not appealed),[15] or where preclusive effect was given to *district court* rulings that applied a *clear-and-convincing* standard.[16]  Neither situation applies here.

Apple's own conduct belies its claim that unaffirmed PTO decisions should be given preclusive effect.  Apple has repeatedly sought stays based on various PTO decisions—but (until now) it recognized that those decisions would affect Apple's liability *only* "*[i]f the Federal Circuit affirms.*"  Dkt. 518 at 1 (emphasis added).  In its prior appeal in this case, Apple expressly represented to the Federal Circuit that it *could not raise* estoppel-type arguments based on PTO decisions unless the Federal Circuit affirmed those decisions.[17]  The PTO decisions Apple now invokes, moreover, were issued in July 2020.  But Apple waited until its JMOL motions—*after* the Court, parties, and jurors had expended substantial resources on the October damages trial—to argue, for the first time, that the PTO decisions foreclose any damages.  That delay would be inexplicable if Apple thought the argument had even colorable merit.

### E.  The Jury's Damages Award Is Properly Supported.

Finally, as referenced above, Apple once again claims that "no reasonable jury" could disagree with its own damages expert.  Mot. at 12–13.  This argument lacks all credibility given that Apple's assessment of what "*no reasonable jury*" could award has varied wildly over the course of the past several trials, despite nearly identical evidence.  *Compare* Mot. at 12–13, *with*

---

[15] *See Fresenius*, 721 F.3d at 1344 (finding *cancellation* of a patent requires setting aside a damages judgment); *Intellectual Ventures I, LLC*, 370 F. Supp. 3d at 256–57 (finding *unchallenged* PTO decision required setting aside judgment); *Fellowes*, 2019 WL 1762910, at *3, *7 (relevant PTO decision was *affirmed* by the Federal Circuit, cancelling the claims).

[16] *See SSIH Equip. S.A v. ITC*, 718 F.2d 365, 370 (Fed. Cir. 1983) ("[T]he pendency of an appeal has no [e]ffect on the finality or binding effect of *a trial court's* holding." (emphasis added)); *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1381 (Fed. Cir. 1999) (same).

[17] *See* Ex. E (Supp. Br. for Def.-App. Apple, in *VirnetX, Inc. v. Apple Inc.*, No. 2019-1050, Dkt. 67-2 (Fed. Cir. Aug. 30, 2019)) at 11 (arguing that "the issue of the [collateral-estoppel] effect of [other PTO] Decisions [concerning patents no longer at issue] *first became ripe*" when those PTO decisions were affirmed (emphasis added)).

Dkt. 775 at 26–27 *and* -417 Dkt. 1062 at 21.  For example, Apple curiously ignores the fact that

during the 2018 trial of this same matter, Mr. Bakewell opined that "[i]f only VOD infringes,

damages cannot be more than $0.06 for each unit that contains redesigned VOD," while during

this trial Mr. Bakewell opined that $0.19 per unit "represent[ed] the fair value of VirnetX's

patented technology to Apple."  Dkt. 775 at 27; 10/30/20 AM TT at 1138:14–1139:10.  The

Court should reject Apple's offer to exclusively rely on Apple's own damages expert (in

contravention of Rule 50) in light of the fact that the same expert misled the jury as to the value

of VirnetX's technology in 2018.

But even putting aside Apple's strikingly unreliable barometer for evaluating the legal

sufficiency of VirnetX's damages evidence, Apple simply does not demonstrate that the jury's

award is not supported by substantial evidence.  Instead, Apple explicitly invites the Court to

improperly re-weigh the evidence and side with Apple's damages expert as a basis for JMOL.

Mot. at 12–13.  The Court may not do so.  *Rembrandt*, 2016 WL 362540, at *2.  Apple still

ignores that "where a jury is presented with two conflicting positions at trial and there is

reasonable evidence and argument to support both positions, the fact that the jury ultimately

sided with one party over the other does not support entry of JMOL."[18]  Even less so here, given

that the jury actually picked a position between the two experts' opinions, an even less credible

basis for JMOL.  Accordingly, as before, the Court should reject Apple's arguments as both

estopped and meritless.  *See* Dkt. 798 at 31 ("The Court declines to substitute its judgment for

that of the jury and will not reweigh the evidence and credit Apple's expert over Mr.

---

[18] *Id.* at *7; *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 848 (Fed. Cir. 2010) (finding that the jury was "free to disbelieve" an expert and "credit" the opposing expert); *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004) ("[I]f reasonable persons could differ in their interpretations of the evidence, then the [JMOL] should be denied." (internal quotations omitted)).

Weinstein."); -417 Dkt. 1079 at 14 (noting unappealed argument that "no reasonable jury could award more than $25.2 million ($0.10 per unit)); *Christianson*, 486 U.S. at 815–16 (1988).

## III.    <u>APPLE IS NOT ENTITLED TO A NEW TRIAL ON DAMAGES</u>

Four of Apple's five arguments related to a new trial on damages do not differ from the arguments Apple made following the -855 and -417 retrials.  *Compare* Mot. at 13–23, *with* Dkt. 775 at 38–44, *and* -417 Dkt. No. 1062 at 28–40.  As before, VirnetX respectfully requests that the Court find that Apple is estopped from seeking and is not entitled to a new trial on damages. Dkt. 798 at 30, 34–37; -417 Dkt. 1079 at 27–28; *Christianson*, 486 U.S. at 815–16.  Further, as discussed below, Apple's arguably new complaint that it was unfairly prevented from mentioning the verdict in the Microsoft case is meritless and certainly not a basis for a new trial.

### A.    The Court Properly Allowed Mr. Weinstein's Testimony.

As before, Apple argues that it is entitled to a new trial because Mr. Weinstein's testimony was inadmissible under *Daubert*.  *Compare* Mot. at 14, *with* Dkt. 775 at 39.  Apple merely repeats the same text, without any explanation for why it is not estopped or why the Court should reconsider its prior orders.  As before, Apple is not entitled to a new trial on damages merely because the Court found Mr. Weinstein's testimony admissible.  Dkt. 798 at 36 ("As discussed at length above and in previous orders, Mr. Weinstein's methodology withstands Apple's *Daubert* challenge, and Apple is not entitled to a new trial on this basis."); *see also* -417 Dkt. 1079 at 27 (citing Dkt. 362) ("Apple's argument that Mr. Weinstein's testimony should be excluded is substantially the same as its *Daubert* argument, which the Court rejected."); Ex. D at 41.  Further, Apple did not even attempt to make the necessary argument that reversing the admissibility of Mr. Weinstein's testimony is necessary to cure an injustice.  *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 770, 774 (5th Cir. 1995).

**B.  The Court Properly Excluded Evidence of Irrelevant PTAB Proceedings.**

As before, Apple merely repeats its estopped argument "that it is entitled to a new trial because the Court excluded evidence from parallel PTO proceedings."  Dkt. 798 at 36–37.  *Compare* Mot. at 14–16, *with* Dkt. 775 at 39–40, *and* -417 Dkt. 1062 at 33–34.  This issue has already been resolved both by this Court and twice on appeal in the -417 matter.[19]  As before, "VirnetX's appeals of [the PTAB] proceedings are ongoing and none of the asserted claims has been cancelled."  Dkt. 798 at 36; -417 Dkt. 1079 at 27.  No relevant facts differ between the time of the Court's analysis following the -417 or -855 retrial and now, and the PTO proceedings were again properly excluded as irrelevant.  Dkt. 798 at 36 ("It is particularly unclear what probative value the PTO proceedings have in light of the fact that validity is not an issue in this case.").  Moreover, though Apple again complains about needing the PTO proceedings to respond to Mr. Weinstein's testimony about the "utility and advantages of the patent property over the old modes or devices," Mot. at 15, the Court already ruled in 2018 that "contrary to its assertions, Apple was not *precluded* from introducing evidence that the claimed invention 'has no utility or advantages over old modes or devices.'  The Court only prohibited the use of the PTO proceedings, and Apple was free to present whatever evidence relating to *Georgia-Pacific* factors 9 and 10 it so chose."  Dkt. 798 at 37.  That same finding is even more appropriate here, since this time Apple even offered new expert testimony,[20] through Dr. Blaze, further expounding on the allegedly limited contribution of VirnetX's patents over the prior art.  10/29/20 PM TT (Blaze) at 919:15–925:14.

---

[19] Dkt. 798 at 36–37; -417 Dkt. 1079 at 27–28 (unappealed); *VirnetX*, 767 F.3d at 1324–25.
[20] Over VirnetX's objection.  Dkt. 937 at 4–5.

18

Further, the fact that VirnetX presented evidence to the jury in this trial that Apple had no non-infringing alternatives does not change the analysis, as Apple argues for the first time in this brief.  Mot. at 15–16.  First, that same evidence was before the jury in the prior trial—*see, e.g.*, 4/5/18 AM TT (Weinstein) at 81:20–82:17, 95:5-9—and did not impact the Court's decision to exclude the evidence.  Second, while Apple now complains that it should have been able to explain to the jury *why* it has willfully continued to infringe rather than redesign its products (allegedly because of the PTO proceedings), it was in fact *Apple* that sought to keep its intent from the jury in this trial through successful rulings *in limine*.  Dkt. 937 at 10–11.  Apple cannot complain of being unable to describe its allegedly good intent to the jury when Apple itself sought and was granted an exclusion of any evidence of its intent to willfully and deliberately infringe.

Third, and most importantly, *Apple never asked the Court to reconsider its MIL rulings in view of this non-infringing alternative evidence* and has thus waived any evidentiary challenge on that basis.  Apple did not cite "rebutting the lack of non-infringing alternatives" as a basis for the Court to deny VirnetX's motion *in limine* when the Court originally granted it in this matter.  *See* Dkt. 312 at 9–10.  When the parties renewed that motion *in limine* just prior to this trial, Apple specifically noted its opposition to the Court's order excluding PTO proceedings, but never mentioned the non-infringing alternatives issue as a basis for that opposition, despite knowing full well VirnetX intended to present that evidence.  Dkt. 894 at 7 n.3.  Apple never objected during trial or asked the Court to allow testimony about the PTO proceedings after VirnetX had presented the now complained of testimony, despite now contending that VirnetX had opened the door.  And even when Apple filed a written offer of proof *during trial* about the excluded PTO proceedings, Apple did not reference this argument regarding non-infringing

alternatives.  Dkt. 964.  In short, Apple discovered this complaint when drafting its posttrial

brief, and it cannot fault the Court for not ruling in its favor on an evidentiary matter never

presented during trial.

Lastly, even if Apple had given the Court the opportunity to weigh the evidentiary merit

of the PTO proceedings specifically in view of the non-infringing alternatives evidence Apple

complains of, the Court would have been right to continue to exclude the evidence.  Apple's lack

of a non-infringing alternative is simply undisputed, and Apple should not be heard to argue that

the presentation of these neutral, undisputed facts caused some injustice to Apple.  3/26/18 H'rg

Tr. at 26:24–27:17 (Apple arguing that "[w]e're not alleging a non-infringing alternative

damages theory . . . .  We're not asserting noninfringing alternatives as a way to cabin or value

damages.").  The absence of alternatives alone demonstrates the value of VirnetX's invention,

and whatever minimal probative value Apple's beliefs regarding the PTO proceedings might

have had could not have counterbalanced the significant unfair prejudice and confusion of the

issues that evidence of the PTO proceedings would have wrought.

Because no relevant facts have changed, and Apple has presented no properly preserved

reason why the Court should reconsider its ruling, the Court should still reject Apple's argument.

### C.  The Jury Instructions on Damages Were Proper.

The Court's jury instructions were proper.  Apple identically re-proposes its jury

instruction arguments that failed as grounds for a new trial following the -417 retrial and the

2018 -855 trial.  Dkt. 798 at 34–35; -417 Dkt. 1079 at 28.  *Compare* Mot. at 16–19, *with* Dkt.

775 at 40–42 *and* -417 Dkt. 1062 at 35–37.  Apple's estopped proposals remain either

inappropriate or incorrect.  Further, even if Apple's arguments had any merit, its conclusory

assertion that the jury's damages award was "excessive" cannot establish that its ability to defend itself was "seriously impaired." *United States v. John*, 309 F.3d 298, 304 (5th Cir. 2002).

### 1.   No Additional EMVR Instruction Was Necessary.

The Court has already rejected Apple's argument that it needed an additional EMVR instruction and should do so again.  Dkt. 798 at 34; -417 Dkt. 1079 at 28.  As before, "the prices of Apple's devices were never presented to the jury, [and] the Court instructed the jury, out of an abundance of caution, not to rely on the full price of any Apple product." *Id*.; *see also* 10/30/20 PM TT at 1236:15–19; 4/10/18 AM TT at 140:20–24.  The Court must assume that the jury followed its instructions.  *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985).  Furthermore, as before, "[f]urther instructions on the precise contours of the entire market value rule may have led the jury to mistakenly believe that it could apply the rule despite the fact that the record did not support the rule's applicability."  Dkt. 798 at 34; -417 Dkt. 1079 at 28; *Smartflash LLC v. Apple Inc.*, No. 6:13–cv–447–JRG, 2015 WL 5840237, at *7 (E.D. Tex. Sept. 2, 2015) (holding that instruction on EMVR indicated that the jury could rely on the value of the entire product even though EMVR theory was not supported by the evidence).  Accordingly, as it did following the -417 retrial and the 2018 -855 trial, the Court should reject this argument.

### 2.   The Hypothetical Negotiation Instruction Was Accurate.

Following the -417 retrial and 2018 -855 trial, the Court confirmed that its hypothetical negotiation "instruction as a whole properly conveyed to the jury that the reasonable royalty should reflect the fair market value of the technology."  Dkt. 798 at 34; -417 Dkt. 1079 at 28.  The disputed instruction was the same in all three trials.  *Compare* 10/30/20 PM TT at 1230:10–14, *with* 4/10/18 AM TT at 135:5–8, *and* 9/30/16 PM TT at 22:3-6.  Now, Apple repeats the same arguments with the same authority, merely plugging in statements from VirnetX's

witnesses at this trial that were plainly not unduly prejudicial.  *Compare* Mot. at 17–19 *with* Dkt.

775 at 41-42 *and* -417 Dkt. 1062 at 36-37.  Apple is again estopped by the -417 judgment, *see*

Ex. D at 50–51, and this Court should again find that its proper hypothetical negotiation

instruction does not warrant a new trial.

### D.  Exclusion of the Microsoft Infringement Determination Does Not Warrant A New Trial.

Next, Apple surprisingly contends that, despite the Court's meticulous and extensive

efforts to carefully parse and minimize any discussion of both parties' prior litigation histories—

*largely at Apple's urging*—Apple was nevertheless so unfairly prejudiced as to warrant a new

trial by the exclusion of one aspect of VirnetX's litigation history relating to the Microsoft

license.[21]  Mot. at 19.  In short, while Apple was happy for the Court to exclude all information

about any prior litigation where it would be harmful to Apple—including the affirmed judgment

awarding $1.20 per unit to VirnetX in the -417 case for the same technology—Apple wanted to

retract its agreed order *in limine* to admit one aspect of prior litigation that might help it.  The

Court properly held Apple to its agreement and excluded that evidence.

---

[21] VirnetX does not understand Apple to be challenging the verdict solely on the basis of the admission of the mere facts of this litigation (such as the timeline of infringement and fact of Apple's "agreed infringement"), and understands Apple's discussion of that evidence as mere background to its complaint about exclusion of the Microsoft verdict.  However, to the extent Apple is complaining about the extremely sanitized, purely factual recitation of this case's history as independently unfair, Apple is wrong for all the reasons explained in VirnetX's trial brief and argument on that issue—*see* Dkt. 961; 10/27/20 AM TT at 250–79—and the Court's ruling. 10/27/20 AM TT at 275 ("[I]t's factual, and it . . . relates to the [] chronology.  It does not refer to lawsuits.  It does not refer to other verdicts or judgments, anything of that nature.").  VirnetX did not inflame the jury in the slightest, but simply neutrally explained the background of Apple's infringement to demonstrate Apple's proven lack of non-infringing alternatives at the time of the hypothetical negotiation.  And VirnetX did not "invite the jury to speculate about a host of issues," Mot. at 20, but merely used the language of "agreed infringement" that the Court carefully chose as a *protection* for Apple from discussion of the prior jury verdicts.

As discussed during trial, Apple unquestionably agreed prior to trial that any discussion of other litigation—including the Microsoft verdict—should be excluded *in limine*.  Dkt. 894 at 9 (incorporating Dkt. 392 at 4 (#29)).  The sole agreed exception to that MIL—which Apple acknowledged as recently as the night before it raised the argument it now complains of—was that the parties could refer to VirnetX's licenses as litigation licenses.  *See* 10/27/20 PM TT at 525:3–526:5; 04/02/18 AM TT at 11:9–13 ("So we're agreeing that we'll only refer to these things as litigation settlements.  We'll only say that there's litigation, and *we won't mention the Microsoft verdict*, and we won't call VirnetX litigious.").  In overruling Apple's objection in this trial, the Court acknowledged the prejudice that would have stemmed from Apple's attempt to open the door further—"it raises a whole host of other problematic testimony . . . about [] whether there were appeals or [] what a non-final judgment is . . . ."  10/28/20 AM TT at 536:1–16.  The evidence was excluded with good reason.

The Court also properly rejected Apple's contention that VirnetX had opened the door through its statements that, for example, Apple was "plumb out of bargaining power" at the hypothetical negotiation in this case.  10/27/2020 AM TT at 300:6.  The Court correctly observed that those comments—related to the facts about Apple's known customer backlash and pre-negotiation lack of non-infringing alternatives—had nothing to do with Microsoft or any insinuations about Microsoft's position upon taking a license.  10/28/20 AM TT at 536:3–6 ("I don't think the door has been opened wide enough here, particularly given where Mr. Caldwell's comments fell in his opening.").

Reference to the Microsoft verdict was also not necessary to respond to the stipulated facts of Apple's "agreed infringement" or to VirnetX's factual statements that VirnetX's licensees took licenses while still disputing infringement and validity.  These statements were all

simply true, and not, as Apple contends, "counter-factual."  Mot. at 20.  While the hypothetical

negotiation construct (and the affirmed -417 judgment) non-controversially assumes

infringement and validity with respect to Apple, the Microsoft license itself makes clear that

Microsoft still contested infringement and validity (despite the verdict) when it took a license.

PX409 at VX00088621.  Apple therefore *did* "come to the negotiation in a worse position,"

10/27/20 AM TT at 314:6–12, and Apple did not need to open up "a whole host of problematic

testimony," 10/28/20 AM TT at 536:1–16, to rebut those truthful arguments.  As the Court

recognized, *id.*, had Apple been allowed to imply that Microsoft (having had a determination

against it) was in the same position as Apple (which, under the schema crafted by the Court, was

described in trial as having similarly had a "determination of," or "agreed to," infringement),

*Apple* would have been the one promoting a counter-factual reality to the jury.  VirnetX would

have had to explain, at minimum, the fact that Microsoft's position—facing an unappealed,

newly pending jury verdict—paled in comparison to Apple's 10-year running, twice affirmed,

finally adjudicated willful infringement.  The Court properly excluded this evidence, and it

should not order a new trial.

### E.  The Damages Award Is Proper.

Finally, despite the fact that *four separate juries*, looking at the same damages evidence,

have awarded strikingly similar damages amounts for Apple's infringement, Apple again repeats

identical arguments as to why the damages award is allegedly excessive and against the great

weight of the evidence, including the same complaint about closing arguments which the Court

carefully considered and rejected.  *Compare* Mot. at 21–23, *with* Dkt. 775 at 42–44; *see also*

Dkt. 798 at 35–36.  Again, Apple claims that the jury's award is not "within the range

encompassed by the record as a whole."  Mot. at 22; *see also* Dkt. 775 at 44.  Apple makes that

argument by merely repeating other arguments already set forth in other sections of its Motion and mischaracterizing statements made at trial.  As demonstrated by VirnetX's responses, above, to each of Apple's complaints, to claim that the record does not support the jury's award is to ignore the record.  Apple re-urges the same factual disputes it raised to the jury, but the jury was free to weigh the facts as they saw fit—indeed, that is the jury's very purpose.  *See Rembrandt*, 2016 WL 362540, at *7; *i4i*, 598 F.3d at 848; *Pineda*, 360 F.3d at 486.  That Apple wishes the jury had reached a different conclusion does not justify a new trial.  Accordingly, VirnetX requests that the Court reject Apple's arguments, as it did before.  Dkt. 798 at 35–36; -417 Dkt. 1079 at 28 ("[T]he jury's verdict was not against the great weight of the evidence.").

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, VirnetX respectfully requests that the Court deny Apple's motion for judgment as a matter of law and for new trial.

DATED:  December 3, 2020     Respectfully submitted,

          **CALDWELL CASSADY & CURRY**

          /s/ *Bradley W. Caldwell*
          Bradley W. Caldwell
          Texas State Bar No. 24040630
          Email:  bcaldwell@caldwellcc.com
          Jason D. Cassady
          Texas State Bar No. 24045625
          Email:  jcassady@caldwellcc.com
          John Austin Curry
          Texas State Bar No. 24059636
          Email:  acurry@caldwellcc.com
          Daniel R. Pearson
          Texas State Bar No. 24070398
          Email:  dpearson@caldwellcc.com
          Hamad M. Hamad
          Texas State Bar No. 24061268
          Email:  hhamad@caldwellcc.com
          Justin T. Nemunaitis
          Texas State Bar No. 24065815
          Email: jnemunaitis@caldwellcc.com
          Christopher S. Stewart
          Texas State Bar No. 24079399
          Email:  cstewart@caldwellcc.com
          John F. Summers
          Texas State Bar No. 24079417
          Email: jsummers@caldwellcc.com
          Warren J. McCarty, III
          Texas State Bar No. 24107857
          Email: wmccarty@caldwellcc.com
          **CALDWELL CASSADY CURRY P.C.**
          2121 N. Pearl Street, Suite 1200
          Dallas, Texas 75201
          Telephone: (214) 888-4848
          Facsimile: (214) 888-4849

          R. Christopher Bunt
          Texas State Bar No. 00787165
          Email: rcbunt@pbatyler.com
          **PARKER, BUNT & AINSWORTH, P.C.**
          100 East Ferguson, Suite 418
          Tyler, Texas 75702
          Telephone: (903) 531-3535
          Telecopier: (903) 533-9687

T. John Ward, Jr.
Texas State Bar No. 00794818
Email: jw@wsfirm.com
Claire Abernathy Henry
Texas State Bar No. 24053063
Email: claire@wsfirm.com
**WARD, SMITH & HILL, PLLC**
**1507 Bill Owens Parkway**
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR PLAINTIFF**
**VIRNETX INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing document was served on counsel of record via email on December 3, 2020, to the extent allowed by the Agreed Protective Order.

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

The undersigned hereby certifies that the foregoing document is authorized to be filed under seal pursuant to the Agreed Protective Order submitted in this case.

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell