# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| VIRNETX INC., *et al.*, § § § Plaintiffs, § § v. § § APPLE INC., § § § § Defendant. § | CIVIL ACTION NO. 6:12-CV-00855-RWS (Unsealed and Corrected) |

## ORDER

Before the Court are (1) Defendant Apple Inc.'s Omnibus Motion for Judgment as a Matter of Law Under Rule 50(b) and for a New Trial (Docket No. 1012) and (2) Plaintiff VirnetX Inc.'s Motion for Entry of Judgment and Equitable and Statutory Relief (Docket No. 1013). The Court heard argument on both motions on December 17, 2020. As set forth below, Apple's motion for JMOL and for new trial is **DENIED**, and VirnetX's motion for entry of judgment is **GRANTED-AS-MODIFIED**.

## BACKGROUND

This dispute between VirnetX and Apple, now spanning more than a decade, has attained Dickensian proportions rivaling *Jarndyce and Jarndyce*.[1] An overview of the history of this matter provides helpful context for the Court's opinion.

---

[1] "Jarndyce and Jarndyce drones on. This scarecrow of a suit has, over the course of time, become so complicated, that no man alive knows what it means. The parties to it understand it least; but it has been observed that no two Chancery lawyers can talk about it for five minutes without coming to a total disagreement as to all the premises. Innumerable children have been born into the cause; innumerable young people have married into it; innumerable old people have died out of it. Scores of persons have deliriously found themselves made parties in Jarndyce and Jarndyce without knowing how or why; whole families have inherited legendary hatreds with the suit. The little plaintiff or defendant, who was promised a new rocking-horse when Jarndyce and Jarndyce should be settled, has grown up, possessed himself of a real horse, and trotted away into the other world. Fair wards of court have faded into mothers

VirnetX sued Apple on August 11, 2010, alleging infringement of U.S. Patent Nos. 6,502,135 ("the '135 patent"), 7,418,504 ("the '504 patent"), 7,490,151 ("the '151 patent") and 7,921,211 ("the '211 patent"). Case No. 6:10-cv-417 ("'417 action"), Docket No. 1. On November 6, 2012, a jury found that the first versions of Apple's accused VPN On Demand and FaceTime features infringed the asserted patents and that the asserted patents were not invalid. '417 action, Docket No. 790. That same day, VirnetX filed the instant case, accusing several of Apple's redesigned products of infringing the same patents. *See* Docket No. 1.

In the '417 action, Apple and VirnetX both filed post-trial motions, which the Court resolved in a memorandum opinion. '417 action, Docket No. 851. On appeal, the United States Court of Appeals for the Federal Circuit affirmed-in-part, reversed-in-part and remanded for further proceedings. '417 action, Docket No. 853; *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1313–14 (Fed. Cir. 2014). Specifically, the Federal Circuit affirmed the jury's finding of infringement by VPN On Demand and affirmed the Court's denial of Apple's motion for judgment as a matter of law on invalidity. *Id.* The court vacated the infringement finding for FaceTime based upon a change in claim construction, holding that the term "secure communication link" requires both "security and anonymity," and vacated damages for VPN On Demand and FaceTime because it found that the jury had relied on a flawed damages model. *Id.* at 1314.

After receiving the Federal Circuit's mandate, the Court solicited the parties' proposals on the best path forward. '417 action, Docket No. 855. VirnetX proposed that the Court consolidate the remaining issues in the '417 action with the impending trial in the '855 action. '417 action, Docket No. 864 at 4. Apple opposed consolidation. '417 Action, Docket No. 873 at 45:20–46:6. After a status conference on March 10, 2015, the Court consolidated the '855 and '417 actions,

---

and grandmothers; a long procession of Chancellors has come in and gone out." CHARLES DICKENS, BLEAK HOUSE 4–5 (George D. Sproul, New York 1902).

designating this action as the lead case with a revised schedule. Docket No. 220. After extensive motion practice (*see* Docket Nos. 315, 317–323, 326; *see also* Docket Nos. 362, 468), the consolidated action was tried to a jury, which returned a verdict finding infringement of all four asserted patents.

Again, both parties filed post-trial motions. Docket Nos. 462, 463. On July 29, 2016, the Court granted Apple's Motion for a New Trial Based Upon the Consolidation of Cause Nos. 6:10-cv-417 and 6:12-cv-855. Docket No. 500. The Court reasoned that the consolidation and the parties' repeated discussion of the previous jury verdict resulted in an unfair trial. *Id.* at 14. In its Order, the Court explained that "Cause No. 6:10-cv-417 will be retried with jury selection to begin on September 26, 2016, unless the parties agree otherwise on an alternative date, and immediately followed by a second trial on the issue of willfulness. Cause No. 6:12-cv-855 will be retried after Cause No. 6:10-cv-417." *Id.* at 15.

After another round of extensive motion practice (*see, e.g.*, '417 action, Docket Nos. 930–931, 937, 944–945), the '417 action was again tried to a jury. The jury found that FaceTime infringed the '211 and '504 patents and awarded approximately $302 million in damages for the collective infringement by the VPN On Demand and FaceTime features in the accused Apple products. '417 action, Docket No. 1025. After the September trial, both parties submitted post-trial motions (*see* '417 action, Docket Nos. 1018–1019, 1047, 1062–1063), which the Court resolved in a memorandum opinion (Docket No. 1079). Apple appealed the '417 action's final judgment, and the Federal Circuit summarily affirmed. *See* '417 case, Docket Nos. 1079, 1089, 1091; *see also VirnetX Inc. v. Cisco Sys., Inc.*, 748 F. App'x 332 (Fed. Cir. 2019).

Meanwhile, on February 9, 2017, the Court requested that the parties meet and confer about the timing of the '855 trial and propose a schedule. The parties each filed a response (Docket Nos.

519, 520), and Apple simultaneously filed a motion to stay (Docket No. 518). The Court denied Apple's motion (Docket Nos. 527, 553) and set the case on a schedule (Docket No. 539).

The Court held a jury trial in this matter in April 2018. The trial was bifurcated into (1) a liability and damages phase and (2) a willfulness phase, which were tried in succession to one jury. After the liability and damages phase, the jury returned a verdict finding that both VPN On Demand and FaceTime infringed each asserted patent and awarding $502,567,709 in damages. Docket No. 723. After the willfulness phase, the jury returned a verdict that Apple's infringement was willful. Docket No. 729. Both parties filed post-trial motions, which the Court resolved in a memorandum opinion. Docket No. 798. Apple appealed. Docket No. 812. The Federal Circuit affirmed-in-part, reversed-in-part and remanded for further proceedings. *See VirnetX Inc. v. Apple Inc.*, 792 F. App'x 796 (Fed. Cir. 2019). The Federal Circuit affirmed this Court's finding that Apple was precluded from asserting its invalidity defenses and the jury's finding that redesigned VPN On Demand infringed the '151 and '135 patents. *Id.* at 803, 806. The Federal Circuit vacated the infringement finding for FaceTime based on another change in claim construction, holding that the term "domain name service system" incorporated the construction for "domain name service." *Id.* at 809. The Federal Circuit then left it to the parties and this Court "to consider in the first instance relevant aspects of whether to hold a limited damages-only retrial given the reduced basis of liability." *Id.* at 813.

After receiving the mandate, the Court ordered the parties to meet and confer and inform the Court their respective positions on the necessity of a damages-only retrial. Docket No. 821. The parties filed a notice indicating that they could not agree and proposing a briefing schedule on the issue. Docket No. 822. Following briefing (*see* Docket Nos. 824, 825, 828, 830), the Court denied VirnetX's request that the Court enter judgment on the prior jury verdict. Docket No. 840.

Specifically, the Court found that VirnetX had not shown that departure from the normal rule requiring a new trial was warranted because the jury's verdict did not necessitate a feature-independent royalty rate and Apple had not waived its right to seek a new trial. *Id.* at 12, 16. The Court entered a docket control order setting trial for August 17, 2020, and providing for a brief discovery period. Docket No. 849. After extensive motion practice (*see* Docket Nos. 852, 893, 895, 896, 956) and a COVID-related delay (*see* Docket Nos. 914, 934), the damages issues were tried to a jury in October 2020. The jury returned a verdict awarding VirnetX $0.84 per infringing unit for a total of $502,848,847.20 in damages. Docket No. 977.

Apple now seeks JMOL under Rule 50(b) of the Federal Rules of Civil Procedure and a new trial. Docket No. 1012. VirnetX moves for entry of judgment, costs, supplemental damages, an ongoing royalty and pre- and post-judgment interest. Docket No. 1013.

## APPLICABLE LAW

Judgment as a matter of law is only appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008).

Under Fifth Circuit law, a court is to be "especially deferential" to a jury's verdict and must not reverse the jury's findings unless they are not supported by substantial evidence. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211

F.3d 887, 891 (5th Cir. 2000). The Court will "uphold a jury verdict unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable men could not arrive at any verdict to the contrary." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 366 (5th Cir. 2001); *see also Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 577 (5th Cir. 2003)).

In evaluating a motion for judgment as a matter of law, the court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 451 (5th Cir. 2013). Although the court must review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 337 (5th Cir. 2001). However, a court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury. *See id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)). The Court gives "credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Arismendez*, 493 F.3d at 606.

Under Federal Rule of Civil Procedure 59(a), a new trial may be granted on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Rule 59(a)(1)(A). The Federal Circuit reviews the question of a new trial under the law of the regional circuit. *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1347 (Fed. Cir. 2007). The court can grant a new trial "based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir.

1985). "Courts grant a new trial when it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (quoting *Del Rio Distributing, Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir. 1979)). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith*, 773 F.2d at 612–13. The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). "[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great not merely the greater weight of the evidence." *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980).

## DISCUSSION

### I. Apple's Omnibus Motion for Judgment as a Matter of Law Under Rule 50(b) and for a New Trial (Docket No. 1012)

#### A. Apple is Not Entitled to Judgment as a Matter of Law

Apple's motion presents familiar issues. When ruling on Apple's 2018 post-trial motions, the Court "struggle[d] to identify a single basis Apple provide[d] for its JMOL on damages that it ha[d] not already considered at length in the context of *Daubert* motions and the 417 post-trial." Docket No. 798 at 26. The same struggle presents itself here. Apple, for at least the third time across the '417 and '855 actions, argues that (1) the jury's damages award is not tied to the invention's footprint in the marketplace; (2) no reasonable jury could rely on the VoIP licenses; (3) Apple is entitled to an offset for units that included Skype; and (4) no reasonable jury could award more than Apple's expert's prescribed royalty rate per unit. In fact, Apple's motion presents only a single new ground for JMOL: that VirnetX is not entitled to damages on invalid patents.

Because Apple asserts that the reduced basis for liability justifies revisiting previously rejected positions, the Court will consider each argument below.[2]

### 1. The Claimed Invention's "Footprint"

Apple submits that, because VirnetX accused a single implementation of redesigned VPN On Demand ("VOD") of infringement and because VOD has other, noninfringing modes of operation, the damages award is greater than VOD's footprint in the marketplace. Docket No. 1012 at 8–9. Apple made the same argument in 2018, and the Court rejected it. Docket No. 798 at 20–22, 29. The reduced basis of liability does not impact the Court's prior reasoning: then, as now, only VOD's infringement of the '135 and '151 patents was relevant to the issue. Apple is not entitled to JMOL on this basis.

### 2. Reliance on the VoIP Licenses

Apple next argues that Mr. Weinstein failed to account for the differences between the Voice-over-IP licenses he considered and the hypothetical VirnetX-Apple license. Specifically, Apple argues that: (1) each VoIP license is for a longer period of time and for more patents than the hypothetical license; (2) the VoIP licenses cover products that are less complex and have fewer features than the accused products; (3) the VoIP licenses were litigation licenses; (4) the VoIP licenses are based on the entire market value rule; (5) the VoIP licenses defined licensed products in terms that would exclude Apple's accused products; and (6) Mr. Weinstein devalued the Microsoft license. Docket No. 1012 at 10–14. The Court considered and rejected arguments (1)–(3) and (6) in 2018. *See* Docket No. 798 at 26–27.

---

[2] VirnetX asserts that Apple's repeated arguments are barred by collateral estoppel. The Court already found that the damages questions between the '417 action and this one are not identical for purposes of issue preclusion. Docket No. 798 at 26; Docket No. 553 at 7. That finding applies with the same force here.

Each of Apple's criticisms, both new and old, are essentially *Daubert* attacks on Mr. Weinstein's opinion, and the Court has already held that Apple's concerns are related to the weight of this testimony, not its admissibility. Docket No. 362 at 3 ("Although Apple presents valid criticisms of Dr. Jones's opinions, they go to the weight of the evidence rather than admissibility."). The reduced basis of liability does not alter this fact. Apple could, and did, cross-examine Mr. Weinstein on these points and make the same arguments to the jury. Mr. Weinstein explained the factual circumstances surrounding each license he relied on at length. *See* 10/28/20 PM Tr. at 694:20– 707:2. The Court still cannot identify any error in the jury relying on these licenses in determining the appropriate royalty rate in this case.

### 3.     Skype Offset

Apple next argues, for the third time, that it "is entitled to an offset for the devices that are already licensed to avoid double recovery," specifically, devices that already include Skype. Docket No. 1012 at 15. As was true twice before, "Apple never pled a license defense, and Apple presented no evidence that its devices are shipped with Skype included." Docket No. 798 at 31 (citing '417 action, Docket No. 1079 at 17). "Apple also provides no explanation for why the actions of its end-users to modify its product post-sale should bring Apple under the protection of third-party licenses." *Id.* That remains the case here. Because Apple articulates no basis for the Court to reconsider multiple prior rulings on this issue, it is not entitled to JMOL on this basis.

### 4.     Invalidity of the Asserted Patents

Apple next contends that VirnetX cannot be awarded damages for infringement of invalid claims. Docket No. 1012 at 16. It submits that, because the PTAB in July issued Final Written Decisions holding that the asserted claims of the '135 and '151 patents are unpatentable, Apple cannot be liable for infringing them. *Id.* at 16–18. The problem with Apple's argument is that

none of the asserted claims has been cancelled—that only occurs once "the time for appeal has expired or any appeal has terminated." 35 U.S.C. § 318. The PTAB's decisions are subject to an appeal that the Federal Circuit has yet to consider. Apple's parallel assertion that VirnetX is collaterally estopped from defending the validity of the asserted patents is equally unavailing—both infringement and validity have been litigated, resolved and affirmed by the Federal Circuit in VirnetX's favor; neither are at issue in this case. Tellingly, none of the authority Apple cites bears any resemblance to the procedural posture of this case or denied damages based on non-final administrative determinations. Accordingly, none of them supports denying VirnetX the damages the jury awarded it here. Apple is not entitled to JMOL on this basis.

### 5. Royalty Rate

Apple finally asserts that "no reasonable jury" could disagree with its damages expert. Docket No. 1012 at 18–19. Now, as in 2018, the Court declines to substitute its judgment for that of the jury and will not reweigh the evidence and credit Apple's expert over Mr. Weinstein. The jury was free to disbelieve Apple's expert and credit Mr. Weinstein's testimony, which provided substantial evidence for its verdict. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 848 (Fed. Cir. 2010). Accordingly, Apple's motion for JMOL on this basis is denied.

## B. Apple is not Entitled to a New Trial on Damages

Apple advances five bases for a new trial on damages: (1) Mr. Weinstein's testimony should have been excluded; (2) the PTO's unpatentability findings should have been introduced to the jury; (3) the EMVR and hypothetical negotiation instructions were improper; (4) Apple should have been permitted to introduce evidence of the Microsoft determination; and (5) the verdict is excessive. Docket No. 1012 at 19–20. The Court considers each argument in turn, though only the fourth—regarding the Microsoft determination—is new. *See* Docket No. 798 at 34–37.

### 1. Mr. Weinstein's Testimony

Apple asks the Court to grant a new trial because Mr. Weinstein's testimony should have been excluded. Docket No. 1012 at 20. As discussed repeatedly and at great length in this and numerous prior orders, Mr. Weinstein's methodology withstands Apple's *Daubert* challenge. The reduced basis for liability does not impact the Court's prior analysis. Apple is not entitled to a new trial on this basis.

### 2. The Exclusion of Patent Office Proceedings

Apple contends that it is entitled to a new trial because the Court excluded evidence from parallel PTO proceedings. Docket No. 1012 at 20. Apple suggests that the fact that the PTO has issued final written decisions finding each claim unpatentable over the prior art is relevant to damages. *Id.* at 20–22. Apple made the same argument in 2018, and the Court rejected it.

The Court remains unpersuaded that exclusion of the PTO proceedings warrants a new trial. *See* Docket No. 798 at 36. Now, as then, VirnetX's appeals of those proceedings are ongoing, and none of the asserted claims has been cancelled. Apple could, and did, introduce evidence that the claimed invention "has no utility and advantages over old modes or devices." Docket No. 1012 at 21; *see also* Docket No. 798 at 37. Evidence of the PTO proceedings is only alternative evidence potentially relevant to *Georgia-Pacific* factors 9 and 10, and it is by far the most prejudicial. *See* FED. R. EVID. 403. Apple is not entitled to a new trial on this basis.

### 3. EMVR and Hypothetical Negotiation Instructions

Apple asks the Court for a new trial based on its exclusion of Apple's proposed EMVR instruction and based upon the formulation of its hypothetical negotiation instruction. Docket No. 1012 at 22–25. The Court gave the same instructions to the jury in 2018 and rejected Apple's subsequent challenge based on the same arguments it advances here. *See* Docket No. 798 at 34–

35. As the Court concluded then and above, Mr. Weinstein's testimony did not implicate the entire market value rule, so instructing the jury on the rule would have been inappropriate. Indeed, as in the '417 case, "[t]hough the prices of Apple's devices were never presented to the jury, the Court instructed the jury, out of an abundance of caution, not to rely on the full price of any Apple product." '417 action, Docket No. 1079; *see also* Docket No. 976 (jury instructions) at 21 ("VirnetX has relied on license agreements in which royalties were based on a percentage of the entire price of the licensed end-products. But in determining a reasonable royalty, you must not rely on the overall price of Apple's accused products at issue in this case."). The Court presumes that the jury followed this instruction. *See Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985). Again, "[f]urther instructions on the precise contours of the entire market value rule may have led the jury to mistakenly believe that it could apply the rule despite the fact that the record did not support the rule's applicability." '417 action, Docket No. 1079 at 28.

Apple's challenge to the hypothetical negotiation instruction is (at least) its third across the '417 and '855 actions. The Court provided the same instruction in 2018 and in the '417 retrial. As in each previous instance, the instruction properly conveyed to the jury that the reasonable royalty should reflect the fair market value of the technology. Apple still has not identified any meaningful difference between the Court's instruction and Federal Circuit case law. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (explaining that, in analyzing the hypothetical negotiation, the Court must ask, "Had the Infringer not infringed, what would the Patent Holder have made?" and that "the hypothetical negotiation or the 'willing licensor-willing licensee' approach[] attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began") (internal citations omitted). Accordingly, Apple is not entitled to a new trial on this basis.

### 4. The Exclusion of the Microsoft Determination

Apple next contends that it was deprived of a fair trial because the jury heard the complicated history of this case but was not informed of the prior infringement determination in VirnetX's dispute with Microsoft. Docket No. 1012 at 25. Apple submits that the exclusion of the Microsoft determination allowed VirnetX to draw false distinctions between its hypothetical negotiation with Apple and the circumstances surrounding the Microsoft license. *Id.* at 25–27.

Apple acknowledges, as it must, that the Microsoft determination was the subject of an agreed motion *in limine*. Docket No. 1020 at 14. It contends, however, that VirnetX opened the door to its introduction by claiming that Apple would " 'come to the [hypothetical] negotiation in a worse position' than VirnetX's other licensees." *Id.* at 14–15 (citing 10/27/20 AM Tr. at 314:6–12; 10/27/20 AM Tr. at 300:4–17; 10/30/20 PM Tr. at 1244:6–1245:17). Apple made this same argument at trial, and the Court rejected it. 10/28/20 AM Tr. at 536:3–6 ("I don't think the door has been opened wide enough here, particularly given where Mr. Caldwell's comments fell in his opening."). Apple has not articulated any reason why that determination was incorrect or why the Court should reconsider it and order a new damages trial.

Nor is VirnetX's claim counter-factual, as Apple contends. *See* Docket No. 1012 at 26. Microsoft came to the 2010 negotiation an adjudged infringer, but that finding was subject to an appeal that Microsoft forewent in exchange for a settlement. Microsoft continued to contest both infringement and validity. PX409 at VX00088621. Apple, on the other hand, had suffered defeat both in district court and at the Federal Circuit. It therefore could not contest either infringement or validity. VirnetX was not out of bounds when it implied to the jury that Apple was in a worse position in 2013 than Microsoft in 2010, and it did not open the door to the Microsoft determination in doing so. Apple is not entitled to a new trial on this basis.

### 5. Great Weight of the Evidence

Apple finally argues that it is entitled to a new trial because the damages award is excessive and against the weight of the evidence. Docket No. 1012 at 27–29. Apple reasons that VirnetX improperly asked the jury to "punish" Apple for its previous infringement and that Mr. Weinstein's damages methodology is faulty. *See id.* The Court has discussed Mr. Weinstein's methodology repeatedly and at length and rejects Apple's arguments in that regard for the reasons previously discussed.

Apple argues that, during closing arguments, "VirnetX suggested that Apple should get a worse deal than every other licensee because Apple previously infringed." *Id.* at 27 (citing 10/30/20 PM Tr. at 1244:13–1245:17, 1253:3–7, 1283:11–1284:8.). Apple fails to articulate, however, how any of the comments it cites suggest that Apple should be punished for its previous infringement. *Id.* In support, Apple cites *Gilster v. Primebank*, 747 F.3d 1007, 1011 (8th Cir. 2014). Apple cited the same case in 2018. But again, the remarks in this case are a far cry from those at issue in *Gilster*. There, the Eighth Circuit reversed a district court's denial of a new trial motion when, during closing argument in a sexual harassment case, Plaintiff's counsel referred "to an experience in her own life . . . 'plainly calculated to arouse the jury's sympathy' . . . [and] ended the argument by 'giving' the jury the 'power and the responsibility for correcting injustices.' " 747 F.3d at 1011. Specifically, the Eighth Circuit noted that "improper vouching permeated counsel's rebuttal argument." *Id.* These circumstances are not present here, and the Court declines to grant a new trial based on VirnetX's closing argument.

\* \* \*

Having considered each of Apple's arguments in its motion for judgment as a matter of law and for a new trial, the Court **DENIES** Apple's motion.

**II.     VirnetX's Motion for Entry of Judgment and Equitable and Statutory Relief (Docket No. 1013)**

VirnetX seeks (1) costs; (2) supplemental damages; (3) an ongoing (or sunset) royalty; (4) pre-judgment interest; and (5) post-judgment interest.  The Court addresses each request in turn.

**A.     Costs**

VirnetX is the prevailing party and is **AWARDED** costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920.  The Court declines Apple's invitation to police, before receiving the bill of costs, which costs are and are not warranted.

**B.     Supplemental Damages**

VirnetX requests supplemental damages at the jury's royalty rate to account for units not included in the jury verdict.  Docket No. 1013 at 6–8.  Apple, as it did in 2018, requests that the Court stay any accounting of these units until the resolution of all appeals in this case and the PTO proceedings.  Docket No. 1017 at 7.  According to Apple, the appeals could moot damages awards in this action.  *Id.*

Because Apple does not oppose VirnetX's request for supplemental damages at the jury's royalty rate, the Court **GRANTS** VirnetX's motion for supplemental damages.  As in 2018, a stay of accounting is not warranted in this case.  Apple is directed to provide VirnetX an accounting of post-verdict, pre-judgment infringing units within **thirty (30) days**.

**C.     Ongoing Royalty**

VirnetX asks the Court to award an ongoing royalty at the jury's rate, as it did in 2018. Docket No. 1013 at 8.  Apple asks the Court to deny an ongoing royalty or award a royalty of no more than $0.19 per unit, making the same arguments as it did in its motion for JMOL and for a new trial, which the Court has already rejected.  Docket No. 1017 at 8–10.

The Federal Circuit has interpreted 35 U.S.C. § 283 to permit a court to award an ongoing royalty for patent infringement in lieu of an injunction. *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1377 (Fed. Cir. 2017). Ongoing royalties may be based on a post-judgment hypothetical negotiation using the *Georgia–Pacific* factors. *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1370 (Fed. Cir. 2017). The amount of the ongoing royalty is "committed to the sound discretion of the district court" to be determined in accordance with principles of equity. *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1364 n.2 (Fed. Cir. 2008).

As it was in 2018, imposition of an ongoing royalty is an appropriate exercise of the Court's discretion in this case. *See* Docket No. 798 at 50; *see also Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012). Here, it is clear from the verdict form that the jury awarded damages for past infringement, and neither party argues otherwise. *See* Docket No. 977 at 1 ("What royalty rate, expressed as a dollar amount per device, do you find, by a preponderance of the evidence, would fairly and reasonably compensate VirnetX for Apple's infringement" and "what total royalty do you find, by a preponderance of the evidence, would fairly and reasonably compensate VirnetX for Apple's infringement"); *see also Whitserve,* 694 F.3d at 35 ("The jury was instructed to award 'damages,' which by definition covers only past harm."). Because the jury's verdict does not compensate VirnetX for future infringement, the Court will award an ongoing royalty. *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010).

The jury's $0.84-per-unit royalty rate is supported by substantial evidence, as discussed above. Because VirnetX does not ask that the royalty rate be enhanced, the Court **SETS** the ongoing royalty at the jury's $0.84-per-unit rate. Apple is **ORDERED** to provide an accounting of infringing units on a quarterly basis.

### D.     Pre-judgment Interest

VirnetX seeks pre-judgment interest at the prime rate compounded annually, to be applied to the jury award beginning at the date of the hypothetical negotiation. Docket No. 1013 at 11–12. Apple asks the Court to withhold prejudgment interest because "the jury award was generous enough" and will compensate "VirnetX far beyond what the parties would have agreed to in September 2013." Docket No. 1017 at 12–13. If the Court nonetheless awards prejudgment interest, Apple submits that VirnetX's calculation is flawed because: (1) the prime rate overcompensates VirnetX, and the seven-year Treasury Bill rate is more appropriate; (2) prejudgment interest should be awarded as a running royalty, consistent with the jury's verdict; and (3) if prejudgment interest is awarded as a lump sum on September 18, 2013, then the interest rate should remain the same as the rate on that date. *Id.* at 13–16. Finally, Apple requests that any prejudgment interest award be reduced to account for VirnetX's delays in this case. *Id.* at 16–18.

As to Apple's argument that the Court withhold prejudgment interest entirely, it did not raise it after the '417 retrial, and the Court rejected it in 2018. *See* Docket No. 798 at 51. As to delay, the Court again declines to assign responsibility for the lengthy timeline of this case to either party. *Id.* And as to the nature of the award, nothing in the verdict compels the conclusion that the jury awarded a running royalty; indeed, the language of the verdict form closely tracked that used at previous trials, where the parties agreed that the jury had awarded a lump sum. *See, e.g.*, Docket No. 723 at 2.

The district court is invested with ample discretion with which to set the rate it believes appropriate, as the district court is in the best position to ascertain, on a case-by-case basis and considering the totality of the circumstances, the rate it believes most appropriate for a given award. Here, VirnetX was awarded more than half a billion dollars in damages, in addition to the

substantial sum it received in the '417 action.  Under the circumstances of this case, an award of pre-judgment interest calculated at the seven-year U.S. Treasury Bill rate, compounded annually, adjusting the effective rate with each and every change in the rate from the date of infringement, is appropriate.

### E. Post-judgment Interest

VirnetX seeks post-judgment interest, and Apple agrees that VirnetX is entitled to post-judgment interest "if the Court enters judgment for VirnetX." Docket No. 1017 at 18.  Having resolved the parties' motions above, the Court **AWARDS** VirnetX post-judgment interest pursuant to 28 U.S.C. § 1961.

### CONCLUSION

> We asked a gentleman by us, if he knew what cause was on?  He told us Jarndyce and Jarndyce.  We asked him if he knew what was doing in it?  He said, really no he did not, nobody ever did; but as well as he could make out, it was over.  "Over for the day?" we asked him.  "No," he said; "over for good."

CHARLES DICKENS, BLEAK HOUSE 469 (George D. Sproul, New York 1902).  Perhaps, at last, the same is true of *VirnetX v. Apple*.  For the reasons set forth above, Apple's Omnibus Motion for Judgment as a Matter of Law under Rule 50(b) and for a New Trial (Docket No. 1012) is **DENIED**, and VirnetX's Motion for Entry of Judgment and for Equitable and Statutory Relief (Docket No. 1012) is **GRANTED-AS-MODIFIED**.  The parties' motions for judgment as a matter of law pursuant to Rule 50(a) (Docket Nos. 973, 974) are **DENIED-AS-MOOT**.  The Court has previously entered final judgment in accordance with this order.

**So ORDERED and SIGNED this 15th day of January, 2021.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE